The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al., | NO. 2:18-cv-00939-MJP |
| Plaintiffs, | STATES' REPLY IN SUPPORT OF MOTION FOR EXPEDITED DISCOVERY AND REGULAR STATUS CONFERENCES |
| v. | |
| THE UNITED STATES OF AMERICA; DONALD TRUMP, in his official capacity as President of the United States of America, et al., | NOTING DATE: JULY 13, 2018 |
| | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

STATES' REPLY
2:18-cv-00939-MJP

i

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## I. INTRODUCTION

The States' repeated requests for information about Defendants' conduct and the families over whom they have exclusive control have been met with silence and delay. Meanwhile, since the States filed this lawsuit less than three weeks ago, Defendants have doubled down on their draconian policies despite massive public outcry and clear judicial direction. Under the circumstances presented here, expedited discovery and regular status conferences are necessary and appropriate.

Hours after filing this case, Defendants were ordered to immediately reunify all separated families (*Ms. L* Order). Lin Decl. Ex. Q. Instead of complying, ORR employed a host of administrative and financial barriers to reunification, and ICE created a form conditioning reunification on a parent's agreement to immediate deportation. *Id.*, Exs. R, W. Defendants then attempted *ex parte* to eviscerate decades-old protections for children under the *Flores* Settlement, seeking leave to intern immigrant families indefinitely. While the *Flores* court denied that attempt, Parties in *Ms. L* have stipulated that all *Flores* protections can be waived by parents desperate to see their children even by silence, but the States disagree. *See id.*, Ex. S. Meanwhile, sponsor families in the States are shouldering additional burdens as a result of Defendants' conduct, and trauma to separated parents and children continues unabated. *See id.*, Exs. EE-JJ.

Defendants have no remorse and the Court should not delay discovery. On Tuesday, HHS Secretary Alex Azar described ORR's detention of separated children as "one of the great acts of American generosity and charity." *Id.*, Ex. T. And when asked about the trauma inflicted on children, the President said, "Well, I have a solution. Tell people not to come to our country illegally." *Id.*, Ex. U. Further, while various challenges to Defendants' conduct are pending

STATES' REPLY
2:18-cv-00939-MJP

1

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  elsewhere, to the States' knowledge, no other court is addressing the full scope of the claims
2  presented here. Defendants' shifting tactics, well-documented animus, and commitment to
3  mistreatment of immigrants to further deterrence all warrant the relief requested.

## II.     ARGUMENT

### A.     Expedited Discovery Will Ensure That Critical Evidence Is Preserved

Far from "speculation," it is abundantly clear that without expedited discovery, the States will lose access to key witnesses and evidence. Dkt. 21 at 4-5; *see, e.g., Doe v. Johnson*, No. CV 15 250 TUC DCB, 2015 WL 5086291, at *1 (D. Ariz. Aug. 14, 2015) (granting Plaintiffs expedited discovery regarding conditions in immigration detention facilities due to high turnover making investigation difficult). Defendants have already deported an unknown number of separated parents before the States have had a chance to speak with them, and this will almost certainly continue. *See, e.g.,* Lin Decl. Ex. V (*Ms. L* 7/10/18 Hrg. Tr.) at 29:21-35:17 (discussing 13 potential class members removed that day).[1] An ICE "Separated Parents Form," created after this lawsuit was filed, offers parents a chance to see their children . . . if they agree to immediate deportation. *Id.*, Ex. W; *see also* Dkt. 1-1 at 247-50, 259-61, 267. DHS previously asserted that the agency would reunite families solely "for the purposes of removal." Lin Decl. Ex. Y. And many parents have agreed to repatriation out of "desperation." Dkt. 1-1 at 257, 259-61. In light of their efforts to deport primary witnesses to their misconduct, Defendants' assurance that they will not "shirk any duty to preserve evidence," Dkt. 21 at 1, is astonishing.[2]

The difficulty of preserving evidence is further compounded by the revolving door of

---

[1] The *Ms. L* court expressed serious concern about the large number of parents Defendants removed from the country without their children. *See* Lin Decl. Ex. V (Ms. L 7/10/18 Hrg. Tr.) at 26:8-27:10. Of 63 children under age 5, 12 have parents whom Defendants deported. These families face a lengthy and complicated international reunification process. *Id.*, Ex. X (*Ms. L*, Dkt. 99) at 3. This number is likely to be much higher for the over-age-5 group.

[2] A joint status report filed in *Ms. L* confirms that Defendants are transferring separated parents and children haphazardly across the States, including for example leaving one family at a bus stop. Lin Decl. Ex. KK at 9-10. The report also details Defendants' practice of forcing separated families to bear the cost of reunification. *Id.* at 11.

STATES' REPLY
2:18-cv-00939-MJP

2

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  Defendants' practices challenged here: refusing to accept asylum seekers at the Southwestern
2  border, separating families for deterrence, conditioning reunification on voluntary deportation
3  and draconian administrative and financial requirements, the specter of indefinite detention of
4  immigrants as an alternative deterrence tactic, and threats of mass deportations without any
5  process at all—many practices not at issue in *Ms. L.* Expedited discovery is required because of
6  Defendants' own vacillating policies and practices and for the States to evaluate whether further
7  emergency relief is necessary. *See NobelBiz, Inc. v. Wesson*, No. 14CV0832 W JLB, 2014 WL
8  1588715, at *1 (S.D. Cal. Apr. 18, 2014) ("expedited discovery may be justified to allow a
9  plaintiff to determine whether to seek an early injunction").[3]

10  **B.   Expedited Discovery Imposes Minimal Burdens on Defendants**

11  Any burden to Defendants is outweighed by the prejudice to the States if not allowed to
12  obtain expedited discovery to preserve transitory evidence of Defendants' conduct. As
13  Defendants admit, many of the States' discovery requests seek information Defendants are
14  already required to gather to comply with the *Ms. L* Order; thus, the burden of providing that
15  information here is essentially zero.[4] *See* Dkt. 21-3 (Jennings Decl.) ¶ 17.

16  For other requests, the burden on Defendants is minimal and a result of their own
17  misconduct. Defendants imply that having to respond to expedited discovery could cause them
18  to violate their reunification obligations under the *Ms. L* Order. Dkt. 21 at 11. That contention is
19  absurd. As the *Ms. L* Court noted, Defendants have "enormous" resources (Lin Decl. Ex. V at
20  25:23-24) that they have already committed to these issues. *See also* Dkt. 21-2 ¶¶ 6-7

---

[3] Contrary to Defendants' suggestion, a motion for preliminary injunction or serving formal discovery are not prerequisites to obtaining expedited discovery (Dkt. 21. at 5), especially as the States have repeatedly sought information in order to assess their claims and in light of an already-issued injunction. *See* Fed. R. Civ. Proc. 26(d).
[4] For example, requests 2, 3, 5(g), 6(d)-(e), 11(b)-(d) and 12 seek information that Defendants must gather anyway to reunify separated families. *See* Dkt. 15-1.

STATES' REPLY
2:18-cv-00939-MJP

3

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  (dispatching 115 personnel to engage with putative class members in DHS custody, 100
2  reunification case managers, and 40 support staff); Dkt. 21-3 ¶¶ 8-17.[5]

3  Any additional burden is a result of Defendants' own arbitrary conduct. The *Ms. L* Court
4  found that Defendants forcibly separated families at the Southwestern border and transferred
5  them across the country without any system to track the whereabouts or well-being of parents or
6  children. Lin Decl. Ex. Q at 23. Defendants admit their data was not organized to allow reliable
7  tracking; instead, Defendants manually review files from multiple agencies to identify separated
8  family members. *Id*., Ex. Z ¶¶ 16-18; *see also* Dkt. 21-2 ¶ 18; Dkt. 21-3 ¶ 7. Defendants' asserted
9  burden is "a chaotic circumstance of the Government's own making." Lin Decl. Ex. Q at 23.

10 **C.    The *Ms. L* Order Does Not Discharge the Need for Expedited Discovery Here**

11  Defendants argue that they are working to comply with the *Ms. L* Order, and that
12  expedited discovery would somehow "risk producing conflicting orders." *See* Dkt. 21 at 10-12.
13  To the contrary, the States did not seek emergency relief precisely *because* of the *Ms. L* Order
14  issued on the heels of this suit. The existence of a preliminary injunction on reunification does
15  not abrogate the States' claims. *See* Dkt. 15 at 1, 9-10. Moreover, the States' interests are distinct
16  from those in *Ms. L*, including broader claims seeking different relief. Significantly, the States
17  do not agree with the *Ms. L* Parties' stipulation regarding waiver of a child's rights under *Ms. L*
18  and *Flores*. Lin Decl. Ex. NN. Aside from alleged diversion of resources—which is not grounds
19  for denying discovery—Defendants do not explain how this case would "interfere with the
20  administration of the *Ms. L* class action." Dkt. 21 at 11.

21  To the extent Defendants offer the *Ms. L* Order as assurance that relief is imminent, their
22  compliance with that Order is far from certain, despite four status conferences in two weeks. *See*

23
24  [5] There are reports that ORR is budgeting for another wave of child separations. Mark Joseph Stern, *Trump's Office of Refugee Resettlement Is Budgeting for a Surge in Child Separations,* Slate, July 10, 2018, Lin Decl. Ex. LL.

1   Lin Decl. Exs. BB, AA, and Z at 2, 5. Meanwhile, the challenged Policy and related practices
2   continue to harm the States and their residents. *See id*., Ex. CC. For these reasons, Governors
3   from five of the Plaintiff States sent a letter to Defendants on July 6 expressing concern over
4   Defendants' ability to reunify families, and again requesting information about the separated
5   families. *Id*. Ex. DD. This fourth letter to Defendants was again met with silence.[6]

6   **D.   Expedited Discovery Is Also Required To Address Defendants' "Threshold" Issues**

7   Defendants advance a host of "threshold" arguments they claim should precede any
8   discovery. This transparent attempt to avoid judicial scrutiny of the States' substantive claims
9   should be given no weight. None of Defendants' threshold issues are prerequisites to expedited
10  discovery; courts can and have ordered expedited discovery notwithstanding a pending motion
11  to dismiss. *OMG Fidelity, Inc. v. Sirius Tech., Inc*., 239 F.R.D. 300, 304-05 (N.D.N.Y. 2006)
12  (ordering pre-answer, pre-conference discovery during the pendency of motions to dismiss).

13  The States will address the motion to dismiss separately, but note here that Defendants'
14  arguments are meritless. The States have submitted more than 42 declarations addressing their
15  sovereign, quasi-sovereign and proprietary interests at stake in this litigation. The States have
16  standing due to "federal interference with the enforcement of state law[s]" for licensing
17  out-of-home care facilities, and laws and policies favoring family unity (*Texas v. United States*,
18  809 F.3d 134, 153 (5th Cir. 2015)); to protect their proprietary interests harmed by Defendants'
19  conduct; and as *parens patriae* to protect the health and well-being of their residents from the
20  harmful effects of Defendants' discriminatory family separation policies and related practices
21  (*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607-08 (1982)). These
22  harms are not speculative and Defendants offer no assurance that they won't increase with time.

---

24  [6] Defendants' suggestion that the States failed to confer prior to filing this motion is inaccurate. Dkt. 17.

STATES' REPLY
2:18-cv-00939-MJP

5

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Defendants' assertions that Claims I-V should be dismissed or transferred because they are coextensive with claims in *Ms. L* is incorrect at best, and misleading at worst. Dkt. 21 at 10-12. The *Ms. L* plaintiffs have not brought an equal protection claim, even in their amended complaint. *See* Dkt. 1 at 116 (Count III); Lin Decl. Ex. MM. More importantly, all of the States' claims are grounded in broader allegations than the narrow separation practices litigated in *Ms. L. See, e.g., id*. at 115 (due process claims also based on trauma from conditions of detention). Likewise, *Al Otro Lado Inc. v. Nielsen*, No. 17-2366 (S.D. Cal.) is not a basis for dismissal or transfer (*see* Dkt. 21 at 1, 3) because allegations there differ, it was filed over a year ago, and it remains in a preliminary phase of litigation, with a motion to dismiss pending since December 14, 2017. Regardless, some overlap between legal theories and requested relief has never been a basis for dismissal or automatic transfer, and the existence of multiple actions merely confirms that Defendants' behavior is egregious.[7]

The States respectfully ask the Court to grant the relief requested.

---

[7] For example, District Courts for Western Washington, California, D.C, and Maryland issued preliminary injunctions suspending the U.S.'s transgender military ban in whole or in part. *Karnoski v. Trump*, No. C17-1297-MJP, 2017 WL 6311305 (W.D. Wash. Dec. 11, 2017); *Stockman v. Trump,* 2017 WL 9732572 (C.D. Cal. Dec. 22, 2017); *Doe 1 v. Trump*, 2017 WL 4873042 (D.D.C. Oct. 30, 2017); *Stone v. Trump*, 2017 WL 5589122 (D. Md. Nov. 21, 2017). And courts in three consolidated actions issued overlapping injunctions halting the U.S.'s termination or phase out of DACA. *Batalla Vidal v. Nielson*, 1:16-cv-04756 (E.D.N.Y.), Dkt. 208; *Regents of the University of California v. DHS*, No. 3:17-cv-05211 (N.D. Cal.), Dkt. 234; *NAACP v. Trump*, 1:17-cv-01907 (D.D.C.), Dkt. 23; *see also New York v. Pruitt*, No. 18-cv-1030, 2018 WL 2411595, at *4 (S.D.N.Y. May 29, 2018) ("[W]e should not automatically assume that it is better for a nationwide issue to be decided by a single court," because "[i]t is a bedrock principle of our federal court system that the adjudication of novel and difficult issues of law is best served by letting questions percolate among the lower federal courts").

STATES' REPLY
2:18-cv-00939-MJP
6
ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

DATED this 13th day of July, 2018.

ROBERT W. FERGUSON
Attorney General

*/s/ Rebecca Glasgow*
REBECCA GLASGOW, WSBA #32886
Deputy Solicitor General
NOAH G. PURCELL, WSBA #43492
Solicitor General
COLLEEN M. MELODY, WSBA #42275
Civil Rights Division Chief
LAURA K. CLINTON, WSBA #29846
MEGAN D. LIN, WSBA #53716
Assistant Attorneys General
Attorneys for Plaintiff State of Washington

STATES' REPLY
2:18-cv-00939-MJP

7

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# DECLARATION OF SERVICE

I hereby certify that on July 13, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will serve a copy of this document upon all counsel of record.

DATED this 13th day of July, 2018, at Olympia, Washington.

*/s/ Rebecca Glasgow*
REBECCA GLASGOW
Deputy Solicitor General

STATES' REPLY
2:18-cv-00939-MJP

8

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744