UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al., | CASE NO. C18-939 MJP |
| Plaintiffs, | ORDER ON MOTION FOR EXPEDITED DISCOVERY AND REGULAR STATUS CONFERENCES |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

The above-entitled Court, having received and reviewed:

1.  States' Motion for Expedited Discovery and Regular Status Conferences (Dkt. No. 15);

2.  Defendants' Opposition to the Motion for Expedited Discovery and Regular Status Conferences (Dkt. No. 21);

3.  States' Reply in Support of Motion for Expedited Discovery and Regular Status Conferences (Dkt. No. 26);

all attached declarations and exhibits; and relevant portions of the record, rules as follows:

IT IS ORDERED that the request for expedited discovery is GRANTED IN PART and DENIED in part; the parties are referred to the body of the order for further details.

IT IS FURTHER ORDERED that the request for regular status conferences is GRANTED; the first will be held **Friday, July 27, 2018, 10:00 a.m.,** in the courtroom of the Honorable Marsha J. Pechman, U.S. Courthouse, Seattle, Washington.

## **Background**

Seventeen states (and the District of Columbia; "the States") have filed this action in defense of their own rights and *in parens patriae* for the residents within their borders who have been impacted by the Government's policy of separating families seeking asylum or other means of entry into the U.S. at the Southwestern border. ((Dkt. No. 1, Complaint ¶ 1.)  The States seek an order (1) enjoining the U.S. from refusing to process asylum seekers who arrive at Southwestern border ports of entry; (2) declaring family separation for deterrence illegal; (3) requiring prompt family reunification for those separated; (4) preventing immigration authorities from conditioning reunification on withdrawal of asylum claims, agreeing to removal, paying the costs of reunification, or other conditions relating to the safety of the child; and (5) confirming the illegality of indefinitely detaining families.  (Id. at § VI, Prayer for Relief.)

The seventeen states (Washington, California, Maryland, Oregon, New Mexico, New Jersey, New York, Iowa, Illinois Minnesota, Rhode Island, Vermont, North Carolina, Delaware, Massachusetts, Pennsylvania, and Virginia) and the District of Columbia claim that they have been (or will be) recipients of parents and/or children separated and detained under the Government's policy of forcibly separating children from their parents upon entry through the Southwestern border. (Id. at ¶¶ 300-303, 306-07, 312-13, 319, 323-35, 336, 341.)

There is a June 20, 2018 Executive Order ("EO") suspending family separation (Complaint, Ex. 24), but it makes reunification contingent on "availability of appropriations" and exemptions from the requirements of the "<u>Flores</u> Settlement" (a decades-old agreement that makes it illegal to detain immigrant children indefinitely; <u>Id.</u>, Ex. 30).  Plaintiffs further claim that the EO appears to be limited to families who agree not to stay in the U.S.

Plaintiffs report that their requests for information about the separated families have gone unheeded and unanswered, and their attempts to interview witnesses under Defendants' custody and control have been "delayed or obstructed." (Ex. 2, Decl. of Poletti ¶¶ 34-38; Ex. 37, Decl. of Austria ¶¶ 3-10.)  The list of topics on which Plaintiffs are seeking to expedite discovery is lengthy and includes:

1. Development and implementation of the separation policy;

2. The number of Separated Children in each Pltf State from January 1, 2018 to the present, by month and facility/sponsor placement;

3. The number of Separated Parents detained from January 1, 2018 to the present, by month and facility;

4. The number of Separated Parents released from January 1, 2018 to the present, including facility, conditions of release and current location;

5. As to every Separated Parent: date of detention, current placement, whether they expressed fear for safety in home country (and if so, whether they were provided with a credible fear interview), whether they have withdrawn claims to lawful status while in custody, contact provided between the Separated Parent and any Separated Children, location of Separated Parent's children, and the reunification plan for all separated families;

6. As to every Separated Children in a Pltf State: current placement, contact provided with parent(s), location of Separated Parents, reunification plan and progress of plan;

7. Development and implementation of policy of refusing entry to asylum seekers;

8. Since January 1, 2018, the number of people who have expressed fear for safety in their home country, but were refused entry;

9.  Since January 1, 2018, the number of people who have expressed fear for safety in their home country, but were detained;

10. Since January 1, 2018, the number of people traveling with children who have expressed fear for their safety in their home country, but were separated from their children;

11. As to every Separated Parent: number and circumstances of any who relinquished a claim to lawful status while in custody, who agreed to voluntary removal while in custody who were removed from the country without their children, and all reunification efforts for Separated Parents removed without their children;

12. As to all Separated Parents released from custody since January 1, 2018: all information on reunification efforts, including the paperwork required of Separated Parents desiring reunification, the financial requests/demands made of the Separated Parents desiring reunification, any other information regarding conditions or requirements placed on reunification;

13. All information regarding any sites proposed as detention centers along the Southwestern border and any accompanying regulatory changes related to the use of those sites;

14. All information regarding the existence and implementation of a plan to conduct summary (without hearing or process) deportations of persons entering along the Southwestern border.

Dkt. No. 15, Mtn, Ex. A.

By this motion, Plaintiffs seek to (1) expedite discovery on a lengthy list of issues related to their claims and (2) schedule regular weekly meetings to track progress/problems with discovery.

The Court takes judicial notice of Ms. L v. U.S. ICE (C18-428, S.D. Cal.), another class action on behalf of the separated immigrant families, filed in Southern California. A preliminary injunction has issued in this case, ordering the federal government to promote family contact and imposing deadlines for family reunification. 2018 WL 3124986.[1] Plaintiffs in the States' case allege that, while there is unquestionably overlap, Ms. L does not address the issues raised in

---

[1] Defendants make reference to additional case – Al Otro Lado, Inc. v. Neilsen, C17-2366 (S.D. Cal.), which challenges the denial of asylum process to qualified immigrants along the Southwestern border – but a decision on injunctive relief has been stayed in that matter pending a ruling on a motion to dismiss.

1   their case concerning (1) the refusal to accept asylum seekers at the Southwestern ports of entry,

2   (2) the conditions being attached to reunification (withdrawal of asylum claims, payment of

3   travel costs, etc.) and (3) alternative proposals of indefinite family detention[2] or summary

4   deportation.

5

6                                    **<u>Discussion</u>**

7          Plaintiffs seek an accelerated discovery schedule under Local Rule 7(d)(2) (relief from a

8   deadline) and FRCP 26(d)(1) (no discovery before FRCP 26(f) conference except by stipulation

9   or court order).

10         The States argue that good cause for the expedited discovery exists where the evidence

11  sought may be moved or become difficult to track as time goes on.  *See* <u>Pod-Ners, LLC V. n.</u>

12  <u>Feed & Bean of Lucerne Liab. Co.</u>, 204 F.R.D. 675, 676 (D. Colo. 2002).  Plaintiffs require

13  evidence both regarding and from immigration detainees over whom Defendants have control,

14  especially evidence regarding issues not covered by the <u>Ms. L.</u> case.  The States present a series

15  of declarations demonstrating that their efforts to obtain the information they need without resort

16  to formal discovery have been singularly unsuccessful.  (Ex. 2, Decl. of Poletti ¶¶ 34-38; Ex. 37,

17  Decl. of Austria ¶¶ 3-10; Complaint ¶ 312.)  Furthermore, Plaintiffs assert a right to test whether

18  any remedial measures allegedly undertaken by Defendants are a sham.  *See* <u>Citizens for Quality</u>

19  <u>Educ. San Diego v. San Diego Unified Sch. Dist.</u>, C17-1054-BAS-JMA, 2018 WL 1150836 at

20  *2-4 (S.D. Cal. Mar. 5, 2018).

21         Defendants interpose a number of objections to the States' request.

22

23  [2] Plaintiffs in <u>Ms. L.</u> have stipulated that immigrant families can waive their <u>Flores</u> rights and submit to indefinite
    detention of their children following reunification (Ex. NN), a concession with which these Plaintiffs are not in
24  accord.

ORDER ON MOTION FOR EXPEDITED DISCOVERY AND REGULAR STATUS CONFERENCES - 5

Good cause

Factors usually considered in evaluating the reasonableness of a request for expedited discovery include (1) a pending preliminary injunction, (2) breadth of the request, (3) purpose for requesting expedited discovery, (4) burden on the non-moving party and (5) how far in advance of a regular discovery schedule the request is made.  Am. LegalNet, Inc. v. Davis, 673 F.Supp.2d 1063, 1067 (C.D. Cal. 2009).

Defendants argue that there is no preliminary injunction pending, the requests are overbroad, the burden is excessive and Plaintiffs' request is far in advance of the typical discovery process.  Defendants object that Plaintiffs have not substantiated their assertions about potential loss of evidence.

Defendants simultaneously point to the lack of any request for injunctive relief and the danger of "conflicting orders."  The truth is that neither is grounds to deny Plaintiffs' request. Plaintiffs here indicate that they did not seek an emergency injunction precisely because the Ms. L order was in place when they filed their motion.  (Dkt. No. 26, Reply at 5.)  Furthermore, the existence of the preliminary injunction in Ms. L constitutes solid evidence that this is an emergency situation – the Court does not require an injunctive motion from these parties to take notice of that reality.

Additionally, as Plaintiffs point out, "some overlap between legal theories and requested relief has never been a basis for dismissal or automatic transfer" (as evidenced by the existence of multiple preliminary injunctions issued in recent transgender military ban cases[3]).  The States

---

[3] Karnoski v. Trump, C17-1297-MJP, 2017 WL 6311305 (W.D. Wash. Dec. 11, 2017); Stockman v. Trump, 2017 WL 9732572 (C.D. Cal. Dec. 22, 2017); Doe I v. Trump, 2017 WL 4873042 (D.D.C. Oct. 30, 2017); Stone v. Trump, 2017 WL5589122 (D. Md. Nov. 21, 2017).

1    also make the point that the existence of multiple overlapping actions concerning the same

2    Government policy is confirmation of the "egregious" nature of the Government's conduct.

3         The kind of family separations currently being implemented by the Government are

4    proven to cause immediate and extensive psychological harm to both children and parents; the

5    damage is only worsened with the passage of time.  (Complaint, Exs. 43, 57, 79-86.)  Plaintiffs

6    present evidence of substandard conditions of confinement, combined with threats to minors of

7    detention and/or permanent separation from their families.  (*See* Dkt. No. 15, Motion at 5 n.11.)

8    These are circumstances which demand swift review and response.

9         And, in fact, this Court notes that many of the findings in the <u>Ms. L</u> case – especially

10   relating to the premature removal of parents without their children, and the chaotic and

11   disorganized nature of the Government's practice of separating children from their parents and

12   moving them around the country – function as proof that Plaintiffs' concerns are not

13   "speculative" and that good cause exists to move swiftly to address the issues they have raised.

14

15   <u>Article III standing</u>

16        It is Defendants' position that the federal government is exercising its legitimate authority

17   to act upon individuals and the States have no legally protected interest in litigating the

18   "incidental effects" that derive from those actions, nor any right to bring suit to protect

19   individuals from federal action.  Furthermore (Defendants maintain), even if the States can

20   establish an injury to their legitimate interests, that impact has been foreclosed by the <u>Ms. L</u>

21   court and the EO directing that families only be detained in accordance with the law.  *See* EO

22   Affording Congress an Opportunity to Address Family Separation, 2018 WL 3046068 (June 20,

23   2018).  Defendants claim that any other injuries alleged by the States are only speculative.

24

1    While these issues will be addressed in greater depth in a few weeks when the Court

2    formally rules on Defendants' pending motion to dismiss and/or transfer, the Court notes

3    preliminarily two grounds for standing on which the States predicate their claims: standing to

4    challenge "federal interference with the enforcement of state law[s]" for licensing out-of-home

5    care facilities, as well as law and policies favoring family unity (Texas v. United States, 809 F.3d

6    134, 153 (5th Cir. 2015)); and standing as *parens patriae* in defense of the "health and well-

7    being of their residents" (Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez, 458 U.S.

8    592, 607-08 (1982)("[A] State has a quasi-sovereign interest in the health and well-being -- both

9    physical and economic -- of its residents in general.")

10   Furthermore, there is legal precedent for proceeding with expedited discovery during the

11   pendency of a motion to dismiss.  OMG Fidelity, Inc. v. Sirius Tech., Inc., 239 F.R.D. 300, 304-

12   05 (N.D.N.Y. 2006).  The threshold inquiry involves a "likelihood of success" assessment on the

13   motion to dismiss, combined with "a comparison of the potential prejudice which will be

14   suffered by the defendant if discovery is permitted, and that which will be experienced by the

15   plaintiff if denied the opportunity for discovery at this stage."  Id. at 305. The Court will rule on

16   the motion to dismiss/transfer in due time, but finds that that potential prejudice to Defendants

17   (in this case, the resources they will have to expend to respond to the discovery requests

18   propounded by Plaintiffs) is far outweighed by the damage being inflicted on the children and

19   parents whose interests the States are representing in this matter.

20

21   Overlap with *Ms. L.*

22   Defendants claim that the Ms. L order enjoining Defendants from detaining immigrants

23   without their minor children and requiring reunification on a deadline means that the courts have

24

1   already addressed Plaintiffs' first five causes of action (substantive and procedural due process,

2   equal protection, the Administrative Procedures Act, and violation of the asylum laws) and that

3   proceeding with this case risks inconsistent rulings and diversion of limited resources.  Plaintiffs

4   disagree with that assessment on several grounds.  First of all, there are no "equal protection"

5   claims in <u>Ms. L</u> such as those alleged by Plaintiffs here.  Secondly, as discussed *infra*, the States'

6   claims in this matter are based on much broader allegations concerning the Government's

7   practices and the harms engendered by those practices than are plead in <u>Ms. L</u>, and the relief

8   sought is concomitantly broader.

9          Plaintiffs' position is that any burden on the Government imposed by this accelerated

10  schedule is "trivial" compare to the harms being inflicted on the parents and children who are

11  impacted by the current situation.  The Court is inclined to agree.  Furthermore, since Defendants

12  have already been ordered to identify, locate, and reunite the separated families, this order would

13  simply require them to share that information with Plaintiffs.  Whatever burden is imposed can

14  be further mitigated through the weekly discovery conferences the States are requesting with the

15  Court.

16

17                                **<u>Conclusion</u>**

18         While the Court finds that Plaintiffs have made a case for expedited discovery and will be

19  permitted to proceed, the Court also has concerns about the scope of the issues which the States

20  have indicated are suitable topics for their accelerated discovery process.  In addition, the topics

21  do not appear to have equal weight when it comes to the necessity for a swift response in the

22  discovery process.  The list found at Appendix A to Plaintiffs' opening brief must be prioritized

23  prior to the parties' first conference with the Court.

24

ORDER ON MOTION FOR EXPEDITED DISCOVERY AND REGULAR STATUS CONFERENCES - 9

1    Along with an order permitting limited, expedited discovery, the Court also intends to

2  grant Plaintiffs' request for regular discovery conferences – many of the questions posed above

3  can be addressed at the first of those conferences, to be held **Friday, July 27,** at **10:00 a.m.** in

4  Courtroom 14206, United States Courthouse in Seattle, Washington.  The parties are ordered to

5  be present at that time.  In advance of that hearing, the parties must meet and confer and submit,

6  by no later than **12 noon** on **Thursday, July 26:** (1) a joint status report describing the posture of

7  the case as it currently stands, (2) a prioritized list of discovery topics with a proposed timetable

8  for completion, and (3) an agenda of items for discussion at the initial conference.

9    The clerk is ordered to provide copies of this order to all counsel.

10   Dated July 19, 2018.

11

12

13   The Honorable Marsha J. Pechman
     United States Senior District Court Judge

14

15

16

17

18

19

20

21

22

23

24

ORDER ON MOTION FOR EXPEDITED DISCOVERY AND REGULAR STATUS CONFERENCES - 10