1
2
3
4
5
6
7

The Honorable Marsha J. Pechman

8        **UNITED STATES DISTRICT COURT**
9      **WESTERN DISTRICT OF WASHINGTON**
              **AT SEATTLE**
10

11   STATE OF WASHINGTON, *et al.*,            No. 2:18-cv-0939 (MJP)

12                        Plaintiffs,          **DEFENDANTS' SECOND NOTICE**
                                               **OF SUPPLEMENTAL AUTHORITY**
13              v.

14   UNITED STATES OF AMERICA, *et al.*,       Noted For Consideration:
                                               August 3, 2018
15                        Defendants.
                                               Oral Argument Requested
16

17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' SECOND NOTICE
OF SUPPLEMENTAL AUTHORITY
*State of Washington, et al. v. United States, et al.*,
Case No. 2:18-cv-00939 (MJP)

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-0106
FACSIMILE: (202) 305-7000

1
2
3
4
5
6
7
8
9
10
11
12
13

Defendants, by and through undersigned counsel, respectfully submit this Second Notice of Supplemental Authority to bring the Court's attention to the July 24, 2018 order by Judge Rakoff of the United States District Court for the Southern District of New York in *E.S.R.B. v. Sessions*, No. 18-cv-6654, slip op. (S.D.N.Y. July 24, 2018) (Exhibit 1). Much like the Defendants' prior Notice of Supplemental Authority (Dkt. 33), the court in *E.S.R.B.* addressed whether a habeas petition brought by a group of children who were separated from their parents and being held in New York should be transferred to the Southern District of California's overlapping case in *Ms. L. v. ICE*, No. 18-cv-428 (S.D. Cal.), where preliminary relief has been granted to a certified class of parents of separated children. Like Judge Furman concluded last Thursday in *N.T.C. v. ICE*, No. 18-cv-6428, 2018 WL 3472544 (S.D.N.Y. July 19, 2018) (Dkt. 33-1), Judge Rakoff determined that the claims should be heard by the *Ms. L.* court in the Southern District of California, and directed that the *E.S.R.B.* plaintiffs' claims be "transfer[red] … forthwith" to be considered in conjunction with the claims in *Ms. L.* Exhibit 1 at 1.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Judge Rakoff's order illustrates why courts should transfer actions with substantial overlap between the parties and issues when one court has certified a class and granted class-wide relief relating to those overlapping issues: "I think the common sense of it is that these matters should, to the maximum extent possible, be consolidated before as few judges as possible." *E.S.R.B.*, Transcript of Proceedings, at 33 (S.D.N.Y. July 24, 2018) (Exhibit 2). That concern is especially pressing now where the expedited discovery the States intend to pursue could interfere with the information-gathering needed by the *Ms. L.* plaintiffs (whose interests the States say they wish to vindicate), which that court is managing day to day. *See id.* (noting how "[t]he potential for conflict, … even inadvertent conflict, is high in these kinds of situations"). Indeed, the *Ms. L.* court just yesterday ordered the provision of several types of information to facilitate those reunification efforts with respect to class members who would require further inquiry by class counsel. It would certainly make the most sense for Judge Sabraw to have a role in balancing the needs of the class action plaintiffs in *Ms. L.* and the interest in reuniting the certified class with

DEFENDANTS' SECOND NOTICE
OF SUPPLEMENTAL AUTHORITY
*State of Washington, et al. v. United States, et al.*,
Case No. 2:18-cv-00939 (MJP)

- 1 -

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-0106
FACSIMILE: (202) 305-7000

their children, with the States' claim to need expedited discovery to vindicate their asserted interests in this matter. Recognizing the importance of this issue and the gravity of what is contested in these cases, Judge Sabraw noted at a hearing yesterday afternoon in *Ms. L.* that both Judges Furman and Rakoff discussed the potential for transfer with him regarding the cases, and as a result of those discussions, each judge determined that transfer was appropriate. *See Ms. L.*, Transcript of Proceedings, at 41–42 (S.D. Cal. July 24, 2018) (Exhibit 3). Defendants would consent to a similar consultation here, and the States have also represented that they do not object to such a consultation, although they do not think it appropriate for the parties to request consultation. Defendants have also asked Plaintiffs' counsel in *Ms. L.* if they would object to such a consultation, and they advised that they take no position on such a consultation taking place.

The benefits of consolidating these cases, given the certified nationwide class in *Ms. L.*, are apparent for the same reasons Judge Furman explained last week: "the classes in the … cases concern the same families"; "the relief Plaintiffs seek in this case is, at bottom, directly related to the reunification process being supervised by Judge Sabraw" and "Judge Sabraw is in a better position ... to decide those questions and to modify his own orders if appropriate;" and "in the absence of a single judge presiding over both cases, there is a real risk of inconsistent decisions and conflicting orders — a particularly intolerable risk given the gravity and urgency of the issues in these cases (and the prospect of similar litigation being filed in other states where children separated from their parents are being held)." *N.T.C.*, 2018 WL 3472544, at *2. There is no reason why the States' case should be treated differently from either *E.S.R.B.* or *N.T.C.*, as this case also seeks relief directly related to separated families where a nationwide class is certified in the Southern District of California, and there is a significant risk of inconsistent decisions and conflicting orders in "a matter of great importance." Exhibit 2 at 33.

//

//

DEFENDANTS' SECOND NOTICE
OF SUPPLEMENTAL AUTHORITY
*State of Washington, et al. v. United States, et al.*,
Case No. 2:18-cv-00939 (MJP)

- 2 -

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-0106
FACSIMILE: (202) 305-7000

1

2   DATED: July 25, 2018

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

AUGUST E. FLENTJE
Special Counsel to the Assistant
Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

*/s/ Joshua S. Press*
JOSHUA S. PRESS
Trial Attorneys
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 305-0106
joshua.press@usdoj.gov

*Attorneys for the United States of America*
*and the Federal Defendants*

DEFENDANTS' SECOND NOTICE
OF SUPPLEMENTAL AUTHORITY
*State of Washington, et al. v. United States, et al.*,
Case No. 2:18-cv-00939 (MJP)

- 3 -

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-0106
FACSIMILE: (202) 305-7000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2018, I electronically transmitted the foregoing document to the Clerk's Office using the U.S. District Court for the Western District of Washington's Electronic Document Filing System (ECF), which will serve a copy of this document upon all counsel of record.

By: */s/ Joshua S. Press*
JOSHUA S. PRESS
Trial Attorney
United States Department of Justice
Civil Division

DEFENDANTS' SECOND NOTICE
OF SUPPLEMENTAL AUTHORITY
*State of Washington, et al. v. United States, et al.*,
Case No. 2:18-cv-00939 (MJP)

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-0106
FACSIMILE: (202) 305-7000

# DEFENDANTS' EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
E.S.R.B. by and through his next friend :
Meryl Ranzer, J.E.C.M. by and through   :
his next friend Carline Pinto, R.M.S.C. :
by and through his next friend Melissa  :
Borja, K.M.G., K.D.G., S.G.G., and      :
F.E.O.G. by and through their next      :
friend Rev. Elizabeth G. Maxwell,       :
I.M.Q.S. by and through her next friend :
Senator Brad Benjamin, and K.C.A. by    :
and through her next Friend Letitia     :
James,                                  :
                                        :
        Plaintiffs,                     :
                                        :        18-cv-6654 (JSR)
        -v-                             :
                                        :             ORDER
                                        :
JEFFERSON B. SESSIONS III, Attorney     :
General of the United States; DEPARTMENT :
OF HOMELAND SECURITY ("DHS"); KIRSTJEN  :
NIELSEN, Secretary of DHS; U.S. CUSTOMS :
AND BORDER PROTECTION ("CBP"); KEVIN K. :
MCALEENAN, Commissioner of CBP; U.S.    :
IMMIGRATION AND CUSTOMS ENFORCEMENT     :
("ICE"); RONALD D. VITIELLO, Acting     :
Director of ICE; U.S. CITIZENSHIP AND   :
IMMIGRATION SERVICES ("USCIS"); L.      :
FRANCIS CISSNA, Director of USCIS; U.S. :
DEPARTMENT OF HEALTH AND HUMAN SERVICES :
("HHS"); ALEX AZAR, Secretary, of the   :
Department of Health and Human Services;:
OFFICE OF REFUGEE RESETTLEMENT ("ORR"); :
and SCOTT LLOYD, Director of ORR,       :
                                        :
        Defendants.                     :
----------------------------------------x

JED S. RAKOFF, U.S.D.J.

        This motion comes before the undersigned, sitting in Part I,

because of the request for emergency relief. For the reasons stated

from the bench, see Transcript, 7/29/18, which are here incorporated

by reference, the Clerk of Court is directed to transfer this action

forthwith to the United States District Court for the Southern

District of California, to be assigned to Judge Sabraw as related to
<u>Ms. L. v. U.S. Immigration and Customs Enforcement</u>, No. 18-CV-0428.
The Clerk of Court is directed to effectuate the transfer immediately,
notwithstanding Local Rule 83.1, and then to close the case in this
Court.

      SO ORDERED

Dated:    New York, NY

          July 2&#818;4&#818;, 2018                  JED S. RAKOFF, U.S.D.J.

# DEFENDANTS' EXHIBIT 2

I7O8ESRC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  ESRB,

4                  Plaintiff,              PART I

5             v.

6  JEFFERSON BEAUREGARD SESSIONS,

7                  Defendant.

8  ------------------------------x

9                                    July 24, 2018
                                     2:45 p.m.
10
   Before:
11
                       HON. JED S. RAKOFF,
12
                                      District Judge
13
                            APPEARANCES
14
   THE LEGAL AID SOCIETY
15      Attorneys for Plaintiff
   SARAH GILLMAN
16 GREGORY COPELAND
   JENNIFER LEVY
17
   GEOFFREY S. BERMAN
18      United States Attorney for the
        Southern District of New York
19 MICHAEL J. BYARS
   BRANDON M. WATERMAN
20      Assistant United States Attorneys

21

22

23

24

25

I7O8ESRC

```
 1              (Case called)

 2              THE DEPUTY CLERK:  Will everyone please be seated, and

 3     would the parties please identify themselves for the record.

 4              MR. COPELAND:  Gregory Copeland of The Legal Aid

 5     Society for the plaintiff petitioner.

 6              MS. GILLMAN:  Sarah Gillman, The Legal Aid Society,

 7     for the plaintiff petitioner.

 8              MS. LEVY:  Jennifer Levy, The Legal Aid Society, for

 9     the plaintiff petitioner.

10              MR. BYARS:  Assistant U.S. Attorney Michael Byars for

11     the respondent.

12              MR. WATERMAN:  Assistant U.S. Attorney Brandon

13     Waterman on behalf of the respondents.

14              THE COURT:  So I have received a copy of the proposed

15     order to show cause, as well as the memorandum of law in

16     support of the order to show cause and the underlying

17     complaint.

18              I would have thought that the proper way to proceed is

19     to give the government a short window to put in responding

20     papers, provided that the status quo remain as is during that

21     short period.

22              So I was thinking maybe the government could get in

23     their papers by Thursday morning, and we could hold oral

24     argument and if necessary -- well, we would hold oral argument

25     on Thursday afternoon, and if there was an evidentiary hearing
```

I7O8ESRC

1   that was needed, then we could hold that on Friday.

2              So any objections to that?

3              MS. GILLMAN:  No, your Honor, we do not object to

4   that.

5              MR. BYARS:  Your Honor, this schedule raises some

6   concern for the government.  As I am sure your Honor is aware,

7   the issue of the reunification of parents and children is under

8   active management by Judge Sabraw in the Southern District of

9   California.  The judge set a deadline Thursday for

10  reunifications to take place and the government is working to

11  make sure that that happens.

12             Last Monday, shortly before 8 p.m., the government was

13  notified of an action in Part I before Judge Swain.  We

14  appeared Monday night.  Judge Swain entered a temporary

15  restraining order.

16             THE COURT:  Are you talking about last week?

17             MR. BYARS:  Yes.  The case was sent to Judge Furman.

18  We saw him the next day.  Then on Thursday of last week, Judge

19  Furman entered an order transferring that case to the Southern

20  District of California, and I am happy to hand up a copy of the

21  order.

22             THE COURT:  I have a copy.  Thank you.

23             MR. BYARS:  I would like to draw your attention, your

24  Honor, if I may, to the bottom of page 4, in which Judge Furman

25  says, "To preserve the status quo, the temporary relief granted

I7O8ESRC

by the court on July 17, 2018, Docket No. 9, is extended to
give Judge Sabraw an opportunity to consider plaintiff's
request for broader emergency relief.  The parties should
promptly present those issues to Judge Sabraw so he can decide
whether to maintain, modify, or vacate the order granting
temporary relief."

          I am hard-pressed to understand what Legal Aid is
asking for in this action that is not encompassed by Judge
Furman's direction, and it raises some very real practical
concerns.  On the day that we appeared before Judge Swain,
Judge Sabraw held a hearing.  Commander of Public Health
Service Jonathan White appeared and established to Judge
Sabraw's satisfaction that a 12-hour notice period prior to
transporting these children was not needed and would interfere
with the logistics of reuniting these children with these
parents.  I am not sure why these issues should be determined
anywhere else but in the Southern District of California.  And
I would note that all of the parents whose children are
represented here, all of these parents have told HHS that they
want their children, and they want them as soon as possible.

          Now, the Southern District of California court was
open last night when we received notice from Legal Aid at 8:19
p.m., 5:19 p.m. California time.  That court was open.  It
would have been open after-hours.

          THE COURT:  Are you sure it wasn't closed at 5 p.m.?

I7O8ESRC

1    I don't know, but most courts do close at 5 p.m., and my many

2    wonderful trips to California suggest to me that working

3    overtime is not their favorite occupation.  So what makes you

4    think that court was open?

5         MR. BYARS:  Judge Sabraw has a jury trial ongoing.  I

6    am sure that Legal Aid could have reached out, certainly this

7    morning before today's hearing.  It's almost noon there.  There

8    is a hearing today on the case at 3 p.m.

9         THE COURT:  Just so I understand what your proposal

10   is.  Is your proposal that I transfer this matter forthwith to

11   Judge Sabraw?  Is your proposal that I simply deny the order to

12   show cause?  Is your proposal that I do all that without

13   hearing anything further from the government in terms of

14   written submissions?  I just want to be clear what you're

15   specifically asking for.

16        MR. BYARS:  I would ask for an immediate transfer of

17   this case to Judge Sabraw.  Absent that, then I think that the

18   case should be -- we can certainly brief the case, but I think

19   that any interim relief that your Honor were to consider here

20   is plainly going to delay reunifications of children with

21   parents who have asked to be reunified with their children, and

22   that should not happen.  It would contradict the court order

23   that Judge Sabraw has put in place requiring reunifications by

24   Thursday, and it's just going to slow everything down.

25        Moreover, it appears that what Legal Aid wants to do

I7O8ESRC

1    is to force the parents to come to New York in order to get

2    their children, and testify in a proceeding here to the

3    satisfaction of Legal Aid before they can do that.  That just

4    seems completely contrary to the case's active management in

5    the Southern District of California.  Legal Aid is not a

6    guardian ad litem here.  The parents here have indicated what

7    their decision is and their decision should be given effect.

8             THE COURT:  Let me hear from plaintiff's counsel.

9             MS. GILLMAN:  Thank you, your Honor.

10            So we come here today with a very simple ask.  We are

11   simply asking that our clients, the eight children that we have

12   brought this individual habeas action on behalf of, be given

13   the opportunity to have a meaningful conversation with their

14   parents before they make what would be the most important

15   decision in their young lives.  The government frames this as a

16   very simple issue of reuniting the parents and the children,

17   but the Legal Aid Society here is representing in this

18   particular action before your Honor eight individuals, who

19   range in age from 9 to 17, who were forcibly separated from

20   their parents.

21            The reason that we brought this action before your

22   Honor is because the government notified the plaintiff's

23   counsel that transfer of these children outside the

24   jurisdiction of New York was going to happen imminently.

25            Number one, we got this notification very late on

I7O8ESRC

1    Saturday night.  The plaintiffs are currently housed in

2    facilities that are run by the Office of Refugee Resettlement.

3    Those facilities are not open on the weekend, and so that made

4    any communication even with counsel seriously difficult.

5          Next, your Honor, again, we are dealing with children

6    between the ages of 9 and 17.  We are not making a big ask

7    here.  There is a group of children who are in our papers

8    before your Honor.  There's four children and one family.  So

9    we are talking about five parents for eight children.

10          THE COURT:  I guess what I am unclear about is the

11   government, if I understand it, says that all the children,

12   including, presumably, these eight, were being reunified with

13   their parents.  So if that's true, isn't that what you wanted?

14          MS. GILLMAN:  Your Honor, we do not oppose

15   reunification.  However, we are here representing the

16   individual children, eight of them, and in order to ensure that

17   their rights are protected, including, but not limited, the

18   right to seek any independent relief such as asylum, that they

19   have the opportunity to have a meaningful communication with

20   their parents.

21          THE COURT:  Presumably, the way to have that is, in

22   the first instance, by reuniting them.

23          MS. GILLMAN:  Your Honor, the reunification of our

24   clients, if it was to take place under the framework that the

25   government is proposing, would not allow for meaningful

I7O8ESRC

1    communication, number one, between the plaintiffs and their

2    counsel.  Number two, the defendants have not indicated where

3    these children and their parents are going to be reunited.

4    They have indicated sort of a suggestion as to where they are

5    going to be reunited.  But there is another issue at play here,

6    which is that these children cannot be placed in facilities

7    that are not in compliance with the *Flores* settlement.

8              THE COURT:  How did you come to represent these eight?

9              MS. GILLMAN:  The Legal Aid Society, part of our

10   office, your Honor, is comprised of a youth project.  The youth

11   project does outreach with children who are in the custody of

12   Office of Refugee Resettlement.  These eight children are from

13   a larger group of children that were part of litigation that

14   was brought last week, which the government made reference to,

15   and these children are being represented by the Legal Aid

16   Society through our youth project.

17             THE COURT:  Did these children request your

18   representation?

19             MS. GILLMAN:  Yes, they did, your Honor.

20             THE COURT:  In what form did they do that?

21             MS. GILLMAN:  The way that the youth project works is

22   that we receive referrals from agencies that go in and

23   initially meet with children in ORR custody.  And then once a

24   referral is sent to us, we go and meet with the individual

25   children at the facilities.  In this particular instance, the

1    facilities are in New York, and the children indicated what

2    their wishes were to us, and we have then followed through with

3    those wishes, in terms of what we have stated in the papers.

4               THE COURT:  Let me go back to defense counsel.

5               So with respect to these eight children, what form is

6    reunification taking and when?

7               MR. BYARS:  My understanding is that they would be

8    transported to meet with their parents on, I believe, as early

9    as tomorrow the transportation would take place.

10              THE COURT:  Transportation to where?

11              MR. BYARS:  Well, it depends on where their parents

12   are located, but, presumably, some of them are located in

13   Texas.

14              THE COURT:  And this is all pursuant to the order of

15   the California federal judge?

16              MR. BYARS:  It's all under the supervision of that

17   judge, yes, your Honor.

18              THE COURT:  Is the timetable one that that judge set

19   or not?

20              MR. BYARS:  The deadline for Thursday's reunifications

21   to be completed is set by the Southern District of California,

22   by Judge Sabraw.

23              THE COURT:  Let me go back to plaintiff's counsel.

24              If these children are all going to be taken as early

25   as tomorrow, and no later than Thursday, to be reunited with

I7O8ESRC

1   their parents, I am at a loss to see why you object to that.

2          MS. GILLMAN:  Well, the issue, again, your Honor, is

3   that the government has not indicated what this reunification

4   means, meaning what happens after there is reunification with

5   the parents.  Does that mean that the child and the parent will

6   then be detained in a facility that is not compliant with the

7   *Flores* settlement?  Does the reunification mean that the parent

8   and child will be deported?

9          THE COURT:  Aren't those the kind of issues that are

10  before the judge in California?

11         MS. GILLMAN:  They are not, your Honor.  The *Ms. L*

12  class represents the parents and not children, and that's why

13  we had to come before your Honor on behalf of these eight

14  children.  If the children are sent, as per the plan of the

15  government, and as your Honor just previously asked defense

16  counsel, we don't know what is going to happen after they are

17  moved to be with their parents, and therein lies the problem.

18  Because of the fact that they were separated from their

19  parents, because of the fact that they were children --

20         THE COURT:  But if the judge in California is dealing

21  with reunification from the standpoint of the parents, doesn't

22  it make sense, if there are separate interests involving the

23  children, that those also be litigated before that same judge?

24         MS. GILLMAN:  Not in this particular instance, your

25  Honor.  Again, I am sorry that I keep repeating myself, but we

I7O8ESRC

```
1   are dealing with eight young children.  By virtue of the fact

2   that they were separated from their parents, they have

3   obviously experienced trauma.  We have one plaintiff in our

4   action before your Honor who suffers from attention deficit

5   disorder, who really has been suffering within the context of

6   the facility and the separation from his parent.  The Ms. L

7   litigation simply seeks to reunify, but it's not representing

8   the interests of the eight plaintiffs that come before your

9   Honor.

10          THE COURT:  If I were to transfer this case to

11  California, then you, or your California co-counsel, would

12  still have full standing to represent the interests of those

13  children there.

14          MS. GILLMAN:  Well, your Honor, I think there are a

15  couple of problems there.  Number one, as defense counsel

16  referenced, and as is set forth in our moving papers, they are

17  also under the requirements of the order that was issued by the

18  Honorable Swain last Monday.  Within that order, Judge Swain

19  required that there be meaningful communication and that

20  specifically the government advise within 48 hours of the

21  purpose of the release, detention, or repatriation.  We haven't

22  been advised of any of those things.

23          Moreover, again, the action here before your Honor

24  really just involves -- it's a very minimal ask.  We are simply

25  asking that the children be able to communicate with their
```

I7O8ESRC

```
1    parents, and that that be facilitated by the parents being

2    brought to New York so they can actually engage in this

3    communication.  If they are transferred out of this

4    jurisdiction, it's going to be impossible for them to engage in

5    that meaningful communication.  Again, these children --

6          THE COURT:  That's what I am not fully understanding.

7    Why are they going to have any less meaningful communication in

8    Texas, for example, where I gather some will be reunited, than

9    here?

10         MS. GILLMAN:  Well, I think there's a few things.  The

11   first thing is we don't know what will happen to them upon

12   transfer to Texas.  So we don't know what the purpose is once

13   they get there.  Are they being deported?  Are they not being

14   deported?  Are they going to be able to proceed with their own

15   independent claims?  And again, that's not something we know.

16   We just simply don't know that.

17         The second thing is that their attorneys are here in

18   New York, and we think that it's incredibly important for them

19   to be able to consult with their parents and then have the

20   ability to consult with their attorneys.

21         Third, I think that again, as I referenced before, we

22   are not dealing with simply the transfer of -- just the general

23   transfer.  These are children, again, who are just going

24   through an incredibly difficult time, and if they are sent to

25   the detention facilities that the government -- again, we don't
```

I7O8ESRC

1    exactly know what facilities they are; we don't know what

2    accommodations are there for these children.

3            These children right now are in facilities in New York

4    that, although it's very difficult for them, although they are

5    separated from their parents, although they are going through

6    trauma, at least in these facilities, these facilities are

7    compliant with the requirements of the *Flores* agreement, which

8    allows for certain accommodations to be made for these

9    children.  If these children are transferred across the country

10   to various detention facilities, we have no indication of what

11   those facilities will be.

12           Therefore, the idea that they can engage in meaningful

13   communication and meaningful consultation is virtually

14   impossible, because you're taking someone who has already been

15   traumatized, you're sending them from a facility that, although

16   not perfect, not their home, not with their parent, actually

17   does have some level of care that can address these child's

18   needs, and then you're transferring them out of that facility,

19   where they have already been transferred from their parents

20   forcibly, and they are put in a situation where we don't know

21   what is going to happen.

22           Again, we are simply asking for a very small ask, and

23   I think your Honor's --

24           THE COURT:  I am trying to get down to the

25   practicalities of this.  The government says it's under an

1    order from the judge in California to reunite children and

2    parents by Thursday.  And you say, if I understand you

3    correctly, that's fine, but they need to be reunited here

4    rather than someplace else so that they can have, in effect,

5    communication with you.

6             Do I have that right so far?

7             MS. GILLMAN:  Yes, your Honor.  I think we are also

8    asking that our clients' wishes be adhered to here.  If they

9    are transferred out of this jurisdiction, I don't think that

10   their wishes would be adhered to for all the reasons I

11   previously stated.

12            The other issue we have here, your Honor, and why we

13   had to come before you today --

14            THE COURT:  Isn't their single biggest wish to be

15   reunited with their parents?

16            MS. GILLMAN:  No, your Honor.  Some of the children

17   who are here before you today are actually very, very scared of

18   going back to their country, and they would like the right to

19   pursue their own independent claim for asylum.  But as your

20   Honor can understand, we are dealing with a situation where

21   these children are left in a situation where they are being

22   told you have to reunify with your parents, but you're not

23   really being told what that means, and where you're going, and

24   whether or not you're going to have the right to actually

25   proceed with your own application for relief.  And in the same

1   time, you're dealing with a group of children who have just

2   suffered trauma and will continue to suffer trauma.

3          And the problem with what the government is proposing,

4   and I guess their objection to what we have proposed to your

5   Honor, is that there hasn't been meaningful notice provided to

6   our clients.  Again, we received an e-mail notification very,

7   very late on Saturday evening, and that notification did not

8   provide any substance.  The only thing it provided was, we are

9   going to be transferring these children.

10         I think what your Honor proposed in the initial ask to

11   both the plaintiff and the defendant is more than reasonable.

12   We are, again, speaking about five parents here.  We are not

13   talking about thousands of parents.  We are talking about five

14   parents, eight children.  And all we want to do is make sure

15   that they have the opportunity to meaningfully engage with

16   their parents and make a decision after that is done.  And it's

17   just impossible to do if they are taken from New York and

18   transferred across the country.  I don't want to say across the

19   country in all cases, because I think some of these facilities

20   are in Texas, so I guess partially across the country.

21             THE COURT:  Let me hear from defense counsel.

22             MR. BYARS:  A couple of points, your Honor.

23         The Legal Aid attorneys sitting here today have

24   entered appearances –– at least Mr. Copeland and Ms. Gillman

25   have –– in the Southern District of California.  The case that

I7O8ESRC

1    they filed last week has been transferred to the Southern

2    District of California before Judge Sabraw.

3            THE COURT:  These children?

4            MR. BYARS:  The case that was filed in Part I last

5    week, the putative class action involving the interest of the

6    children that Ms. Gillman has been describing, that case has

7    been transferred by Judge Furman.

8            THE COURT:  Were any of these eight individual

9    plaintiffs in that case?

10           MR. BYARS:  My understanding, and you can perhaps

11   confirm with Legal Aid, but they were purporting to represent

12   70 children.  I understand that the eight that they are

13   speaking of now are eight out of the 70 children that were

14   potential class members in last week's action.

15           THE COURT:  Let me just stop you there to make sure

16   your adversary agrees with that.

17           Were these eight within the group that Legal Aid filed

18   on behalf of the 70?

19           MS. LEVY:  Yes, your Honor.  These clients were

20   clients of Legal Aid's, but the proceeding that we filed last

21   week was one that sought the 48 hours' notice; it did not seek

22   this relief on behalf of the plaintiff children.  What happened

23   was we filed that case.  We received minimal notice late on

24   Saturday night of 50 of our clients.

25           THE COURT:  I have heard about minimal notice on

I7O8ESRC

1  Saturday night.  I, myself, was of course in chambers working.

2         Let me go back a step.  You filed an action on behalf

3  of 70 children, a class action that was filed initially before

4  Judge Furman; is that right?

5         MS. LEVY:  It was initially filed --

6         MS. GILLMAN:  Sorry, your Honor.  So the action was

7  initially before, of course, Judge Swain because she was the

8  Part I judge.

9         THE COURT:  Then it was assigned to Judge Furman.

10         MS. GILLMAN:  So the eight children that we are

11  speaking about here today were not individual plaintiffs in

12  that action.

13         THE COURT:  They were just members of the class.

14         MS. GILLMAN:  Yes.

15         THE COURT:  Did Legal Aid purport nevertheless to have

16  an attorney-client relationship with these eight in what they

17  presented to Judge Furman or Judge Swain?

18         In other words, it seems to me there is a difference

19  here between going in and saying, on behalf of Tom, Joe and

20  Mary, we are bringing a class action for the following 500

21  people.  If those 500 want their own separate lawsuit, they are

22  more than entitled to.  They, in effect, are opting out of the

23  class, or seeking additional or corollary relief.  If, on the

24  other hand, Legal Aid goes in, or a lawyer goes in in my

25  hypothetical and says, We have been authorized by not just Tom,

I7O8ESRC

1  Joe and Mary, but by the following 70 people to be their

2  lawyer, then it seems to me the representation was that they

3  will be bound by the relief in that action.  So I am not sure

4  which of these two scenarios this is.

5          MS. GILLMAN:  Can I have just a moment to consult with

6  my co-counsel?

7          THE COURT:  Yes.

8          MS. GILLMAN:  So, your Honor, when we went in last

9  week, the class was for all children in New York State who are

10  being held in the Office of Refugee Resettlement.  Subsequent

11  to that action being brought, the eight children that we are

12  here in court before your Honor about were referred to The

13  Legal Aid Society and are clients of The Legal Aid Society.

14          THE COURT:  That only partly answers my question.

15          The action filed before Judge Swain and Judge Furman

16  was a class action pursuant to Rule 23 or some similar rule?

17          MS. GILLMAN:  Yes, your Honor.

18          THE COURT:  Then I come back now to defense counsel.

19  If they were not the named plaintiffs, these eight, and they

20  were just members of the class, that doesn't in any way

21  preclude this lawsuit.

22          MR. BYARS:  I believe that these eight individuals

23  were on a list of 70 children that were provided to us.

24          THE COURT:  But that's like saying, if I brought a

25  securities class action and I said, Judge, John Jones is a

1    shareholder and here is a list of -- we don't have to guess, we

2    know who the other 69 shareholders are.  Here they are, and we

3    will seek certification of the class, and so we are bringing

4    this as a class action.  Until and unless that class is

5    certified, and maybe even then, those other 69 in my

6    hypothetical are free to bring whatever action they want.  They

7    are not in any way, shape or form precluded by the fact that

8    John Jones said he is representing the class.

9            So I would have to see the transcript, but they

10   brought the other action as a class action.  Nothing precludes

11   these other members of the class from seeking different or

12   alternative relief.

13           MR. BYARS:  Your Honor, just looking at page 2 of

14   Judge Furman's order, in a footnote it refers to Judge Swain's

15   granting emergency relief to prohibit the government from

16   removing putative class members represented by Legal Aid from

17   New York State without providing 48 hours' notice.  I think

18   that the eight individuals at issue in this case are on the

19   list of 70 that was provided by Legal Aid and would be part of

20   the putative class.  I think they are either represented by

21   Legal Aid or members of the putative class, but subject to the

22   relief granted by Judge Swain, and extended by Judge Furman,

23   and extended by Judge Furman with the specific direction that

24   this temporary relief would give Judge Sabraw an opportunity to

25   consider requests for broader emergency relief.  I think that

I7O8ESRC

1    is what is happening here.

2         THE COURT:  I don't see anything in a footnote that

3    detracts from the right of any individual member to seek the

4    relief that is being sought here.  Judge Swain ordered a

5    prohibition on the government from removing putative class

6    members represented by Legal Aid from New York State without

7    providing 48 hours' notice.  They are not seeking to remove

8    them from New York State.  They want them to stay in New York

9    State and have the parents brought here.  So there is no

10   contradiction there.  Moreover, I think the key adjective there

11   is "putative."  Nothing that I know in the law precludes

12   someone who has been brought in as a class member, but is not

13   an individual class representative, from saying, I don't want

14   to be part of that class, I want to opt out, I want my own

15   relief, which is, in effect, at best, at most, what is being

16   asked for here.  Now, whether it presents Legal Aid with a

17   conflict, that's a different question.

18        So I don't understand what in this footnote you think

19   creates a problem for what they are asking for here.

20        MR. BYARS:  I think what was directed in the footnote

21   was temporary emergency relief that applied to the eight

22   individuals who are seeking broader relief here.  And the

23   purpose of the transfer was to allow that to happen in such a

24   fashion so that the district judge that is actively managing

25   the reunification process could consider all of the issues that

1    are in this case as well as in the *Ms. L* case.

2           I note that, for example, one of the things that Judge

3    Sabraw has done is to institute a seven-day stay of removal

4    following reunification.  That's the kind of thing that the

5    judge can do there in order to try to provide for protections

6    for the reunification process.  Judge Sabraw is actively

7    involved in doing this.  In fact, in about two hours and 32

8    minutes he is going to be having another hearing in the *Ms. L*

9    case, and presumably will also be considering the *NTC* case as

10   well.  So there is a very real risk here of this action

11   delaying the directions of Judge Sabraw in the Southern

12   District of California case.  The order that he has directed

13   the government to reunify children with their parents by

14   Thursday evening is very --

15           THE COURT:  In a case where there is a potential

16   conflict between two federal judges, my normal practice would

17   be to, on consent of the parties, call the other judge and find

18   out whether there really is a conflict or not in the other

19   judge's mind.  So does anyone have any objection to my calling

20   Judge Sabraw right now?

21           MR. BYARS:  Your Honor, the government has no

22   objection, and we note further that Judge Furman actually did

23   the exact same thing last week.  He called Judge Sabraw to

24   figure out -- I don't know what they talked about, but he did

25   call him about the *NTC* case.

I7O8ESRC

1          THE COURT:  I am glad that the younger judges know in

2     advance to follow the path set by the older judges.

3          Any objection from Legal Aid?

4          MS. GILLMAN:  We have no objection to the Court

5     calling the judge in the *Ms. L* litigation, but we think it's

6     appropriate, given the claims that are being brought before

7     your Honor which involve the *Flores* settlement, for your Honor

8     to call Judge Gee, who is the judge in the *Flores* case.

9          THE COURT:  In which case?

10         MS. GILLMAN:  In the *Flores* case.  It's the *Flores*

11    settlement.  Your Honor, of course we have no objection to you

12    calling the *Ms. L* judge, but it would also be, I think,

13    appropriate and necessary, given the claims before this Court,

14    that you call Judge Gee.  We understand that in that case there

15    is a hearing scheduled before Judge Gee on Friday.

16         THE COURT:  A hearing on what?

17         MS. GILLMAN:  A hearing on these issues involving what

18    is going on with the children who are subject to the *Flores*

19    settlement, in terms of the reunification of the parents in the

20    *Ms. L* litigation.

21         THE COURT:  To move this along, let me go see if I

22    could reach Judge Sabraw.  If I decide as a result of that

23    conversation that I should also call Judge Gee, does the

24    government have any objection?

25         MR. BYARS:  Your Honor, I think the two are distinct.

I7O8ESRC

```
 1    I think that Judge Gee, first of all, her proceeding on Friday
 2    is necessarily after the deadline that's of real importance and
 3    urgency here, which is the Thursday deadline.  I am not sure
 4    how Judge Gee's views on the Flores settlement case would
 5    inform the issues before the Court.
 6              THE COURT:  That all may be true.  That's why I may or
 7    may not feel the need to call Judge Gee.  But my question is,
 8    just to move this along, because we are under various time
 9    pressures, if after talking with Judge Sabraw I feel it would
10    be useful for the Court to call Judge Gee, do you have any
11    objection?
12              MR. BYARS:  No, your Honor.
13              THE COURT:  So we will take a short break and I will
14    try to reach one or both of those judges.
15              (Recess)
16              THE COURT:  So I had a very useful conversation with
17    Judge Sabraw, and before I rule I want to go back to the
18    government.
19              Tell me exactly what was the notice that you sent on
20    Saturday evening.
21              MR. BYARS:  I can check my phone.  I can tell you
22    exactly.
23              THE COURT:  Sure.
24              MR. BYARS:  Your Honor, there is a cover e-mail to Mr.
25    Copeland from an HHS attorney, and the cover e-mail says,
```

I7O8ESRC

1    "Please find attached the list that ORR received from DHS of

2    children in the *NTC* class that are cleared for reunification

3    with their parent.  The spreadsheet indicates where the parent

4    is located and where the reunification will take place.  I

5    realize it is late on Saturday night.  However, we wanted to

6    provide this information to you as soon as possible in order to

7    comply with the 48-hour notice.  The federal field specialists

8    are arranging for transportation for the children.  HHS is also

9    instructed to provide the following information.  The

10   information merely reflects the intent of ICE --"

11          THE COURT:  Speak a little louder.

12          MR. BYARS:  "The information merely reflects the

13   intent of ICE at the current time, and based on currently

14   available information.  All custody and removal determinations

15   will be made at the time the minor and parent are detained in

16   ICE custody.  ICE is not bound by this initial information and

17   provides such information merely to inform The Legal Aid

18   Society pursuant to the injunction in the *NTC v. ICE*, case

19   number 18-6428, SDNY, filed July 16, 2018."

20          Then there is a spreadsheet.  It has, I think it's 70

21   names.  There's various information at the top.  There is an

22   identifying number, family name, given name, gender.  Then

23   there is a facility name, reunification site; a column for

24   final order yes or no, final order executable, final order

25   date, matching child first name, matching child last name, and

1    then an identifying number.  Then a column that says "want

2    child?"  A column for criminality, whether there has been a

3    conviction or charge or no charge, suspected of gang

4    affiliation, most serious conviction, most serious pending

5    charge, and various comments, and a custody decision.  So it

6    has all that information in the spreadsheet.

7                 THE COURT:  Let me go back to plaintiff's counsel.

8                 What is it that you think, if anything, the government

9    was required to provide in that notice that they didn't

10   provide?

11                MS. GILLMAN:  So, your Honor, the information that

12   they provided in that e-mail that was just read by Mr. Byars is

13   wholly insufficient.  In particular, the end part of that

14   e-mail I think frames the problem with the notice that was

15   required, in that it says "this information merely reflects the

16   intent of ICE at the current time."  The meaning of notice is

17   that the person actually gets real notice and the opportunity

18   to respond to that notice.

19                The other problem in that notification that Mr. Byars

20   just read is that it failed to indicate whether these children

21   were going to be facing long-term detention with their parents

22   in facilities that were noncompliant with the *Flores* settlement

23   and whether or not they were facing deportation upon

24   reunification.

25                If you would excuse me one moment, your Honor.  Sorry.

I7O8ESRC

1          THE COURT:  So the reason I asked this in part is that

2    Judge Sabraw brought to my attention that he has put in place

3    all sorts of provisions to address the very issues you just

4    raised, that he was cognizant even before the action brought

5    before Judge Swain and Judge Furman that the interests of the

6    children are not necessarily coincident with the parents'

7    interests at all times, but that at the same time

8    reunification, at least in the short-term, was something he

9    wanted to bring about promptly.  So he, as I understand it, has

10   arranged at each of the facilities where reunification is

11   taking place, pursuant to his order, that there will be present

12   people who will analyze and then report back to him on those

13   kinds of issues so that he can make an informed judgment.

14         He also told me something that I must say was quite

15   surprising to me, which was that Legal Aid had not made any

16   efforts to appear before him since Judge Furman transferred the

17   case other than filing a pro hac vice motion.  One would have

18   thought, given the exigencies that plaintiff's counsel has

19   raised, that since it's the same counsel in the class action,

20   that those matters would have been sought to be brought before

21   him on a highly expedited basis, as it was in this court.

22         Did you want to say anything about that?

23         MS. GILLMAN:  Your Honor, I think while we, of course,

24   appreciate the fact that Judge Sabraw has indicated that he has

25   put in place what he believes are -- I don't know how you want

I7O8ESRC

1    to refer to them -- requirements, that still doesn't address

2    the issues that are before this Court.  The issue is that --

3    and why we specifically asked for your Honor to call Judge

4    Gee -- is that our individual clients that are appearing before

5    your Honor cannot have their interests properly represented in

6    the actions that are being taken by the *Ms. L* litigation,

7    because, again, the issue here is that --

8          THE COURT:  To the extent that they have interests

9    that are not being represented, now that the class action is

10   before Judge Sabraw, why haven't you taken emergency action to

11   bring those interests to his attention?

12         MS. GILLMAN:  Well, your Honor, to begin with, we,

13   again, got this e-mail notification from the government very

14   late on Saturday night.

15         THE COURT:  I understand that.  But Judge Furman's

16   order came down before that.

17         MS. GILLMAN:  Your Honor, can I have one moment.  I'm

18   sorry.

19         THE COURT:  Yes, of course.

20         MS. GILLMAN:  So, your Honor, again, not to repeat

21   myself, but if you will just excuse me I will do it one more

22   time.  We got this e-mail notification very late on Saturday

23   night.

24         THE COURT:  I must say that I made a point of bringing

25   that to Judge Sabraw's attention, because it seemed to me that

I7O8ESRC

1    that was arguably quite heavy-handed on the government's part,

2    but I am sure they would say they were trying to expedite

3    things as quickly as possible.  Nevertheless, it, at least on

4    its face, smacks a little bit of gamesmanship, but then so does

5    this action smack of gamesmanship.

6              MS. GILLMAN:  I will not repeat myself again.  We will

7    start from the late e-mail notification.  After receiving the

8    late e-mail notification, my colleagues at The Legal Aid

9    Society made efforts to reach out to government counsel to

10   clarify the ambiguity that is inherent in the notice that Mr.

11   Byars --

12             THE COURT:  Excuse me.  Forgive me.  So who called

13   whom?

14             MS. GILLMAN:  We reached out to the individual who

15   sent us the e-mail, and we --

16             THE COURT:  Who is the individual who sent the e-mail?

17             MS. GILLMAN:  My colleague, Mr. Copeland, is going to

18   do this.

19             MR. COPELAND:  These were mostly e-mail

20   communications.  It was with the Department of Health and Human

21   Services.  I think it's a Ms. Lisette Mestre reached out to me.

22             THE COURT:  I'm sorry.  The person who sent you the

23   e-mail, which we will hereinafter refer to as "the Saturday

24   night e-mail," was whom?

25             MR. COPELAND:  So --

I7O8ESRC

| | |
|---|---|
| 1 | THE COURT:  Is that not a question that can be |
| 2 | answered by a name? |
| 3 | MR. COPELAND:  Yes.  I think I said it.  Lisette |
| 4 | Mestre. |
| 5 | THE COURT:  Spell it for the record. |
| 6 | MR. COPELAND:  L-I-S-E-T-T-E, last name M E S T R E. |
| 7 | THE COURT:  Does that person give in the e-mail her |
| 8 | position? |
| 9 | MR. COPELAND:  Yes, your Honor.  She is an attorney |
| 10 | with the Office of General Counsel, Children, Families and |
| 11 | Aging, U.S. Department of Health and Human Services. |
| 12 | THE COURT:  OK.  Who was it from your end who then |
| 13 | e-mailed her with requests for more information, if that's what |
| 14 | happened? |
| 15 | MR. COPELAND:  That was me. |
| 16 | THE COURT:  So we have got the real party interest. |
| 17 | What did you ask her? |
| 18 | MR. COPELAND:  I asked her what -- I just want to make |
| 19 | sure I speak properly.  She had e-mailed me earlier on |
| 20 | Saturday, not just the Saturday night e-mail.  She sent me an |
| 21 | earlier e-mail that was asking for us to waive the protections |
| 22 | of the TRO as to two siblings that wanted to be reunited in |
| 23 | advance.  So that's how our communication started.  She |
| 24 | indicated that she was the lead counsel for Health and Human |
| 25 | Services on this case. |

I7O8ESRC

1          So she sent me that.  We looked into that case,

2     determined that this was somebody that did indeed want to be

3     reunited on a more expedited basis, didn't have any of the

4     issues that we are facing with the eight children that we are

5     here in court for today.

6          So to respond to your question, I believe it was the

7     next morning, there was more communications between myself and

8     attorney Mestre.  Then at some point we learned that prior to

9     the expiration of the 48 hours, even going from the time of the

10    Saturday night e-mail, what would be 48 hours there, that one

11    of our clients had actually been moved, and I think that that

12    happened on early Monday.

13         So our understanding was that that was not complying

14    with the order.  So we reached out to attorney Mestre about

15    that, as well as indicating that we had these additional

16    clients that form, I think, the majority of the named

17    plaintiffs in this action, who we indicated we wanted to know

18    the status of whether or not they would be moved because we

19    were aware of the fact that they had expressed wishes to not be

20    reunited in detention or some other sort of issue in terms of

21    their reunification.

22         THE COURT:  Just so I am clear, you wanted to know,

23    number one, whether any of them were about to be imminently

24    moved, and if so, whether it's for purposes of detention or

25    deportation.  Do I have that right?

I7O8ESRC

| | |
|---|---|
| 1 | MR. COPELAND:  That is correct, your Honor. |
| 2 | THE COURT:  What was the response? |
| 3 | MR. COPELAND:  There was further communication with |
| 4 | Ms. Mestre that didn't address that request yesterday, in terms |
| 5 | of we had also provided other individuals that were part of the |
| 6 | TRO that also wanted to waive. |
| 7 | Then we received an e-mail yesterday evening, I |
| 8 | believe it was from the Department of Justice's -- one of the |
| 9 | lead attorneys in the *Ms. L* litigation, I believe his name is |
| 10 | August -- I am going to mispronounce his last name -- Lente, or |
| 11 | something of that nature, which essentially said that the |
| 12 | notice provided on Saturday night was compliant notwithstanding |
| 13 | the fact that we had raised the issue that given -- |
| 14 | THE COURT:  So they had given you what they thought |
| 15 | was required, and they weren't giving you anything else, is |
| 16 | that the gist of it? |
| 17 | MR. COPELAND:  Basically, yes. |
| 18 | THE COURT:  Let me go back to the government. |
| 19 | I am not quite sure why you weren't giving more |
| 20 | information. |
| 21 | MR. BYARS:  Your Honor, I think HHS and Main Justice |
| 22 | were providing what they could to Legal Aid, and they believed |
| 23 | that they had satisfied the requirement. |
| 24 | THE COURT:  Well, there is a question of whether they |
| 25 | have satisfied the requirements and there is a question of |

I7O8ESRC

1    whether they are operating in the spirit of Judge Furman's

2    orders, Judge Swain's orders, and to the extent relevant, Judge

3    Sabraw's orders.  I don't understand why more of an attempt

4    couldn't have been given to answer some of those inquiries.

5            Do you have any objection to providing more

6    information?

7            MR. BYARS:  Your Honor, I do not know what information

8    can be provided.  I understand that this is a huge logistical

9    undertaking by numerous people to make this happen under the

10   timeline that's ordered by the Southern District of California.

11   So I am not able to say -- I do know that at the hearing, a

12   week ago Monday, the judge was impressed with Commander

13   Jonathan White's presentation about how logistically

14   complicated this was and, in fact, was satisfied, based on our

15   presentation, that even a 12-hour advance notice would be an

16   impediment to providing the quickest possible reunification of

17   child to parent.

18           So I really am unable to give you the kind of

19   blow-by-blow breakdown of this process in a way that Commander

20   White would be able to do.  And I think that that's really what

21   Judge Sabraw is trying to do in San Diego.

22           THE COURT:  Do you know anything about this one

23   instance that was referred to of someone who was moved on

24   Monday?

25           MR. BYARS:  I do not, your Honor.

I7O8ESRC

| | |
|---|---|
| 1 | THE COURT:  All right.  So this is obviously a matter |
| 2 | of great importance.  It's important, first and foremost, to |
| 3 | the parents and to the children, whose interests may not always |
| 4 | coincide and therefore need to be separately expressed.  It's a |
| 5 | matter of great public interest.  It is a matter that also |
| 6 | impacts the proper effectuation of the orders now of several |
| 7 | different courts:  Judge Gee's approval of the *Flores* |
| 8 | settlement, Judge Sabraw's various orders requiring |
| 9 | reunification, Judge Swain and Judge Furman's temporary |
| 10 | restraining orders, and now the matter before this Court. |
| 11 | I think the common sense of it is that these matters |
| 12 | should, to the maximum extent possible, be consolidated before |
| 13 | as few judges as possible.  In my discussion before with Judge |
| 14 | Sabraw, he felt that what was being requested here, arguably, |
| 15 | conflicted with his orders, but he stressed that that was not |
| 16 | his determination to make, it was the determination to be made |
| 17 | by this Court.  But there is a certain lack of common sense in |
| 18 | not placing before a single judge, or at most two judges, the |
| 19 | coordination of what is unquestionably a substantial |
| 20 | undertaking of great importance.  The potential for conflict, |
| 21 | for even inadvertent conflict, is high in these kinds of |
| 22 | situations.  Therefore, I am going to forthwith transfer this |
| 23 | entire case to the Southern District of California to Judge |
| 24 | Sabraw. |
| 25 | I asked him how early he could hear from counsel in |

1    this case.  He said he was holding a status conference today,

2    at 3 p.m. California time, which is 6 p.m. New York time,

3    therefore, about an hour and 20 minutes from now, and he would

4    be pleased to hear from counsel for the plaintiffs here about

5    the issues they have raised.  For example, he has set in place,

6    as I mentioned earlier, all sorts of provisions that he

7    believes are addressed to making sure that the interests of the

8    children are separately represented, but counsel in this case

9    is in a very good position to bring to his attention why they

10   don't think that may be true in the case of these nine children

11   or whatever.

12          So he invited the appearance of counsel in this case

13   at his hearing today.  I assume he means by telephone since he

14   knew they were in New York.  I forgot to ask him that

15   expressly, but I think it's implicit.  And if there are any

16   problems with that, you can come back to me and I will talk to

17   Judge Sabraw because that clearly was my understanding.

18          I will issue a written order within the next few

19   minutes transferring this case, but I think the most important

20   thing is for counsel for the plaintiffs to call Judge Sabraw's

21   chambers and arrange to be heard at 6:00 New York time, 3:00

22   his time, on your various requests.  In calling, his phone is

23   initially answered by his secretary who probably is less

24   familiar with this, so I would suggest you talk initially to

25   the law clerk who is handling this matter, who was also on the

I7O8ESRC

```
1    phone during my conversation with Judge Sabraw so knows the
2    full representations that were made.  And as I say, if there is
3    for any reason, which I would think extremely unlikely, any
4    problem in facilitating that telephonic conversation, come back
5    to me and I will call Judge Sabraw and clear that up.
6              Is there anything else we need to take up today?
7              MR. BYARS:  Your Honor, I would just would ask that
8    you consider noting in your order, there is a local civil rule
9    83.1 that imposes a seven day --
10             THE COURT:  I am going to slavishly copy the wording
11   of Judge Furman, which addressed all that, and I am grateful to
12   Judge Furman for giving me a model to follow.
13             Anything else?
14             MR. BYARS:  I think just making sure that our case is
15   docketed and we get a docket number.
16             THE COURT:  Yes.  Of course.
17             Very good.  Thanks very much.
18             (Adjourned)
19
20
21
22
23
24
25
```

# DEFENDANTS' EXHIBIT 3

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

_____
                                        )
MS. L. AND MS. C.,                      )
                                        )CASE NO. 18CV0428-DMS
            PETITIONERS-PLAINTIFFS,     )
                                        )
VS.                                     )
                                        )SAN DIEGO, CALIFORNIA
U.S. IMMIGRATION AND CUSTOMS            )TUESDAY JULY 24, 2018
ENFORCEMENT ("ICE"); U.S. DEPARTMENT    ) 3:00 P.M. CALENDAR
OF HOMELAND SECURITY ("DHS"); U.S.      )
CUSTOMS AND BORDER PROTECTION ("CBP");  )
U.S. CITIZENSHIP AND IMMIGRATION        )
SERVICES ("USCIS"); U.S. DEPARTMENT     )
OF HEALTH AND HUMAN SERVICES ("HHS");   )
OFFICE OF REFUGEE RESETTLEMENT ("ORR"); )
THOMAS HOMAN, ACTING DIRECTOR OF ICE;   )
GREG ARCHAMBEAULT, SAN DIEGO FIELD      )
OFFICE DIRECTOR, ICE; ADRIAN P. MACIAS, )
EL PASO FIELD DIRECTOR, ICE; FRANCES M. )
JACKSON, EL PASO ASSISTANT FIELD        )
OFFICE DIRECTOR, ICE; KIRSTJEN NIELSEN, )
SECRETARY OF DHS; JEFFERSON BEAUREGARD  )
SESSIONS III, ATTORNEY GENERAL OF THE   )
UNITED STATES; L. FRANCIS CISSNA,       )
DIRECTOR OF USCIS; KEVIN K.             )
MCALEENAN, ACTING COMMISSIONER OF       )
CBP; PETE FLORES, SAN DIEGO FIELD       )
DIRECTOR, CBP; HECTOR A. MANCHA JR.,    )
EL PASO FIELD DIRECTOR, CBP;            )
ALEX AZAR, SECRETARY OF THE             )
DEPARTMENT OF HEALTH AND HUMAN          )
SERVICES; SCOTT LLOYD, DIRECTOR         )
OF THE OFFICE OF REFUGEE RESETTLEMENT,  )
                                        )
            RESPONDENTS-DEFENDANTS.     )
----------------------------------------

REPORTER'S TRANSCRIPT OF PROCEEDINGS
STATUS CONFERENCE

```
COUNSEL APPEARING:

FOR PLAINTIFF:              LEE GELERNT, ESQ.
                           ACLU IMMIGRANT RIGHTS PROJECT
                           125 BROAD STREET 18TH FLOOR
                           NEW YORK, NEW YORK 10004

                           BADIS VAKILI, ESQ.
                           ACLU FOUNDATION OF SAN DIEGO
                           AND IMPERIAL COUNTIES
                           P.O. BOX 87131
                           SAN DIEGO, CALIFORNIA 92138

                           SPENCER AMDUR, ESQ.
                           ACLU OF NORTHERN CALIFORNIA
                           39 DRUMM STREET
                           SAN FRANCISCO, CALIFORNIA 94111

FOR DEFENDANT:             SARAH B. FABIAN, ESQ.
                           SCOTT STEWART, ESQ.
                           U.S. DEPARTMENT OF JUSTICE
                           OFFICE OF IMMIGRATION LITIGATION
                           P.O. BOX 868
                           BEN FRANKLIN STATION
                           WASHINGTON, DC 20044




REPORTED BY:               LEE ANN PENCE,
                           OFFICIAL COURT REPORTER
                           UNITED STATES COURTHOUSE
                           333 WEST BROADWAY, ROOM 1393
                           SAN DIEGO, CALIFORNIA 92101
```

 1  **SAN DIEGO, CALIFORNIA — TUESDAY, JULY 24, 2018 — 3:00 P.M.**

 2                              *  *  *

 3             **THE CLERK:**  NO. 2 ON CALENDAR, CASE NO. 18CV0428,

 4  MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR

 5  STATUS CONFERENCE.

 6             **THE COURT:**  GOOD AFTERNOON.

 7             CAN I HAVE APPEARANCES, PLEASE?

 8             **MR. GELERNT:**  GOOD AFTERNOON, YOUR HONOR.  LEE

 9  GELERNT FOR THE ACLU FOR PLAINTIFFS.

10             **MR. AMDUR:**  GOOD AFTERNOON.  SPENCER AMDUR FOR THE

11  PLAINTIFFS.

12             **MR. VAKILI:**  GOOD AFTERNOON, YOUR HONOR.  BARDIS

13  VAKILI FOR THE PLAINTIFFS.

14             **MR. STEWART:**  GOOD AFTERNOON, YOUR HONOR.  SCOTT

15  STEWART FOR THE DEFENDANTS.

16             **MS. FABIAN:**  GOOD AFTERNOON, YOUR HONOR.  SARAH

17  FABIAN FOR THE DEFENDANTS.

18             **THE COURT:**  THANK YOU.  AND WELCOME ALL.

19             LET'S GO THROUGH THE STATUS REPORT.  THERE IS A LOT

20  OF INFORMATION HERE, AND I HAVE SOME QUESTIONS.

21             THERE IS AN INDICATION OF 1,634 ELIGIBLE.  THAT'S

22  SIMILAR TO WHERE WE WERE LAST TIME WITH 1606.

23             **MS. FABIAN:**  YOUR HONOR, THAT IS 1637 TODAY.

24             **THE COURT:**  OKAY.

25             AND THERE IS AN INDICATION OF SUCCESSFUL

```
1    REUNIFICATION OF 879.
2              MS. FABIAN:  THAT'S 1,012 TODAY.
3              THE COURT:  1,012.  THAT SHOWS HOW FLUID AND ACTIVE
4    THE PROCESS IS.
5              OF THOSE 1,012, HOW MANY ARE DETAINED TOGETHER AND
6    HOW MANY ARE BEING PAROLED INTO THE COMMUNITY?
7              MS. FABIAN:  I DON'T HAVE THOSE NUMBERS, YOUR HONOR.
8              THE COURT:  DO YOU HAVE AN APPROXIMATION?
9              MS. FABIAN:  I DON'T THINK I DO AT THIS TIME, YOUR
10   HONOR.
11             THE COURT:  THE INDICATION ALSO IS THAT ALL
12   POTENTIAL CLASS MEMBERS HAVE BEEN -- HAVE COMPLETED THEIR
13   INTERVIEW, AND THE CHILD FILE REVIEW HAS BEEN COMPLETED AS
14   WELL.  AM I CORRECT?
15             MS. FABIAN:  THAT'S CORRECT.
16             THE COURT:  SO THE PROCESS, AT THIS POINT, INVOLVES
17   APPROXIMATELY 1,417 PEOPLE, AND THEN THE REUNIFICATION IS
18   PROGRESSING AS TO ALL.
19             MS. FABIAN:  THAT'S CORRECT.
20             THE COURT:  THE INFORMATION THAT WE DON'T HAVE IS
21   HOW MANY ARE BEING DETAINED TOGETHER, HOW MANY ARE BEING
22   PAROLED.
23             MS. FABIAN:  I DON'T HAVE THAT, NO, YOUR HONOR.
24             I CAN SEE FROM MY CLIENTS WHAT WE CAN PUT ON THAT IN
25   THE NEXT STATUS REPORT, IF THAT'S SOMETHING THE COURT IS
```

JULY 24, 2018

```
 1   INTERESTED IN.
 2           THE COURT:  YES.  WE WILL GET TO THAT IN A MOMENT.
 3   LET'S KEEP GOING DOWN THE LIST.
 4           THEN THE INITIAL DETERMINATION BY THE GOVERNMENT OF
 5   PARENTS WHO ARE INELIGIBLE, THERE IS 917?
 6           MS. FABIAN:  THAT'S 914.
 7           THE COURT:  NOW 914.
 8           THERE WERE TWO PARENTS IN CRIMINAL CUSTODY, THEY ARE
 9   NOW OUT?
10           MS. FABIAN:  I DON'T KNOW HOW THAT NUMBER MOVED.  I
11   AM NOT SURE IF THAT -- WHERE THAT CHANGED.
12           THE COURT:  BECAUSE THE INDICATION IS THEY ARE NOW
13   ZERO.
14           PARENTS WHO WAIVED REUNIFICATION.  IT WAS 136 IT IS
15   NOW 130?
16           MS. FABIAN:  IT IS NOW 127.  MY UNDERSTANDING IS
17   SOME MAY HAVE CHANGED THEIR MIND.
18           THE COURT:  OKAY.  SO WHERE THEY WANT TO BE
19   REUNIFIED.
20           MS. FABIAN:  CORRECT.
21           THE COURT:  THAT COULD BE FOR A VARIETY OF REASONS,
22   EITHER TO PURSUE IMMIGRATION ISSUES TOGETHER -- COULD BE A
23   VARIETY OF REASONS.
24           MS. FABIAN:  I EXPECT, YOUR HONOR, THAT A LOT OF
25   TIMES THE DECISION TO WAIVE REUNIFICATION WOULD BE BASED ON
```

JULY 24, 2018

6

```
1    DESIRE TO HAVE THE CHILD BE RELEASED TO ANOTHER RELATIVE SO --
2    AND PERHAPS PURSUE RELIEF SEPARATELY, SO THEY MAY CHANGE THAT
3    DECISION FOR A VARIETY OF REASONS.
4            THE COURT:  ADULTS WITH PRECLUDING CRIMINAL HISTORY,
5    THAT WAS AT 91, IT IS NOW 64.  SO WE ARE 27 CLEARED?
6            MS. FABIAN:  THAT IS MY UNDERSTANDING.  THAT NUMBER
7    INCLUDED WHAT WE, I THINK, CALLED THE AMBER CATEGORY, FOLKS
8    WHO HAD INITIALLY BEEN DETERMINED TO HAVE A CRIMINAL RECORD
9    BUT THEN UPON EVALUATION IT WAS DETERMINED THAT THEY WERE
10   CLEARED FOR REUNIFICATION.
11           THE COURT:  OKAY.
12           THE NEXT CATEGORY INDICATES ADULTS NOT IN THE UNITED
13   STATES UNDER REVIEW, 463.  WHAT DOES THAT MEAN?
14           MS. FABIAN:  THE RECORDS RECORDED -- REFLECT 463
15   WITH A CODE THAT SUGGESTS THAT THEY MAY HAVE DEPARTED THE
16   UNITED STATES.
17           WHAT I UNDERSTAND WE ARE DOING IS TAKING A CLOSER
18   LOOK AT THOSE TO DETERMINE IF THAT IS, IN FACT, WHAT THE CODE
19   INDICATES, OR IF THERE IS SOMETHING ELSE INDICATED BY THAT
20   CODE, WHETHER IT IS -- SO IT MAY BE A REMOVAL OR IT MAY BE A
21   VOLUNTARILY DEPARTURE THAT IS UNRELATED TO A SEPARATION, OR IT
22   MAY BE A PRIOR CODE.  SO WE ARE JUST GOING THROUGH THOSE -- AS
23   I UNDERSTAND IT THE CLIENT IS GOING THROUGH THOSE TO DETERMINE
24   EXACTLY WHAT THAT CODE MEANS IN EACH OF THOSE CASES.
25           THE COURT:  WOULD THAT NUMBER REFLECT PARENTS WHO
```

JULY 24, 2018

```
1    HAVE BEEN REMOVED OR VOLUNTARILY DEPARTED WITHOUT THEIR CHILD?
2           MS. FABIAN:  IT MAY, YES.  THAT IS WHAT WE ARE
3    DETERMINING.  THAT IS WHAT WE ARE REVIEWING RIGHT NOW.
4           THE COURT:  DO YOU HAVE ANY INDICATION WHAT THE
5    NUMBERS MIGHT BE OF PARENTS WHO HAVE BEEN REMOVED OR
6    VOLUNTARILY DEPARTED WITHOUT THEIR CHILDREN?  DO YOU HAVE AN
7    ESTIMATE OF WHAT THAT PERCENTAGE WOULD BE OF THESE 463?
8           MS. FABIAN:  I DON'T, YOUR HONOR.  I THINK IT WOULD
9    ULTIMATELY BE SOMETHING LESS THAN THE 463, BUT IT COULD BE
10   THAT WHOLE NUMBER.  I THINK IT IS JUST A MATTER OF THE AGENCY
11   BEING ABLE TO LOOK AT EACH INDIVIDUALLY TO SEE WHAT THE
12   NUMBERS MEAN.
13          THE COURT:  THIS, TO BE CLEAR, COULD BE THE CATEGORY
14   WHERE PARENTS AND CHILDREN WERE SEPARATED, EITHER BEFORE OR
15   DURING THE ZERO TOLERANCE POLICY, AND THERE WASN'T
16   INFRASTRUCTURE IN PLACE TO DETERMINE, AT SEPARATE TIMES, WHERE
17   THE PARENT WAS VERSUS THE CHILD, WHICH THEN RESULTED IN A
18   NUMBER OF PARENTS BEING REMOVED WITHOUT CHILD.  AM I CORRECT?
19          MS. FABIAN:  IT COULD BE, YOUR HONOR.  THAT COULD
20   FALL UNDER THAT CATEGORY.
21          THE COURT:  THIS NUMBER COULD BE VERY SIGNIFICANT.
22   THERE IS 463 HERE, AND I THINK THERE WERE 12 WITH THE
23   UNDER-FIVE.
24          MS. FABIAN:  I DON'T REMEMBER WHAT THE FINAL NUMBER
25   WAS.  THAT SOUNDS RIGHT, I THINK IT WAS 12.
```

JULY 24, 2018

1          **THE COURT:**  ALL RIGHT.  WE WILL COME BACK TO THAT IN

2     A MOMENT.

3          THE NEXT CATEGORY IS FURTHER EVALUATION, 260.  WHAT

4     DOES THIS CATEGORY MEAN?

5          **MS. FABIAN:**  THOSE, AS I UNDERSTAND IT, ARE CHILDREN

6     THAT FOR WHOM O.R.R. IS DOING FURTHER EVALUATION.  THAT MAY BE

7     THAT THE PARENT WAS RELEASED AND O.R.R. HASN'T LOCATED THE

8     PARENT.  IT MAY BE THAT THE CHILD HAD BEEN POTENTIALLY

9     RELEASED TO ANOTHER SPONSOR.

10          SO I THINK THOSE ARE CHILDREN FOR WHOM O.R.R.

11     DOESN'T -- CAN'T CONCLUSIVELY PLACE THEM IN ONE OF THE OTHER

12     CATEGORIES AND SO THEY ARE REVIEWING TO DETERMINE IF THEY ARE,

13     IN FACT, CHILDREN OF CLASS MEMBERS.  AND THEN, IF SO, WHETHER

14     REUNIFICATION IS REQUIRED OR POSSIBLE.

15          **THE COURT:**  SO OF THESE 260, A NUMBER OF THESE MAY

16     BE CLASS MEMBERS RELEASED INTO THE INTERIOR.

17          **MS. FABIAN:**  SOME MAY BE, THAT IS MY UNDERSTANDING.

18     AND SOME MAY, IN FACT, NOT BE THE CHILDREN OF CLASS MEMBERS.

19          **THE COURT:**  SO THE 217 NUMBER OF CLASS MEMBERS

20     RELEASED INTO THE INTERIOR MAY INCREASE.

21          **MS. FABIAN:**  I THINK THAT IS RIGHT.  AS I UNDERSTAND

22     IT, 217 ARE THAT O.R.R. KNOWS ABOUT AND IS IN THE PROCESS OF

23     REUNIFICATION.

24          **THE COURT:**  AND THEN YOU HAVE INDICATED OF THIS 260

25     MANY OF THESE CHILDREN HAVE BEEN DISCHARGED BY O.R.R. IN

JULY 24, 2018

```
1    APPROPRIATE CIRCUMSTANCES.  WHAT DOES THAT MEAN?
2         MS. FABIAN:  IT MEANS THAT THEY MAY HAVE BEEN
3    RELEASED TO OTHER FAMILY MEMBERS, AND THAT MAY BE BECAUSE
4    EITHER THEY HAD JUST BEEN -- THE PARENT HAD DESIGNATED THEM TO
5    BE RELEASED TO OTHER CLASS MEMBERS AT CERTAIN TIMES.  SO NOT
6    ALL OF THOSE 260 REMAIN IN O.R.R. CUSTODY, SOME MAY HAVE BEEN
7    RELEASED TO OTHER FAMILY MEMBERS.  BUT THERE WOULD STILL, IN
8    SOME CASES, BE CONTINUED EVALUATION TO SEE IF THAT FURTHER
9    ACTION TOWARDS REUNIFICATION WOULD BE NECESSARY.
10        THE COURT:  SO OF THESE 260, SOME OF THESE PARENTS
11   MAY FALL INTO THE CATEGORY OF PARENTS WHO HAVE BEEN RELEASED
12   INTO THE INTERIOR, AND SOME OF THEM MAY FALL INTO THE CATEGORY
13   OF HAVING BEEN REMOVED ALREADY.
14        MS. FABIAN:  NOT THAT OUR RECORDS CURRENTLY
15   INDICATE, BUT I CAN'T SAY FOR SURE THAT THAT WOULDN'T BE THE
16   CASE.  BUT THE RECORDS DON'T INDICATE THAT BASED ON WHAT WE
17   HAVE RIGHT NOW AS ANY INDICATORS FOR THE PARENTS.
18        THE COURT:  WHAT DO THE RECORDS INDICATE?  HOW CAN
19   YOU RULE OUT THAT OF THIS 260 A CERTAIN PERCENTAGE HAVE NOT
20   ALREADY BEEN REMOVED, AS OPPOSED TO SAYING IT APPEARS THIS 260
21   MAY INCLUDE THOSE RELEASED INTO THE INTERIOR, BUT WE ARE
22   PRETTY SURE IT DOESN'T INCLUDE THOSE WHO HAVE ALREADY BEEN
23   REMOVED.
24        MS. FABIAN:  AS I UNDERSTAND IT, THE CHILDREN HAVE
25   BEEN LINKED TO A PARENT BY A-NUMBER.  SO FOR THE 463 THE
```

JULY 24, 2018

```
 1    PARENT'S A-NUMBER IS LINKED TO A CODE THAT SUGGESTS THAT THEY
 2    POTENTIALLY -- THAT POTENTIALLY COULD INDICATE REMOVAL OR
 3    POTENTIALLY VOLUNTARY DEPARTURE.  SO FOR THE 260, THE PARENT'S
 4    A-NUMBER THAT IS LINKED DOES NOT CONTAIN THAT CODE.
 5              THE COURT:  OKAY.
 6              MS. FABIAN:  IT LINKS TO SOME OTHER CODES THAT ARE
 7    UNDER FURTHER EVALUATION TO DETERMINE IF THAT MEANS THEY HAVE
 8    BEEN RELEASED AND NOT LOCATED OR SOME OF THE OTHER THINGS I
 9    INDICATED.
10              THE COURT:  OKAY.  THANK YOU.
11              FINAL ORDER OF REMOVAL, THERE ARE 900.  IS THAT THE
12    CURRENT NUMBER OR IS THAT -- DO YOU HAVE A DIFFERENT NUMBER?
13              MS. FABIAN:  THAT WAS THE NUMBER AS OF YESTERDAY.  I
14    DID NOT GET AN UPDATED NUMBER TODAY.
15              THE COURT:  AND OF THAT NUMBER, DO WE KNOW HOW MANY
16    WERE REMOVED WITH THEIR CHILDREN VERSUS WITHOUT?
17              MS. FABIAN:  I BELIEVE THERE HAVE BEEN 20 REMOVALS,
18    BUT I WOULD HAVE TO CONFIRM THAT.
19              THE COURT:  20 --
20              MS. FABIAN:  20 REMOVALS OF -- I BELIEVE THAT IS 20
21    AFTER REUNIFICATION, BUT I WOULD HAVE TO CONFIRM THAT.
22              THE COURT:  20 AFTER REUNIFICATION.  SO THAT
23    WOULD -- DOES THAT MEAN 880 WERE REMOVED PRIOR TO
24    REUNIFICATION?
25              MS. FABIAN:  I AM SORRY.  THOSE 900 ARE NOT REMOVED.
```

JULY 24, 2018

```
 1    THOSE -- THAT 900 WOULD SPAN -- I WOULD SAY THAT 900 IS MOSTLY
 2    GOING TO BE FOUND IN THE TOP CATEGORY --
 3              THE COURT:  YES.
 4              MS. FABIAN:  -- OF THE POTENTIAL CLASS MEMBERS
 5    ELIGIBLE FOR REUNIFICATION, BUT THAT DOES NOT INDICATE THAT
 6    THEY HAVE BEEN REMOVED YET.
 7              THE COURT:  OKAY.  SO YOU HAVE INDICATED THAT 1,012
 8    CLASS MEMBERS HAVE BEEN REUNIFIED, AND 900 ARE SUBJECT TO A
 9    FINAL ORDER OF REMOVAL.
10              WOULDN'T THAT THEN INDICATE THAT AT LEAST 900 OF THE
11    1,012 ARE DETAINED, WITH CHILD, IN ICE DETENTION?  SO THE
12    NUMBERS RELEASED INTO THE COMMUNITY WOULD BE VERY SMALL.
13              MS. FABIAN:  NOT NECESSARILY.  A FINAL -- A FINAL
14    ORDER AS USED IN THIS CATEGORY IS ACTUALLY DIFFERENT FROM AN
15    EXECUTABLE FINAL ORDER.  SO IN SOME CASES SOMEONE WITH A FINAL
16    ORDER MIGHT HAVE ADDITIONAL STEPS IN THEIR IMMIGRATION REVIEW.
17    AND SO I CAN'T -- I DON'T HAVE THE NUMBERS NECESSARILY TO SAY
18    IF THEN FOLKS AT THAT STAGE HAVE BEEN RELEASED.  BUT IT
19    DOESN'T CORRELATE THAT ALL OF THOSE 900 HAVE -- IN FACT IT IS
20    NOT TRUE THAT ALL OF THOSE 900 HAVE EXECUTABLE FINAL ORDERS.
21              I WOULD ALSO SAY THAT THAT 900 IS REALLY WITHIN THE
22    1600 NUMBER IN TERMS OF WHETHER ALL OF THOSE HAVE BEEN
23    REUNIFIED.  SOME OF THEM MAY ALSO BE WITHIN THE APPROXIMATELY
24    400 STILL AWAITING REUNIFICATION.
25              THE COURT:  OKAY.  WE MAY HAVE ALREADY TOUCHED ON
```

JULY 24, 2018

```
 1    SOME OF THESE, BUT THERE ARE A FEW OTHER QUESTIONS ON THE
 2    UPDATED NUMBERS.  AND MAYBE WE DON'T HAVE THIS INFORMATION
 3    YET.
 4             HOW MANY OF THE PARENTS THAT HAVE BEEN REUNITED ARE
 5    SCHEDULED TO BE -- OR ARE SCHEDULED TO BE REUNITED HAVE FINAL
 6    REMOVAL ORDERS?  IS THAT THE 900?
 7             MS. FABIAN:  MOST LIKELY, YES.  SO I WOULD SAY THAT
 8    THAT 900 COMES OUT OF THAT, THE TOP BULLET POINT, WHICH IS
 9    INDIVIDUALS ELIGIBLE FOR REUNIFICATION.
10             THE COURT:  OF THOSE THAT HAVE BEEN REUNIFIED, HOW
11    MANY HAVE BEEN REMOVED ALREADY?  I THINK YOU SAID MAYBE 20.
12             MS. FABIAN:  THAT IS MY BEST GUESS, BUT I WOULD WANT
13    TO CONFIRM BEFORE.
14             THE COURT:  DO YOU KNOW, OF THAT NUMBER, HOW MANY
15    WERE REMOVED WITH THEIR CHILDREN?
16             MS. FABIAN:  I DON'T.
17             THE COURT:  OKAY.
18             MS. FABIAN:  I THINK I WOULD SAY, MORE ACCURATELY,
19    THE STATISTIC I HAVE IS THAT 20 CLASS MEMBERS, APPROXIMATELY
20    20, WERE REMOVED AFTER THE COURT'S ORDER, SO I CAN'T SAY AMONG
21    THOSE WHICH WERE REMOVED WITH THEIR CHILDREN OR WITHOUT.  THEY
22    WOULD HAVE ALL BEEN SUBJECT TO A WAIVER SUBJECT TO THE
23    PRELIMINARY INJUNCTION IF THEY WERE REMOVED WITHOUT THEIR
24    CHILDREN.  BUT I DON'T HAVE THE NUMBER AS TO HOW MANY OF THOSE
25    WERE REMOVED WITH OR WITHOUT THEIR CHILDREN.
```

JULY 24, 2018

```
 1          THE COURT:  AND THERE IS A 136 PARENTS THAT WAIVED

 2   REUNIFICATION AS OF THE PRESENT TIME.  DO YOU KNOW OF THOSE --

 3   IT IS 127 -- OF THOSE 127 WAIVED REUNIFICATION AFTER RECEIVING

 4   THE CLASS NOTICE?

 5          MS. FABIAN:  SO THIS IS -- I THINK I EXPLAINED THIS

 6   AT THE LAST HEARING AS WELL.  THERE IS REALLY -- THIS NUMBER

 7   IS INDIVIDUALS WHO WAIVED REUNIFICATION AT THEIR INTERVIEW

 8   WITH HHS, SO THAT IS NOT -- DOES NOT CORRELATE TO INDIVIDUALS

 9   NECESSARILY HAVING A FINAL ORDER OF REMOVAL.  THAT IS, AS

10   COMMANDER WHITE EXPLAINED, THAT FINAL STEP BEFORE

11   REUNIFICATION IS ENSURING THAT THE PARENT IN FACT WANTS TO BE

12   REUNIFIED.  SO THAT NUMBER IS FOLKS THAT DECLINED

13   REUNIFICATION AT THAT STEP.

14          RELATEDLY I THINK YOU WILL SEE IN TODAY'S FILING BY

15   THE GOVERNMENT IN THE DECLARATION THAT ICE HAS IDENTIFIED 85

16   INDIVIDUALS WHO HAVE DECLINED -- HAVE WAIVED REUNIFICATION

17   WITH A FINAL ORDER ON THE NOTICE FORM.  I HAVEN'T -- SO

18   WHETHER THERE IS -- THERE IS LIKELY OVERLAP BETWEEN THAT 85

19   AND SOME NUMBER OF THIS 127, BUT IT IS TWO DIFFERENT PARTS OF

20   THE PROCESS.

21          THE COURT:  OKAY.  FROM THE GOVERNMENT'S

22   PERSPECTIVE, THEN, OF THE ELIGIBLE CLASS MEMBERS,

23   REUNIFICATION WILL BE COMPLETED BY THURSDAY, OR VERY CLOSE TO

24   IT.

25          MS. FABIAN:  THAT'S MY UNDERSTANDING.
```

JULY 24, 2018

14

1          THE COURT:  BECAUSE EVERYONE HAS BEEN CLEARED, AND

2    1,012 HAVE ALREADY BEEN REUNIFIED AND THE BALANCE ARE

3    SCHEDULED, TRANSPORTATION PENDING, WHICH I ASSUME WOULD OCCUR

4    BETWEEN NOW AND THURSDAY.

5          MS. FABIAN:  I THINK MY COLLEAGUE MAY SPEAK TO THIS

6    A LITTLE BIT.  THERE ARE SOME ISSUES WITH STAYS OR OTHER

7    INJUNCTIONS BEING ISSUED IN OTHER COURTS THAT MAY IMPEDE THAT

8    PROCESS FOR SOME SMALL NUMBER OF INDIVIDUALS.  BUT FOR THE

9    MOST PART --

10          THE COURT:  THAT'S THE NEW YORK SITUATION?

11          MS. FABIAN:  YES.

12          THE COURT:  LET'S ADDRESS THAT IN A MOMENT.

13          BUT ASIDE FROM THAT, THAT WOULD BE A VERY SMALL

14    GROUP OF CHILDREN.

15          MS. FABIAN:  I AM NOT AWARE -- THE ONLY OTHER ISSUE

16    I HAD HEARD WAS POTENTIAL WEATHER-RELATED TRAVEL ISSUES.  BUT

17    OTHER THAN THAT I HAVE NOT HEARD OF ANY IMPEDIMENTS TO

18    COMPLETING THE PROCESS.

19          THE COURT:  OKAY.  AND THEN AS TO THE CATEGORY, I

20    THINK IT IS 914, OF INELIGIBLE, THAT'S THE CATEGORY WHERE THE

21    PLAINTIFFS, WITH THE APPROPRIATE INFORMATION, CAN EITHER AGREE

22    OR IF THERE IS DISAGREEMENT BRING IT TO THE COURT'S ATTENTION

23    AT A LATER TIME.

24          MS. FABIAN:  I THINK THAT IS RIGHT.  WE WILL NEED TO

25    GATHER THAT INFORMATION AND GIVE IT TO PLAINTIFFS, AND WE ARE

JULY 24, 2018

1   WORKING ON THAT.  AND I THINK THEN WE CAN MEET AND CONFER

2   FURTHER AS TO THE PROCESS.

3            **THE COURT:**  AND THEN ON THE LIST, THE INFORMATION,

4   LET'S RUN THROUGH THAT QUICKLY.

5            THERE IS SUPPOSED TO BE A LIST OF CLASS MEMBERS WHO

6   WAIVED REUNIFICATION PRIOR TO REMOVAL, AND THERE IS AN

7   INDICATION THAT THAT IS COMING.  WHAT'S THE PROFFER THERE?

8            **MS. FABIAN:**  I THINK WE HAVE GIVEN A LIST, AND I

9   THINK I UPDATED IT EARLIER TODAY, AND THAT IS OF THE 127 WHO

10  WAIVED DURING THE HHS INTERVIEW PROCESS THE -- I KNOW

11  PLAINTIFFS HAVE ASKED FOR THE INDIVIDUALS WHO WAIVED ON THE

12  FORM, THE COURT ORDERED FORM.  AND THAT SEEMS TO NOW HAVE BEEN

13  COMPLETED, AND I HOPE VERY SHORTLY WE WILL BE ABLE TO GIVE

14  THEM THAT LIST.

15           **THE COURT:**  AND THAT WOULD BE DONE -- YOU ARE IN A

16  POSITION TO DO THAT, FOR EXAMPLE BY TOMORROW SOMETIME?

17           **MS. FABIAN:**  I HAVE AN EMAIL OUT TO CONFIRM THAT,

18  BUT AS REFLECTED IN OUR DECLARATION FILED THIS MORNING, IT

19  APPEARS THAT WE HAVE IDENTIFIED THOSE 85 INDIVIDUALS, SO IT

20  SHOULD BE WE -- SHOULD BE ABLE TO PROVIDE THAT LIST VERY

21  SHORTLY.

22           **THE COURT:**  THEN HOW ABOUT THE LIST OF CLASS MEMBERS

23  WHO HAVE BEEN REMOVED.  WHERE ARE WE ON THAT?

24           **MS. FABIAN:**  THAT'S THE LIST THAT'S UNDER FURTHER

25  REVIEW, AS I JUST INDICATED.  I HAVE NOT RECEIVED A TIMETABLE

JULY 24, 2018

```
1    FOR THAT.  I HAVE ASKED FOR IT AS SOON AS POSSIBLE.  I KNOW
2    THAT WE COMMITTED TO DOING IT ON FRIDAY, AND THERE WAS A
3    MISUNDERSTANDING BETWEEN MYSELF AND MY CLIENT AS FAR AS WHAT
4    WAS BEING ASKED FOR.  SO I UNDERSTAND THAT THEY ARE PULLING
5    TOGETHER WHAT THEY CAN AS QUICKLY AS POSSIBLE, BUT I DON'T
6    HAVE THE TIMETABLE FOR THAT FROM THEM.
7              THE COURT:  IF THE COURT WERE TO ISSUE AN ORDER AS
8    TO WHEN THAT LIST SHOULD BE PRODUCED, DO YOU HAVE A POSITION
9    AS TO WHAT CAN BE DONE?  BECAUSE WHEN WE DISCUSSED THIS LAST
10   THERE WAS INDICATION THAT THE LIST WOULD BE COMING, I THINK
11   FRIDAY.  AND THEN THERE WAS SOME DISCUSSION ABOUT MAYBE
12   PRODUCING THE LIST ON MONDAY, WHICH WOULD HAVE BEEN YESTERDAY.
13             MS. FABIAN:  I HOPE TO HAVE A LIST TONIGHT THAT
14   WOULD HELP ME BETTER UNDERSTAND WHAT THAT LIST WILL CONTAIN.
15   SO WHAT -- I THINK WHAT I CAN SAY IS I HOPE THAT BY TOMORROW
16   WE COULD PROVIDE SOME INFORMATION.  WHAT I CAN'T COMMIT TO
17   RIGHT NOW IS EXACTLY WHAT THAT WILL CONTAIN BECAUSE I WON'T
18   KNOW UNTIL I SEE THAT LATER TODAY.
19             THE COURT:  AND THEN THERE WAS A LIST OF CLASS
20   MEMBERS WHO HAVE BEEN RELEASED FROM ICE CUSTODY.  YOU ARE
21   INDICATING YOU NEED ADDITIONAL TIME ON THAT.
22             MS. FABIAN:  I THINK SOME OF THAT -- AS I NOW
23   UNDERSTAND BETTER, I THINK SOME OF THAT MAY BE CONTAINED IN
24   TERMS OF THE -- THOSE REFLECTED IN THE TOP BULLET POINT.  I
25   THINK SOME OF THOSE MAY BE REFLECTED IN WHAT HAS ALREADY BEEN
```

JULY 24, 2018

1   PRODUCED TO PLAINTIFFS.  IN TERMS OF THOSE INDIVIDUALS WHO

2   MIGHT FALL IN THE BOTTOM CATEGORY, WHICH IS THE FURTHER REVIEW

3   CATEGORY OR THOSE INDIVIDUALS THAT WE CAN'T LOCATE, I THINK

4   THAT I DON'T HAVE YET.  AND I HOPE TO KNOW MORE ABOUT THAT

5   SOON AS WELL.

6           AND I KNOW THAT IS THE CATEGORY THAT PLAINTIFFS ARE

7   INTERESTED IN, AND I SAID TO THEM THAT WE WILL CONTINUE TO

8   WORK TO GET THAT TO THEM AS SOON AS WE CAN.

9           **THE COURT:**  YOU COULD PROVIDE A LIST, THOUGH, FOR

10  EXAMPLE THE PARENTS YOU KNOW WHO HAVE BEEN RELEASED FROM ICE

11  CUSTODY, YOU CAN PROVIDE THAT SPECIFIC INFORMATION.  AND THEN

12  YOU COULD ALSO ARTICULATE HOW MANY PARENTS YOU DON'T KNOW

13  WHERE THEY ARE.

14          **MS. FABIAN:**  I THINK THAT IS RIGHT, YOUR HONOR.

15          **THE COURT:**  OKAY.  WHAT WOULD BE THE EXPLANATION FOR

16  NOT KNOWING WHERE THE PARENTS ARE?  WHAT HAPPENED?  IS THIS

17  BECAUSE DOJ DIDN'T HAVE THE INFORMATION, OR DHS DOESN'T HAVE

18  THE INFORMATION SO THERE IS AN INABILITY TO GIVE IT TO HHS AND

19  THEN TO GOVERNMENT COUNSEL HERE TODAY?  OR WHAT IS THE

20  EXPLANATION?

21          **MS. FABIAN:**  I THINK THAT IF THE PARENT WAS

22  TRANSFERRED INTO ANY SORT OF STATE CUSTODY, FOR EXAMPLE IF

23  THERE WAS A WARRANT OUT FOR STATE CRIMINAL ACTIVITY AND THE

24  PARENT WAS TRANSFERRED THERE, THAT THAT PARENT MAY HAVE BEEN

25  THEN RELEASED WITHOUT NOTICE TO THE GOVERNMENT.  SO IF THAT

JULY 24, 2018

1    PATIENT DID NOT THEN COME FORWARD TO HHS TO SEEK REUNIFICATION

2    HHS MIGHT NOT BE AWARE OF THEIR WHEREABOUTS OR HOW TO CONTACT

3    THEM.

4            RELATEDLY, IF THEY WERE RELEASED BY -- RELEASED FROM

5    CRIMINAL CUSTODY, AND EVEN FEDERAL CRIMINAL CUSTODY BUT DID

6    NOT GO TO ICE CUSTODY THE SAME SITUATION COULD HAVE OCCURRED.

7    SO I THINK IT IS MOST LIKELY INDIVIDUALS WHO WERE RELEASED

8    FROM SOME FORM OF CUSTODY AND -- MOST LIKELY PRIOR TO THE

9    ORDER BUT THEN DIDN'T REACH OUT TO O.R.R. TO MAKE CONTACT FOR

10   REUNIFICATION.

11           **THE COURT:**  MANY OF THESE PARENTS COULD BE IN ICE

12   CUSTODY, BUT BECAUSE OF THE LACK OF COMMUNICATION BETWEEN AND

13   AMONG THE AGENCIES IT IS UNCERTAIN WHERE THESE PARENTS

14   ACTUALLY ARE, WHETHER THEY ARE WITH ICE OR WHETHER THEY ARE

15   WITH B.O.P. OR WHETHER THEY HAVE BEEN RELEASED?

16           **MS. FABIAN:**  IF THEY REMAIN IN ICE CUSTODY I THINK

17   THAT WE WOULD HAVE IDENTIFIED THEM BY NOW.

18           IF THEY ARE IN B.O.P. CUSTODY, IT IS NOT IN THE ICE

19   RECORDS BUT THAT IS SOMETHING THAT AS WE NARROW THE NUMBER

20   DOWN -- THERE IS NO WAY TO SIMPLY RUN THAT NUMBER, BUT AS WE

21   NARROW THE NUMBER DOWN THAT IS A PLACE WE CAN CHECK.

22           SIMILARLY, IF WE WERE TO TRY TO REVIEW STATE CUSTODY

23   IT IS A MATTER OF REALLY HAVING TO CHECK ON AN INDIVIDUALIZED

24   BASIS.

25           **THE COURT:**  SO BY PROCESS OF ELIMINATION, THESE

```
1    PARENTS ARE LIKELY NOT IN ICE DETENTION BECAUSE IF THEY WERE
2    YOU WOULD KNOW.  IF THEY WERE RELEASED FROM ICE YOU WOULD KNOW
3    THAT.  SO IT WOULD APPEAR THEY ARE EITHER IN STATE OR FEDERAL
4    CUSTODY, EITHER B.O.P. OR THE STATE CUSTODY.
5           MS. FABIAN:  I THINK THAT WOULD BE MY BEST GUESS,
6    YOUR HONOR, YES.  OR RELEASED FROM ONE OF THOSE IN A MANNER
7    WHERE WE WEREN'T NOTIFIED AND THEY HAVEN'T THEN COME FORWARD.
8           THE COURT:  OKAY.  IF THERE WAS COMMUNICATION AMONG
9    THE THREE AGENCIES, B.O.P. UNDER DOJ, ICE UNDER DHS, AND THEN
10   O.R.R. UNDER HHS, IT WOULD BE -- YOU WOULD KNOW WHERE THE
11   PARENT IS.
12          MS. FABIAN:  I DON'T THINK THAT IN THOSE CASES IT
13   WOULD BE A COMMUNICATIONS ISSUE.  I THINK FOR THE MOST PART IF
14   AN INDIVIDUAL IS IN -- WELL, IN B.O.P. CUSTODY THERE IS --
15   BECAUSE ICE WOULD LIKELY PLACE A DETAINER AND THAT DETAINER
16   WOULD BE HONORED BY THE FEDERAL -- BY B.O.P., THAT THAT WOULD
17   LIKELY BE -- WE WOULDN'T LOSE TRACK.
18          SO THERE IS A SYSTEM OF COMMUNICATION THERE THAT I
19   THINK WOULD LIKELY NOT LOSE TRACK OF PARENTS IN THAT
20   SITUATION, BUT I THINK THE MOST LIKELY SCENARIO WOULD BE FOR
21   INDIVIDUALS WHO GO INTO STATE CUSTODY.
22          THE COURT:  OKAY.
23          MR. GELERNT, YOU HAVE BEEN SITTING PATIENTLY.
24          MR. GELERNT:  GOOD AFTERNOON, YOUR HONOR.
25          YOU ACTUALLY ASKED JUST ABOUT EVERYTHING WE WERE
```

JULY 24, 2018

```
 1   GOING TO ASK ABOUT, SO I DON'T HAVE THAT MUCH.

 2           YOU KNOW, THE INFORMATION YOU ASKED ABOUT WE

 3   CERTAINLY WANT AND WE CERTAINLY, AS YOUR HONOR SEEMED TO BE

 4   SUGGESTING, WILL TAKE PIECEMEAL INFORMATION BETTER THAN

 5   NOTHING.

 6           I JUST WANTED TO ASK ABOUT A COUPLE OF THINGS.

 7           THE 20 WHO HAVE BEEN, I THINK REUNITED AND

 8   REMOVED --

 9           COUNSEL, MS. FABIAN.

10       MS. FABIAN:  SORRY.

11       MR. GELERNT:  THE 20 WHO WERE REMOVED, YOU MENTIONED

12   THOSE WERE REUNITED AND REMOVED AT SOME POINT.

13       MS. FABIAN:  THOSE ARE REFLECTED ON THE CHART THAT

14   WE PRODUCED TO YOU YESTERDAY.

15       MR. GELERNT:  WE HAVE NAMES FOR EACH OF THOSE 20?

16       MS. FABIAN:  YOU SHOULD, YES.

17       MR. GELERNT:  OKAY.

18           AND THE OTHER QUESTION I WANTED TO ASK IS ABOUT THE

19   37.  I THINK YOUR HONOR WAS ASKING ABOUT THE GOVERNMENT HAVING

20   BEEN UNABLE TO IDENTIFY WHERE PARENTS ARE.

21           BUT MY UNDERSTANDING -- AND CORRECT ME IF I AM

22   WRONG -- IS THAT THERE IS STILL 37 KIDS FOR WHOM THE IDENTITY

23   OF THE PARENT HAS NOT BEEN ESTABLISHED AT THIS POINT, OR IS

24   THAT WRONG?

25       MS. FABIAN:  I CAN'T CONFIRM THAT IT IS STILL
```

JULY 24, 2018

```
 1    EXACTLY THAT NUMBER.  THERE WERE SOME NUMBER OF MINORS WHO HAD

 2    NOT BEEN MATCHED TO A PARENT'S A-NUMBER.

 3              AS DISCUSSED A FEW TIMES THAT IS LIKELY BECAUSE THE

 4    OVER-INCLUSIVE NATURE OF O.R.R.'S ORIGINAL REVIEW AND

 5    IDENTIFICATION OF POTENTIAL CHILDREN OF CLASS MEMBERS MEANS

 6    THOSE PARENTS -- THOSE CHILDREN ARE IN FACT UAC'S.  I KNOW

 7    THERE IS 20-SOMETHING THAT ARE CURRENTLY BELIEVED TO BE UAC'S,

 8    BUT HAVEN'T CONFIRMED THAT SO WE HAVEN'T MOVED THEM OUT YET.

 9    SO THERE IS SOME NUMBER THAT HAS NOT BEEN LINKED TO --

10              THE COURT:  SO THAT NUMBER, THE 37 --

11              IS THAT THE NUMBER, 37?

12         MR. GELERNT:  YES, YOUR HONOR.

13              THE COURT:  WHAT BUCKET DID YOU PUT THEM IN?  ARE

14    THEY IN THE 1637 OR THE 914?

15         MS. FABIAN:  THEY WOULD BE IN THE 914, AND LIKELY IN

16    THE FURTHER REVIEW CATEGORY.

17              THE COURT:  FURTHER EVALUATION, THE 260 CATEGORY.

18    260 IS THE NUMBER?

19              MS. FABIAN:  YES.

20              THE COURT:  OKAY.

21              MR. GELERNT:  SO WE WOULD JUST ASK FOR YOU TO

22    CONTINUALLY UPDATE US ON THAT, BECAUSE THAT IS OBVIOUSLY A

23    CONCERNING BUCKET OF CHILDREN.

24              MS. FABIAN:  YES.

25              MR. GELERNT:  OKAY.
```

JULY 24, 2018

```
1              THEN I JUST WANTED ONE OTHER CLARIFICATION.
2              YOU SAID THAT WE HAD GOTTEN INFORMATION ABOUT THE
3     20.  THE ONE THING I WASN'T SURE ABOUT IS, WERE ALL 20
4     REUNIFIED WITH THEIR CHILDREN AND REMOVED TOGETHER WITH THEIR
5     CHILDREN?  I DON'T THINK THAT WAS REFLECTED ON THE INFORMATION
6     WE GOT.
7              MS. FABIAN:  I DON'T BELIEVE IT WAS REFLECTED THERE,
8     AND I WOULD HAVE TO CONFIRM.
9              MR. GELERNT:  OKAY.  I THINK THAT'S -- WELL, I THINK
10    THERE WAS ONE OTHER POINT, YOUR HONOR.
11             I THINK WHEN YOU WERE TALKING WITH THE GOVERNMENT
12    ABOUT WHY SOMEONE HAS NOT BEEN FOUND, FROM OUR UNDERSTANDING
13    FROM WHEN WE WERE DEALING WITH THE UNDER-FIVES IS THAT
14    SOMETIMES IF A PARENT HAD BEEN RELEASED THEY LEFT THEIR LAST
15    KNOWN ADDRESS, BUT THE GOVERNMENT HAD NOT BEEN ABLE TO CONTACT
16    THEM.
17             IS THAT STILL A PART OF THE GROUP WHERE THE
18    GOVERNMENT HAS NOT BEEN ABLE TO CONTACT THE PARENT.  NOT THAT
19    THEY NEVER HAD AN ADDRESS OR DIDN'T KNOW WHEN THEY WERE
20    RELEASED FROM STATE OR FEDERAL CUSTODY, BUT THAT THEY SIMPLY
21    HAVE NOT BEEN ABLE TO CONTACT THEM AFTER THEY WERE RELEASED BY
22    ICE.  PRESUMABLY THAT IS SOME OF THIS GROUP.
23             MS. FABIAN:  I AM NOT SURE I UNDERSTAND THE
24    QUESTION.
25             WHAT I CAN SAY IS THAT FOR PARENTS WHO HAVE BEEN
```

JULY 24, 2018

1   RELEASED WE HAVE THOSE WHO WE ARE IN CONTACT WITH, AND THEN

2   SOME NUMBER WITH WHOM THE GOVERNMENT HAS NOT YET MADE CONTACT.

3   AND I AM WORKING ON IDENTIFYING THOSE WITH WHOM WE HAVE NOT

4   BEEN IN CONTACT AS THE PRIORITY, AND TO GET YOU THEN ANY LAST

5   KNOWN CONTACT INFORMATION FOR THOSE INDIVIDUALS, BECAUSE THOSE

6   ARE THE ONES THAT I THINK YOU WERE MOST INTERESTED IN.

7           **MR. GELERNT:**  EXACTLY.  THOSE ARE THE ONES WHERE THE

8   NGO'S MAY BE ABLE TO HELP.  IF YOU ARE NOT ABLE TO CONTACT

9   THEM MAYBE WE KNOW AN AUNT OR SOMEBODY WHO THEN CAN MAKE SURE

10  AND KNOWS THAT THEIR CELL PHONE HAS BEEN TURNED OFF, SOMETHING

11  ALONG THOSE LINES.

12          I THINK THAT IS A CATEGORY OF PEOPLE WHO ICE KNOWS

13  ABOUT THEM, KNOWS THEY WERE RELEASED FROM ICE CUSTODY, BUT

14  JUST HAS NOT BEEN ABLE TO MAKE CONTACT WITH THEM IN THE

15  INTERIOR.

16          **THE COURT:**  YES.

17          **MR. GELERNT:**  THANK YOU, YOUR HONOR.

18          **MS. FABIAN:**  I DON'T KNOW THE NUMBER OF THAT, BUT I

19  UNDERSTAND THAT IS A PRIORITY, AND I AM TRYING TO PRIORITIZE

20  THAT.

21          **THE COURT:**  MR. GELERNT, IF I COULD ASK YOU ANOTHER

22  QUESTION.

23          WE MAY HAVE COUNSEL FROM NEW YORK ON THE PHONE, BUT

24  THIS IS A ONE-WAY CONVERSATION PRESENTLY.

25          **MR. GELERNT:**  RIGHT.

JULY 24, 2018

<sup>24</sup>

1      **THE COURT:**  SO IF COUNSEL FROM NEW YORK ARE ON THE

2  LINE, I AM INVITING THEM TO CALL BACK AFTER THIS STATUS

3  CONFERENCE CONCLUDES AND WE WILL HAVE A SECOND STATUS

4  CONFERENCE ON THE RECORD.

5      CAN YOU -- I KNOW GOVERNMENT COUNSEL IS READY TO

6  ADDRESS SOME OF THIS ISSUE, BUT DO YOU HAVE ANY INFORMATION IN

7  THAT REGARD?

8      **MR. GELERNT:**  WE DO NOT HAVE ANY MORE INFORMATION

9  THAN THE GOVERNMENT.  I THINK WE PROBABLY HAVE LESS

10  INFORMATION THAN THE GOVERNMENT, BECAUSE THAT IS A SUIT

11  BETWEEN THE NEW YORK FOLKS AND THE GOVERNMENT.

12      AND MY UNDERSTANDING IS IT INVOLVES A VERY SMALL

13  SUBSET OF INDIVIDUALS WHO NEW YORK HAS BEEN REPRESENTING AND

14  WANTS MORE INFORMATION ABOUT, AND I ASSUME AND HOPEFULLY BE

15  ABLE TO NEGOTIATE THAT WITH THE GOVERNMENT.  BUT I DO NOT HAVE

16  REAL INFORMATION ABOUT THAT.

17      **THE COURT:**  WHAT ABOUT THE STIPULATION THAT COUNSEL

18  WERE WORKING ON VERY DILIGENTLY AND FOR MANY DAYS THE LAST

19  WEEK, HAS THAT FALLEN THROUGH OR DO YOU STILL HAVE SOME

20  OPTIMISM ABOUT THAT?

21      I RECEIVED THE GOVERNMENT'S BRIEFING THIS MORNING

22  WHICH I HAVE NOT READ BECAUSE I HAVE BEEN IN TRIAL ALL DAY

23  LONG ON ANOTHER MATTER.  SO I READ THE INTRODUCTION, BUT I

24  HAVEN'T GOTTEN INTO THE ACTUAL POINTS AND AUTHORITIES, WHICH I

25  WILL DO LATER TONIGHT.

JULY 24, 2018

1           **MR. GELERNT:** RIGHT. IT APPEARS THAT THINGS HAVE
2    FALLEN THROUGH.
3           WHAT I WOULD SAY IS, YOUR HONOR, TALKING TO PEOPLE
4    ON THE GROUND NOW, AND WE HAVE AN ENORMOUS NUMBER OF
5    AFFIDAVITS WE ARE READY TO PUT IN FOR REPLY IF YOU WOULD LIKE
6    THEM. THINGS ARE REALLY A MESS ON THE GROUND, AND WE
7    ABSOLUTELY NEED AT LEAST SEVEN DAYS TO BE COUNSELING THESE
8    FAMILIES. THE GOVERNMENT IS PUTTING ROUGHLY 900 PEOPLE IN ONE
9    DETENTION CENTER AT ONE TIME.
10          **THE COURT:** SO OF THIS 900 THAT IS REFERENCED, A
11   FINAL ORDER OF REMOVAL, IT IS YOUR VIEW THAT MOST OF THOSE ARE
12   DETAINED TOGETHER?
13          **MR. GELERNT:** OUR UNDERSTANDING -- I DON'T KNOW IF
14   IT IS GOING TO BE EXACTLY 900 BUT I KNOW IT SEEMS AS THOUGH
15   SOMEWHERE OVER 700 ARE GOING TO BE PUT IN ONE FACILITY, THE
16   PARENTS OF CHILDREN DETAINED TOGETHER. AND THERE SIMPLY NO
17   WAY IN A COUPLE OF DAYS TO PROVIDE MEANINGFUL CONSULTATION.
18          I WOULD ALSO SAY THE GOVERNMENT HAS -- AND THIS MAY
19   BE SOMETHING WE WANT TO TALK ABOUT AFTER YOU READ THE BRIEF.
20   I WOULD JUST SAY THAT THE GOVERNMENT HAS PUT IN THEIR VERSION
21   OF THE NEGOTIATIONS, PUTTING ASIDE WHETHER THAT'S SORT OF
22   PROPER TO TELL YOU WHAT WAS CONFIDENTIAL, WE DON'T BELIEVE IT
23   WAS REMOTELY ACCURATE. IT DOES NOT REFLECT WHAT THEY ACTUALLY
24   AGREED TO. SINCE YOU HAVEN'T READ IT, I WILL PUT THAT ASIDE.
25          I WOULD SAY WE DESPERATELY NEED THOSE SEVEN DAYS.

JULY 24, 2018

```
 1            THE COURT:  THE INTRODUCTION DOES INDICATE A NUMBER
 2    OF THINGS.  BUT WHAT ABOUT THE FACT THAT THERE HAS BEEN A
 3    WEEK, A NUMBER OF THESE FAMILIES HAVE BEEN REUNIFIED.  THEY
 4    WOULD HAVE HAD TIME TOGETHER, I WOULD ASSUME, TO TALK ABOUT
 5    THESE IMPORTANT ISSUES, AND TO DO SO WITH THE CHILD
 6    ADVOCATE --
 7            MR. GELERNT:  RIGHT.
 8            THE COURT:  -- ADVICE.  WOULDN'T THAT BE A LARGE
 9    NUMBER?
10            MR. GELERNT:  YOUR HONOR, WE DON'T ACTUALLY KNOW --
11    AND MY COLLEAGUE CAN TELL ME, BUT WE DON'T ACTUALLY KNOW, WE
12    ARE NOT BEING TOLD WHO IS BEING REUNIFIED.  SO ONE OF THE
13    THINGS THAT WE NEED IS THE DAYS RUN FROM THE TIME WE ARE
14    ACTUALLY NOTIFIED ABOUT REUNIFICATION, BECAUSE THINGS DOWN
15    THERE ARE A MESS.
16            WHAT WE UNDERSTAND FROM THE LAST CLASS LIST -- I
17    JUST WANTED TO MAKE SURE I HAD THE NUMBER RIGHT -- IS THAT
18    THERE WERE VERY FEW PEOPLE NOW REUNITED AT KARNES, WHICH IS
19    THE FACILITY THE GOVERNMENT INTENDS TO USE, 20 OR 30.  SO IT
20    SEEMS LIKE THE VAST BULK HAVE NOT BEEN GIVEN SUFFICIENT TIME.
21    BUT WE ARE CERTAINLY READY TO WORK WITH YOUR HONOR IF SOME
22    INDIVIDUAL HAS ALREADY BEEN COUNSELED FOR A FEW DAYS WHETHER
23    THAT POTENTIALLY EATS INTO THEIR SEVEN DAYS.  BUT WE THINK THE
24    VAST BULK ARE GOING TO END UP AT THIS KARNES FACILITY IN SOUTH
25    TEXAS ALL AT ONCE, AND IT IS GOING TO BE IMPOSSIBLE.
```

JULY 24, 2018

1          **THE COURT:**  THAT'S THE REMOVAL LOCATION.

2          **MR. GELERNT:**  EXACTLY.

3          **THE COURT:**  THE GOVERNMENT ALSO INDICATED IN ITS

4    INTRODUCTION THAT THESE PARENTS NOW HAVE HAD TIME TO TALK WITH

5    THEIR CHILDREN, IF NOT IN PERSON THEN AT LEAST BY PHONE OR

6    VIDEO TELECONFERENCING, WHATEVER HAS BEEN IN PLACE.  AND

7    ARGUABLY THEY WOULD HAVE DISCUSSED THESE ISSUES WITH THEIR

8    CHILDREN, AND THEY COULD HAVE DISCUSSED THESE ISSUES WITH THE

9    CHILD'S ADVOCATE AS WELL.

10         **MR. GELERNT:**  WELL, YOUR HONOR, I THINK THOSE ARE

11   SOME OF THE THINGS THAT THE AFFIDAVITS ADDRESS.  WE SCRAMBLED

12   LAST NIGHT WHEN THE -- TO GET THE AFFIDAVITS.  WE WOULD MAKE A

13   FEW POINTS ABOUT THAT.

14         ONE IS, WHATEVER ACCESS THEY MAY HAVE HAD TO THEIR

15   CHILD ON THE PHONE, THEY DID NOT HAVE THAT ACCESS BY PHONE TO

16   THE CHILD'S ADVOCATE.

17         THE OTHER THING I WOULD SAY IS, THIS IS ONE OF THOSE

18   THE SITUATIONS -- AND I KNOW THE GOVERNMENT HAS PUT IN AN

19   AFFIDAVIT FROM THE TOP SAYING, HERE IS WHAT I DIRECTED.  IT IS

20   SHORT OF SPECIFICS, BUT AS YOUR HONOR KNOWS THERE IS A VAST

21   DIFFERENCE BETWEEN WHAT MAY HAVE BEEN DIRECTED FROM

22   HEADQUARTERS AND WHAT WAS ACTUALLY HAPPENING ON THE GROUND.

23         THE AFFIDAVITS EXPLAIN THAT PEOPLE HAD MAYBE ONE

24   SHORT CALL, WHERE IT IS JUST THE CHILD CRYING, CAN'T SEE THE

25   PARENT.  NOTHING COULD GET DONE IN THAT SITUATION.

JULY 24, 2018

```
1              I THINK THE AFFIDAVITS FROM PARTNERS AND ASSOCIATES
2     AT BIG LAW FIRMS, NGO'S, ARE ALL DOWN THERE, AND THEY SAY THAT
3     THE PARENTS HAVE NO IDEA WHAT'S HAPPENING.  THAT THEY HAVE
4     SIGNED THESE FORMS, MANY OF THEM -- TO SHOW YOU HOW MUCH
5     CONFUSION THERE IS.  MANY OF THEM ACTUALLY SIGNED THE FORMS
6     GIVING AWAY THEIR CHILD, EVEN THOUGH THEY DIDN'T HAVE A FINAL
7     ORDER.  THERE WOULD BE NO SENSE IN A PARENT GIVING AWAY THEIR
8     CHILD IF THE PARENT THEMSELVES CAN STAY IN.
9              THERE ARE GROUP PRESENTATIONS, THE AFFIDAVITS FROM
10    THE LAW FIRMS SAY.  THE PARENTS WERE PUT IN GROUPS OF 50 AND
11    SAID, HERE ARE YOUR BASIC RIGHTS, YOU HAVE 3 MINUTES TO SIGN
12    THIS FORM.
13             I THINK YOU ARE GOING TO BE SHOCKED WHEN YOU SEE
14    THESE AFFIDAVITS HOW LITTLE THE PARENTS UNDERSTOOD BEFORE
15    GETTING TOGETHER, AND HOW DIFFICULT IT IS GOING TO BE NOW TO
16    PROVIDE MEANINGFUL CONSULTATION WITH THEM, WITH HUNDREDS AND
17    HUNDREDS OF PEOPLE SHOWING UP AT THIS DETENTION CENTER.
18             THE COURT:  HOW MUCH TIME ARE YOU REQUESTING?
19             MR. GELERNT:  RIGHT NOW OUR REQUEST IS SEVEN DAYS.
20    WHAT WE ARE HEARING ON THE GROUND --
21             THE COURT:  FOR YOUR BRIEFING.
22             MR. GELERNT:  OH, I AM SORRY, YOUR HONOR.  I THINK
23    IF YOU COULD GIVE US UNTIL TOMORROW MORNING AT 9:00, AND WE
24    COULD BE BACK HERE IN THE AFTERNOON IF YOUR HONOR WOULD SEE
25    THAT AS APPROPRIATE.
```

JULY 24, 2018

1        **THE COURT:**  ALL RIGHT.  PERHAPS I CAN HEAR FROM MR.

2   STEWART.

3        **MR. STEWART:**  THANK YOU, YOUR HONOR.

4        **THE COURT:**  HAVE YOU BEEN IN COMMUNICATION WITH THE

5   NEW YORK ATTORNEYS, OR DO YOU HAVE INFORMATION IN THAT REGARD?

6        **MR. STEWART:**  MY COLLEAGUES AND I -- IT IS SORT OF

7   HARD TO KEEP TRACK OF ALL OF THE COMMUNICATIONS, YOUR HONOR,

8   BUT I HAVE BEEN ON SOME OF THEM AND TRIED TO BE AS PRIVY AS I

9   CAN.

10        MY UNDERSTANDING, YOUR HONOR, IS ON THE NEW YORK

11   CASE --

12        **THE COURT:**  EIGHT OR NINE CHILDREN.

13        **MR. STEWART:**  EIGHT OR NINE CHILDREN.  THE ISSUE

14   THERE -- THE KEY ISSUE THERE AS I UNDERSTAND IT IS WHETHER

15   THEY WILL GET THE 48 HOURS' NOTICE PROVIDED BY THE NEW YORK

16   COURT'S ORDER.  WE ARE DOING WHAT WE CAN TO GET -- TO NOT MOVE

17   THEM BEFORE THAT 48 HOURS LAPSES.

18        **THE COURT:**  THOSE CHILDREN ARE STILL THERE.

19        **MR. STEWART:**  THAT IS MY UNDERSTANDING, YOUR HONOR,

20   YES.  FOR THE NINE THAT ARE AT ISSUE IN THE RECENTLY

21   TRANSFERRED HABEAS CASE.

22        **THE COURT:**  AS I UNDERSTAND IT, THERE WAS A REQUEST

23   IN NEW YORK THAT THERE BE AN ORDERLY PERIOD OF TIME BEFORE

24   REUNIFICATION, OR TO HAVE THE PARENTS RELOCATED TO NEW YORK.

25        SO IS IT YOUR THOUGHT THAT THOSE EIGHT OR NINE

JULY 24, 2018

1    CHILDREN WOULD BE -- WOULD REMAIN IN NEW YORK, AND THEN

2    THROUGH THAT PROCESS THAT THE PARENT, ARGUABLY, COULD BE IN

3    COMMUNICATION, AT LEAST TELEPHONICALLY WITH THE CHILD AND ANY

4    CHILD ADVOCATE, AND THEN MAKE A DECISION TO REMOVE SEPARATELY

5    OR TOGETHER OR --

6              MR. STEWART:  YOUR HONOR, I THINK THERE ARE A COUPLE

7    OF WAYS IT MIGHT BE DONE.  ONE IS THAT -- WE GAVE THE NOTICE

8    AS OF MONDAY MORNING FOR THESE EIGHT OR NINE ARE WAITING UNTIL

9    THE 48-PERIOD LAPSES BEFORE MOVING THEM, GIVEN THE DESIRE TO

10   COMPLY WITH THE REUNIFICATION DEADLINE.

11             ANOTHER OPTION, YOUR HONOR, IS THAT WE COULD GO AND

12   CONFER WITH COUNSEL FOR THE PLAINTIFFS IN THAT CASE, AND TRY

13   TO WORK SOMETHING OUT AS TO THE NINE, THAT WOULD JUST GET THAT

14   SET OF CHILDREN TAKEN CARE OF.  SO THAT WOULD BE ANOTHER

15   OPTION.

16             IT HAS BEEN A SOMEWHAT FAST-MOVING SITUATION AS YOUR

17   HONOR IS AWARE, SO EITHER OF THOSE OPTIONS WOULD BE FINE.

18             MY UNDERSTANDING IS THAT SEVERAL OF THE CHILDREN ARE

19   FROM THE SAME FAMILY AND ARE GOING TO BE RELEASED IN ANY

20   EVENT, SO THAT MIGHT SORT OF ASSUAGE CONCERNS THERE.

21             THE COURT:  AT LEAST INTO THE COMMUNITY?

22             MR. STEWART:  I BELIEVE SO, YOUR HONOR.

23             THE COURT:  OKAY.  WHY DON'T -- IF NEW YORK COUNSEL

24   ARE THE LINE WE CAN PERHAPS PUT THEM AT EASE NOW AND SIMPLY --

25   AND JUDGE RAKOFF HAS TRANSFERRED THAT CASE SO I WAS -- AS TO

```
 1   JUDGE FURMAN LAST WEEK.  SO WITH RESPECT TO THE REUNIFICATION
 2   IN PLACE HERE, LET'S KEEP THE CHILDREN THAT HAVE BEEN
 3   IDENTIFIED IN THE NEW YORK FILING BEFORE JUDGE RAKOFF IN NEW
 4   YORK.  THE PARENTS WILL NOT BE RELOCATED TO NEW YORK.  I THINK
 5   THAT WAS ONE OF THE REQUESTS, AND THAT WILL NOT OCCUR.
 6            BUT WHAT I WOULD LIKE THE PARTIES TO DO IS TO MEET
 7   AND CONFER, AND IT MAY BE THAT THE PARENTS CAN COMMUNICATE
 8   WITH THE CHILDREN TELEPHONICALLY AND COMMUNICATE WITH THE
 9   CHILD ADVOCATE TELEPHONICALLY, MAKE AN INFORMED DECISION.  AND
10   IT MAY BE THAT THIS ISSUE CAN WORK OUT THAT WAY WITHOUT
11   FURTHER COURT INTERVENTION.
12            THEN, AS I MENTIONED BEFORE, IF NEW YORK COUNSEL ARE
13   ON THE LINE AND THEY WANT TO CALL IN AS SOON AS THIS
14   CONFERENCE IS OVER I CAN SPEAK TO THEM DIRECTLY.  OTHERWISE
15   THIS ISSUE, IT MAY WELL WORK OUT WITH THE UNDERSTANDING THAT
16   THE PROCESS, THE REUNIFICATION AND THE REMOVAL, AT LEAST WITH
17   RESPECT TO THESE EIGHT OR NINE CHILDREN, WILL BE ON HOLD UNTIL
18   I HEAR FROM COUNSEL.
19            MR. STEWART, DID YOU WANT TO COMMENT ON THE
20   STIPULATION THAT WAS IN PLACE BUT APPARENTLY HAS FALLEN
21   THROUGH AND WHERE WE ARE?
22            **MR. STEWART:**  SURE, YOUR HONOR.
23            I GUESS I HAD A FEW POINTS.  I DON'T WANT TO JUMP
24   THE GUN, I KNOW YOUR HONOR WANTS TO FINISH READING THE PAPERS.
25            THE POINTS I WOULD LIKE TO EMPHASIZE ARE THESE, YOUR
```

JULY 24, 2018

```
 1    HONOR.  AS YOU WILL SEE FROM THE BRIEF, THE GOVERNMENT HAS A
 2    PRETTY STRONG JURISDICTIONAL OBJECTION TO THE ISSUE HERE THE
 3    GOVERNMENT HAS TAKEN SERIOUSLY YOUR HONOR'S RECOGNITION THAT
 4    THIS CASE IS NOT A CHALLENGE TO THE GOVERNMENT'S DISCRETIONARY
 5    REMOVAL AUTHORITY AND ALL OF THAT.
 6            DESPITE THOSE CONSIDERABLE, YOU KNOW, CONCERNS AND
 7    RESERVATIONS, THE GOVERNMENT WORKED VERY, VERY HARD, IN LINE
 8    WITH YOUR HONOR'S ENCOURAGEMENT AND ORDERS, TO TRY TO REACH
 9    SOME WAY TO RESOLVE THIS ISSUE DESPITE THE PREVIOUS AGREEMENT
10    TO THE 48-HOUR PERIOD.
11            WE THOUGHT THAT IT WAS APPROPRIATE TO IDENTIFY WHERE
12    WE ENDED UP FOR THE COURT BECAUSE THE COURT DID ORDER US TO
13    MEET AND CONFER AND WE JUST WANTED TO BE CLEAR ON OUR GOOD
14    FAITH AND ALL WE TRIED TO DO AND THE EFFORTS WE MADE WITH THIS
15    KARNES FACILITY.
16            WHAT I WOULD EMPHASIZE THERE, YOUR HONOR, IS THAT WE
17    ARE TRYING TO DEDICATE THIS ENTIRE FACILITY TO, YOU KNOW,
18    RESOLVE THESE CLAIMS AND GIVE PEOPLE ACCESS LET THEM -- YOU
19    KNOW, WE PUT THAT OUT THERE AS A WAY FOR FOLKS TO GET THE
20    INFORMATION THEY NEEDED TO MAKE THE DECISIONS THAT PLAINTIFFS
21    COUNSEL PRESSED THEY NEEDED TO MAKE.
22            I JUST WANT TO EMPHASIZE THAT SIGNIFICANT
23    JURISDICTIONAL OBJECTIONS THAT AT ISSUE IN A LOT OF OTHER
24    CASES, AND WE FIGURED YOUR HONOR WOULD NOT WANT TO
25    UNNECESSARILY REACH OUT TO RESOLVE THAT ISSUE IF YOU DIDN'T
```

JULY 24, 2018

```
 1   NEED TO.  WE TRIED OUR BEST TO RESOLVE IT.  DESPITE THAT WE
 2   JUST WEREN'T ABLE TO, UNFORTUNATELY.
 3           SO I WOULD EMPHASIZE THE GOVERNMENT'S GOOD FAITH,
 4   OUR EFFORTS TO PUT AN OFFER THAT ACCOMMODATED ALL CONCERNS.  I
 5   WOULD EMPHASIZE THAT POINT AS YOUR HONOR IS KIND OF GOING
 6   THROUGH THE PAPERS.
 7           THE SECOND POINT I WOULD EMPHASIZE, YOUR HONOR, IS I
 8   AM DISAPPOINTED TO HEAR THAT MR. GELERNT IS PLANNING TO
 9   SUDDENLY FILE A RAFT OF AFFIDAVITS OR DECLARATIONS.  YOU KNOW,
10   THE GOVERNMENT WAS CAUGHT OFF-GUARD AND QUITE BY SURPRISE WHEN
11   THIS MOTION WAS FILED ABOUT A WEEK AND A HALF AGO.  WE GOT
12   ALMOST NO NOTICE OF IT.
13           THE OPENING PARAGRAPH ADMITTED THAT THE MOTION WAS
14   BASED ON RUMORS.  THAT IS THE DIRECT WORD FROM THE MOTION.
15           IT WAS BASED ON JUST SUPPOSITION, SO WE HAD TO RUSH
16   AROUND, FIND OUT WHAT WAS GOING ON.  AND NOW I GET A SIGNAL
17   THAT WE ABOUT TO BE, DESPITE OUR SIGNIFICANT JURISDICTIONAL
18   OBJECTIONS, OUR DAYS AND NIGHTS OF TRYING TO NEGOTIATE
19   SOMETHING HERE EFFECTIVELY DESPITE OUR CONCERNS, THAT WE ARE
20   ABOUT TO THE HIT, BLINDSIDED BY A RAFT OF AFFIDAVITS.  I THINK
21   THAT IS QUITE PROBLEMATIC.  I DON'T THINK IT IS IN THE SPIRIT
22   OF YOUR HONOR'S ORDERS.
23           AND I THINK IT IS PARTICULARLY IMPROPER THAT IT
24   SOUNDS LIKE MR. GELERNT IS TRYING TO WIDEN THE -- POTENTIALLY
25   WIDEN THE RELIEF THAT HIS MOTION WAS SEEKING WHICH I ALSO
```

JULY 24, 2018

```
 1   WOULD SUBMIT IS IMPROPER.
 2           AGAIN I DON'T WANT TO GET OUT AHEAD OF THE REPLY,
 3   BUT I WOULD OBJECT TO THE SUBMISSION OF FACTUAL AVERMENTS IN
 4   THE REPLY BRIEF, PARTICULARLY IF THE GOVERNMENT DOESN'T HAVE
 5   AN ABILITY TO RESPOND TO THEM, ESPECIALLY BECAUSE IF THESE ARE
 6   KIND OF ANECDOTAL, I MEAN, WE ARE KIND OF AT A DISADVANTAGE
 7   BECAUSE WE HAVE TO RUSH AROUND AND FIND OUT WHAT PEOPLE ARE
 8   TALKING ABOUT.
 9           I WOULD ALSO EMPHASIZE, YOUR HONOR, THAT AS YOU
10   YOURSELF, YOUR HONOR, POINTED OUT, THERE HAS BEEN QUITE A
11   NUMBER OF DAYS TO TRY TO RESOLVE THIS, AND JUST GIVE PEOPLE
12   THE RIGHT NOTICE, GIVE THEM CONSULTATION, ALL OF THAT SORT OF
13   THING.  IT SOUNDS LIKE THOSE EFFORTS -- THINGS HAVE NOT
14   PROGRESSED ADEQUATELY THERE.
15           SO IN SHORT, YOUR HONOR, WE THE GOVERNMENT WOULD
16   STICK VERY FIRMLY ON OUR PAPERS.  WE ARE PROUD OF OUR EFFORTS
17   TO WORK IN GOOD FAITH TO TRY TO REACH A STIPULATION SO THAT
18   THE COURT DID NOT HAVE TO STEP IN AND RESOLVE THIS, DID NOT
19   HAVE TO STEP IN TO DO MORE INJUNCTIVE RELIEF.  AND WE WERE
20   PARTICULARLY ATTUNED TO THE SERIOUS LEGAL QUESTIONS AND
21   SERIOUS JURISDICTIONAL ISSUES PRESENTED BY THIS.  AND WE
22   WANTED TO TRY TO RESOLVE THAT BUT, YOU KNOW, IT IS UNFORTUNATE
23   THAT WE WERE NOT ABLE TO.  WE DID WHAT WE COULD.
24           SO I WOULD EMPHASIZE THOSE POINTS, YOUR HONOR, AND
25   OTHERWISE I WOULD STICK TO THE BRIEF.
```

JULY 24, 2018

1           **THE COURT:**  LET ME RUN THROUGH A NUMBER OF IDEAS,

2   THOUGHTS, AND THEN GET COUNSEL'S INPUT AS TO HOW WE MOVE

3   FORWARD.

4           FIRST, THE OBSERVATION I WOULD MAKE ABOUT THE

5   REUNIFICATION OF ELIGIBLE CLASS MEMBERS, THAT'S THE 1,637, IT

6   APPEARS 1,012 HAVE BEEN REUNIFIED.  THE BALANCE HAVE BEEN

7   CLEARED AND TRANSPORTATION IS PENDING.

8           THIS IS A REMARKABLE ACHIEVEMENT, AND COMMANDER

9   WHITE IS TO BE COMMENDED.  HE HAS DONE YEOMAN'S WORK HERE IN

10  ACCOMPLISHING THAT.

11          SO FOR CLASS MEMBERS WHO ARE ELIGIBLE, IT APPEARS

12  THAT WHEN WE MEET ON THIS ISSUE AGAIN ON FRIDAY THAT

13  REUNIFICATION WILL HAVE BEEN COMPLETED ON TIME; WHICH HAS TO

14  BE HIGHLIGHTED AND THE GOVERNMENT HAS TO BE COMMENDED FOR ITS

15  EFFORTS IN THAT REGARD.

16          THERE IS A SIGNIFICANT GROUP OF CLASS MEMBERS, ABOUT

17  914, WHO MAY BE INELIGIBLE.  THAT IS A DIFFERENT CATEGORY.  I

18  THINK MANY OF THOSE THE PLAINTIFFS ARE NOT GOING TO QUARREL

19  WITH THE GOVERNMENT MAKING A DETERMINATION NOT TO REUNIFY,

20  WHETHER IT IS CRIMINAL HISTORY OR OTHER PRECLUDING FACTORS.

21  CERTAINLY THERE ARE GOING TO BE SOME OF THOSE CLASS MEMBERS

22  WHERE THE PLAINTIFFS, WITH ADDITIONAL INFORMATION, WILL

23  CHALLENGE THAT, AND THEN THE COURT CAN ADDRESS THOSE ISSUES AT

24  A LATER TIME.

25          THERE NEEDS TO BE MORE INFORMATION PROVIDED TO

JULY 24, 2018

1  PLAINTIFFS.  AND AS I HAVE INDICATED, THIS SHOULD REALLY BE A
2  TRANSPARENT PROCESS.
3          SOME OF THIS INFORMATION IS UNPLEASANT.  IT IS THE
4  REALITY OF THE CASE.  IT IS THE REALITY OF A POLICY THAT WAS
5  IN PLACE THAT RESULTED IN LARGE NUMBERS OF FAMILIES BEING
6  SEPARATED WITHOUT FORETHOUGHT AS TO REUNIFICATION AND KEEPING
7  TRACK OF PEOPLE.  AND THAT'S THE FALLOUT WE ARE SEEING.
8          THERE MAY BE 463, THERE MAY BE MORE.  THAT'S NOT
9  CERTAIN, BUT IT APPEARS THERE IS A LARGE NUMBER OF PARENTS WHO
10 ARE UNACCOUNTED FOR OR WHO MAY HAVE BEEN REMOVED WITHOUT THEIR
11 CHILD.  THAT'S A DEEPLY TROUBLING REALITY OF THE CASE, AND THE
12 PLAINTIFFS ARE ENTITLED TO THAT INFORMATION.
13         SO THERE HAS TO BE AN ACCOUNTING.  AND THE LIST
14 NEEDS TO IDENTIFY THE PARENTS, IF YOU HAVE THE INFORMATION,
15 AND WHERE THEY ARE, WHETHER THEY HAVE BEEN REMOVED.  AND IT
16 NEEDS TO ALSO INCLUDE THE STATEMENT THAT THE GOVERNMENT
17 DOESN'T KNOW WHERE THE PARENT IS OR LACKS THAT INFORMATION.
18 PLAINTIFFS ARE ENTITLED TO THAT INFORMATION SO THAT WE CAN
19 MORE INTELLIGENTLY DISCUSS, WHERE DO WE GO FROM HERE.  HOW DO
20 WE -- FOR THOSE PARENTS WHO WERE REMOVED WITHOUT CHILD.  THE
21 SOONER THE PLAINTIFFS HAVE ALL OF THAT INFORMATION THEY
22 HOPEFULLY LOCATE THEM AND THEN A REUNIFICATION CAN BE IN
23 PROCESS DOWN THE ROAD.  WE CAN SET A SEPARATE TIMEFRAME THERE.
24 BUT WE ARE NOT ABLE TO DO ANYTHING WITHOUT THE INFORMATION.
25         SO I WOULD PROPOSE THAT THE LIST FOR CLASS MEMBERS

JULY 24, 2018

```
 1   WHO WAIVE REUNIFICATION PRIOR TO REMOVAL, THAT'S THE 127, BE

 2   PROVIDED BY TOMORROW AT 9:00 A.M.

 3            IF I UNDERSTOOD YOU CORRECTLY THAT WOULD BE DO-ABLE,

 4   OR AT LEAST YOU CAN DO IT AS TO SOME, BUT THEN INDICATE THERE

 5   MAY BE OTHERS WHERE YOU NEED MORE TIME.

 6            MS. FABIAN:  SO TO CLARIFY THE 127 LIST WE GAVE

 7   TODAY, THERE IS THE SEPARATE LIST OF INDIVIDUALS WHO HAVE

 8   WAIVED ON THE FORM.

 9            THE COURT:  YES.

10            MS. FABIAN:  WE HAVE -- AS I -- TO CLARIFY WHAT I

11   SAID BEFORE, WE ARE IDENTIFYING ALL OF THOSE FORMS.  OF THE

12   ONES WE HAVE IDENTIFIED, 85 WAIVED.  THERE ARE STILL -- WE ARE

13   WORKING THROUGH TO MAKE SURE WE IDENTIFIED ALL OF THOSE FORMS.

14            THE COURT:  AND I THINK YOU SAID YOU ARE GETTING AN

15   EMAIL TONIGHT.

16            MS. FABIAN:  THAT IS A SEPARATE EMAIL.  TONIGHT I

17   WILL HAVE MORE INFORMATION ON THE REMOVAL -- ON THE

18   INDIVIDUALS REMOVED, THAT'S WHAT I WAS REFERENCING, TONIGHT.

19            AS FAR AS THOSE -- SO WE ARE IN THE PROCESS OF

20   IDENTIFYING ALL OF THE FORMS THAT HAVE BEEN SIGNED, AND THEN

21   WHICH OF THOSE HAVE WAIVED REUNIFICATION.  WE HAVE GONE

22   THROUGH 400-AND-SOME FORMS AND HAVE IDENTIFIED 85 OF THOSE WHO

23   WAIVED REUNIFICATION.  BUT THERE MAY BE MORE, BUT THAT'S WHERE

24   WE ARE RIGHT NOW IN THAT PROCESS.

25            THE COURT:  LET'S DO IT THIS WAY.
```

JULY 24, 2018

1           THERE IS A LIST THAT IS NEEDED FOR CLASS MEMBERS WHO
2   HAVE WAIVED REUNIFICATION PRIOR TO REMOVAL.  THERE IS A LIST
3   THAT'S NEEDED OF CLASS MEMBERS WHO HAVE BEEN REMOVED.  AND
4   THERE IS A LIST THAT IS NEEDED OF CLASS MEMBERS WHO HAVE BEEN
5   RELEASED FROM ICE CUSTODY.
6           IT SEEMS TO ME THOSE LISTS SHOULD BE PROVIDED TO THE
7   PLAINTIFFS BY TOMORROW, PERHAPS NOON WOULD BE A MORE
8   APPROPRIATE DEADLINE.  AND IT MAY BE THAT THE LISTS ARE NOT
9   COMPLETE.  BUT YOU COULD GIVE THE INFORMATION YOU HAVE, AND
10  THEN AS TO THE PARENTS, CLASS MEMBERS THAT YOU LACK
11  INFORMATION YOU CAN IDENTIFY HOW MANY, AND ARTICULATE THE
12  REASONS, WHAT CATEGORIES THEY MIGHT BE FALLING INTO.
13          AND THEN WHEN WE GET THE STATUS REPORT ON THURSDAY
14  WE WILL HAVE MORE INFORMATION THAT WE CAN ADDRESS
15  INTELLIGENTLY ON FRIDAY.
16          SO LET'S DO THAT.  THOSE LISTS BY TOMORROW, NOON.
17          THE PLAINTIFFS' REPLY ON THIS JURISDICTIONAL ISSUE
18  AND TRO REQUEST BY TOMORROW AT -- I WOULD PROPOSE, IF THERE IS
19  NOT OBJECTION, BY TOMORROW 12:00 O'CLOCK NOON.
20          AND THEN THAT WE ADDRESS THE MATTER FRIDAY AT THE
21  STATUS CONFERENCE AT 1:30.
22          DOES THE GOVERNMENT OBJECT?
23          **MR. STEWART:**  WE CAN GO ON JUST MAINTAINING OUR
24  JURISDICTIONAL OBJECTION.
25          **THE COURT:**  YES.

JULY 24, 2018

```
 1              MR. STEWART:  WOULD BE FINE FOR YOUR HONOR.
 2   UNDERSTOOD.  FINE TO ADDRESS ON FRIDAY.
 3              MR. GELERNT:  THAT'S FINE, YOUR HONOR.
 4              THE COURT:  SO FILING BY NOON TOMORROW, THEN WE WILL
 5   ADDRESS THIS ISSUE FRIDAY.
 6              MR. GELERNT:  OKAY.  THANK YOU, YOUR HONOR.
 7              THE COURT:  OKAY.
 8              HAVE WE ADDRESSED ALL MATTERS?  ANY OTHER
 9   HOUSEKEEPING MATTERS.
10              MR. STEWART:  CAN I FLAG AT LEAST ONE MORE, YOUR
11   HONOR?
12              THE COURT:  YES.
13              MR. STEWART:  AS YOUR HONOR IS AWARE, AND AS WE
14   DISCUSSED, A NUMBER OF OTHER CASES HAVE ARISEN, IN OBVIOUSLY
15   IN NEW YORK, AND SOME OF THOSE HAVE BEEN TRANSFERRED HERE.
16              THE COURT:  I AM ONLY AWARE OF TWO, THEY ARE BOTH IN
17   NEW YORK.
18              MR. STEWART:  BOTH IN NEW YORK.  THERE ARE SOME
19   INDIVIDUAL CASES, BUT THOSE ARE DIFFERENT -- BUT THOSE HAVE
20   BEEN RESOLVED, I THINK, PRETTY SPEEDILY, GENERALLY.
21              THE ONE I WANTED TO FLAG, THOUGH, YOUR HONOR, IS
22   THAT THERE IS A CASE PENDING IN THE WESTERN DISTRICT OF
23   WASHINGTON BEFORE JUDGE PECHMAN.
24              THE COURT:  YES.
25              MR. STEWART:  THIS INVOLVES 17 STATES AND THE
```

JULY 24, 2018

1    DISTRICT OF COLOMBIA WHO FILED A SUIT THAT THEY ALLEGED ON

2    BEHALF OF THEIR RESIDENTS IN CONNECTION WITH THE FAMILY

3    SEPARATION POLICY.

4            I RAISE IT SORT OF FOR -- WITHOUT GETTING AHEAD OF

5    THINGS TOO MUCH, YOUR HONOR.  THE GOVERNMENT -- THE PLAINTIFFS

6    IN THAT CASE SOUGHT EXPEDITED DISCOVERY ABOUT THE POLICY AND

7    THAT SORT OF THING.  THE GOVERNMENT FILED A FAST MOTION THAT

8    SOUGHT TRANSFER TO THIS COURT, AND KIND OF OTHER THINGS ON

9    JURISDICTIONAL ISSUES.

10           JUDGE PECHMAN IN THAT CASE HAS ORDERED EXPEDITED

11   DISCOVERY WITHOUT RULING ON THE TRANSFER PIECE YET, BUT -- SO

12   THE TRANSFER PIECE IS STILL UNDER CONSIDERATION.  BUT THERE IS

13   A HEARING BEFORE JUDGE PECHMAN THIS FRIDAY ON THE EXPEDITED

14   DISCOVERY SCOPE AND SCHEDULE AND PRESUMABLY THOSE SORTS OF

15   THINGS.

16           **THE COURT:**  YES.

17           **MR. STEWART:**  I AM GUESSING.

18           I WANTED TO FLAG IT FOR YOUR HONOR BECAUSE THE

19   GOVERNMENT'S VIEW IS THAT THAT CASE -- THE CLAIMS

20   OVERWHELMINGLY OVERLAP WITH THIS ONE OR WITH OTHER LITIGATION.

21   IT IS PROPERLY TRANSFERRED TO THIS COURT FOR JUST THE REASONS

22   ARTICULATED BY JUDGE FURMAN IN HIS TRANSFER ORDER, AMONG

23   OTHERS.

24           IT DOESN'T LOOK -- IT IS NOT CLEAR THAT THAT

25   TRANSFER WILL HAPPEN, AND I WANTED TO JUST FLAG IT BECAUSE OF

JULY 24, 2018

1   CONCERNS THAT IF WE DO END UP WITH A SITUATION OF EXPEDITED

2   DIFFICULT DISCOVERY THERE IT WILL, UNFORTUNATELY, POTENTIALLY

3   OVERLAP WITH EFFORT HERE.

4           AND I DON'T RAISE IT TO KIND OF IDENTIFY A PROBLEM

5   MORE JUST WE ARE GOING TO LOOK FOR SOLUTIONS AND TRY TO DEAL

6   WITH IT.  BUT I JUST WANTED TO FLAG IT FOR YOUR HONOR SO YOU

7   KNOW OF IT AND YOU ARE NOT CAUGHT OFF-GUARD.  AND WE ARE

8   WORKING AS BEST WE CAN.  WE TRIED TO GET IT TRANSFERRED HERE,

9   WE ARE NOT SURE WE ARE GOING TO SUCCEED.  BUT WE ARE PREPARED

10  TO, YOU KNOW, WE ARE TRYING TO WORK WITH THAT ISSUE.

11          BUT I WANTED TO FLAG IT JUST BECAUSE THE MORE

12  RESOURCES WE HAVE TO DEVOTE TO EXPEDITED DISCOVERY

13  UNFORTUNATELY MANY OF THOSE FOLKS WILL I THINK BE PEOPLE WHO

14  ARE WORKING ON REUNIFICATION, SO WE ARE TRYING TO DEAL WITH

15  IT.  BUT I DID WANT TO RAISE THAT CASE FOR YOUR HONOR BEFORE

16  JUDGE PECHMAN.

17          **THE COURT:**  YES.  THANK YOU FOR MENTIONING THAT.

18          BUT OF THE ELIGIBLE CLASS MEMBERS IT APPEARS THAT'S

19  ALL UNDERWAY AND REUNIFICATION SHOULD OCCUR BY THURSDAY.

20          **MR. STEWART:**  I DON'T THINK THE CASE WILL AFFECT THE

21  STUFF YOU HAVE BEEN FOCUSING ON, YOUR HONOR.  I FLAG IT AS A

22  CONSIDERATION AS WE ARE, YOU KNOW, CONTINUING TO BEAR DOWN TO

23  COMPLETE THE REST OF THE REUNIFICATION.

24          **THE COURT:**  YES.  ALL I CAN SAY THERE IS ON THE NEW

25  YORK CASES, BOTH JUDGES FURMAN AND RAKOFF, WITH THE PARTIES

JULY 24, 2018

1    CONSENT, CALLED ME.  AND SO THEY TOOK THAT INITIATIVE, AND

2    THEN THEREAFTER THEY MADE THEIR OWN CONSIDERED JUDGMENT TO

3    TRANSFER THE CASES HERE.

4         I HAVE NOT HEARD FROM JUDGE PECHMAN, AND OF COURSE,

5    SHE IS GOING TO DO WHAT SHE CONSIDERS TO BE THE RIGHT DECISION

6    IN HIS CASE, SO I WOULD NOT HAVE ANY COMMENT OR OBSERVATION

7    OTHER THAN TO THANK COUNSEL FOR LETTING ME KNOW.

8         AND WE WILL STAND BY, AND AS I INDICATED TO JUDGES

9    FURMAN AND RADKOFF, WE ARE HERE AND READY TO TEND TO THE NEW

10   YORK CASE AS THE LAWYERS DEEM APPROPRIATE.

11        LET'S CLOSE THIS HEARING.  AND THEN I AM GOING TO

12   ASK COUNSEL JUST TO STAND BY FOR A MOMENT.  I DON'T KNOW IF

13   NEW YORK COUNSEL WILL CALL IN OR NOT, BUT I WANTED TO GIVE

14   THEM THE COURTESY TO DO THAT IF THAT'S WHAT THEY WANT TO DO.

15   THEY MAY ELECT NOT TO.  THEY MAY NOT BE ON THE LINE, I DON'T

16   KNOW.  I DON'T HAVE ANY OTHER INFORMATION, OTHER THAN I SPOKE

17   WITH JUDGE RADKOFF LATE THIS AFTERNOON, I THINK IT WAS

18   ABOUT -- WELL, IT WAS DURING THE RECESS WHEN I WAS IN TRIAL.

19   AND SO HE GAVE ME THE UPDATE, BUT I HAVEN'T HEARD ANYTHING

20   ELSE THAT HE HAS TRANSFERRED THE CASE.

21        **MR. STEWART:**  CAN I MAKE JUST ONE OR LIKE A

22   TWO-SENTENCE CLOSING OBSERVATION ON ONE OTHER PIECE OF THE

23   STAY MOTION?

24        **THE COURT:**  YES.

25        **MR. STEWART:**  OBVIOUSLY THERE IS GOING TO BE FURTHER

JULY 24, 2018

43

1   BRIEFING AND ARGUMENT AND I CAN ADDRESS -- HOPEFULLY ADDRESS

2   THIS FURTHER ON FRIDAY, YOUR HONOR.  BUT THE GOVERNMENT ALSO

3   WOULD TAKE ISSUE WITH THE SUGGESTION THAT THINGS ARE A MESS ON

4   THE GROUND.  AS COMMANDER WHITE HAS EXPLAINED THERE HAS

5   BEEN -- AND AS YOUR HONOR HAS RECOGNIZED, THERE HAS BEEN

6   TREMENDOUS EFFORT TO REUNIFY CONSISTENT WITH THIS COURT'S DUE

7   PROCESS REUNIFICATION FAMILY INTEGRITY RULING.  WE HAVE MANY

8   REASONS TO BE VERY PROUD OF THIS EFFORT SO WE STRONGLY CONTEST

9   THAT CHARACTERIZATION AND LOOK FORWARD TO THE OPPORTUNITY TO

10  PRESENT FURTHER VIEWS ON THAT.

11          **THE COURT:**  I WILL LOOK FORWARD TO THE ADDITIONAL

12  BRIEFING.  AND I THINK THE STATUS REPORT ON THURSDAY WILL BE

13  GOOD BECAUSE WE WILL HAVE A LOT OF OTHER ADDITIONAL

14  INFORMATION.  AND THEN FRIDAY, OF COURSE, WE CAN TAKE

15  INVENTORY ON WHAT ACTUALLY HAPPENED AT THE REUNIFICATION OF

16  ELIGIBLE CLASS MEMBERS, AND THEN ADDRESS THE JURISDICTIONAL

17  ISSUE.

18          **MS. FABIAN:**  YOUR HONOR, I JUST WANTED TO LET YOU

19  KNOW AS WELL ON FRIDAY I WILL BE APPEARING IN COURT IN LOS

20  ANGELES SO I AM GOING TO TRY TO PARTICIPATE BY PHONE HERE IN

21  THE AFTERNOON.

22          **THE COURT:**  MR. STEWART, YOU WILL BE HERE?

23          **MR. STEWART:**  I WILL BE HERE, YOUR HONOR.

24          **THE COURT:**  OKAY.  VERY GOOD.  THANK YOU VERY MUCH.

25          **MR. STEWART:**  THANK YOU, YOUR HONOR.

JULY 24, 2018

```
 1              (PAUSE IN PROCEEDINGS)
 2         THE COURT:  OKAY.  WE DON'T HAVE A CASE NUMBER OR A
 3    CASE YET.  I HAVE JUST BEEN INFORMED BY JUDGE RAKOFF THAT THE
 4    NEW YORK CASE WAS TRANSFERRED.
 5         WE HAVE GOVERNMENT COUNSEL PRESENT AND PLAINTIFFS'
 6    COUNSEL PRESENT.
 7         AND I NOW UNDERSTAND WE HAVE NEW YORK COUNSEL ON THE
 8    LINE, FROM LEGAL AID, REPRESENTING THE CHILDREN IN THAT CASE.
 9         I HOPE YOU CAN HEAR ME.
10         CAN YOU STATE YOUR APPEARANCES?
11         MR. GELERNT:  CERTAINLY, YOUR HONOR.  THIS IS JUDITH
12    GOLDINER FROM THE LEGAL AID SOCIETY IN NEW YORK.  AND I AM
13    JOINED HERE -- WITH ME IS SARAH GILLMAN, GREGORY COPELAND, AND
14    BETH KRAUSE ALSO FROM NEW YORK CITY.
15         I KNOW WE HAVE OUR PRO BONO --
16         MR. FRAHN:  YOUR HONOR, THIS IS BUZZ FRAHN OF
17    SIMPSON THATCHER, PALO ALTO, CALIFORNIA, ON THE LINE AS WELL.
18         THE COURT:  VERY GOOD.  THANK YOU.
19         WERE COUNSEL ON THE LINE FOR THE LAST STATUS
20    CONFERENCE?
21         MS. GOLDINER:  YES, WE ARE WERE, YOUR HONOR.
22         THE COURT:  YOU HEARD THE DISCUSSION, THEN, THAT I
23    HAD WITH COUNSEL.
24         SO, MS. GOLDINER WHAT -- I AM ALL EARS.  I WOULD
25    LIKE TO HEAR FROM YOU AND GET YOUR PERSPECTIVE.
```

JULY 24, 2018

1          **MS. GOLDINER:**  THANK YOU, YOUR HONOR.

2          SO I GUESS I WANT TO START BY SAYING OUR CONCERN

3    HERE IS THAT OUR CLIENTS DON'T HAVE INFORMATION THEY NEED TO

4    MAKE MEANINGFUL PLANS, AND THEY HAVEN'T HAD THE OPPORTUNITY TO

5    TALK TO THEIR PARENTS ABOUT THOSE PLANS OR THERE PARENTS TO

6    THEIR COUNSEL, TO THE CHILDREN'S COUNSEL.

7          SO, YOU KNOW, WHAT WE ARE SEEING IS KIDS WHO VERY

8    MUCH WOULD LIKE TO BE WITH THEIR PARENTS BUT THEY DON'T WANT

9    TO BE IN LONG FAMILY DETENTION.  WHAT THEY DON'T KNOW, AND

10   WHAT THE GOVERNMENT HASN'T GIVEN US NOTICE OF, IS WHETHER THE

11   PLAN FOR THE FAMILIES IS POTENTIALLY DEPORTATION OR FAMILY

12   DETENTION WHILE OTHER RELEASE IS BEING WORKED OUT.

13         SO THAT'S BEEN THE PROBLEM.  AND THAT'S SPECIFICALLY

14   THE PROBLEM FOR THE YOUNG PEOPLE THAT WE FILED FOR TODAY.  SO

15   WHAT WE WERE HOPING FOR WAS -- AS YOU KNOW FROM OUR PREVIOUS

16   FILING WAS THAT THE NOTIFICATIONS WE WOULD GET WOULD GIVE US

17   BOTH THE INFORMATION ON WHAT THE ACTUALLY PLAN WAS --

18         **THE COURT:**  I AM SORRY, SOMEBODY IS TYPING AND SO IT

19   IS ACTUALLY INTERRUPTING MS. GOLDINER'S PRESENTATION.

20         CAN YOU GIVE ME THAT LAST SENTENCE AGAIN?

21         **MS. GOLDINER:**  I AM SORRY.

22         THE REASON WE WANTED THE NOTIFICATION WAS REALLY

23   TWOFOLD.  ONE WAS TO GET INFORMATION ON EXACTLY WHAT THE PLAN

24   WAS FOR THE KIDS SO THAT WE COULD ADVISE THEM.  AND SECOND SO

25   THAT WE WOULD ALSO HAVE A WAY OF CONTACTING THEIR PARENTS AND

JULY 24, 2018

1    GETTING THEIR PARENTS' INPUT INTO WHAT WAS GOING TO HAPPEN.

2              SO OF THE FIVE PARENTS THAT ARE INVOLVED IN THE KIDS

3    THAT WE FILED FOR, THREE OF THEM WE HAVE NOT BEEN ABLE TO TALK

4    TO.  AND THEIR CHILDREN HAVE NOT HAD ANY MEANINGFUL

5    OPPORTUNITY TO TALK TO THEM ABOUT WHAT THE PLANS ARE.

6              AND EVEN WERE THEY ABLE TO TALK TO THEIR PARENTS,

7    WITHOUT KNOWING WHETHER THEY ARE GOING TO BE DEPORTED OR

8    WHETHER THEY ARE GOING TO BE IN FAMILY DETENTION IS IMPORTANT

9    TO OUR KIDS TO KNOW WHETHER -- THAT IS SOMETHING THAT THEY

10   WANT OR WHETHER THEY WANT TO STAY AND PURSUE THE REMEDIES THEY

11   MIGHT HAVE.

12             **THE COURT:**  OKAY.

13             LET ME ASK MR. STEWART.  DO WE KNOW WHO THE FIVE

14   PARENTS ARE?

15             AND, MS. GOLDINER, DO YOU KNOW WHO THE FIVE PARENTS

16   ARE?  DO YOU HAVE THAT INFORMATION?

17             **MS. GOLDINER:**  WE KNOW WHO THEY ARE, WE HAVE NOT

18   BEEN ABLE TO CONTACT THEM.

19             **THE COURT:**  SO I AM JUST SPEAKING PRACTICALLY.  IF

20   YOU KNOW WHO THEY ARE, IT SEEMS THAT YOU COULD -- IT MAY BE

21   THAT GOVERNMENT COUNSEL IN NEW YORK KNOWS WHO THEY ARE AS

22   WELL, BUT I HAVE, OBVIOUSLY, GOVERNMENT COUNSEL HERE IN SAN

23   DIEGO, MS. FABIAN AND MR. STEWART.

24             IT MAY BE THAT IF THE INFORMATION IS SHARED WITH

25   THEM AS TO WHO THE PARENTS ARE, THEN THIS CAN WORK OUT

JULY 24, 2018

```
 1   INFORMALLY AND RELATIVELY EASILY WHERE THOSE PARENTS ARE NOT
 2   REMOVED, THE CHILDREN CAN REMAIN IN NEW YORK.  THERE COULD BE
 3   AN OPPORTUNITY WHERE PARENT AND CHILD COMMUNICATE AT LEAST
 4   TELEPHONICALLY, PARENT AND CHILD ADVOCATE COMMUNICATE,
 5   INFORMED DECISIONS ARE MADE.  AM I CORRECT?
 6           I AM ASKING MS. FABIAN NOW.
 7           MS. FABIAN:  LET ME STAND UP STRAIGHT WHILE I DO
 8   THIS.
 9           AND, YOU KNOW, IF I HAVE MISSED CONVERSATIONS I
10   APOLOGIZE.  I DON'T WANT TO MISREPRESENT ANYTHING.  MY
11   UNDERSTANDING IS -- I AM NOT AWARE IF WE HAVE BEEN TOLD THAT
12   THERE ARE DIFFICULTIES IN THE COMMUNICATION.  I THINK
13   FACILITATING COMMUNICATION IS SOMETHING WE CAN DO.
14           WE, AS I UNDERSTAND IT, GAVE NOTIFICATION OVER THE
15   WEEKEND.  WE HAVE NONETHELESS HELD TO ENSURE THAT THERE WERE
16   48 HOURS THAT WERE NOT ON THE WEEKEND ARRANGED FOR THE
17   REUNIFICATIONS TO HAPPEN TOMORROW.  AND, YOU KNOW, BASED ON
18   THE COURT'S EARLIER STATEMENT CAN HOLD THAT OFF FURTHER.  BUT
19   WE HAVE MADE ATTEMPTS TO PROVIDE ENOUGH TIME TO ALLOW THOSE
20   COMMUNICATIONS.  SO IF THOSE HAVEN'T HAPPENED I AM NOT AWARE
21   WHY THAT IS, BUT WE CAN CERTAINLY LOOK INTO ARRANGING THOSE.
22           MY UNDERSTANDING IS THAT WE HAVE ALSO GIVEN
23   INFORMATION AS TO THE CURRENT INTENTION WITH REGARD TO THE
24   FAMILY, WHICH IS I THINK FOR AT LEAST ONE FAMILY WHICH IS --
25   HAS MULTIPLE CHILDREN THAT THE CURRENT INTENTION IS THAT THEY
```

1   WOULD BE RELEASED UPON REUNIFICATION.  I AM NOT -- SO I AM NOT

2   SURE IF THE REMAINDER WOULD BE HELD TOGETHER IN FAMILY

3   DETENTION.  I BELIEVE THAT IS THE CURRENT PLAN AS WE

4   INDICATED, HOWEVER THAT IS THE CURRENT PLAN.  THINGS CAN

5   CHANGE AS NEW INFORMATION BECOMES AVAILABLE.

6           SO AS I UNDERSTAND IT, THAT WAS PART OF THE CONCERN

7   IS THAT WE CAN'T 100 PERCENT COMMIT AS TO THE SITUATION THAT

8   WILL BE DOWN THE LINE BUT THAT WE HAVE PROVIDED INFORMATION AS

9   TO OUR CURRENT UNDERSTANDING FROM ICE OF WHAT THE FAMILY

10  SITUATION WOULD BE.

11          **THE COURT:**  IT SEEMS THAT THIS IS A MATTER WITH A

12  VERY PRACTICAL SOLUTION.  AND SO PARTICULARLY SINCE, GIVEN THE

13  COURT'S ORDERS TODAY, THAT THE PARENTS WILL NOT BE REMOVED,

14  THE CHILDREN WILL NOT BE MOVED FROM NEW YORK PENDING WORKING

15  THIS OUT, THAT THE PARTIES CAN MEET AND CONFER.  AND IT SEEMS

16  LIKE THIS ISSUE, WITH COMMUNICATION, THERE CAN BE A MEANINGFUL

17  OPPORTUNITY FOR PARENT AND CHILD, PARENT AND CHILD ADVOCATE,

18  TO ADDRESS THE ISSUES, PERHAPS TELEPHONICALLY, BUT TO AT LEAST

19  ADDRESS THE ISSUES.  AND SO IT WOULD SEEM THAT THIS WHOLE AREA

20  COULD BE ADDRESSED THROUGH A JOINT MOTION AND ORDER.

21          DON'T YOU AGREE, MS. GOLDINER?

22          **MS. GOLDINER:**  YES, YOUR HONOR.

23          I DO WANT TO ADD, THOUGH, THAT WE STILL -- TO BE

24  ABLE TO APPROPRIATELY COUNSEL OUR CLIENTS, THE CHILDREN, AND

25  TALK TO THEIR PARENTS ABOUT WHAT THE OPTIONS ARE, WE NEED TO

JULY 24, 2018

1   KNOW THE ANSWER TO WHETHER IT IS REUNIFICATION AND DEPORTATION

2   OR REUNIFICATION AND BEING HELD IN FAMILY DETENTION.

3           AND THAT'S REALLY IMPORTANT TO OUR CLIENTS.  AND I

4   THINK THE GOVERNMENT KNOWS THE ANSWER TO THAT.  NOT A LOT OF

5   CHILDREN, AND I WOULD HOPE THEY COULD PROVIDE THAT TO US.  I

6   HAVE NO PROBLEM WITH CONFERRING WITH THEM, BUT I WOULD LIKE

7   TO -- WE NEED TO KNOW THE ANSWER TO THAT.

8           **THE COURT:**  I THINK THE GOVERNMENT, AS SOON AS YOU

9   KNOW WHO THE PARENTS ARE, YOU CAN INFORM PLAINTIFFS' COUNSEL,

10  WHETHER IT IS REUNIFY AND DEPORT, OR REUNIFY AND DETAIN

11  TOGETHER, OR PAROLE IN COUNTRY.

12          **MS. FABIAN:**  I THINK -- I THINK MY UNDERSTANDING IS

13  THAT WE HAVE MADE THAT AND THAT'S -- WE HAVE INDICATED THAT --

14  THE CURRENT PLAN.

15          I THINK THERE IS -- OUR POSITION WOULD BE THAT WE

16  CAN'T -- INCONSISTENT WITH THIS COURT'S ORDERS IS WE CAN'T

17  GUARANTEE A CERTAIN RESULT OR A CERTAIN OUTCOME FOR THAT

18  INFORMATION THAT CAME UP THAT CHANGED THE -- WHAT -- FOR

19  EXAMPLE SOMEONE OBTAINING AN EXECUTABLE FINAL ORDER MIGHT

20  CHANGE THE PLANS WITH REGARD TO DETENTION OR REMOVAL, ET

21  CETERA.

22          SO I THINK AS THINGS CHANGE, THE AGENCY RETAINS ITS

23  AUTHORITY TO MAKE DECISIONS BASED ON THE SITUATION WITH THE

24  FAMILY.  AND THAT'S WHY WE SAY WE HAVE GIVEN THE CURRENT

25  INFORMATION BUT CANNOT COMMIT THAT THAT INFORMATION WON'T

JULY 24, 2018

1    CHANGE AS THE PROCESS MOVES FORWARD.

2           **THE COURT:**  RIGHT.  I WOULD ASSUME, FOR EXAMPLE,

3    THAT THE ONE PLAN MIGHT BE TO REUNIFY AND DETAIN TOGETHER, OR

4    REUNIFY AND PAROLE INTO THE COMMUNITY, BUT THAT COULD CHANGE

5    AS THE PARENT AND/OR CHILD MIGHT LATER BECOME SUBJECT TO A

6    REMOVAL ORDER DOWN THE ROAD.

7           **MS. FABIAN:**  CORRECT.  I THINK -- I MEAN, I THINK TO

8    SOME EXTENT WE WOULD SAY THAT PROVIDING THAT INFORMATION IS A

9    COURTESY THAT WE HAVE BEEN WILLING TO DO TO FACILITATE THE

10   DECISION-MAKING BY THIS GROUP.  IT IS NOT NECESSARILY

11   INFORMATION THAT EVERYONE IS ENTITLED TO -- THAT WE WOULD

12   AGREE EVERYONE IS ENTITLED TO, BUT WE HAVE MADE AN EFFORT TO

13   PROVIDE THE INFORMATION THAT IS CURRENTLY AVAILABLE.  I WOULD

14   AGREE, WE CAN'T COMMIT THAT THINGS WON'T CHANGE.

15          **THE COURT:**  WHAT IF THE PARTIES HERE -- THAT WOULD

16   BE GOVERNMENT COUNSEL AND MS. GOLDINER AND OTHER PLAINTIFFS'

17   COUNSEL -- MEET AND CONFER.  AND I WOULD HOPE THAT THIS COULD

18   BE A MATTER WHERE YOU COULD REPORT TOMORROW, BY JOINT MOTION

19   AND ORDER.  OR IF THERE IS A NEED FOR THE COURT TO BECOME

20   INVOLVED OTHERWISE, THEN WE CAN ARRANGE FOR AN IMMEDIATE

21   TELEPHONIC CONFERENCE AND ARGUMENT SUBJECT TO BRIEFING.

22          **MS. GOLDINER:**  WE ARE HAPPY TO MEET AND CONFER.

23          **MR. STEWART:**  CAN I ALSO ADD THE POSSIBILITY, YOUR

24   HONOR, THAT MAYBE NOT EVEN AN ORDER BUT IF WE COULD COME TO A

25   MUTUAL UNDERSTANDING AND ALERT THE COURT TO IT?

JULY 24, 2018

```
1              THE COURT:  YOU CAN JUST ALERT THE COURT, EXACTLY.
2              MR. STEWART:  VERY GOOD.
3              THE OTHER THING I MENTIONED -- YOUR HONOR, YOU
4    MENTIONED, I THINK YOU USED THE WORD STAY OR NOT REMOVING.  I
5    THINK WHAT YOU WERE SAYING WAS JUST PUT A PAUSE AS TO THESE
6    FEW PARENTS.  DON'T RELOCATE THEM TO NEW YORK UNTIL WE FIGURE
7    OUT THIS SMALL COHORT OF EIGHT OR NINE.
8              THE COURT:  YES.  THAT'S EXACTLY RIGHT.
9              MR. STEWART:  THANK YOU, YOUR HONOR.  I THINK WE
10   WILL WORK WITH THAT.
11             THE COURT:  MR. STEWART, YOU HAVE ALL OF THE CONTACT
12   INFORMATION FOR MS. GOLDINER AND PLAINTIFFS' COUNSEL?
13             MR. STEWART:  I BELIEVE SO.  I CERTAINLY HAVE A GOOD
14   COHORT OF HER COLLEAGUES, YOUR HONOR, SO WE WILL BE IN TOUCH.
15             THE COURT:  OKAY.
16             MR. GELERNT HAS BEEN SITTING VERY QUIETLY.  THIS IS
17   NOT YOUR CASE, BUT IS THERE ANY COMMENT OR OBSERVATION,
18   CONCERNS?
19             MR. GELERNT:  NO, YOUR HONOR.  I THINK WE WILL LET
20   THEM WORK IT OUT TOGETHER.
21             THE COURT:  OKAY.  I THINK WE WILL SIGN OFF.
22             AND I WILL ASK COUNSEL TO MEET AND CONFER RIGHT
23   AWAY, AND I WILL WAIT TO HEAR FROM COUNSEL.  OKAY.  THANK YOU.
24
25                            *   *   *
```

JULY 24, 2018

1

2          I CERTIFY THAT THE FOREGOING IS A CORRECT

3      TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
       IN THE ABOVE-ENTITLED MATTER.
4
       S/LEEANN PENCE                    3/3/2018
5      LEEANN PENCE, OFFICIAL COURT REPORTER    DATE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JULY 24, 2018