The Honorable Marsha J. Pechman

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

STATE OF WASHINGTON, et al.,

              Plaintiffs,

     v.

THE UNITED STATES OF AMERICA;
DONALD TRUMP, in his official capacity as
President of the United States of America,
et al.,

              Defendants.

NO. 2:18-cv-00939-MJP

INITIAL JOINT STATUS REPORT

## INTRODUCTION

Counsel for the State of Washington (on behalf of all Plaintiff States) and Counsel for

Defendants conferred telephonically and via email on **July 23, 2018, July 25, 2018,** and **July**

**26, 2018** pursuant to the Court's Order on Plaintiffs' Motion for Expedited Discovery and

Regular Status Conferences (Dkt. 32) ("Order"), and now together submit this Initial Joint

Status Report and their respective positions on the issues the Court asked the parties to

address concerning "the posture of the case as it currently stands," "a prioritized list of

discovery topics with a proposed timetable for completion," and "an agenda of items for

discussion at the initial conference." Order at 10.

1

**1.      Statement regarding the posture of the case as it currently stands.**

**Status of case:**  The Plaintiff States filed this matter on June 26, 2018.  They moved for expedited discovery and regular status conferences on July 2, 2018, which motion the Court granted in part on July 19, 2018.  Defendants filed a motion to dismiss, transfer, or stay on July 11, 2018, which remains pending.

The States believe that this case is complex, but that the issues are primarily legal and that they can be presented for the Court's decision before the end of this year, after a brief period of expedited discovery.  The States propose a period for expedited discovery ending in late September, followed by dispositive motions on a fall 2018 briefing schedule to be proposed by the parties for the Court's consideration.

The States note that the parties conferred by phone on Monday July 23, 2018, at which time the States requested information about the content of the *Ms. L* discovery and whether it would address their requests, as well as information about the *Ms. L* protective order.  The States provided Defendants with a draft Joint Status Report with their position on the issues addressed below and their proposed set of discovery the next day.  The parties again conferred on by phone on Wednesday, July 25, 2018, and the States provided Defendants with a revised Joint Status Report, including the specific information submitted by the States below regarding their discovery priorities and the narrowing efforts they undertook.  The States note that Defendants did not provide them with any of the specific information included in their position statement in Section 2 ("prioritized list of discovery topics with a proposed timetable for completion") until shortly before 9:00 am on Thursday, July 26, 2018.  At that time, the Defendants provided a draft of their position statement for

Section 2, without any of Defendants' cited materials in that section, including declarations and the Ms. L protective order. As a result, the States have been unable to evaluate the factual claims made by Defendants in Section 2. As of this filing, Defendants have not provided the requested information about the content of the Ms. L discovery or submitted a draft protective order for the States' review.

Defendants believe that there are dispositive issues involved in this case that are primarily legal but not particularly complex factually. Defendants intend to file a dispositive Rule 12 motion very soon. Regardless, Defendants believe this matter largely overlaps with *Ms. L. v. ICE*, No. 18-cv-428 (S.D. Cal.) and that the discovery the Plaintiffs envision will substantially detract from the federal government's compliance efforts in that case. Defendants consequently sought Plaintiffs' agreement to stay this litigation for the next two weeks to allow the Government to prioritize reunification efforts, but that Plaintiffs oppose that request.

Defendants also note that they did not receive any of Plaintiffs documents until 11:42 PM Eastern time on Tuesday, July 24, and thus have had very little time to confer with the relevant agency personnel—who are expending their resources complying with deadlines in the *Ms. L* litigation—including conferring on the proposed scope and burden of Plaintiffs requests for immediate discovery. The parties in fact conferred concerning when the Government would be able to provide Plaintiffs with their portions of this pleading, and Defendants have provided Plaintiffs with as much information as they could promptly, including laying out their position by phone on the proper scope of discovery and the burdens the relevant agencies were enduring during compliance with *Ms. L.*'s injunction that further

INITIAL JOINT STATUS REPORT
2:18-cv-00939-MJP

3

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   discovery here would impact. Defendants proposed jointly asking the Court for a few more

2   hours to file this document so that Plaintiffs could have more time to review the factual

3   representation of Defendants but they declined to join such a motion. Defendants certainly

4   would not oppose a delay in proceedings to provide Plaintiffs with any time they believe they

5   need to review Defendants positions further.

6   **2.      Prioritized list of discovery topics with a proposed timetable for completion:**

7   <u>**Plaintiffs' Position**</u>

8          Plaintiffs propose the following expedited discovery plan:

9   **A.**    The parties telephonically conferred on July 23, 2018 regarding the Court's

10         order allowing expedited discovery, and again on July 25 and July 26, 2018.

11  **B.**    The States request leave to serve Defendants with immediate written discovery

12         regarding 1) persons subjected to family separation and the progress of

13         reunification efforts; 2) the justification for the family separation policy and

14         directives regarding it to those Defendant employees charged with

15         implementation, oversight and/or tracking the individuals affected by it; 3) the

16         justification for a family detention policy and the implementation of same; and

17         4) directives to Defendant employees at Southwestern border ports of entry to

18         turn away or "meter" asylum applicants, and documents reflecting Defendants'

19         knowledge of this practice.  The Plaintiff States' proposed First Set of Requests

20         for Expedited Discovery, which was provided to Defendants' counsel on July

21         24, 2018, is attached as **Exhibit A**.

22

23

24

INITIAL JOINT STATUS REPORT                      4                    ATTORNEY GENERAL OF WASHINGTON
2:18-cv-00939-MJP                                                              800 Fifth Avenue. Suite 2000
                                                                               Seattle, WA  98104-3188
                                                                                 (206) 464-7744

By its Order on Motion for Expedited Discovery and Regular Status Conferences, Dkt. No. 32 at 9-10, the Court directed the States to prioritize the discovery topics listed in Appendix A of the States' Motion. Accordingly, as reflected in their First Set of Requests for Expedited Discovery, the States have prioritized and limited their discovery requests by:

- Limiting discovery requests to twelve Requests for Production under Federal Rule of Civil Procedure 34, and deferring the issuance of Interrogatories, Requests for Admission, and notices or subpoenas for deposition under Federal Rules of Civil Procedure 30, 33, 36 and 45.

- Prioritizing documents containing up-to-date information about separated parents and children, including their locations, well-being, and Defendants' efforts to reunite them. (Exhibit A, RFP Nos. 1-3, 7).

- Seeking to minimize the burden to Defendants by allowing them to respond to seven out of the twelve proposed Requests for Production by producing the same materials already produced in *Ms. L*, provided that those materials provide the information sought by the States, including information about the separated children whose rights are not represented directly in *Ms. L*. (Exhibit A, RFP Nos. 1-7).  (At the time of the parties' conference on June 23, 2018, counsel for Defendants did not yet have information about the content of documents already provided to the *Ms. L* plaintiffs.)

- Prioritizing discovery on the States' claims that are not being litigated in the *Ms. L* action. (Appendix A, RFP Nos. 8-12).

- Limiting the Requests for Production to documents concerning official justifications and implementation directives for the family separation and family detention policies, or components thereof, and deferring any broader "all documents" requests or requests for information specific to the history or development of those policies. (Exhibit A, RFP Nos. 4, 5, 9, 11).

**C.** The States propose that the responses to their First Set of Requests for Expedited Discovery be due on August 3, 2018. Assuming that Defendants are able to produce complete responsive materials at that time, the States will confer with Defendants and determine what, if any, additional written discovery is necessary and confer regarding a schedule for all other discovery, if necessary.

**D.** The States recognize Defendants' desire to reduce the burdens of discovery and, consistent with the Court's Order on Motion for Expedited Discovery and Regular Status Conferences, have proposed the following additional measures to ameliorate those burdens:

- Production to the States of the materials that have been/will be produced in the matter of *Ms. L., et al. v. ICE, et al.*, Case No. 18cv-0428 DMS (MDD) (S.D. Cal.). The States understand that this material will

INITIAL JOINT STATUS REPORT
2:18-cv-00939-MJP

6

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

address, at least in part, their requests for information regarding separated family members and the reunification process;

- The States requested on July 23, 2018 a form of stipulated protective order from Defendants to address any privacy concerns related to production of the *Ms. L* material;

- The States intend to offer Defendants stipulations that would obviate the need for discovery into discrete topics, for example, a stipulation that parents separated from their children after entering along the Southwestern border were not provided a hearing on parental fitness/best interests of the child prior to separation;

- The States propose reducing the number of depositions in this case to 5 per side, absent agreement of the parties or further order of the Court.

**Defendants' Position**

Defendants reiterate their position that any discovery in this case is inappropriate while their motion to transfer or dismiss based on comity considerations, Dkt. 22, remains pending. That motion raises threshold justiciability issues, as well as principles of comity that this Court should resolve prior to the commencement of any discovery. Furthermore, Defendants have asked Plaintiffs for a stay of this litigation for two weeks while reunification efforts are still ongoing in *Ms. L.* and Defendants' intent to file a formal Rule 12 Motion to Dismiss Plaintiffs' claims in the near future. This should provide even more reason to refrain from discovery, expedited or otherwise, in whole or in part until the motions are resolved.

INITIAL JOINT STATUS REPORT
2:18-cv-00939-MJP

7

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

As an initial matter, a crucial threshold determination that must be determined is the States' standing in this case. Case law is clear that States have no legally protected interest in avoiding the incidental effects of the federal government's actions affecting individuals subjected to federal regulation who may eventually arrive in that State or who are in federal custody within the State's boundaries. *See, e.g.*, *Massachusetts v. Mellon*, 262 U.S. 447, 485–86 (1923) ("[I]t is no part of [a State's] duty or power to enforce [its citizens'] rights in respect of their relations with the federal government. In that field it is the United States, and not the state, which represents them as parens patriae."). Nor can the States rely on the legal rights or interests of third parties they allege are impacted by Defendants' enforcement actions, none of whom the States have alleged a close relationship with to support third-party standing. *See, e.g.*, *Voigt v. Savell*, 70 F.3d 1552, 1565 (9th Cir. 1995). The mere fact that an individual *might* be housed within a State's territory does not somehow create a close relationship where those individuals are subject to *federal* custody and control. *See* 6 U.S.C. §§ 279, 1232(d)(5). Nonetheless, even if the States had standing based on their asserted interests in licensing out-of-home facilities or policies on family unity, which they do not, they have no basis to assert any due process rights of individuals, and they have no cause of action under the APA or INA to challenge the specific policies and practices at issue here. *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 897 (1984) (third parties have "no judicially cognizable interest in procuring enforcement of the immigration laws" affecting someone else); *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005) (APA zone of interests test requires plaintiff to show that "the [actions] in question are *designed* to protect [or regulate] some . . . concrete interest of *his* that is the ultimate basis of his standing"). The law is clear that detention and removal of aliens

INITIAL JOINT STATUS REPORT
2:18-cv-00939-MJP

8

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    taken into federal custody is exclusively a federal function. *See Arizona v. United States*, 132

2    S. Ct. 2492, 2498 (2012); *cf. In re Tarble*, 80 U.S. 397, 407-08 (1871).

3         Although Plaintiffs have represented that the basis for their expedited discovery is the

4    need to "obtain and preserve evidence," Dkt 15-1, as to their claims because of the risk that

5    such evidence may no longer be present if they must wait until normal discovery processes

6    begin, they now seek discovery far broader in scope than anything that can be justified on the

7    basis of an emergent need to obtain and preserve evidence. Defendants dispute that Plaintiffs

8    have met their high burden of demonstrating any "legitimate[] fear[] that information" concerning

9    any of the challenged practices in this case or the location of relevant individuals "faces imminent

10   destruction." *Music Grp. Macao Commercial Offshore Ltd. v. John Does I-IX*, No. 14-CV-621

11   RSM, 2014 WL 11010724, at *2 (W.D. Wash. July 18, 2014). The United States is fully

12   complying with its preservation obligations in connection with this and other related

13   litigations, and whatever concerns Plaintiffs may have about spoliation is purely speculative,

14   and is generally of minimal relevance in litigation involving governmental entities. But even

15   assuming they had, the Plaintiffs' envisioned expedited discovery is even more inappropriate

16   given their failure to "prioritize[]" any of their topics, Order at 9, or "narrowly tailor[]" them to

17   the circumstances this Court found to justify expedited discovery. *Music Grp.*, 2014 WL

18   11010724 at *2. As explained below, such broad discovery, unmoored from the professed

19   exigency, fails that standard, and more importantly "prejudice[s] the responding party"

20   significantly by interposing Plaintiffs in this case between the parties in *Ms. L.*, who are

21   actively engaged in compliance with a court order designed to reunite the parents and children

22   the Plaintiffs in this case profess to likewise seek to reunite. *Id.*

23

24

In addition, as this Court has noted, the topics for which Plaintiffs seek expedited discovery "do not appear to have equal weight when it comes to the necessity for a swift response in the discovery process." Dkt 27 at 9. Although the Court ordered Plaintiffs to prioritize those topics, *see id.*, they still have not shared with Defendants their proposed prioritization of expedited-discovery topics. Instead, they have sent Defendants twelve proposed Requests for Production, with multiple subparts to several requests, many of which are new and broader than what they proposed in Appendix A, which they indicate are *all* a priority, and with an identical proposed deadline of just one week. And while their proposed requests appear to mostly mirror Appendix A, some are new and Plaintiffs have failed to provide any discernible indication of priority within these requests. Without any of the prioritization of discovery categories that this Court ordered, Defendants instead offer their views on the appropriate prioritization:

A.      Plaintiffs' requests encompass several categories of information. The first is for documents that have been provided to class counsel in the *Ms. L.* matter. If any expedited discovery is to be granted, it should be limited to this information, although there is no suggestion these documents are in any risk of being destroyed or moved and Defendants are undertaking preservation efforts. In any event, the Plaintiffs should first be obligated to request this information from the *Ms. L.* class counsel. Since *Ms. L* class counsel is certified to represent the class on a nationwide basis, and the information being provided to them is highly sensitive personal identifying information about their class members and their children, consent from the *Ms. L.* class counsel should be obtained by Plaintiffs here before that information is provided to them. The Plaintiffs seemingly do not care about this concern.

The Plaintiffs allege that they are acting in the interest of the individuals represented by the *Ms. L.* class counsel and that plaintiff class's their children. But it is not clear how they can properly claim to represent those interests when class counsel has been appointed, on a nationwide basis, by another court. The duties of class counsel include both "loyalty and confidentiality" to all class members, *Andrews Farms v. Calcot, LTD*., No. 07-cv-0464, 2010 WL 3341963, at *8 (E.D. Cal. Aug. 23, 2010), and "fiduciary duties," *Gilmore v. California*, No. 66-cv-45878, 2007 WL 2127843, at *1 (N.D. Cal. July 25, 2007), among others. These are duties that the Plaintiffs' counsel here categorically lack with respect to the *Ms. L.* parents and children whose interests they ostensibly seek to represent. And there are sure to be a number of conflicts presented by the Plaintiffs purporting to act on behalf of the certified class—for example, the Plaintiff States have an obligation and duty to enforce their own state (or District) laws, and enforcement of those laws may present conflicts between the Plaintiffs and their purported actions on behalf of the class. Providing personal *Ms. L.* class-member information to the Plaintiffs here runs headlong into those conflicts. Indeed, to take but one example, the lead Plaintiffs' Attorney General's responsibility is to enforce the laws of Washington State, not to represent individuals. The Washington Attorney General is thus not well-suited, nor even authorized by statute to represent the interests of parents and children and to track down parents and children for reunification. In fact, his office explicitly disclaims any authority to represent the interests of "private citizens on personal legal matters," *see What the Attorney General's Office DOES NOT do,* https://www.atg.wa.gov/roles-office, which reunification with one's child undoubtedly is, and would be unable as an ethical or legal matter to serve as class counsel on behalf of the parents and children in *Ms. L.*, for whom that case's class

INITIAL JOINT STATUS REPORT
2:18-cv-00939-MJP

11

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

counsel has been working diligently to reunify in line with Judge Sabraw's order. Defendants believe similar limitations and conflicts would also be presented by the other State Plaintiffs.

The sensitive personal information concerning class members is protected by statute or regulation. *See, e.g.*, 8 C.F.R. §§ 208.6(a), 1208.6(a) (prohibiting the federal government, in multiple contexts, from disclosing records pertaining to aliens' asylum applications, credible-fear determinations, or reasonable-fear determinations); *see also Owino v. Holder*, 771 F.3d 527, 535–36, 539 (9th Cir. 2014) (per curiam) (noting how the federal government should not breach an alien's personal "right to confidentiality"). For example, the sensitive information at issue here could tend to reveal whether individuals have claimed a credible fear of persecution or applied for asylum—but this information is protected from disclosure by federal regulations. *See id.*

In somewhat similar circumstances, immigration advocates and the federal government strongly resisted a sanctions order that would have required the federal government provide a "list [of Deferred Action for Childhood Arrival recipients that] ... should include all personal identifiers and locators including names, addresses, "A" file numbers and all available contact information." *See Texas v. United States*, 2016 WL 3211803, at *12 (S.D. Tex. May 19, 2016). That information would have been held under seal, but be made available to "Plaintiff State[s] .... [upon] a showing of good cause." *Id.* The federal government then sought mandamus relief from that order, explaining how "the production of sensitive personally identifying information for approximately 50,000 individuals for the purpose of potential further transmission to plaintiffs [States] would ... undermine the confidence of individuals in the preservation of confidential information submitted to [the federal government] for specified

INITIAL JOINT STATUS REPORT
2:18-cv-00939-MJP

12

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

purposes, and, if dissemination is permitted, expose these individuals to an irremediable invasion of their privacy." *See In re United States*, No. 16-40795, United States' Petition for a Writ of Mandamus, (5th Cir. June 3, 2016) Fifth Circuit Mandamus Petition, at 30, https://www.nilc.org/wp-content/uploads/2016/06/TX-v-US-Govt-Mandamus-Petition-2016-06.pdf. As a result, the district court stayed, and then withdrew, its previous order requiring that personally identifying information in DHS files be provided to the plaintiff States. *See Texas v. United States*, No. 14-cv-254, Order, Dkt. 434 (S.D. Tex. Jan. 19, 2017) (concluding that there was "no current need for the [federal government] to file with the Court the personnel identifiers").

It is also protected by a protective order entered into in *Ms. L.* The protective order in that case, attached hereto as Exhibit B, specifies who may be provided with confidential, protected material. Notably, the *Ms. L.* class counsel and the federal government agreed that individuals and organizations who were designated for the purpose of facilitating reunification may have access to the protected material. The Plaintiffs here have not been so designated, and their efforts before this Court—including this expansive expedited discovery request in the midst of the reunification efforts—appear to be aimed at complicating and slowing down that process, rather than serving the people on whose behalf they purport to be acting.

Moreover, the information shared with class counsel in *Ms. L.* was created for the *purpose* of complying with the preliminary injunction in that case—a function that is being ably administered by Judge Sabraw. It is unclear what the Plaintiffs would be doing with the information in this litigation—they have not sought to participate in the reunification efforts in the Southern District of California. Indeed, if the Plaintiffs' claims were valid, they would be

INITIAL JOINT STATUS REPORT
2:18-cv-00939-MJP

13

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

subject to mandatory joinder in *Ms. L.* because the States "claim[] an interest relating to the subject of the action and ... disposing of the action in the person's absence may ... as a practical matter impair or impede the person's ability to protect the interest" and would certainly "leave an existing party"—the United States as well as the *Ms. L.* plaintiffs—"subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(b)(1). Indeed, if they were truly interested in pursuing these claims on the merits, it is unusual that they would pick a forum new to the issues, rather than a forum (located in one of the Plaintiff States, no less) that has already carefully considered the issues for a period of months, addressed the legal claims in denying in part a motion to dismiss, certified a class of the people the Plaintiffs purport to represent, held that they are likely to succeed on the merits of some of their claims, and is busy administering a comprehensive remedy that the Plaintiffs claim to be seeking in this Court.

What is most outrageous about Plaintiffs' expedited discovery requests is its timing—in the midst of Judge Sabraw's rapid management of the reunification process. If Plaintiffs were truly interested in the reunification of families, they would let Judge Sabraw finish the job. Instead, they propose that Defendants respond to their proposed discovery requests within *one week*—a week in which some of the most important reunification work in *Ms. L.* will be taking place. Information exchanges between the federal government and the *Ms. L.* class counsel during that period will be critical to the determination of class membership, the reunification of class members who were removed, and the handling class members recently reunified and in detention with final orders of removal. Declaration of David W. Jennings at ¶¶ 7, 9–11. Expedited discovery in this case on that time frame—conducted outside of the able supervision

INITIAL JOINT STATUS REPORT
2:18-cv-00939-MJP

14

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

of Judge Sabraw—would work to detract from the virtually night and day work that the agencies are doing, under the supervision of Judge Sabraw, to reunify families. The Plaintiffs completely disregard this effort in seeking expansive discovery in the midst of this multi-agency effort to implement Judge Sabraw's order that provides relief to the group the States purport to represent.

2.      Under no circumstances should expedited discovery be granted that goes beyond the information being provided in the *Ms. L.* class action.

Although Plaintiffs represent that they have attempted to narrow their requests by asking for the information provided in *Ms. L*, it is clear that they intend their responses to be read to encompass far more information than what has been provided in *Ms. L*. Indeed, in several instances their requests read "to the extent such documents are not already identified and produced" where the first of their twelve requests seeks all the information provided in *Ms. L*. Everything else is in addition to that. And contrary to the claim they need this real-time, current information to avoid spoliation, Plaintiffs request information dating back to the beginning of the year, in formats that the federal government does not maintain when implementing Judge Sabraw's orders in *Ms. L.* or administering the Unaccompanied Alien Children program in the ordinary course. *See* Declaration of Jonathan White at ¶¶ 5–6. *Moreover, Plaintiffs seek such information for parents and children who have already been reunified.* Plaintiffs cannot possibly vindicate the interests of parents and children who have already received the relief the parents sought in court—and if the parents were to seek additional relief, it should come that request should come from the certified class, not Plaintiff States. Requiring Defendants to provide customized reporting on parents, children, and

reunifications to the Plaintiffs—especially for parents and children who have already been reunified, let alone by month, facility, and state going back to January 1, 2018—would be unduly burdensome to all agencies involved, is not needed on an expedited basis, and would seriously impede the agencies' ability to complete the remaining reunifications quickly. *See id.* at ¶¶ 29–30; Jennings Declaration, at ¶ 23.

Given the time constraints implicit in any expedited discovery situation, and particularly the instant situation where the important work of reunification is ongoing, Defendants submit that the information already provided to class counsel in *Ms. L.* would be the least burdensome information to produce to Plaintiffs. And, of course, any production should be conditioned upon the entry of an appropriate protective order, but Defendants are confident that one can be negotiated and entered into expeditiously. Indeed, it is the only practical solution in the time frame Plaintiffs have proposed for expedited discovery. Most importantly, the production of the information from Ms. L., along with the production of the blank forms presently used by the agencies for reunification, is the only expedited discovery that can be produced without an adverse impact on the ongoing Ms. L reunification and compliance. And production should only happen with the consent and approval of *Ms. L.* class counsel. Thus, Defendants request that the Court limit the entry of expedited discovery to this material, upon consent of the *Ms. L.* class counsel.[1]

B.      A second category of information the Plaintiffs seek includes both aggregated and individualized information spanning each and every separated child and parent, including

---

[1] Indeed, with respect to two related cases, including another class action, involving the children whose interests the States purport to represent, *N.T.C. v. ICE*, No. 18-cv-6428, 2018 WL 3472544 (S.D.N.Y. July 19, 2018), *E.S.R.B. v. Sessions,* No. 18-cv-6654, slip op. (S.D.N.Y. July 24, 2018), both judges, with the parties' consent consulted with Judge Sabraw in order to ensure coordination in light of these issues. *See* Dkt. 35 at 2-3.

INITIAL JOINT STATUS REPORT
2:18-cv-00939-MJP

16

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

the total number, location, conditions of release, DHS' reunification plan, and the current location of every separated parent and child, dating back to the beginning of the year. Again, there no suggestion, and no showing has been made, that such information is at any risk of being destroyed or moved, and that is especially so here where litigation holds have been issued to relevant agencies concerning those very documents. Moreover, much of that information duplicates the information provided in *Ms. L.*, and requiring a separate production of these categories of material would require extensive work by the same information experts and personnel who are critical to the *Ms. L.* reporting and reunification efforts.

Such discovery presents an overwhelming burden because, to the extent it goes beyond the information being produced in *Ms. L.*, it can only be done with a manual search of records. HHS has estimated that it would take more than 2,000 hours to generate the kind of information sought by Plaintiffs. *See* White Declaration, at ¶ 16. The necessity of manual searches requiring many thousands of man hours to respond to the proposed discovery is a reality for each of the agencies at issue. For example, ICE cannot run a search for "conditions of release" for a category of individuals. Therefore, to provide such information would require a painstaking, individual, case by case review. *See* Jennings Declaration, at ¶¶ 11, 15. Furthermore, because the information is not kept in the kind of format sought by Plaintiffs, it would require the agencies to create a spreadsheet or database to produce this information for hundreds of children and families, adding to the burdensome nature of the request. *See id.* at ¶¶ 12–13.

In addition, some of the information sought is simply not available to the agencies. For example, ICE may not know the current location of aliens who have been released. *See id.* at

¶ 15. To the extent ICE has any information, it may simply be the last known address, and would again involve manual records review of individual files to produce this information. *Id.* And all of HHS's resources, including their "surge" capacity, have been deployed to devote to ensuring compliance in the *Ms. L.* case. Simply put "HHS does not have additional 'surge' resources or personnel available to deploy in order to fulfill expedited discovery requests," to the extent it is not what has already been generated by *Ms. L. See* White Declaration at ¶ 13. Thus, to require HHS and ORR to provide information pursuant to such request would be extremely burdensome and counterproductive to the reunification of children and parents as is mandated by *Ms. L. See id.*; *see also Ms. L.*, Transcript of Proceedings, at 35 (S.D. Cal. July 24, 2018) (noting how HHS's efforts to accomplish reunification with their "surge" personnel thus far have been a "remarkable achievement").

The third category of information pertains to documents, directives, and forms. Specifically, Plaintiffs request directives regarding the "treatment" of separated children, documents regarding the "justification" for vetting sponsors, prerequisites to reunification, the rollout of family separation, the justification for the use of a certain form, hearings on parental fitness, the alleged refusal to permit asylum seekers to present themselves at ports of entry, family detention, and the DHS "Northern Border Strategy." There is no need for expedited discovery on these matters. This information presents no risk that "the evidence sought may be moved or become difficult to track as time goes on." Order, Dkt. 27 at 5. Policies, directives, forms, and other documents, even if they may change, are not at risk of being destroyed or moved, and that is especially so here where the agencies are undertaking efforts to preserve those very documents. Importantly, to divert agency resources towards burdensome discovery

INITIAL JOINT STATUS REPORT
2:18-cv-00939-MJP

18

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

of non-exigent matters at this time would seriously impair the critical work being done at multiple agencies to accomplish the relief that Plaintiffs allegedly seek—to reunify families. As we have explained, it makes no sense that if the goal of this suit is the reunification of families, that Plaintiffs reject pursuing their claims and seeking discovery before the *Ms. L.* court, which could efficiently manage both the claims in this lawsuit as well as ensure these claims and discovery requests would not impair the relief being granted and implemented to the certified class in *Ms. L.*

C.      **Proposed Agenda for Initial Status Conference:**

**Plaintiffs' Position**

A.      The Plaintiff States propose that the initial status conference address the States' proposed expedited discovery and the timing for responses to same, the States' request for the additional orders noted below, and the schedule for status conferences going forward.

B.      The States seek an order permitting them to serve their initial discovery on July 27, 2018, following the status conference and in compliance with any orders issued by the Court during the conference.

C.      The States further request that the Court enter an order allowing for telephonic hearing attendance by Plaintiff States other than Washington; provided that the State of Washington will attend all hearings in person and is authorized to act on behalf of the Plaintiff States at such hearings.

INITIAL JOINT STATUS REPORT
2:18-cv-00939-MJP

19

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

**Defendants' Position**

Defendants propose addressing the following items at the July 27, 2018 status conference:

- Developments in *Ms. L.* concerning compliance with that court's injunction, ongoing efforts to reunify children with parents, and overlap between that case and this one.

- The potential impact of parallel proceedings and discovery in this case on ongoing efforts to reunify families in *Ms. L.*

- The impact on *Ms. L.* and this case of the recent decisions by two district courts in New York to transfer a putative class action and a related case concerning children seeking reunification with their parents to the Southern District of California. *See N.T.C. v. ICE*, No. 18-cv-6428, 2018 WL 3472544 (S.D.N.Y. July 19, 2018) (Dkt. 33-1) and *E.S.R.B. v. Sessions*, No. 18-cv-6654, slip op. (S.D.N.Y. July 24, 2018).

- An expedited briefing schedule for the Defendants' impending Rule 12 motion to dismiss.

- The Defendants' pending transfer motion.

- The Defendants' request to stay this litigation to allow for *Ms. L.* compliance efforts to be prioritized.

- Scheduling of subsequent status conferences in this case.

- Coordination between this Court and Judge Sabraw in the Southern District of California in the event parallel discovery proceeds. As Judges Furman and Rakoff did with the parties consent in *N.T.C.* and *E.S.R.B.*, Defendants believe it may be worthwhile for this Court to confer with Judge Sabraw concerning any overlap with

INITIAL JOINT STATUS REPORT
2:18-cv-00939-MJP

20

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  the *Ms. L.* litigation and ongoing compliance with the injunction in that case and

2  would not object to that occurring. Defendants have conferred with Plaintiffs'

3  counsel, who indicate they "have no objection to the Court managing its caseload and

4  docket as it deems appropriate" in this case.

5  DATED this 26th day of July, 2018.

6

7                                             /s/ *Laura K. Clinton*
                                              LAURA K. CLINTON, WSBA #29846
8                                             Assistant Attorney General
                                              NOAH G. PURCELL, WSBA #43492
9                                             Solicitor General
                                              COLLEEN M. MELODY, WSBA #42275
10                                            Civil Rights Division Chief
                                              REBECCA GLASGOW, WSBA #32886
11                                            Deputy Solicitor General
                                              MEGAN D. LIN, WSBA #53716
12                                            Assistant Attorney General
                                              Attorneys for Plaintiff State of Washington
13

14                                            /s/ Joshua Press
                                              CHAD READLER
15                                            Acting Assistant Attorney General
                                              AUGUST E. FLENTJE
16                                            Special Counsel to the Assistant Attorney
                                              General
17                                            WILLIAM C. PEACHEY
                                              Director
18                                            EREZ REUVENI
                                              Assistant Director
19                                            JOSHUA S. PRESS
                                              NICOLE MURLEY
20                                            Trial Attorneys
                                              Attorneys for Defendants
21

22

23

24

INITIAL JOINT STATUS REPORT                   21          ATTORNEY GENERAL OF WASHINGTON
2:18-cv-00939-MJP                                                   800 Fifth Avenue. Suite 2000
                                                                    Seattle, WA  98104-3188
                                                                        (206) 464-7744

# Exhibit A

1
2
3
4
5
6

The Honorable Marsha J. Pechman

7
8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

9

STATE OF WASHINGTON, et al.,

NO. 2:18-cv-00939-MJP

10

Plaintiffs,

11

v.

12
13
14

THE UNITED STATES OF AMERICA;
DONALD TRUMP, in his official capacity as
President of the United States of America,
et al.,

15

Defendants.

PLAINTIFF STATES' FIRST SET OF
DISCOVERY REQUESTS FOR
EXPEDITED DISCOVERY

16

TO:      THE UNITED STATES OF AMERICA; DONALD TRUMP, in his official

17

capacity as President of the United States of America; U.S. DEPARTMENT OF

18

HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS

19

ENFORCEMENT; U.S. CUSTOMS AND BORDER PROTECTION; U.S.

20

CITIZENSHIP AND IMMIGRATION SERVICES; U.S. DEPARTMENT OF

21

HEALTH AND HUMAN SERVICES; OFFICE OF REFUGEE

22

RESETTLEMENT; KIRSTJEN NIELSEN, in her official capacity as Secretary

23

of the U.S. Department of Homeland Security; THOMAS HOMAN, in his

24

PLAINTIFFS' FIRST SET OF
DISCOVERY REQUESTS FOR
EXPEDITED DISCOVERY
2:18-cv-00939-MJP

1

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

official capacity as Acting Director of U.S. Immigration and Customs Enforcement; KEVIN K. MCALEENAN, in his official capacity as Commissioner of U.S. Customs and Border Protection; ALEX AZAR, in his official capacity as Secretary of U.S. Department of Health and Human Services; SCOTT LLOYD, in his official capacity as Director of Office of Refugee Resettlement; and JEFFERSON BEAUREGARD SESSIONS III, in his official capacity as the Attorney General of the United States, Defendants;

AND TO:      JOSHUA S. PRESS, Attorney for Defendants.

## I.   INSTRUCTIONS

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs hereby request that Defendants produce the following documents and electronically stored information for inspection and copying within the time ordered by the Court to the office of Laura K. Clinton, Assistant Attorney General, Office of the Attorney General, 800 Fifth Avenue, Suite 2000, Seattle, Washington 98104-3811, or at such other place as the parties shall mutually agree. Electronic documents may be produced in PDF format or as a printed record.

For each document that you assert is privileged or otherwise excludable from discovery, please provide the following information: the author(s), the recipient(s), all copy recipients, the date, the type of document (memorandum, e-mail, letter, chart, photograph, etc.), a description of the document, the privilege being claimed, and the grounds for the privilege claim.

If any request for production seeks information in any document formerly in your possession, custody, or control that has been discarded, misplaced, lost, destroyed, or otherwise placed outside your custody or control, identify the document and describe its contents in detail and state when the document was discarded, misplaced, lost, destroyed, or otherwise placed

PLAINTIFFS' FIRST SET OF
DISCOVERY REQUESTS FOR
EXPEDITED DISCOVERY
2:18-cv-00939-MJP

2

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

outside your custody or control. If the document was destroyed, identify each person with knowledge of its destruction, the person requesting or performing the destruction, the reasons for its destruction, and each document that refers or relates to either the existence or destruction of the document. For each document that was discarded, misplaced, lost, or otherwise placed outside your custody or control, explain all circumstances in relation to the loss of the document and identify each person with knowledge regarding those circumstances.

If you object to producing documents in response to any request for production, state your objection and all factual and legal bases for the objection.

These discovery requests are continuing in nature. If you discover additional or different information that is responsive to these discovery requests, you are required to provide supplemental responses in accordance with Federal Rules of Civil Procedure 26(e). If you do not provide the required supplemental information, the Plaintiffs may move at the time of trial to exclude from evidence any requested information and documents that were not timely furnished.

The singular shall include the plural and vice versa, and the conjunctive shall include the disjunctive and vice versa. Wherever used, references to the masculine, feminine, or neuter gender shall include the neuter, feminine, and masculine genders, as the context demands.

## II.    DEFINITIONS

The following definitions apply to following discovery requests:

The term "document" encompasses the broadest possible definition permitted under the Rules and specifically includes all written or recorded material of any kind or character in your possession, custody, or control or within your knowledge, including without limitation statements, letters, correspondence, telegrams, memoranda, notes, records, reports, studies, interoffice communications, calendar and diary entries, microfilm, bulletins, circulars,

PLAINTIFFS' FIRST SET OF
DISCOVERY REQUESTS FOR
EXPEDITED DISCOVERY
2:18-cv-00939-MJP

3

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

pamphlets, messages, invoices, maps, charts, tabulations, summaries or abstracts, video or audio recordings, work sheets, surveys, graphs, statistics, tables, photographs, rules, regulations, opinions, orders, interpretations, guidelines, electronic mail, any data or information stored or saved on any computer hard disk, floppy disk, tape, or other medium, any computer print-outs, computer software or code, whether in machine or human readable form on any medium, and all other documentary material, including non-identical copies (whether different from the original because of any alterations, notes, comments, or other material contained thereon or attached thereto or otherwise and whether a draft or final version).

The term "communication" means any transmission, disclosure or exchange of information or opinion, however made.

The term "concerning or relating to" to means referring to, evidencing, containing, discussing, mentioning, describing, reflecting, summarizing, constituting, identifying, memorializing, referring or pertaining to, studying, commenting or reporting on, or analyzing, in whole or in part

A "person" means any individual, corporation, partnership, association, or any other entity of any kind.

"You" and "your" mean any Defendants and any person acting or purporting to act on behalf of any of them, including without limitation all present and former employees, agents, representatives, personnel, attorneys, accountants, consultants, experts, investigators, or other persons.

"Separated Child" or "Separated Children" mean any child under the age of 18 who entered the United States along the U.S.-Mexico border at or between designated ports of entry with a parent or guardian, and who was separated from that parent or adult guardian by the

PLAINTIFFS' FIRST SET OF
DISCOVERY REQUESTS FOR
EXPEDITED DISCOVERY
2:18-cv-00939-MJP

4

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Department of Homeland Security (DHS) or any other Defendant without a determination that the parent or adult guardian is unfit or presents a danger to the child.

"Separated Parent" means any parent or guardian who entered the United States along the U.S.-Mexico border at or between designated ports of entry with a child under the age of 18, and who was separated from that child by DHS or any other Defendants without a determination that the parent or adult guardian is unfit or presents a danger to the child.

The "*Ms. L* Case" refers the matter *Ms. L., et al. v. U.S. Immigration and Customs Enforcement, et al.*, Case No. 18-cv-0428 DMS (MDD) (S.D. Cal.).

## III.    REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**  All documents provided to Plaintiffs' counsel or the court in the *Ms. L* Case concerning the separation of families and Defendants' attempts to reunite them.  For future productions of materials in the *Ms. L* Case, please produce such materials concurrently with, or within two business days after, production in *Ms. L*.

**REQUEST FOR PRODUCTION NO. 2:**  To the extent such documents are not already included and produced in response to Request for Production No. 1, documents sufficient to identify:

a)    The number and location of Separated Children placed by the Office of Refugee Resettlement (ORR) - or any other Defendant - in each Plaintiff State from January 1, 2018 to the present.

b)    The number and location of Separated Parents who are or were detained in each Plaintiff State from January 1, 2018 to the present, by month and facility.

c)    The number and location of Separated Parents in each Plaintiff State released from DHS custody from January 1, 2018 to the present, including the facility from which they were released, the conditions of release, and current location.

PLAINTIFFS' FIRST SET OF
DISCOVERY REQUESTS FOR
EXPEDITED DISCOVERY
2:18-cv-00939-MJP

5

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

d)   As to every Separated Parent who is present in any Plaintiff State (or who was present in a Plaintiff State on the day this lawsuit was filed) the location of that Parent's children and DHS' plan to reunify the Separated Parent with the child.

e)   As to every Separated Child who is present in any Plaintiff State (or who was present in a Plaintiff State on the day this lawsuit was filed), the current placement and location of every such child (e.g., living with a sponsor in Seattle, Washington), the location of that Separated Child's Separated Parent(s), and DHS' plan to reunify the Separated Child with the Separated Parent(s).

**REQUEST FOR PRODUCTION NO. 3:** To the extent such documents are not already included and produced in response to RFP No. 1, documents regarding Defendants' efforts to reunify families separated at the Southwestern border, including

a)   Directives regarding the treatment of Separated Children as Unaccompanied Minors as a matter of policy, and application of ORR's Unaccompanied Minor reunification policies to separated families;

b)   Documents concerning the justification and implementation directives for vetting "sponsors" of separated parents and/or children, including treating parents as sponsors unrelated to their children;

c)   Documents concerning financial and procedural prerequisites to reunification including the justification and implementation directives for requiring Separated Parents to comply with any financial or administrative requirements prior to reunifying them with their children, including paying for costs of reunification or submitting to fingerprinting;

d)   Documents sufficient to identify the number of Separated Parents who have been deported by Defendants without their children since January 1, 2018.

**REQUEST FOR PRODUCTION NO. 4:** To the extent such documents are not already included and produced in response to RFP No. 1, documents regarding the rollout and implementation of the family separation policy at the Southwestern border, including documents concerning the justification for such policy and directives to those who were charged with implementing, overseeing, and tracking the individuals affected by the policy.

PLAINTIFFS' FIRST SET OF
DISCOVERY REQUESTS FOR
EXPEDITED DISCOVERY
2:18-cv-00939-MJP

6

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

2      **REQUEST FOR PRODUCTION NO. 5:** To the extent such documents are not already

3      included and produced in response to RFP No. 1, documents concerning the justification for and

4      implementation of U.S. Immigration and Customs Enforcement's "Separated Parent's Removal

5      Form," Dkt. 27-1, Exhibit W, including the number of Separated Parents provided with such

6      form, the number of Separated Parents who signed such form, and the number of Separated

7      Parents who were deported after signing such form.

8

9      **REQUEST FOR PRODUCTION NO. 6:**  To the extent such documents are not already

10     included and produced in response to RFP No. 1, documents concerning whether hearings on

11     parental fitness were provided to Separated Parents prior to Defendants separating them from their

12     children.

13

14     **REQUEST FOR PRODUCTION NO. 7:**  To the extent such documents are not already

15     included and produced in response to RFP No. 1, documents sufficient to ascertain the number of

16     Separated Parents against whom an allegation of unfitness has been made, the number of such

17     Parents found to be unfit after judicial hearing, the number of child trafficking prosecutions or other

18     felony criminal charges brought against such parents in 2018, and the number of such prosecutions

19     that resulted in conviction.

20

21

22     **REQUEST FOR PRODUCTION NO. 8:**  Documents reflecting Defendants' knowledge

23     of the practice of refusing to permit persons who seek asylum to present themselves at valid ports

24     of entry along the U.S.-Mexico border, including discussion of "metering", numerical or space

PLAINTIFFS' FIRST SET OF
DISCOVERY REQUESTS FOR
EXPEDITED DISCOVERY
2:18-cv-00939-MJP

7

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

limits on asylum claims, administrative or other limits on asylum claim processing, or requiring asylum seekers to return to ports of entry at a later day or time, including any directives to Defendants' employees at the Southwestern border concerning same.

**REQUEST FOR PRODUCTION NO. 9:**  Documents concerning Defendants' pilot program separating families in the El Paso sector of the U.S.-Mexico border was alleged in paragraphs 45- 46 and 120 of the Complaint (Dkt. 1), including directives to Defendant employees charged with implementing and monitoring such program.

**REQUEST FOR PRODUCTION NO. 10:**  Documents concerning the implementation of a family detention policy, including information regarding potential sites within the Plaintiff States for family detention centers and any proposed or enacted regulatory changes related to family detention.

**REQUEST FOR PRODUCTION NO. 11:**  Documents concerning implementation of Defendants' "Northern Border Strategy" as alleged in paragraph 136 of the Complaint (Dkt. 1).

**REQUEST FOR PRODUCTION NO. 12:**  Documents, including medical studies, concerning any negative effects on psychological, emotional, and physical health, that family separation might have on Separated Children or Separated Parents.

PLAINTIFFS' FIRST SET OF
DISCOVERY REQUESTS FOR
EXPEDITED DISCOVERY
2:18-cv-00939-MJP

8

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

DATED this _____ day of July, 2018.


_____
NOAH G. PURCELL, WSBA #43492
Solicitor General
COLLEEN M. MELODY, WSBA #42275
Civil Rights Division Chief
LAURA K. CLINTON, WSBA #29846
MEGAN D. LIN, WSBA #53716
Assistant Attorneys General
Attorneys for Plaintiff State of Washington


## CERTIFICATION

The undersigned attorney certifies that he/she has read each response and objection to these discovery requests, and that to the best of his/her knowledge, information, and belief, formed after a reasonable inquiry, each is: (1) consistent with the Rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the costs of litigation; and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.

DATED this _____ day of _____, 20178


_____
ATTORNEY NAME, WSBA #
Attorneys for Plaintiffs

PLAINTIFFS' FIRST SET OF
DISCOVERY REQUESTS FOR
EXPEDITED DISCOVERY
2:18-cv-00939-MJP

9

# VERIFICATION

STATE OF WASHINGTON               )
                                  ) ss.
County of _____)

     I, _____, being first duly sworn, upon oath, state as follows:

     That I am a Defendant authorized to sign these Answers and Responses to the Plaintiffs' First Set of Discovery Requests for Expedited Discovery; that I have read the foregoing Interrogatories and Requests for Production and the Answers and Responses thereto, know the contents thereof, and swear that the foregoing are true and correct.

     DATED this _____ day of _____, 2018.


_____
By: _____
Defendant


     SUBSCRIBED AND SWORN to before me this ____ day of _____, 2018.


_____
NOTARY SIGNATURE

_____
NOTARY PRINTED NAME
Notary Public
State of Washington
My Commission Expires: _____

PLAINTIFFS' FIRST SET OF
DISCOVERY REQUESTS FOR
EXPEDITED DISCOVERY
2:18-cv-00939-MJP

10

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# Exhibit B

CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE N. MURLEY
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 616-047
Fax: (202) 616-8962

ADAM L. BRAVERMAN
Acting United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
CAROLINE J. PRIME
Assistant U.S. Attorney
California Bar No. 220000
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893

*Attorneys for Federal Respondents- Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L., et al., | ) |
| | ) |
| Plaintiffs/Petitioners | ) Case No.: 3:18-cv-00428-DMS |
| | ) |
| v. | ) |
| | ) |
| U.S. IMMIGRATION AND | ) |
| CUSTOMS ENFORCEMENT, et al., | ) |
| | ) |
| Respondents/Defendants. | ) |
| | ) |

**STIPULATION AND [PROPOSED] PROTECTIVE ORDER GOVERNING
THE HANDLING OF CONFIDENTIAL MATERIAL**

I.     Plaintiffs and Defendants (collective, the "Parties") in the above captioned action *Ms. L., et al., v. U.S. Immigration and Customs Enforcement, et al.*, Case No. 3:18-cv-00428-DMS ("Litigation" or "Action") recognize that information about putative or confirmed class members and their children exchanged by the Parties in the Litigation for the purpose of facilitating compliance with the Court's preliminary injunction order may include private information related to individuals in the custody and care of the United States Government and that such materials may reasonably, in good faith, be confidential and protected from disclosure to the public or to one or more of the Parties under Rule 26(c) of the Federal Rules of Civil Procedure.

II.     The Parties desire to enter into this stipulation to facilitate the exchange of documents and information while protecting against the unauthorized disclosure of confidential documents and information.

IV. The Parties believe good cause exists for approving the stipulation because it seeks to protect against injury caused by the dissemination of protected materials. The materials to be protected include personally identifiable information, the disclosure of which could be prohibited by the Privacy Act or other law. However, the Privacy Act provides, as an exception, that such materials may be released "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552a(b)(11). An order of this Court, therefore, would provide a basis for release of the requested materials pursuant to the Privacy Act and Fed. R. Civ. P. 26(c). The parties also seek to protect other personal information regarding putative or confirmed class members or their children.

## **Stipulation**

NOW, THEREFORE, the Parties stipulate and agree, through their undersigned counsel, to the following terms and conditions to govern the

production of information that the producing party reasonably and in good faith deems confidential, and request that the Court enter a protective order (hereafter "Protective Order" or "Order") consistent with the terms of this stipulation.

**1.     Scope.**  The following terms govern with respect to class information exchanged by the Parties in the Litigation for the purpose of facilitating compliance with the Court's preliminary injunction order (collectively "Protected Material").

**2.     Protected Material.**  The categories of Protected Material include:

**a.**     Information, documents or tangible things protected by the Privacy Act, 5 U.S.C. § 552a, *et seq.*, or information that would be covered by the Privacy Act if the subject of the information had been a U.S. citizen or a person lawfully admitted for permanent residence.

**b.**     Personally Identifying Information (PII), Protected Health Information (PHI), and any information that is protected or restricted from disclosure by statute or regulation.

**c.**     All other protected documents, information or tangible things not identified above that the parties agree in writing or the Court orders qualify for protection under Federal Rule of Civil Procedure 26(c).

**d.**     Defendants do not waive their right to assert other or further privileges over the information and redact such information.   For instance, Defendants may withhold or redact information that is protected by statute for which no exceptions permitting disclosure apply or exist or information that is subject to a claim of privilege or exemption from disclosure such as withholding classified national security information the Deliberative Process Privilege, Law Enforcement Privilege, Attorney-Client Privilege or Attorney Work Product.

**3. Designations.**  It shall be the duty of the party producing the Protected Material ("Producing Party") to give notice of material that is to be considered covered by this Protective Order in the manner set forth in paragraphs 5, 8 and 11 below.  Protected Material may be designated as "PROTECTED MATERIAL" if

the Producing Party believes in good faith that such material is covered by this Protective Order. A Party may designate material that it obtained from a Third Party pursuant to this Protective Order, if it believes in good faith that it qualifies as Protected Material under this Order.

**4.** **Duties.** The duty of the Party or Parties receiving the Protected Material ("Receiving Party") and of all other persons bound by this Protective Order to maintain the confidentiality of Protected Material so designated shall commence with such notice. Protected Material shall be designated by the Producing Party, subject to the provisions of this Order, with the designation of "PROTECTED MATERIAL." No person subject to this Protective Order may disclose, in public or private, any Protected Material designated by a Party as "PROTECTED MATERIAL," except as provided for in this Protective Order or as further ordered by the Court.

**5.** **Method Of Designation.** Each page of any material the Producing Party wishes to designate as Protected Material must be labeled PROTECTED MATERIAL, at the time the material, or a copy thereof, is provided to the Receiving Party. In the case of material contained in or on media other than paper, the Producing Party shall affix such a label to the material or use its best efforts to identify the material as Protected Material and affix the applicable designation.

**6.** **Access To Protected Material.** Only the following persons shall have access to or retain material designated as PROTECTED MATERIAL pursuant to this Order:

**a.** The Court and its official personnel;

**b.** Counsel for any Party and any of Defendants' personnel with whom Counsel for Defendants determines it is appropriate to share such information for the purpose of this litigation. For the purposes of this Protective Order, "Counsel" means the attorneys representing the Parties for this Action,

1    including paralegals, office clerks, secretaries, and other support staff assisting

2    those attorneys, working on the Action;

3          c.    For information designated as PROTECTED MATERIAL

4    relating to an individual member of the class, to the individual class member and

5    counsel who represent individual class members, or any prospective counsel that is

6    evaluating whether to take on the representation of a class member.  The individual

7    class member and counsel shall only be provided PROTECTED MATERIAL

8    relating to the individual class member, and the individual may not be provided any

9    information pertaining to other class members. Prospective counsel must execute

10   Exhibit A, the Acknowledgment Regarding the Order before receiving this limited

11   PROTECTED MATERIAL;

12         d.    Outside experts, consultants retained by the Receiving Party's

13   Counsel to assist in this Litigation (and the experts' or consultants' staff whose

14   duties and responsibilities require access to such materials);

15         e.    Court reporters and translators;

16         f.    Outside litigation support personnel retained by Counsel to

17   assist in the preparation and/or litigation of the Action, including contract attorneys

18   or outside copying service vendors or electronic document management vendors;

19         g.    Any person not otherwise covered by subparagraph (a), (b), (c),

20   or (d) who was involved in the preparation of such material or who received or

21   reviewed such material for purposes other than this Action or who has been alleged

22   to have received or reviewed such material for purposes other than this Action;

23         h.    Witnesses at deposition not otherwise covered by subparagraphs

24   (a), (b), (c) or (d);

25         i.    Persons whom the Producing Party agrees in writing or on the

26   record at a deposition may be shown PROTECTED MATERIAL.

27         j.    Any individuals or persons who Class Counsel designates for

28   the purpose of facilitating the reunification of Class Members and their children,

including (but not limited to) nonprofit organizations, lawyers, faith-based groups, shelters, or any other organization or individuals who may be able to assist in the reunification process. Given the urgency of the deadlines in the Court's preliminary injunction order, the individuals or persons described in this paragraph may receive a limited set of PROTECTED MATERIAL as follows prior to executing Exhibit A, the Acknowledgment, as long as the information is treated as protected under this Order, and an Acknowledgment is signed within a reasonable time thereafter. Information which may be shared for the purpose of facilitating the reunification of Class Members and their children includes Class Members' names and the name(s) of the class member's child(ren); Alien Number for the Class Member and his or her child(ren); detention location or other location information regarding the Class Member and his or her child(ren). The individuals or persons described in this paragraph may receive any additional PROTECTED MATERIAL necessary to assist in facilitating reunification related to the class member(s) they are serving or being consulted to serve after signing the Acknowledgment. The individual or organization may not receive information about any other class members.

7. **Agreement By Persons Accessing Protected Materials.** All persons identified in paragraph 6 (d), (e), (f), (g), (h) (i), and (j) who in the course of the case may be given access to Protected Material shall be required to read this Protective Order and agree, in writing, to be bound by this Protective Order by executing an acknowledgment in the form of Exhibit A that is annexed to this Protective Order. All such acknowledgments shall be maintained in the files of the counsel allowing access by such person to the Protected Material.

8. **Treatment Of Protected Material During Inspection Of Documents.** It is contemplated that a Party might make available certain of its files for inspection by other Parties, which files may contain protected material as well as non-protected material, and that following such inspection, the inspecting party will designate documents to be copied and the copies will be furnished or produced

to it. All documents and their contents made available for such inspection shall be treated as PROTECTED MATERIAL until the Party allowing inspection has had a reasonable opportunity, not to exceed twenty one (21) calendar days absent an agreement by the parties, to designate and mark those documents which were copied as PROTECTED MATERIAL.

9. **Copies, Summarizations, Extracts Protected.** Protected Material designated under this Order shall include, without limitation: (a) all copies, extracts, and complete or partial summaries prepared from such documents, things, or information so designated; (b) portions of deposition transcripts and exhibits to deposition transcripts that contain, summarize, or reflect the content of any such documents, things, or information; and (c) portions of briefs, memoranda, or any other writings filed with the Court and exhibits thereto that contain, summarize, or reflect the content of any such documents, things, or information. The Parties agree that information regarding the aggregated numbers for any category of individuals contained in the chart may be excluded from this paragraph. Moreover, a Party may make a request to the producing Party that certain material contained in such copies, extracts, and complete or partial summaries not be treated as PROTECTED MATERIAL. The Parties will meet and confer in good faith within five days of any such request to resolve the request.

10. **Pleadings And Briefs Containing Protected Material.** Before any materials produced in discovery, answers to interrogatories, responses to requests for admissions, deposition transcripts, or other documents which are designated as confidential information are filed with the Court for any purpose, the party seeking to file such material must seek permission of the Court to file the material under seal, unless the Parties agree that the documents can be redacted to remove the Protected Material. The receiving party shall meet and confer with the producing party regarding any proposed redactions before seeking leave from the Court, and

the producing party shall not unreasonably withhold its consent to the filing of a
redacted copy of the Protected Material.

11.  **Court Hearings And Other Proceedings.**  Nothing contained in this
Protective Order shall be construed to prejudice any Party's right to use before the
Court any Protected Material.  Before doing so, however, and to the extent not
otherwise authorized to be so used hereunder, the Party intending to use Protected
Material shall so inform the Court and the Producing Party, so that any Party or
Third Party may apply to the Court for appropriate protection, including clearing
the hearing room or courtroom of persons not entitled to receive Protected Material
pursuant to paragraph 6.

12.  **Testimony At Pretrial Court Hearings And Other Proceedings.**
All testimony elicited during hearings and other proceedings that counsel for a
Party or Third Party indicated on the record may be subject to the protections of this
Order shall be deemed PROTECTED MATERIAL until the expiration of twenty
one (21) calendar days after delivery of a copy of the transcript of the testimony by
the court reporter to counsel who requested a copy of the transcript.  Within the
twenty one (21) calendar day period following such mailing of the transcript, any
Party may move to seal the transcript under LRCiv 79-5, designating all or any
portion of the testimony as PROTECTED MATERIAL.  Upon being informed that
certain portions of a transcript are designated as PROTECTED MATERIAL, each
Party must have each copy in their custody, possession or control immediately
marked with the appropriate designation at the appropriate pages.  Such designation
must remain until the Court rules on the motion to seal.

13.  **This Order Only Applies To The Exchange of Information About
Putative or Confirmed Class Members and Their Children For The Purpose
Of Facilitating Compliance With The Court's Preliminary Injunction Order.**
Nothing contained in this Order shall restrict or limit any Party's right to present

Protected Material to the Court during a trial in the Action. The use of Protected Material at trial shall be governed by the pretrial order.

14. **This Order Does Not Apply To Non-Private Information.** The restrictions set forth in this Protective Order shall not apply to documents, things, or information that: (a) have been publicly disclosed by either Party; or (b) have been independently obtained by the Receiving Party through lawful means. If the Producing Party challenges the Receiving Party's invocation of this provision, then the Receiving Party shall provide written documentation showing the material falls within categories of non-private information referenced in this provision. This paragraph does not purport to waive or in any other way limit any protection that exists under law, including the Privacy Act, 5 U.S.C. § 552a, *et seq*.

15. **Challenge To Designations.** If a Party may objects to a designation of the materials as Protected Material on the ground that such protection is not warranted under controlling law, the following procedure shall be used: The Party objecting to the designation of Protected Material must notify, in writing, counsel for the other Party of the objected-to materials and the grounds for the objection. The writing shall be by email to all counsel for the other Party, followed by a hard copy sent next business day courier. The objecting Party shall request to meet and confer with the other Party prior to submitting the dispute to the Court for a ruling. If the dispute is not resolved consensually between the parties within ten (10) business days of receipt of such a notice of objections, the objecting party may move the Court for a ruling on the objection. The materials at issue must be treated as Protected Material, until the Court has ruled on the objection or the matter has been otherwise resolved.

16. **No Waiver By Failure To Challenge Designation.** For purposes of the Action or any other action, no Party concedes that any material designated as PROTECTED MATERIAL does in fact contain or reflect Protected Material. A Party shall not be obligated to challenge the propriety of the designation of

Protected Material at the time made, and failure to do so shall not preclude a subsequent challenge.

17. **Inadvertent Disclosure Of Protected Material.**  The failure by a Producing Party to designate specific documents or materials as Protected Material shall not, by itself, be deemed a waiver in whole or in part of a claim of confidentiality as to such documents or materials.  Upon written notice to the Receiving Party of such failure to designate, or of incorrect designation, the Receiving Party shall cooperate to retrieve disseminated copies, and restore the confidentiality of the inadvertently disclosed information beyond those persons authorized to review such information pursuant to paragraph 6, and shall thereafter take reasonable steps to ensure that the Protected Material is treated in accordance with the designation.  No person or Party shall incur any liability under this Protective Order with respect to disclosure that occurred prior to the receipt of written notice of the mistaken designation.

18. **Disclosure To Producing Party's Personnel.**  Nothing in this Protective Order shall affect the right of the Producing Party to disclose to its client agency personnel, employees, consultants, or experts, any documents, things, or information designated by it as Protected Material pursuant to this Order; such disclosure shall not waive the protection of this Protective Order and shall not entitle other Parties or their attorneys to disclose such information, documents, things, or information in violation of this Order.

19. **Disclosure To Unauthorized Persons.**  If information subject to this Protective Order is disclosed to any unauthorized person either through inadvertence, mistake, or otherwise without authorization by the Producing Party, or other than in the manner authorized by this Protective Order, the person responsible for the disclosure shall immediately (a) inform the Producing Party of all pertinent facts relating to such disclosure, including without limitation, the name, address, and telephone number of the recipient and his or her employer;

(b) use his or her best efforts to retrieve the disclosed information and all copies thereof; (c) advise the recipient of the improperly disclosed information, in writing, of the terms of this Protective Order; (d) make his or her best efforts to require the recipient to execute an agreement to be bound by the terms of this Protective Order in the form of the declaration attached to this Protective Order as Exhibit A; and (e) take all other reasonable steps to prevent further disclosure by or to the unauthorized person who received the Protected Material.

20. **"Admissibility" Of Protected Material.** This Protective Order shall not constitute a waiver of any Party's or non-party's right to object to the admissibility into evidence of any Protected Material under Federal law.

21. **All Objections Preserved.** This Protective Order is intended to provide a mechanism for handling the disclosure or production of Protected Material to which there is no objection other than confidentiality. The protection afforded by this Order shall in no way affect a Producing Party's right to withhold or redact documents as: (a) privileged under the attorney-client or other privilege, (b) protected by the work product doctrine, or (c) otherwise exempted from discovery under Rule 26 of the Federal Rules of Civil Procedure or under any law. Additionally, this Protective Order shall not prejudice the right of a Party to: (a) seek additional protective treatment for any information it considers to be very highly sensitive, or otherwise exempt from disclosure, such that the protections in this Protective Order would be insufficient, (b) object to the designation of any document or information as PROTECTED MATERIAL, or (c) seek any modification of or relief from any provision of this Protective Order, either generally or as to any particular Protected Material, by properly noticed motion with notice to all Parties and their respective counsel.

22. **Advice To Client.** Nothing in this Protective Order shall prevent or otherwise restrict counsel from rendering legal advice to the clients in this Litigation and, in the course of this Litigation, relying generally on examination of

designated p Protected Material; provided, however, that in rendering such advice and otherwise communicating with such client, counsel shall not disclose the specific contents of Protected Materials to persons not authorized to receive such material pursuant to the Protective Order.

23. **Inadvertent Disclosure Of Privileged Information.**

**a.** The inadvertent disclosure of Material covered by the attorney-client privilege, the work-product doctrine, or any other recognized privilege shall be governed by Federal Rule of Evidence 502 and this Protective Order.

**b.** If, in connection with the pending Litigation, a Producing Party inadvertently discloses information subject to a claim of a privilege or protection described in paragraph 26(a) ("Inadvertently Disclosed Information"), such disclosure shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work-product protection that the Producing Party would otherwise be entitled to assert with respect to the Inadvertently Disclosed Information and its subject matter.

**c.** If a claim of inadvertent disclosure is made by a Producing Party with respect to Inadvertently Disclosed Information, the Receiving Party shall, within five (5) business days, return or destroy all copies of the Inadvertently Disclosed Information and provide a certification of counsel that all such Inadvertently Disclosed Information has been returned or destroyed.

**d.** Within twenty-one (21) calendar days of the notification that such Inadvertently Disclosed Information has been returned or destroyed, or within a different time upon written agreement of the Parties or order of the Court, the Producing Party shall produce a privilege log with respect to the Inadvertently Disclosed Information.

**e.** Nothing in this Protective Order shall limit the right of any Party to petition the Court for an order compelling production of such Inadvertently

Disclosed Information, or for an in-camera review of the Inadvertently Disclosed Information.

24. **Good Faith Designations.** Each Party agrees that designation of Protected Material and responses to requests to permit further disclosure of Protected Material shall be made in good faith and not: (a) to impose burden or delay on an opposing Party, or (b) for tactical or other advantage in litigation. Further, each Party agrees to make best efforts to avoid as much as possible inclusion of Protected Material in briefs and other captioned documents filed in court, in order to minimize sealing and designating such documents as Protected Material.

25. **Use Of Information Subject To Protective Order.** The Receiving Party's use of any information or documents obtained from the Producing Party subject to this Protective Order, including all information derived therefrom, shall be restricted to use in this Litigation (subject to the applicable rules of evidence and subject to the confidentiality of such materials being maintained) and shall not be used by anyone subject to the terms of this agreement, for any purpose outside of this Litigation or any other proceeding between the Parties, except as otherwise provided in this Order.

26. **Meet And Confer.** Prior to filing any motion or application before the Court to enforce this Protective Order, the moving party shall notify the other Party(ies) in writing and meet and confer in good faith in an attempt to resolve their dispute(s).

27. **Injunctive Relief.** In the event anyone violates or threatens to violate any of the terms of this Protective Order, the Parties and Third Parties agree that the aggrieved party may, subject to the "meet and confer" requirement set forth above, apply to the Court to obtain injunctive relief against any such person violating or threatening to violate any of the terms of this Protective Order. In the event the aggrieved party brings such motion or application, the responding person subject to

-13-

the provisions of this Protective Order shall not employ as a defense the claim that the aggrieved party possesses an adequate remedy at law. The Parties and Third Parties shall not use or reveal, directly or indirectly, any information in violation of this Protective Order. Because of the confidential and proprietary nature of the information contemplated to be covered by this Protective Order, the Parties and Third Parties' agree that legal remedies are inadequate. Therefore, the Parties and Third Parties stipulate that injunctive relief is an appropriate remedy to prevent any person from using or disclosing Protected Material in violation of this Protective Order. The Parties and Third Parties waive and release any and all requirements for a bond or undertaking to support any injunctive relief for enforcement of this Protective Order.

28. **Other Actions.** If any Party is (a) subpoenaed in another action, (b) served with a demand in another action to which it is a Party, or (c) served with any legal process by one not a party to this action, seeking information or material which was produced or designated as Protected Material by someone other than that Party, the Party shall give prompt actual written notice, by hand or facsimile transmission, within ten (10) calendar days of receipt of such subpoena, demand, or legal process, to those who produced the Protected Material prior to compliance with the subpoena so as to allow the Producing Party to seek protection from the relevant court(s). Nothing in this Protective Order shall be construed as requiring the Party or anyone else covered by this Protective Order to challenge or appeal any order requiring production of information or material covered by this Protective Order, or to subject itself to any penalties for noncompliance with any legal process or order, or to seek any relief from this Court.

29. **Survival And Final Disposition Of Designated Material.** Final termination of the Litigation, including exhaustion of appellate remedies, shall not terminate the limitations on use and disclosure imposed by the Protective Order.

a.     Within sixty (60) days of the final termination of the Litigation by final judgment (whether by settlement, trial, or otherwise), including the time for filing and resolution of all appeals, or within such other period as the Parties may agree upon, all Protected Material and copies of Protected Material, including such material in the hands of outside experts or consultants or attorneys who considered or accepted representation of a class member or child, shall be delivered by counsel of record for the Receiving Party to counsel of record for the Producing Party of such material or destroyed, with confirmation of that destruction to the producing Party in writing.

b.     Any Protected Material filed or lodged with and retained by the Court shall not be subject to the provisions of this paragraph 32.

c.     Notwithstanding the foregoing, counsel may retain copies of briefs and other papers filed with the Court, deposition transcripts, discovery responses, and attorney work product that contains or constitutes Protected Material.  Further, counsel are not required to delete information that may reside on their firm's electronic back-up systems that are over-written in the normal course of business.  Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order and shall be maintained in a safe and secure manner.

30.     **Amendment Or Termination Of Protective Order.**  No part of the restrictions imposed by this Protective Order may be terminated, except by written stipulation executed by counsel of record for each Producing Party or by an Order of this Court for good cause shown.  The terms of this Protective Order shall survive termination of the Action.

31.     **Jurisdiction For Enforcement.**     The Court retains jurisdiction subsequent to settlement or entry of judgment to enforce the terms of this Protective Order.  Each person to whom disclosure of any Protected Information is made agrees to subject himself to the jurisdiction of the Court in which this action is

pending for the purpose of proceedings relating to the performance under, compliance with, or violation of this Protective Order.

   32.   **Limitations**.  Nothing in this Order shall be deemed to restrict in any manner the use by any party of its own documents or materials.  Nothing in this Protective Order should be construed as prohibiting a non-party from seeking additional protections of records or information that it owns or controls.

Dated:        July 8, 2018                AMERICAN CIVIL LIBERTIES UNION
                                          FOUNDATION
                                          IMMIGRANTS' RIGHTS PROJECT

                                          /s/ Lee Gelernt
                                          LEE GELERNT
                                          Email: LGELERNT@aclu.org

                                          Counsel for Plaintiffs


Dated:        July 8, 2018                UNITED STATED DEPARTMENT OF
                                          JUSTICE, OFFICE OF IMMIGRATION
                                          LITIGATION

                                          /S/ Sarah B. Fabian
                                          SARAH B. FABIAN
                                          Email: Sarah.B.Fabian@usdoj.gov

                                          Counsel for Defendants

**[CONTINUED ON THE NEXT PAGE]**

1

**ORDER**

2           For good cause shown, pursuant to Rule 26(c) of the Federal Rules of Civil

3     Procedure, all discovery and other materials exchanged by the Parties or Third

4     Parties, or filed with the Court, in *Ms. L, et al., v. U.S. Immigration and Customs*

5     *Enforcement et al.*, 3:18-cv-00428 (S.D. Cal.) shall be provided subject to the

6     conditions set forth in the foregoing Stipulated Protective Order.  This order shall

7     be construed as a lawful order pursuant to the Privacy Act permitting release

8     consistent with the terms of this Order.

9         **IT IS SO ORDERED**

10

11    Date:_____     _____

12                               Hon. Dana M. Sabraw
                                 United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# STIPULATION EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT CONCERNING PROTECTED INFORMATION

**1.** My name is _____ (first, middle initial, last).

**2.** I live at _____ (street address), _____ (city), _____ (state) _____ (zip code).

**3.** I am employed as a/an _____ by _____ (company), which is located at _____ (street address), _____ (city), _____ (state) _____ (zip code). Its telephone number is _____.

I have read the attached Stipulated Protective Order entered in the action of *Ms. L, et al. v. U.S. Immigration and Customs Enforcement et al.*, pending in the Southern District of California and bearing Case No. 3:18-cv-00428, and a copy of the Stipulated Protective Order has been given to me.

**4.** I agree to be bound by the terms of the Stipulated Protective Order, and agree that any Protected Material, within the meaning of the Stipulated Protective Order, will be used by me only to assist counsel in connection with the above-referenced litigation or as otherwise authorized by the Stipulated Protective Order.

**5.** I agree that I will not disclose or discuss Protected Material so designated with anyone other than the persons described in paragraph 6 of the Stipulated Protective Order.

-18-

**6.** I understand that any disclosure or use of Protected Material in any manner contrary to the provisions of the Stipulated Protective Order may subject me to sanctions for contempt of the Court's Order.

**7.** I agree to be subject *in personam* to the jurisdiction of the Southern District of California in connection with any proceeding relating to the enforcement of the Stipulated Protective Order.

I declare under penalty of perjury that the foregoing is true and correct.

_____          _____
          (date)                               (signature)