UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON; *et al.*,

Plaintiffs,

v.

THE UNITED STATES OF AMERICA; et al.,

Defendants.

2:18-cv-00939-MJP

District Judge Marsha Pechman

# DECLARATION OF JONATHAN WHITE

I, Jonathan White, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that my testimony below is true and correct:

1. I am a Commander with the United States Public Health Service Commissioned Corps, and have served at the Department of Health and Human Services (HHS) in three successive presidential administrations. I am presently assigned to the Office of the Assistant Secretary for Preparedness and Response (ASPR), and previously served as the Deputy Director of the Office of Refugee Resettlement (ORR).

2. The following statements are based on my personal knowledge, information acquired by me in the course of performing my official duties, information supplied to me by federal government employees and contractors, and government records.

1

3. I have been involved directly in the actions which HHS has taken to implement Executive Order (EO) 13841 ("Affording Congress an Opportunity to Address Family Separation") and comply with the orders in *Ms. L, et al. v. U.S. Immigration and Customs Enforcement, et al.*, Case No. 18-cv-428 (S.D.Cal.). My understanding is that President Trump issued EO 13841 on June 20, 2018, and the U.S. District Court for the Southern District of California issued its orders in *Ms. L.* on or before July 26, 2018.

4. My understanding is that the Court in *State of Washington, et al. v. United States of America, et al.*, Case No. 2:18-cv-00939-MJP (W.D.Wash.) ordered the parties to submit a letter on the States' request for expedited discovery. I have been asked to address how the support of discovery on topics 2, 5(e)-(g), 6, 11(d), and 12 from the States' "[PROPOSED] ORDER GRANTING STATES' MOTION FOR EXPEDITED DISCOVERY AND REGULAR STATUS CONFERENCES" would likely impact HHS and the effort to reunify children with class members in *Ms. L.* To understand the likely impact, some background on the reunification effort may be helpful.

**HHS RESOURCES DEPLOYED FOR REUNIFICATION**

5. The ORR personnel serving the unaccompanied alien children (UAC) program have worked diligently on reunifications of parents and children who were separated by the federal government subsequent to apprehension. Some have worked up to 12 to 18 hours per day, 7 days per week on the reunification effort.

6. On June 22, 2018, the Secretary of Health and Human Services directed ASPR to deploy "surge" personnel and resources to help ORR with the reunification

effort. This activation of ASPR augmented the resources that ORR had already devoted to expeditiously discharge children from ORR care. ORR has had to continue performing core program functions for minors who cross the border without parents (and who have far outnumbered separated children in ORR care). The augmenting of resources has enabled ORR continue performing those essential core functions.

7. The activation of ASPR included the Secretary's Operations Center (SOC), which is a command center that operates 24 hours per day, 365 days per year. The mission of the SOC is to synthesize critical public health and medical information for the U.S. Government. While typically used for a public health emergency or natural disaster (e.g., Hurricane Maria in Puerto Rico), the SOC can also serve as a communications hub for large, data-intensive, inter-departmental operations.

8. ASPR activated an Incident Management Team (IMT). As of today's date, the IMT has 53 members (in addition to the permanent staff of the SOC). IMT members have worked 12 to 16 hours per day, 7 days per week, in order to provide necessary logistical and administrative support for the reunification effort.

9. Over the past several weeks, ASPR has dispatched as many as 115 personnel to the field to facilitate compliance with the *Ms. L* court orders to reunify separated children and their parents. Those personnel have been drawn from ACF, ASPR, the U.S. Public Health Service Commissioned Corps, and the National Disaster Medical System's Disaster Medical Assistance Teams (DMAT). A DMAT is a cadre of trained health and

medical professionals and para-professionals that augments ASPR's capabilities during public emergencies.

10. Finally, HHS executed a contract with BCFS Health and Human Services, Inc. (BCFS), to provide an additional 100 reunification case managers, plus approximately 40 staff who are working 12-hour shifts to provide further logistical and administrative support for the reunification effort.

**CURRENT STATUS OF REUNIFICATION EFFORTS IN *MS. L.***

11. HHS reports the status of reunification efforts to the *Ms. L.* court. A copy of HHS' most recent status report in *Ms. L.* is attached as Exhibit 1.

12. Going forward in *Ms. L*, I presently anticipate that HHS will focus its resources on resolving any remaining disputes about whether particular adults are class members eligible for reunification, and on reunifying any remaining class members not in ICE custody with their children.

**LIKELY IMPACT OF SUPPORTING EXPEDITED DISCOVERY**

13. My understanding is that discovery support in *Washington v. United States* would include compiling and analyzing information—and collecting and producing documents—about the reunification effort, as discussed in greater detail below. My opinion is that HHS probably does not have additional, available "surge" personnel or ORR personnel with the capabilities necessary to either support the reunification effort, or provide discovery support in *Washington v. United States*. Any work time that any current "surge" personnel or ORR personnel must divert to discovery support in

*Washington v. United States* will result in a commensurate reduction in the time that those same personnel can devote to the reunification effort.

### The States' Topic 2

14. My understanding is that Topic 2 is: "The number of Separated Children placed by ORR in each Plaintiff State from January 1, 2018 to the present, by month and facility (or, for individual sponsor placements, the county in which the child resides with such a sponsor)."

15. HHS has information about all children for the time period during which they are in ORR care. But it does not maintain that information in a monthly, state-by-state, facility-by-facility compilation. Nor does HHS have the systems capability to create such a data compilation through automated means. HHS would have to manually create a customized data compilation for the States.

16. I estimate that it would likely require 1800 to 2000 hours of personnel time to create a data compilation for Topic 2.

17. This estimate is based partly on the time that HHS previously spent on its manual review of ORR case management records in *Ms. L*. The manual review in *Ms. L.* looked only at the ORR case management records for the approximately 12,000 minors who were in ORR care at the time of the review.

18. Here, the main purpose of the manual review would be to identify all separated children in each Plaintiff state from January 1, 2018 to the present. Such a

review would be necessary because the date range and specific data points (e.g., locations of discharges) for Topic 2 exceed the scope of the manual review in *Ms. L.*

*The States' Topics 5(e)-(g), 6(a)-(e), and 11(d)*

19. My understanding is that Topics 5(e)-(g) are: "As to every Separated Parent who is present in any Plaintiff State (or who was present in a Plaintiff State on the day this lawsuit was filed): ... (e) The contact that Defendants have provided between the Separated Parent and his or her child(ren); (f) The location of that Separated Parent's children (if in an ORR placement or custody); and (g) DHS' plan to reunify the Separated Parent with the child."

20. My understanding is that Topics 6(a)-(e) are: "As to every Separated Child who is present in any Plaintiff State (or who was present in a Plaintiff State on the day this lawsuit was filed): (a) The current placement and location of every such child (e.g., living with a sponsor in Seattle, Washington); (b) The contact that Defendants have provided between the child and their Separated Parent(s) or other family members; (c) The location of that Separated Child's Separated Parent(s); (d) DHS' plan to reunify the Separated Child with the Separated Parent(s); and (e) Information concerning the circumstances and progress of such reunification efforts."

21. My understanding is that Topic 11(d) is: "For all Separated Parents who entered the United States along the Southwestern border from January 1, 2018, information regarding: (d) All reunification efforts the Defendants have made concerning

6

Separated Parents who were removed from the United States without their Separated Children."

22. As noted above, HHS has information about all children for the time period during which they are in ORR care. HHS also receives information about the parents of such children from DHS.

23. HHS, however, does not have the systems capability to generate a log of the contacts between each child and parent (or family member)—or the current placement and location of each child—through automated means. HHS would have to compile and organize that information manually, as part of the broader review of ORR case management records discussed above. Likewise, HHS does not maintain individualized reunification plans or reunification status updates for specific parents and children in a narrative format. It would have to prepare such narratives for the States.

24. I estimate that HHS would likely require at least an additional 450 hours to compile and organize information and prepare individualized narratives for Topics 5(e)-(g), 6(a)-(e), and 11(d). Moreover, much of the information for those topics is dynamic, and changes frequently as the reunification process moves forward. Any supplementation would require additional manual work.

*The States' Topics 12(a)-(c)*

25. My understanding is that Topics 12(a)-(c) are: "For all Separated Parents who have been released from DHS custody since January 1, 2018, all information regarding DHS and HHS efforts to reunite Separated Parents and Separated Children,

7

including but not limited to: (a) Information regarding the paperwork required of Separated Parents who want to reunite with their Separated Children, including any requirement that Separated Parent complete Family Reunification Applications, including background checks, DNA testing, or fingerprinting, before reunification with their Separated Children; (b) Information regarding any financial requests or demands made of Separated Parents who want to reunite with their Separated Children, including demands that Separated Parents pay the airfare for Separated Children and escorts as a condition of reunification; and (c) Information regarding any other conditions or requirements the Defendants are placing on Separated Parents who want to reunite with their Separated Children."

26. As noted above, HHS has information about all children for the time period during which they are in ORR care. HHS also receives information about the parents of such children from DHS.

27. HHS, however, does not have the systems capability to generate a log of the individualized documentation completed by specific parents or children—or any individualized requests, demands, conditions, or requirements allegedly related to reunification—through automated means.

28. HHS would have to research, compile, and organize such individualized information manually, as part of the broader review of ORR case management records discussed above. In some instances, HHS might have to obtain the information from

DHS. The presentation of the individualized information might also involve the collection and production of documents or the drafting of narratives.

29. I estimate that HHS would likely require at least an additional 300 hours to research, compile, and organize such information (and possibly collect and produce documents and prepare individualized narratives) for Topics 12(a)-(c). Moreover, some of the information for those topics might change as the reunification process moves forward. Any supplementation could require additional manual work.

*Overall Likely Impact of Supporting Expedited Discovery*

30. If HHS must provide the level of discovery support described above within the next 30 days, then HHS will have to divert current "surge" personnel or ORR personnel from work on reunifications to work on discovery support. A diversion of that magnitude would have an adverse material impact on the ability of HHS to reunify parents and children promptly in *Ms. L*.

31. The estimates and opinions that I have provided in this declaration are based on the information known to me at this time (including information about the States' discovery topics), and my best professional judgment. I reserve the right to amend my estimates and opinions if the information known to me changes.

Executed on July 26, 2018.

_____
Jonathan White

| | |
|---|---|
| CHAD A. READLER<br>Acting Assistant Attorney General<br>SCOTT G. STEWART<br>Deputy Assistant Attorney General<br>WILLIAM C. PEACHEY<br>Director<br>Office of Immigration Litigation<br>U.S. Department of Justice<br>WILLIAM C. SILVIS<br>Assistant Director<br>Office of Immigration Litigation<br>SARAH B. FABIAN<br>Senior Litigation Counsel<br>NICOLE MURLEY<br>Trial Attorney<br>Office of Immigration Litigation<br>U.S. Department of Justice<br>Box 868, Ben Franklin Station<br>Washington, DC 20442<br>Telephone: (202) 532-4824<br>Fax: (202) 616-8962<br><br>ADAM L. BRAVERMAN<br>United States Attorney<br>SAMUEL W. BETTWY<br>Assistant U.S. Attorney<br>California Bar No. 94918<br>Office of the U.S. Attorney<br>880 Front Street, Room 6293<br>San Diego, CA 92101-8893<br>619-546-7125<br>619-546-7751 (fax)<br><br>*Attorneys for Federal Respondents-Defendants* | Lee Gelernt*<br>Judy Rabinovitz*<br>Anand Balakrishnan*<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>125 Broad St., 18th Floor<br>New York, NY 10004<br>T: (212) 549-2660<br>F: (212) 549-2654<br>*lgelernt@aclu.org*<br>*jrabinovitz@aclu.org*<br>*abalakrishnan@aclu.org*<br><br>Bardis Vakili (SBN 247783)<br>ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES<br>P.O. Box 87131<br>San Diego, CA 92138-7131<br>T: (619) 398-4485<br>F: (619) 232-0036<br>*bvakili@aclusandiego.org*<br><br>Stephen B. Kang (SBN 292280)<br>Spencer E. Amdur (SBN 320069)<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>39 Drumm Street<br>San Francisco, CA 94111<br>T: (415) 343-1198<br>F: (415) 395-0950<br>*skang@aclu.org*<br>*samdur@aclu.org*<br><br>*Attorneys for Petitioners-Plaintiffs*<br>*Admitted Pro Hac Vice |

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. L, et al.,<br><br>Petitioners-Plaintiffs,<br><br>vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Respondents-Defendants. | Case No. 18cv428 DMS MDD<br><br>**JOINT STATUS REPORT** |

The Court ordered the parties to file a joint status report on July 23, 2018, in anticipation of the status conference scheduled for July 24, 2018 at 3:00pm PST. The parties submit this joint status report in accordance with the Court's instruction.

## I. DEFENDANTS' POSITIONS

### A. Update on Reunification Process

The reunification plan outlined to the Court in Defendants' filing on July 15, 2018, ECF No. 109, and discussed at the July 16, 2018 status conference, is proceeding. Defendants report the following with regard to the reunification of families with children ages 5-17:[1]

---

[1] The numbers provided are based on daily reports that have not been analyzed to ensure as much accuracy as the government could ensure if it had several days to analyze and verify each statistic. These numbers are from the daily report as of 8:00 AM Eastern on July 23, 2018. While most numbers changed since the last

- Total number of possible children of potential class members identified: 2,551

- Potential class members possibly eligible for reunification: 1634

    o Class members successfully reunified in ICE custody: 879
    o Class members in ICE custody interviewed and cleared for reunification, transport pending: 538
    o Potential class members in ICE custody pending interview: 0
    o Potential class members in ICE custody pending child file review: 0
    o Potential class members released to the interior by ICE: 217

- Potential class members, or non-members of the class, either not eligible, or not yet known to be eligible, for reunification: 917

    o Adults known to be in U.S. Marshal, State or local custody: 0
    o At interview, parent waived reunification: 130
    o Adults with prohibitive criminal record or deemed ineligible by ORR or ICE: 64
    o Case notes indicate adult is not in U.S., under review: 463
    o Further evaluation: 260 (many of these children have been discharged by ORR in appropriate circumstances)

- Class members with a final order of removal: 900

- Total number of reunifications or other appropriate discharges by ORR: 1,187

---

status report due to significant progress in reunifications, some minor changes are attributable to continual review of the case files. In the interest of providing information that is as up-to-date as possible, although not without the possibility needing further correction, the numbers provided in Section A reflect the best estimates the government has as of 8:00 AM Eastern on July 23, 2018.

## B. Class Member Lists and Other Information For Plaintiffs

Defendants continue to provide Plaintiffs' counsel the daily "cleared" list when that list is updated. On July 20, 2018, Defendants provided Plaintiffs with a list of class members who stated that they did not wish to be reunified with their children at the final interview with HHS. Defendants will provide an update to that list on July 24, 2018. On July 20, 2018, Defendants provided Plaintiffs with a spreadsheet containing updated information regarding 1601 class members. That spreadsheet reflects whether those class members have a final order of removal, and whether they have been removed or released, or if they remained in ICE custody, then their current detention location. For those class members who have final orders of removal, Defendants are reviewing files to provide Plaintiffs' counsel with a list of those class members who have waived reunification prior to removal.

In addition, Defendants had previously stated that on or before July 20, 2018, Defendants would provide Plaintiffs with a list of class members who have been removed, including the date of removal, country of removal, and last detention location, and that on or before July 23, 2018, Defendants would provide Plaintiffs with a list of class members who have been released from ICE custody. However, Defendants were not able to provide these lists because some of this information is still under review. Defendants believe that some of the requested

3    18cv428 DMS MDD

information is contained in the spreadsheets that were previously provided to Plaintiffs, and in an updated spreadsheet being provided to Plaintiffs today, July 23, 2018. However, Defendants are continuing to review their case notes and intend to provide updated data on these two categories of class members as soon as possible.

## II. PLAINTIFFS' POSITIONS

Plaintiffs have received no new information about Class Members from Defendants since the hearing on Friday, July 20. In particular, Defendants have not provided the following information:

1. A list of Class Members who have been removed from the country. *See* Joint Status Report, Dkt. 124, at 3 (July 20, 2018) (stating that Defendants would provide this information by July 20).

2. Updated lists of Class Members who have been "greenlighted" for reunification. The last two such lists were sent by Defendants on July 16 and July 20. *See* Joint Status Report, Dkt. 124, at 2 (stating that Defendants were providing this list "on a daily basis when it is updated").

3. A complete list of the parents with final removal orders who signed a form electing to be removed without their children. These parents urgently need consultations with lawyers, so that they do not mistakenly strand their children in the United States, and Plaintiffs' partners are ready to provide these consultations

immediately. Plaintiffs have been requesting this information each day since Wednesday, July 18. According to the government's representations, there may be several dozen parents on this list, and they may not be identified in any list Defendants have provided thus far. Plaintiffs respectfully ask the Court to order Defendants to provide this information by 5:00pm PT on July 24.

DATED: July 23, 2018              Respectfully submitted,

/s/ Lee Gelernt
Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN DIEGO
& IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
     **Admitted Pro Hac Vice*

|  |  |
|---|---|
| 1 | CHAD A. READLER |
|  | Acting Assistant Attorney General |
| 2 | SCOTT G. STEWART |
| 3 | Deputy Assistant Attorney General |
|  | WILLIAM C. PEACHEY |
| 4 | Director |
|  | WILLIAM C. SILVIS |
| 5 | Assistant Director |
| 6 |  |
| 7 | /s/ Sarah B. Fabian |
|  | SARAH B. FABIAN |
| 8 | Senior Litigation Counsel |
|  | NICOLE MURLEY |
| 9 | Trial Attorney |
| 10 | Office of Immigration Litigation |
|  | Civil Division |
| 11 | U.S. Department of Justice |
| 12 | P.O. Box 868, Ben Franklin Station |
|  | Washington, DC 20044 |
| 13 | (202) 532-4824 |
| 14 | (202) 616-8962 (facsimile) |
|  | sarah.b.fabian@usdoj.gov |
| 15 |  |
| 16 | ADAM L. BRAVERMAN |
|  | United States Attorney |
| 17 | SAMUEL W. BETTWY |
| 18 | Assistant U.S. Attorney |
| 19 | *Attorneys for Respondents-Defendants* |

7                                                                    18cv428 DMS MDD