# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al., )<br><br>    Plaintiffs, )<br><br>    v. )<br><br>THE UNITED STATES OF AMERICA; )<br>DONALD TRUMP, in his official capacity)<br>as President of the United States of )<br>America, et al., )<br><br>    Defendants. )<br>_____) | Case No.: 2:18-cv-00939-MJP<br><br>DECLARATION OF DAVID W. JENNINGS |

I, David W. Jennings, for my declaration pursuant to 28 U.S.C. § 1746, hereby state and depose as follows, based on my personal knowledge and information provided to me in the course of my official duties:

1. I am currently serving as the Acting Assistant Director (AD), Field Operations, Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS), a position I have held since April 2018. In this capacity, I oversee, direct, and coordinate field operations in 24 ERO field offices.

2. Previously, I was the Acting Deputy Assistant Director (DAD), Western Operations for ERO, a position I held from October 2017 to March 2018.

3. In June 2016, I was named Field Office Director for the San Francisco Field Office. I served as the Field Office Director for the Los Angeles Field Office from June 2014 until June 2016 and as the Houston Field Office Director from May 2012 to June 2014.

4. In my current role as Acting AD, I have been involved directly in ICE's efforts to implement Executive Order (EO) 13841 ("Affording Congress an Opportunity to Address Family Separation") and comply with the orders in *Ms. L v. I.C.E.*, ---F. Supp. 3d---, 2018 WL 3129486 (S.D. Cal. June 26, 2018) ("*Ms. L* order" or "order").

5. In order to effectuate the reunification of class members and their minor children, pursuant to the requirements of the preliminary injunction, ICE is working closely with U.S. Customs and Border Protection (CBP) and the U.S. Department of Health and Human Services (HHS), Office of Refugee Resettlement (ORR).

6. The first step toward reunifying separated families was the difficult and time-consuming task of identifying potential class members. As reported in my July 9, 2018, declaration to this court, the data necessary to determine class membership is not maintained as part of ICE's regular business practice.  Rather, ICE had to create a new data set using information collected from CBP and HHS.  To create an initial data set for consideration, ICE had to reconcile CBP data against HHS data manually and new methodologies then had to be developed by ICE to identify separated parents.  That data set was then sent to the relevant ERO field offices so immigration officers could review available information for each case in order to determine whether the particular alien qualified as a class member.

7. 19 of ERO's 24 field offices have been impacted by this order.  Field Office Directors (FODs) around the country have reassigned officers from other duties, such as fugitive operations and case management, in order to comply with the court's order to review cases of each potential class member, which includes reviewing available DHS databases, the alien file, as well as the National Crime Information Center database.  As class

members are identified, FODs have also had to reassign officers to track those class
members' respective cases, arrange transfers from detention facilities across the United
States, summarize and share information with HHS so that HHS may conduct parentage
and fitness determinations, and facilitate communication between separated alien parents
and their respective children.  The data changes constantly as the reunification process
moves forward.

8. Employees within ERO's Custody Management Division have also committed significant
resources to ensuring compliance with the order.  They have deployed two deportation
officers and six other ERO staff to three detention facilities where most of the separated
parents are detained to provide surge support related to identification of family units,
identification of the location of separated parents and their respective children,
responding to detainee inquiries, and facilitating telephone calls between parents and
their children.  ERO has also deployed three dedicated policy/data analysts to HHS's
Special Operations Center (Center). The Center was established to address the
operational challenges of coordinating family reunification among the different
departments.

9. ICE is currently carrying out a process to reunify detained class member parents of
children five years of age or over.  This process requires several labor intensive steps,
such as, but not limited to, providing guidance to ERO's field offices, gathering and
summarizing data from other agencies within and outside DHS, conducting case-by-case
reviews of all potential class members, transferring class members to reunification
locations, facilitating communication between class members and their children,

communicating with HHS about each case, and providing details to HHS about criminal

history and locations of class members.

10. Upon HHS's completion of vetting and a determination of suitability for reunification in

accordance with law and the injunction, in many cases, reunification will generally occur

at one of a handful of detention facilities ICE has designated for staging reunifications or

an ERO Field Office concurrent with the parent's release.  Prior to reunification, ICE

reviews the individual files and records to facilitate reunification and to make

determinations regarding whether to detain the family unit or release from custody and, if

release, any needed release conditions.

11. Given all of the resources being expended by ICE to accomplish reunification and the

time sensitive nature of the Court order, any expedited request for discovery of the same

or similar information will only serve to interfere with this process. For example, any

request seeking the A-files of affected individuals, or information therein, will likely

require an individual officer or other ICE staff member to spend time finding that

information and summarizing it for release rather than facilitating communication

between parents and children or providing other case information to HHS, which could

hold up the transfer and reunification process. Likewise, any additional requests for data

will slow down the identification of affected class members who must be transferred

soon. Further, because of their experience and knowledge of the processes and systems,

the same staff handling implementation of the *Ms. L* order would also be required to

respond to expedited discovery, which would also hamper reunification efforts.

12. I have reviewed the discovery requests in this case and much of the information is not

electronically searchable.  As a result, gathering the information would require manual

review of individual files, which would require coordination among many ERO field offices to locate files and compile information.  Because A-files are shipped separate from the alien, finding the correct A-file in a timely manner often proves challenging when an alien is being moved to a new detention facility or released.  Released aliens often move to another area of operations, further complicating efforts to locate an individual A-file.   To the extent that a manual search is required to find documents responsive to an expedited discovery request, individual officers would be required to search thousands of A-files to find potentially responsive documents.  Once found, the documents would then have to be scanned, labeled, collected, reviewed and redacted prior to production.

13. To assist with compliance with the *Ms. L.* order, ICE has developed a spreadsheet listing the names and A-numbers of *Ms. L.* class members, along with information about their children ages 5 and older.  This spreadsheet contains: Name, A number, Country of Citizenship, and Date of Birth of the child; Name, A number, Country of citizenship, Final Order (Yes or No); Final Order Date; Currently Detained; Final Book Out Date; Detention Facility; State; Country of removal, and Latest Depart Date of the parent,.

14. ICE could potentially provide this spreadsheet to Plaintiffs' counsel.  Such an extensive disclosure provides more than adequate information to Plaintiffs regarding an individual's detention status and location.

15. Plaintiffs' Request for Production 2 requests historical information on Separated Children and Separated Parents.  Given that these aliens are—in many cases—the same as those being tracked for the *Ms. L.* litigation, it is possible that historical detention locations could be compiled by ICE's statistical tracking unit.  However, that information was not

compiled for the *Ms. L* litigation and would require a new search and data compilation. Compiling this data would require weeks to prepare.  Moreover, information concerning conditions of release, current location (if not in ICE detention), and individual plans to reunify are not tracked in a searchable database and—to the extent that such information is available to ICE—would require a manual search of individual A-files or information systems.

16. Requests for Production 3 and 4 seek documents related to the policy decisions related to the treatment of Separated Children.  ICE is unlikely to have documents responsive to requests 3(a) through 3(c); this information is more likely to be with HHS.  To the extent that ICE has documents related to requests 3(d) and 4, collecting them would require a manual search of records by potential custodians both at headquarters and in the 24 ERO field offices.  If limited to the HQ ERO and Field Office Directors, a search for responsive documents would require approximately 200 hours.  The individuals who would be required to conduct the search would be the same individuals leading the effort to reunify families.

17. Request for Production 5 seeks, among other items, the number of Separated Parents who signed the Separated Parent's Removal Form and the number removed after signing such form.  This information is not uniformly entered into any readily-searchable database and would require both a manual search of the hard copies of the A-files and a manual review of individual entries in ICE information systems.

18. Request for Production 6 seeks documents concerning hearings on parental fitness.  To the extent ICE has this information for any individual alien, which is very unlikely, this

information would not be contained in an electronic database and would also require a

manual search of the A-files.

19. Request for Production 7 seeks documents concerning allegations of parents being unfit,

judicial hearing data, and prosecutions and convictions for child trafficking or other felony

criminal charges. To the extent ICE has this information, this information would not be

contained in a readily-searchable database and would also require a manual search of the

A-files or information systems that store information on individual aliens.

20. ICE is unlikely to have information regarding Request for Production 8 as this appears to

concern U.S. Customs and Border Protection.

21.   Requests for Production 9-11 request information on various policies for which ICE

may or may not have responsive records. This would require a manual search of

individual employees' records by potential custodians both at headquarters and in the 24

ERO field offices.  If limited to the HQ ERO and Field Office Directors, a search for

responsive documents would require approximately an additional 200 hours.  The

individuals who would be required to conduct the search are the same individuals

necessary to lead the effort to reunify families.

22. Request for Production 12 seeks medical studies not within ICE's ordinary practice or

operations.

23. Because the ICE officers tasked to respond to any expedited request are also the same or

a very similar set of officers ensuring compliance with the court order in *Ms. L.*, any

expedited discovery ordered by this court at this point will substantially interfere with

ICE's ability to reunify parents with their minor children in a timely manner.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

July 26, 2018.

_____

David W. Jennings
Acting Assistant Director
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement