The Honorable Marsha J. Pechman

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| STATE OF WASHINGTON, et al., | NO. 2:18-cv-00939-MJP |
| Plaintiffs, | STATES' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR, ALTERNATIVELY, TRANSFER VENUE, OR ALTERNATIVELY, HOLD CASE IN ABEYANCE |
| v. | |
| THE UNITED STATES OF AMERICA; DONALD TRUMP, in his official capacity as President of the United States of America, et al., | **Noting Date: August 3, 2018** |
| Defendants. | |

## I.      INTRODUCTION

Defendants' Motion to Dismiss, Transfer, or Stay (Motion) asks the Court to find that the States' interests and claims are fully addressed by *Ms. L.*  The premise has no merit. Defendants fail to identify *any* case that dismisses or transfers an action like the one presented here – where the parties, claims, and relief sought are fundamentally different from the prior case – nor are the States aware of any such authority.  Further, while Defendants suggest that the locus for the claims here should be the Southern District of California, where *Ms. L* is venued, there are other lawsuits pending all over the country that touch on various issues raised in this

STATES' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
NO. 2:18-cv-00939-MJP

1

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
206-464-7744

1  case – including another matter pending before this Court.  None of those other actions address

2  the States' unique interests.  The Motion should be denied.

3  **II.    RELEVANT FACTS**

4    The States allege broad interests that have been impacted by the family separation policy

5  and Defendants' related acts, as detailed in their Complaint and prior Motion for Expedited

6  Discovery.  Dkt. 1 at §§ J, K, L; Dkt. 15.  The sovereign and quasi-sovereign interests of the

7  States are unique to this suit.  For example, the States allege that their sovereign interests in the

8  licensing of childcare facilities and in the standards of care for children now residing within their

9  borders are directly infringed by Defendants' vacillating policies.  Dkt. 1 at ¶¶ 164-172.

10  Similarly, the States allege that their economic interests are impacted as separated parents and

11  children settle in their communities.  *Id.* at § K; Dkt. 15 at n. 18; *see also* Clinton Decl. Ex. OO.

12    According to Defendants' recent representations in the *Ms. L* case, they separated 2,531

13  children from otherwise fit parents.  *Ms. L. v. ICE*, Case No. 18-cv-00428-DMS-MDD (S.D.

14  Cal.), Dkt. 159 at 2.  Defendants have determined that 711 separated parents are "not eligible"

15  for reunification, meaning that – for various reasons – over 700 traumatized children are in the

16  States with no immediate prospect for reunification with their parents.  *Id.*  One father at a New

17  Mexico detention center wrote that the day Defendants forcibly separated him from his children

18  was "the most horrible and painful day of my life."  Clinton Decl. Ex. PP.  He described watching

19  helplessly as his daughter was taken away: "[M]y heart was completely broken. I felt like I was

20  dying . . . I felt death at not knowing about my children whom I love."  *Id.*

21    In addition to the harms directly inflicted on separated parents and children, the States

22  assert that Defendants' actions are impacting some of the States' most vulnerable communities.

23  *See* Decls. of Roche (Dkt. 15-4, Ex. 58) (impact on resident Latino communities); Matos (Dkt.

24  15-4, Ex. 62) (same); Torrijos (Dkt. 15-4, Ex. 63) (same); Kimoto (Dkt. 15-4, Ex. 45) (impact

STATES' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
NO. 2:18-cv-00939-MJP

2

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
206-464-7744

on survivors of Japanese American internment camps); Banko (Dkt. 15-4, Ex. 46) (impact on Holocaust survivors and survivor descendent communities); Margles (Dkt. 15-4, Ex. 47) (same); *see also* Decls. of Briggs (Dkt. 15-4, Ex. 48) (historical parallels to Native American family separation and slavery); Jones (Dkt. 15-4, Ex. 49) (historic separation of enslaved parents and children); Dkt. 15 at n. 9, 10, 11.

The States are not parties to any other lawsuit addressing Defendants' policies and conduct. To the States' knowledge, there are *at least* 14 other lawsuits that raise issues related to those before the Court. For example, while *Ms. L.* is notable, it is not the only challenge to family separation. *See Ms. L. v. ICE*, Case No. 18-cv-00428-DMS-MDD (S.D. Cal.) (class of parents challenging family separation; preliminary injunction requiring reunification); *M.G.U. v. Nielsen*, Case No. 1:18-cv-01458 (D.D.C.) (parents challenging family separation; preliminary injunction requiring reunification of family); *Mejia-Mejia v. Nielsen*, Case No. 1:18-cv-01445-PLF (D.D.C.) (single parent challenging family separation); *Padilla v. ICE*, Case No. 2:18-cv-00928 (W.D. Wash.) (separated parents challenging family separation); *see also Souza v. Sessions*, Case No. 1:18-cv-04412 (N.D. Ill.) (individual family challenging separation), *Paixao and D.M. v. Sessions*, Case No. 1:18-cv-04591 (N.D. Ill.), *W.R. and A.R. v. Sessions*, Case No. 1:18-cv-11380-GAO (D. Mass.) (same); *N.T.C. v. ICE*, Case No. 18-cv-6428 (S.D.N.Y.) (class action on behalf of separated children; transferred to *Ms. L* court); *E.S.R.B v. Sessions*, Case No. 18-cv-6654 (S.D.N.Y. July 24, 2018) (action by individual separated children; also transferred).

Other lawsuits address the conditions of immigrant detention and the Administration's announced plans to intern families indefinitely. *See, e.g.*, *Flores v. Sessions*, Case No. 2:85-cv-4544-DMG (C.D. Cal.) (class settlement on the conditions of detention for children); *Rodriguez v. Nielsen*, Case No. 5:18-cv-1317 (C.D. Cal.) (immigration attorneys and clients challenge lack of access to counsel for detainees; TRO issued); *S. Env't Ctr. v. Sessions*, Case

STATES' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
NO. 2:18-cv-00939-MJP

3

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
206-464-7744

No. 2:18-cv-00632 (D.N.M.) (conservation organization's APA challenge to family detention policy). Still others raise concerns with Defendants' treatment of asylum seekers. *E.g., Damus v. Nielsen*, Case No. 18-cv-578 (D.D.C) (class action challenge by detained asylum seekers; injunction requiring government to make individual determination of flight risk to justify detention); *Aracely R. v. Nielsen*, Case No. 17-cv-1976 (D.D.C) (individual plaintiffs challenging detention while seeking asylum); *Al Otro Lado v. Kelly*, Case No. 3:17-cv-02366 (S.D. Cal.) (class action by asylum seekers who were refused entry, preliminary motion pending since 12/17). These cases were filed in the District of Columbia, New Mexico, California, New York, Illinois, Massachusetts, and Washington, most within the last few months. None of them address the States' interests.

Consistent with the interests they have at stake, the States' claims and requested relief are not limited to the family reunification issues addressed in *Ms. L.* To the contrary, they seek equitable relief on five separate claims, encompassing due process, equal protection, APA, and asylum law violations. Dkt. 1 at 115-120. Specifically, the States challenge Defendants' refusal to accept asylum seekers at Southwestern ports of entry and Defendants' proposals to indefinitely detain families at unlicensed locations within the States. Such claims are not being litigated in *Ms. L. See Ms. L*, Dkt. 85 at 15. Likewise, due to their broader interests, the States' constitutional claims are premised on different allegations than those litigated in *Ms. L.* For example, *Ms. L.*'s Fifth Amendment claim focuses on the liberty interest of the separated parents. *Ms. L* Dkt. 1 at 7, Dkt. 85 at 14. The States' claims emphasize the interests of all state residents, in addition to addressing the conditions of detention for separated children and families and the resulting trauma. Dkt. 1 at 115.

STATES' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
NO. 2:18-cv-00939-MJP

4

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
206-464-7744

### III.     ARGUMENT

**A.      Comity Does Not Require Dismissal**

While Defendants carefully avoid setting out the standards under which the Court may dismiss a duplicative lawsuit, all of the comity doctrines on which they rely are entrusted to the sound discretion of the Court.  *See Mast, Foos & Co. v. Stover Mfg. Co.*, 177 U.S. 485, 488 (1900) (comity doctrine within discretion of trial court); *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) (district court has an "'ample degree of discretion'" to "dispense with the first-filed principle for reasons of equity") (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,* 342 U.S. 180, 183-184 (1952)); *Coopers & Lybrand v. Sun-Diamond Growers of CA*, 912 F.2d 1135, 1138 (9th Cir. 1990) (because abstention is an exception to the rule, judge must "exercise [her] discretion within the 'exceptional circumstances' limits" of *Colorado River*) (citation omitted).  As the Supreme Court recognized over a century ago, comity allows a judge to defer ruling on a case where the court has doubts as to the controlling legal doctrine, or out of convenience or expediency. *Mast*, 177 U.S. at 488-89.  But comity does not remove a court's "primary duty" to "dispose of cases according to the law and facts; in a word to decide them right." *Id.* at 488.  "In doing so, the judge is bound to determine them according to [her] own convictions" so if a judge "is clear in those convictions, [she] should follow them."  *Id.*

The Court should reject the arguments that dismissal is required because Defendants' conduct has given rise to multiple lawsuits, there is some overlap among the factual allegations between those cases, a limited class of parents has been certified in *Ms. L*, and the class has obtained preliminary relief requiring Defendants to reunify them with their children.  Motion at 5:24-10:5.  Defendants' comity arguments all suggest that the States' claims will be resolved by *Ms. L*'s reunification process.  Of course, the States are in no fashion members of the *Ms. L* class,

STATES' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
NO. 2:18-cv-00939-MJP

5

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
206-464-7744

1  and because there is no identity of parties, Defendants' arguments are meritless.  To the contrary,

2  this matter calls for this Court's "swift review and response."  Dkt. 32 at 7:8.

3        **1.    Because the States' claims and interests are distinct from *Ms. L*'s and they
              are not members of the *Ms. L* class, dismissal is not warranted.**

4        As a threshold matter, the mere existence of overlapping lawsuits is not grounds for

5  dismissal: "[W]e should not automatically assume that it is better for a nationwide issue to be

6  decided by a single court," because "[i]t is a bedrock principle of our federal court system that

7  the adjudication of novel and difficult issues of law is best served by letting questions percolate

8  among the lower federal courts."  *See New York v. Pruitt*, Case No. 18-cv-1030, 2018 WL

9  2411595, at *4 (S.D.N.Y. May 29, 2018); *Mast*, 177 U.S. at 488 (recognizing value in uniformity

10  of decision but still allowing for varied decision making).

11       Whatever the overlap with allegations in *Ms. L.*, the States' interests, claims, and

12  requested relief are all undeniably broader than those at issue in that case.  *See* Dkt. 32 at 9:4-8

13  (noting that "there are no 'equal protection' claims in *Ms. L*" and "the States' claims in this

14  matter are based on much broader allegations . . . than are pled in *Ms. L*, and the relief sought is

15  concomitantly broader").[1]  Accordingly, "complete" and "uniform" relief cannot be afforded to

16  the States via the *Ms. L* class action (*see* Dkt. 22 at 6:7-13) because the injuries to their

17  proprietary, sovereign, and quasi-sovereign interests are not addressed by a class of separated

18  parents.  For example, the States allege "federal interference with the enforcement of state

19  law[s]" for licensing out-of-home care facilities, and laws and policies favoring family unity.

20

---

21          [1] Defendants admit that the claims are not identical.  *See* Mot. 7:7-8:3 ("Claim III in this case is
22  not identical to the claims in Ms. L.").  The Complaint includes a number of allegations not at issue in
    *Ms. L*, including that detained parents and children are or have been subject to inhumane conditions of
23  confinement; that Defendants are improperly refusing to accept applications for asylum at ports of entry;
    that Defendants are conditioning family reunification on an agreement to abandon an asylum claim or to
    waive other relief available under the INA; and that Defendants are preparing to house children in
24  unlicensed facilities to evade State standards. Dkt. 1 at 119-120.

STATES' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
NO. 2:18-cv-00939-MJP

6

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
206-464-7744

*Texas v. United States*, 809 F.3d 134, 153 (5th Cir. 2015). The States disagree with *Ms. L* plaintiffs' stipulation that separated families can individually waive *Flores* protections, which include state licensing requirements, because such waiver could create conflicting obligations for States and would extinguish the States' licensing authority over federally contracted out-of-home care providers, leaving those facilities wholly unregulated at the local level. *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*, 458 U.S. 592, 601 (1982) (state's sovereign interest includes power to create and enforce state laws). The States also have a distinct interest as *parens patriae* to protect the health and well-being of their residents from the direct *and indirect* effects of Defendants' discriminatory family separation policies and related practices. *Id*. at 607-09; *see also Massachusetts. v. Bull NH Info. Sys., Inc.*, 16 F. Supp. 2d 90, 98-99 (D. Mass. 1998); *Peter & John's Pump House*, 914 F. Supp. 809, 812 (N.D.N.Y. 1996).

Defendants' argument that the *Ms. L* class certification bars the States' claims rests on the implicit assertion that the States are functionally members of the class of separated parents in that case. Indeed, almost all of Defendants' cited cases address collateral litigation brought *by individual class members* seeking relief already addressed by an existing class action. Mot. at 6:16-7:6 (citing cases). The States agree that dismissal of an individual class member's complaint may be proper where the asserted claim and relief are identical to that advanced by the class of which the plaintiff is a member. *See McNeil v. Guthrie*, 945 F.2d 1163, 1165 (10th Cir. 1991) (individual suits brought by class members barred by existing class action); *Horns v. Whalen*, 922 F.2d 835 (4th Cir. 1991) (same); *Gillespie v. Crawford*, 858 F.2d 1101, 1102 (5th Cir. 1988) (same);[2] *Bennett v. Blanchard*, 802 F.2d 456 (6th Cir. 1986) (same); *Goff v. Menke*,

---

[2] *Gillespie* stands for the proposition that if a district court judge and special master are overseeing a complex remedial decree, it does not make sense for other courts to simultaneously address identical issues through new proceedings. *See Gillespie v. Crawford*, 858 F.2d 1101 (5th Cir. 1988). The States do not intend to disrupt the reunification process overseen by the *Ms. L* court.

STATES' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
NO. 2:18-cv-00939-MJP

7

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
206-464-7744

672 F.2d 702, 705 (8th Cir. 1982) (class member "sought to enforce the [existing] preliminary injunction").  The suggestion that these cases control is meritless:  Defendants offer no authority – and the States are aware of none – that approves the dismissal of a case merely because the same or similar legal issues are raised in a separate lawsuit between different parties.  *Cf. Crawford v. Bell*, 599 F.2d 890, 892 (9th Cir. 1979) (district court erred in dismissing individual's claims beyond allegations and relief sought in existing class action) (cited, Mot. at 2:4-6).

Defendants' reliance on Rule 19(b) is puzzling; they appear to argue that the *Ms. L.* parents are indispensable parties to this case.  Mot. 9:19-10:5.  That proposition is wholly unsupported, and Defendants fail to show that joinder of individual parents is necessary for just adjudication of the States' claims.  *See Clark v. State*, 366 F.2d 678, 682 (9th Cir. 1966) (dismissal of an action is warranted when an indispensable party is not made a party to the action); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) ("moving party has the burden of persuasion in arguing for dismissal").

Similarly, the fact that some preliminary injunctive relief has been granted to some parents in *Ms. L* does not abrogate this lawsuit.  The States allege violations of their own interests, those of separated children, and impact to resident communities, and seek a variety of permanent relief.  In contrast, the *Ms. L* injunction focuses on addressing violations of parental rights for a limited class:  over a third of separated parents are not eligible for reunification, including because Defendants have deported over 400 parents, and extracted reunification "waivers" from another 120.  *Ms. L.*, Case No. 18-cv-00428, Dkt. 159 at 2.[3]  Accordingly, while

---

[3] *See also Ms. L*, Case No. 18-cv-00428, July 24, 2018 Hrg. Tr. at 36:8-11 (the court noting that "[t]here may be 463, there may be more. That's not certain, but it appears there is a large number of parents who are unaccounted for or who may have been removed without their children. That's a deeply troubling reality of the case."). Clinton Decl. Ex. QQ.

STATES' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
NO. 2:18-cv-00939-MJP

8

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

1    some of the States' residents may gain some relief from the preliminary injunction in *Ms. L*, this

2    relief is neither permanent nor does it alleviate the harms suffered by the States, nor does it

3    address the rights of those separated children with no immediate prospect of reunification.  *See*

4    Dkt. 1 at 119-120.

5        Further, the States have no interest in interfering with the *Ms. L.* injunction and they

6    support family reunification; any risk of conflicting orders here is quite modest and can be easily

7    mitigated by the parties and the Court.  As the Court has already found, diversion of resources

8    away from *Ms. L* and risk of inconsistent rulings are not grounds for delaying these proceedings,

9    and Defendants again fail to explain how this case would otherwise "interfere with the orderly

10   administration of the *Ms. L* class action."  Mot. 1:11-12; Dkt. 32 at 6:11-17, 8:16-19.

11       **2.    The first to file rule does not apply.**

12       The first to file rule may be invoked "when a complaint involving the *same parties and*

13   *issues* has already been filed in another district."  *Pacesetter Systems, Inc. v. Medtronic, Inc.*,

14   678 F.2d 93, 95 (9th Cir. 1982) (emphasis supplied); *see also Factors Etc., Inc. v. Pro Arts,*

15   *Inc.*, 579 F.2d 215, 218 (2d Cir.1978) ("essentially the same lawsuit involving the same parties

16   and the same issues" is filed in two different forums).  The doctrine is related to claim preclusion,

17   and applies only where a second action is materially on all fours with the first-filed action, such

18   that a determination in the first leaves little or nothing to be decided in the second. *See United*

19   *States v. The Haytian Republic,* 154 U.S. 118, 124 (1894) ("[T]he true test of the sufficiency of

20   a plea of 'other suit pending' in another forum [i]s the legal efficacy of the first suit, when finally

21   disposed of, as 'the thing adjudged,' regarding the matters at issue in the second suit.") (citation

22   omitted); *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688-89 (9th Cir. 2007) ("To

23   determine whether a suit is duplicative, we borrow from the test for claim preclusion.") *overruled*

24

STATES' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
NO. 2:18-cv-00939-MJP

9

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
206-464-7744

1  *on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008).[4]  As applied here, the first to

2  file rule is not satisfied because the States are not parties to the *Ms. L* action.  *See* Mot.

3  10:6-11:16.

4      At a minimum, the first to file rule requires that the parties in both suits be identical or

5  share a nearly identical congruence of interests.  *Pacesetter*, 678 F.2d at 94-95 (both cases

6  involved "the same three parties"); *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 628-29

7  (9th Cir. 1991) (both parties to a Trademark Trial and Appeal Board decision sought review in

8  separate forums); *Music Grp. Servs. US, Inc. v. inMusic Brands, Inc.*, Case No. C13-182MJP,

9  2013 WL 1499564, at *2 (W.D. Wash. Apr. 11, 2013) (successor in interest to original party was

10  identically situated with respect to the litigations).[5]  This is true even where the relief sought is

11  not identical.  *Am. Guarantee & Liab. Ins. Co. v. U.S. Fid. & Guar. Co.*, Case No. C06-1254

12  RSM, 2006 WL 3499342, at *1 (W.D. Wash. Dec. 4, 2006) (identical parties on opposite sides)

13  (cited, Mot. at 10:17-18).  The States have no involvement with the *Ms. L* case.  Plaintiffs in *Ms.*

14  *L* are not in privity with the States, nor do they represent State interests.  Findings and judgments

15  in *Ms. L* will not bind the States.

16      Even if the first to file rule applied, it does not require dismissal, transfer, or stay.  Courts

17  regularly decline to apply the rule when both cases are in the early stages of litigation, little to

18  no discovery has taken place, neither court has issued rulings on liability, and the later-filed

19  _____

20  [4] Thus, "[t]he classic context for applying the rule is where mirror-image lawsuits between the same parties are filed in different venues, for example, an action for damages and a parallel action seeking

21  a declaratory judgment that there has been no wrongdoing." *Bukhari v. Deloitte & Touche LLP*, Case No. 12 CIV. 4290 PAE, 2012 WL 5904815, at *3 (S.D.N.Y. Nov. 26, 2012).  The first to file rule also

22  applies to proceedings in rem or quasi in rem, and patent or trademark disputes, where the risk of inconsistent judgments requires a single forum for decision-making.  *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964); *Pacesetter*, 678 F.2d at 95-96.  None of these circumstances apply here.

23  [5] *Smith v. McIver*, 22 U.S. 532, 535 (1824), is also inapposite because it reasoned that a court of law could decide the issue filed first before it, and if a court of equity were to try the exact case again, it

24  would be acting improperly as an appellate court. That is not the case here.

STATES' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
NO. 2:18-cv-00939-MJP

10

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

complaint is broader and covers significant events—like the Executive Order—occurring after the first complaint was filed. *See Intersearch Worldwide, Ltd. v. Intersearch Grp. Inc.*, 544 F. Supp. 2d 949, 958 (N.D. Cal. 2008) ("focus is on the original complaint, not any amended complaints") (citation omitted); *see also Curtis v. Citibank, N.A.*, 226 F.3d 133, 139-40 (2d Cir. 2000) (reversing dismissal of claims in second action based on events that occurred after complaint was filed in first action); *Wilkie v. Gentiva Health Servs., Inc.*, Case No. CIV. 10-1451 FCD/GGH, 2010 WL 3703060, at *3 (E.D. Cal. Sept. 16, 2010) (refusing to apply rule in close overlapping cases where two proposed nationwide classes "appear[ed] similar" because, absent discovery, it is impossible to tell whether "some [putative members] included in the instant action may ultimately not be included in the [prior-filed] action").

### 3.   *Colorado River* abstention does not apply.

Defendants' selective quotation of *Colorado River* does not aid them, nor does that abstention doctrine apply here. Mot. at 11:18-12:17. To the contrary, *Colorado River* addresses the circumstances under which it is appropriate for a federal court to abstain where there are overlapping *state and federal* cases; Defendants' own authority makes clear that for "parallel *federal district court* proceeding[s,] . . . *Colorado River* abstention cases [are] inapt." *O'Neill v. United States*, 50 F.3d 677, 688 (9th Cir. 1995) (emphasis in original); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Moreover, *Colorado River* does not *require* abstention simply because there is an overlapping state proceeding. *United States v. Morros*, 268 F.3d 695, 706 (9th Cir. 2001) (that would "'make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States.'") (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)); *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993) (denying *Colorado River* stay where court lacked "full confidence" that "parallel

STATES' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
NO. 2:18-cv-00939-MJP

11

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
206-464-7744

state proceeding will end the litigation"); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) (district court abused its discretion in granting stay where there was doubt that "parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues"); *compare T.K. v. Stanley*, Case No. C16-5506 BHS, 2017 WL 2671295, at *5 (W.D. Wash. June 21, 2017) (stay was appropriate where parties had already engaged in substantial discovery and the state court had entered partial summary judgment "dispositive of the claims" in the federal litigation).

**B.      Transfer Under Section 1404(a) Is Unnecessary and Improper.**

The Court should deny Defendants' request to transfer this case to the Southern District of California because the States properly filed this case in their chosen venue, which is convenient and serves the public interest.  Any potential hardships arising from allowing this matter to proceed in the Western District of Washington are either a product of Defendants' own misconduct or indistinguishable from the ordinary burdens of litigation.

Defendants bear the burden of showing that transfer is necessary for "the convenience of the parties and witnesses, and in the interest of justice." *Vernon v. Qwest Comms. Int'l, Inc.*, 643 F. Supp. 2d 1256, 1269-70 (W.D. Wash. 2009); *see also Aweida Arts, Inc. v. Pure Glass Distribution, Inc.*, 157 F. Supp. 3d 929, 939 (W.D. Wash. 2015) (burden is on party seeking transfer to demonstrate convenience of its desired forum).  Courts in this circuit consider the *Jones* factors to determine whether Defendants have made the required showing.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (listing factors).

Defendants argue that the first *Jones* factor—whether a substantial amount of events giving rise to the claims arose in the forum—weighs in favor of transfer because only some of the separated parents and children were transferred to Western Washington, and many events giving rise to the claims occurred near the U.S.-Mexico border.  Mot. at 13:20-14:14.  But as

STATES' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
NO. 2:18-cv-00939-MJP

12

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
206-464-7744

1  Defendants acknowledge, they transferred dozens of separated adults from the border to the

2  SeaTac Detention Center pursuant to their practice of separating and transferring families all

3  across the nation.  *See* Mot. at 14:3-6; Dkt. 1 at 99-100.  This is sufficient to support venue here.

4  *See United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 752 (N.D. Cal.

5  2015) ("The [venue] statute does not require that a majority of the events have occurred in the

6  district where suit is filed, nor does it require that the events in that district predominate.")

7  (citation omitted).  Moreover, it is Defendants' own misconduct that created the diffused harm

8  they now argue should preclude litigation outside of districts bordering Mexico.  The first *Jones*

9  factor does not support transfer, and the second factor (familiarity with state law) is inapplicable.

10      The third *Jones* factor (the plaintiff's choice of forum) weighs heavily against transfer.

11  Defendants must make "a strong showing of inconvenience to warrant upsetting the plaintiff's

12  choice of forum."  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.

13  1986); *Wilton v. Hallco Indus., Inc.*, Case No. C08-1470 RSM, 2009 WL 113735, at *2

14  (W.D. Wash. 2009) ("There is strong presumption in favor of the plaintiff's choice of forum.");

15  *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("[P]laintiff's choice of forum

16  should rarely be disturbed.").  This is true even where plaintiffs are a group of states who

17  presumably could have sued in any of their respective jurisdictions.  *New York v. Pruitt*, Case

18  No. 18-CV-1030 (JPO), 2018 WL 2411595 at *6 (S.D.N.Y. 2018) ("New York is the lead

19  plaintiff in the lawsuit brought by the States, and its choice of forum deserves substantial

20  weight.").  Here, the Court should defer to the States' choice of forum.

21      Defendants argue that the Court should afford less weight to this choice due to "the

22  scattered nature of the States' alleged harm" across multiple states. Mot. at 14:15-17. But as

23  explained above, Defendants cannot simultaneously admit to the widespread harm inflicted by

24  their family separation policies and use their own misconduct as a basis to limit the locations in

which litigation can take place. *See Lamont v. Haig*, 590 F.2d 1124, 1134 (D.C. Cir. 1978) ("[I]t is evident that the often unfruitful pursuit of a single locality as the one and only district in which the claim arose is not needed to ensure the efficient conduct of the litigation."). Likewise, the fourth and fifth *Jones* factors (the respective parties' contacts with the forum and the contacts relating to the plaintiff's causes of action in the chosen forum) do not necessitate transfer. Defendants' own misconduct has scattered injured parents and children across the nation, and the Western District of Washington, like the Southern District of California, is just one of the many jurisdictions affected by Defendants' egregious conduct.

The sixth, seventh, and eighth *Jones* factors—(6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof—do not weigh in favor of transfer. *See* Mot. at 15:5-17. As this Court noted, "the resources [Defendants] will have to expend" to litigate this case are "far outweighed by the damage being inflicted on the children and parents whose interests the States are representing in this matter." Dkt. 32 at 8:16-19. And the difference in cost would be minimal as Defendants will presumably use similar work product and information they are required to provide in any of the related litigations. *See* Dkt. 32 at 9:9-15.

Moreover, numerous other cases continue to proceed in other jurisdictions, undercutting Defendants' argument that a transfer would serve judicial economy. *See Pruitt*, 2018 WL 2411595, at *4 (finding that the presence of "parallel litigation" in other jurisdictions "undercuts any efficiency gains" transfer could have provided). Indeed, other federal courts have proceeded with family separation challenges despite much greater overlap with the *Ms. L* case than the claims presented here. For example, the District Court for the District of Columbia just issued a temporary restraining order related to family separation notwithstanding the

STATES' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
NO. 2:18-cv-00939-MJP

14

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    injunction in *Ms. L. M.G.U., et al. v. Nielsen, et al.*, Case No. 18-1458 (PLF) (D.C.C. July 16,

2    2018), Dkt. 44; *see also Souza v. Sessions*, Case No. 1:18-cv-04412 (N.D. Ill. June 28, 2018),

3    Dkt. 23 (temporary restraining order directed immediate reunification of parent and child);

4    *Paixao and D.M. v. Sessions*, Case No. 1:18-cv-04591 (N.D. Ill. July 5, 2018), Dkt. 16 (same).

5    Defendants place great emphasis on two New York cases by separated children that have been

6    transferred to the *Ms. L* court, but those cases are readily distinguishable.  Indeed, both Judge

7    Furman and Judge Rakoff based their transfer on factors that are not presented here.  *See* Dkt.

8    33-1 (transfer order in *N.T.C. v. ICE*, No. 18-cv-6428 (S.D.N.Y. July 19, 2018)) (noting that

9    plaintiffs are members of the "same families" as the *Ms. L* class); Dkt. 35-2 (hearing transcript

10   in *E.S.R.B v. Sessions*, No. 18-cv-6654 (S.D.N.Y. July 24, 2018)) (Judge Rakoff notes that he

11   spoke with Judge Sabraw who felt that relief sought by plaintiff children in *E.S.R.B.* "conflicted

12   with his orders" in *Ms. L*).

13        If a motion to transfer would simply shift the inconveniences, it should be denied.

14   *Decker*, 805 F.2d at 843; *Smokiam RV Resort LLC v. William Jordan Capital, Inc.*, Case No.

15   C17-0885-JCC, 2017 WL 4224408, at *2 (W.D Wash. Sept. 22, 2017). As Defendants

16   acknowledge, non-party witnesses and potential evidence are scattered across the nation (Mot.

17   at 15:14-15) and Defendants have not shown attendance of key witnesses would be easier in

18   southern California.  *See Aweida Arts*, 157 F. Supp. 3d at 939 (burden is on party seeking transfer

19   to demonstrate convenience of its desired forum).  Indeed, Plaintiffs have already submitted 41

20   declarations from witnesses near the Western District of Washington who reside in either

21   Washington or Oregon.[6]  For all of these witnesses, proceeding in San Diego would plainly be

22   less convenient.   Moreover, most of Defendants' witnesses are presumably located in

23

24        [6] This represents nearly half of the declarations the States have filed so far in this litigation.

STATES' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
NO. 2:18-cv-00939-MJP                    15        ATTORNEY GENERAL OF WASHINGTON
                                                          800 Fifth Avenue. Suite 2000
                                                           Seattle, WA  98104-3188
                                                              206-464-7744

1    Washington D.C.  *See, e.g.*, Dkt. 21-2 (White Decl.).  Thus, whether the case proceeds in San

2    Diego or Seattle should be a neutral factor for them.

3         Venue is proper in Washington because a part of the events giving rise to the claims

4    occurred in Seattle and Defendants have not demonstrated a need justifying transfer.  As

5    Defendants have shown no inconvenience to themselves or witnesses, or other reasons justice

6    would require venue in California, they do not meet the burden of proof for transfer of venue

7    under 28 U.S.C. § 1404(a).

8    **C.      There Is No Reason to Stay This Case.**

9         "[O]nly in rare circumstances will a litigant in one cause be compelled to stand aside

10   while a litigant in another settles the rule of law that will define the rights of both."  *Landis v.*

11   *N. Am. Co.*, 299 U.S. 248, 255 (1936); *Washington v. Internet Order, LLC*, Case No. C14-1451

12   JLR, 2015 WL 918694, at *5 (W.D. Wash. Mar. 2, 2015) (denying stay where there is "no

13   guarantee" that injunctive relief in parallel case will "match the relief" sought in the current

14   case).  This case is not that kind of "rare circumstance."

15        Contrary to Defendants' arguments, traditional stay factors do not support delay of this

16   proceeding pending resolution of *Ms. L.*  In considering whether a stay is warranted, courts

17   examine "possible damage which may result from the granting of a stay, the hardship or inequity

18   which a party may suffer in being required to go forward, and the orderly course of justice

19   measured in terms of the simplifying or complicating of issues, proof, and questions of law."

20   *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  "[I]f there is even a fair possibility that

21   the stay . . . will work damage to someone else," a stay is inappropriate absent a strong showing

22   by the moving party of "hardship or inequity."  *Landis*, 299 U.S. at 255.

23        Here, there is more than a "fair possibility" of harm to the States from a stay and

24   Defendants have not shown any hardship beyond the ordinary burdens of litigation.  Indeed, the

STATES' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
NO. 2:18-cv-00939-MJP

16

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

Court has recently expedited these proceedings because the evidence here, as well as findings in *Ms. L*, demonstrated "immediate and extensive" harm caused by Defendants' family separation policy and related practices calling for "swift review and response."  Dkt. 32 at 7:3-13.  In so ruling, the Court rejected Defendants' argument that proceeding to the merits would require them "to engage in extremely costly discovery."  *See* Dkt. 32 at 9:9-15 (burden on Defendants is "trivial" when compared to "harms being inflicted on the parents and children").

Further, to "defer this case until 30 days after the *Ms. L* case is resolved" would potentially delay proceedings for months—if not years—given that *Ms. L* is still in its very early stages.  Mot. at 17:8-11.  "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court."  *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979); *see also Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066-67 (9th Cir. 2007) (because "stay is likely to do damage to [plaintiff], and it is unclear when the stay might lift, if at all," district court erred in issuing stay).

Defendants suggest that a stay is required to resolve "jurisdictional issues raised in Defendants' Opposition to Plaintiffs' Motion for Expedited Discovery" (Mot. 17:3-5), but this is (at best) a red herring.  The Court has already *ruled on* the States' Motion for Expedited Discovery, so a stay related to that motion is unnecessary.  Defendants have not moved for any substantive relief outside of the present Motion.  *See* Dkt. 32; *compare* Motion.  There are no grounds here for a stay.  *Cf. Gill v. Whitford*, 138 S. Ct. 1916 (2018) (judgment stayed pending appeal); *Whitmore v. Arkansas*, 495 U.S. 149, 153-54, (1990) (same).

Defendants have failed to show that a stay is required in this case.

STATES' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
NO. 2:18-cv-00939-MJP

17

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
206-464-7744

1

## IV.    CONCLUSION

2

The States respectfully request that the Court deny the Motion in its entirety.

3

DATED this 30th day of July, 2018.

4
                  ROBERT W. FERGUSON
                  Attorney General

5

6
                  */s/ Laura K. Clinton*
                  LAURA K. CLINTON, WSBA #29846

7
                  Assistant Attorney General
                  REBECCA GLASGOW, WSBA #32886

8
                  Deputy Solicitor General
                  NOAH G. PURCELL, WSBA #43492

9
                  Solicitor General
                  COLLEEN M. MELODY, WSBA #42275

10
                  Civil Rights Division Chief
                  MEGAN D. LIN, WSBA #53716

11
                  Assistant Attorney General
                  Attorneys for Plaintiff State of Washington

12

13

14

15

16

17

18

19

20

21

22

23

24

STATES' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
NO. 2:18-cv-00939-MJP

18

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
206-464-7744

## **DECLARATION OF SERVICE**

I hereby certify that on July 30, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will serve a copy of this document upon all counsel of record.

DATED this 30th day of July, 2018, at Olympia, Washington.

*/s/ Jennifer D. Williams*
Jennifer D. Williams
Paralegal

STATES' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
NO. 2:18-cv-00939-MJP

19

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
206-464-7744