The Honorable Marsha J. Pechman

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| STATE OF WASHINGTON, et al., | NO. 2:18-cv-00939-MJP |
| Plaintiffs, | DECLARATION OF LAURA K. CLINTON IN SUPPORT OF STATES' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR, ALTERNATIVELY, TRANSFER VENUE, OR ALTERNATIVELY, HOLD CASE IN ABEYANCE |
| v. | |
| THE UNITED STATES OF AMERICA; DONALD TRUMP, in his official capacity as President of the United States of America, et al., | |
| Defendants. | **Noting Date: August 3, 2018** |

I, Laura K. Clinton, declare as follows:

1.      I am over the age of 18 and have personal knowledge of all the facts stated herein.

2.      I am an Assistant Attorney General with the Washington State Attorney General's Office and counsel of record for the State of Washington in this matter.

3.      Attached hereto as Exhibit OO is a true and correct copy of the Declaration of Sara Goldband.

4.      Attached hereto as Exhibit PP is a true and correct copy of the NW Political Report article, *I felt like I was dying': In handwritten letters, detained immigrant fathers describe family separation*, July 17, 2018, authored by Lauren Villagran.

DECLARATION OF
LAURA K. CLINTON IN SUPPORT OF
STATES' OPPOSITION TO
DEFENDANTS' MOTIONS
2:18-cv-00939-MJP

1

1         5.      Attached hereto as Exhibit QQ is a true and correct copy of the July 24, 2018.

2    hearing transcript for the Status Conference in *Ms. L., et al. v. ICE, et al.*, Case No. 18cv-0428

3    DMS (MDD) (S.D. Cal.).

4         I declare under penalty of perjury under the laws of the State of Washington and the United

5    States of America that the foregoing is true and correct.

6         DATED this 30th day of July, 2018, at Seattle, Washington.

7

8                             */s/ Laura K. Clinton*
                         Laura K. Clinton

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

DECLARATION OF
LAURA K. CLINTON IN SUPPORT OF
STATES' OPPOSITION TO
DEFENDANTS' MOTIONS
2:18-cv-00939-MJP

    2

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

**<u>DECLARATION OF SERVICE</u>**

2

I hereby certify that on July 30, 2018, I electronically filed the foregoing document with

3

the Clerk of the Court using the CM/ECF system, which will serve a copy of this document upon

4

all counsel of record.

5

DATED this 30th day of July, 2018, at Olympia, Washington.

6

7

*/s/ Jennifer D. Williams*
Jennifer D. Williams
Paralegal

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

DECLARATION OF
LAURA K. CLINTON IN SUPPORT OF
STATES' OPPOSITION TO
DEFENDANTS' MOTIONS
2:18-cv-00939-MJP

3

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# Exhibit OO

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, et al. | NO. 2:18-cv-00939-MJP |
| Plaintiff, | DECLARATION OF SARA GOLDBAND |
| v. | |
| DONALD TRUMP in his official capacity as President of the United States, et al., | |
| Defendants. | |

I, Sara Goldband, declare as follows:

1.    I am over the age of 18 and have personal knowledge of all the facts stated herein.

2.    For school year 2018-19, DC Public Schools (DCPS) received District of Columbia funding for each anticipated student via the Universal Per Student Funding Formula (UPSFF). The UPSFF provides an average of $12,097.83 to DCPS to educate a general education student, an average of $18,201.03 more if that student is identified for special education services, an average of $5,222.42 more if that student is identified as an English Learner, and an average of $2,334.10 more if that student is identified as at-risk.

3.    Consistent with *Plyer v. Doe*, which held that *all* students have a constitutional right to a public education regardless of their immigration status, DCPS welcomes all schoolchildren and their families in the District to enroll in DCPS.

I declare under penalty of perjury under the laws of the District of Columbia and the United States of America that the foregoing is true and correct.

DATED this 19th day of July, 2018 at District of Columbia.

Sara Goldband
Chief Business Officer, DCPS

# Exhibit PP

**The NM Political Report** │ (http://nmpoliticalreport.com/860526/i-felt-like-i-was-dying-in-handwritten-letters-detained-immigrant-fathers-describe-family-separation/)

<u>ADRIEL OROZCO</u>                                    July 17, 2018

# 'I felt like I was dying': In handwritten letters, detained immigrant fathers describe family separation

By **Lauren Villagran, Searchlight New Mexico**



A drawing in a letter from a father separated from his daughter.

In letters scrawled by hand, five immigrant fathers detained in New Mexico describe being separated from their children at the border and the uncertainty of when — or whether — they will be reunited.

The men describe their anguish at being taken from their children and not knowing their children's whereabouts for weeks or months. "I felt like I was dying," wrote one father, who did not give his name or country of origin.

The Legislature's Courts, Corrections and Justice Committee heard their stories at a hearing July 16 on privately run immigrant prisons in the state.

About 70 fathers who were separated from their children are currently being held at Cibola County Correctional Center, according to Allegra Love, director of the Santa Fe Dreamers Project, a legal advocacy organization.

The detention center is one of several prisons run by CoreCivic Inc. for U.S. Immigration and Customs Enforcement. CoreCivic, a publicly traded, for-profit prison management company, has a five-year, $150 million contract with Cibola County.

Some of the fathers have had contact with their children, while others have not.

"They are very impatient, confused and traumatized," Love said. "They are not getting clear answers from anyone. It is complete chaos."

The Trump administration is facing strict, court-imposed deadlines to reunite immigrant parents separated from their children. In June, U.S. District Judge Dana Sabraw ordered the government to reunite all children under 5 with their parents by July 10 and all remaining children by July 26.

Last Tuesday, the Department of Homeland Security announced it had "completed" reunification of children under 5 by the deadline — but that did not include two dozen young children whose parents were still detained or had already been deported.

But while family reunifications continued through the weekend, the fathers detained in Cibola have remained in limbo. Immigrants held at Cibola are typically waiting to make an asylum claim or other request for permission to stay in the U.S.

Their letters were collected by Adriel Orozco, an attorney with the New Mexico Immigrant Law Center, based in Albuquerque.

"I think the most important thing is to educate the legislators on what is going on in the state," Orozco said.

Searchlight New Mexico, which obtained early copies of the letters, is publishing them below with the writers' permission.

*Searchlight New Mexico is a nonprofit, nonpartisan news organization dedicated to investigative journalism. Read more of our stories on Raising New Mexico at projects.searchlightnm.com/*
*Reporter Lauren Villagran can be reached at lauren@searchlightnm.com.*

Letters from fathers separated from children
(https://www.scribd.com/document/383985023/Letters-from-fathers-separated-from-children#from_embed) by New Mexico Political Report
(https://www.scribd.com/user/284030527/New-Mexico-Political-Report#from_embed) on Scribd

## Share this:

[f] (http://nmpoliticalreport.com/860526/i-felt-like-i-was-dying-in-handwritten-letters-detained-immigrant-fathers-describe-family-separation/?share=facebook)

[t] (http://nmpoliticalreport.com/860526/i-felt-like-i-was-dying-in-handwritten-letters-detained-immigrant-fathers-describe-family-separation/?share=twitter)

[G+] (http://nmpoliticalreport.com/860526/i-felt-like-i-was-dying-in-handwritten-letters-detained-immigrant-fathers-describe-family-separation/?share=google-plus-1)

 (http://nmpoliticalreport.com/860526/i-felt-like-i-was-dying-in-handwritten-letters-detained-immigrant-fathers-describe-family-separation/#print)

◁ More (#)

## Related



(http://nmpoliticalreport.com/678051/inside-a-private-prisons-150m-deal-to-detain-immigrants-in-new-mexico/)

### Inside a private prison's $150M deal to detain immigrants in New Mexico

(http://nmpoliticalreport.com/678051/inside-a-private-prisons-150m-deal-to-detain-immigrants-in-new-mexico/)

October 26, 2017

In "Quick Reads"



(http://nmpoliticalreport.com/329109/ice-transfers-transgender-detainees-to-new-mexico/)

### ICE transfers transgender detainees to New Mexico

(http://nmpoliticalreport.com/329109/ice-transfers-transgender-detainees-to-new-mexico/)

June 2, 2017

In "Congress & Federal Issues"



(http://nmpoliticalreport.com/858424/i-just-want-to-tell-my-son-i-love-him/)

### "I just want to tell my son I love him"

(http://nmpoliticalreport.com/858424/i-just-want-to-tell-my-son-i-love-him/)

In "News"

## Comments

0 comments

# Exhibit QQ

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


BEFORE HONORABLE DANA M. SABRAW, JUDGE PRESIDING

_____
                                        )
MS. L. AND MS. C.,                      )
                                        )CASE NO. 18CV0428-DMS
            PETITIONERS-PLAINTIFFS,     )
                                        )
VS.                                     )
                                        )SAN DIEGO, CALIFORNIA
U.S. IMMIGRATION AND CUSTOMS            )TUESDAY JULY 24, 2018
ENFORCEMENT ("ICE"); U.S. DEPARTMENT    ) 3:00 P.M. CALENDAR
OF HOMELAND SECURITY ("DHS"); U.S.      )
CUSTOMS AND BORDER PROTECTION ("CBP");  )
U.S. CITIZENSHIP AND IMMIGRATION        )
SERVICES ("USCIS"); U.S. DEPARTMENT     )
OF HEALTH AND HUMAN SERVICES ("HHS");   )
OFFICE OF REFUGEE RESETTLEMENT ("ORR"); )
THOMAS HOMAN, ACTING DIRECTOR OF ICE;   )
GREG ARCHAMBEAULT, SAN DIEGO FIELD      )
OFFICE DIRECTOR, ICE; ADRIAN P. MACIAS, )
EL PASO FIELD DIRECTOR, ICE; FRANCES M. )
JACKSON, EL PASO ASSISTANT FIELD        )
OFFICE DIRECTOR, ICE; KIRSTJEN NIELSEN, )
SECRETARY OF DHS; JEFFERSON BEAUREGARD  )
SESSIONS III, ATTORNEY GENERAL OF THE   )
UNITED STATES; L. FRANCIS CISSNA,       )
DIRECTOR OF USCIS; KEVIN K.             )
MCALEENAN, ACTING COMMISSIONER OF       )
CBP; PETE FLORES, SAN DIEGO FIELD       )
DIRECTOR, CBP; HECTOR A. MANCHA JR.,    )
EL PASO FIELD DIRECTOR, CBP;            )
ALEX AZAR, SECRETARY OF THE             )
DEPARTMENT OF HEALTH AND HUMAN          )
SERVICES; SCOTT LLOYD, DIRECTOR         )
OF THE OFFICE OF REFUGEE RESETTLEMENT,  )
                                        )
            RESPONDENTS-DEFENDANTS.     )
----------------------------------------

REPORTER'S TRANSCRIPT OF PROCEEDINGS
STATUS CONFERENCE

```
COUNSEL APPEARING:

FOR PLAINTIFF:              LEE GELERNT, ESQ.
                           ACLU IMMIGRANT RIGHTS PROJECT
                           125 BROAD STREET 18TH FLOOR
                           NEW YORK, NEW YORK 10004

                           BADIS VAKILI, ESQ.
                           ACLU FOUNDATION OF SAN DIEGO
                           AND IMPERIAL COUNTIES
                           P.O. BOX 87131
                           SAN DIEGO, CALIFORNIA 92138

                           SPENCER AMDUR, ESQ.
                           ACLU OF NORTHERN CALIFORNIA
                           39 DRUMM STREET
                           SAN FRANCISCO, CALIFORNIA 94111

FOR DEFENDANT:             SARAH B. FABIAN, ESQ.
                           SCOTT STEWART, ESQ.
                           U.S. DEPARTMENT OF JUSTICE
                           OFFICE OF IMMIGRATION LITIGATION
                           P.O. BOX 868
                           BEN FRANKLIN STATION
                           WASHINGTON, DC 20044




REPORTED BY:               LEE ANN PENCE,
                           OFFICIAL COURT REPORTER
                           UNITED STATES COURTHOUSE
                           333 WEST BROADWAY, ROOM 1393
                           SAN DIEGO, CALIFORNIA 92101
```

```
 1   SAN DIEGO, CALIFORNIA – TUESDAY, JULY 24, 2018 – 3:00 P.M.

 2                           *   *   *

 3            THE CLERK:  NO. 2 ON CALENDAR, CASE NO. 18CV0428,

 4   MS. L. VERSUS U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; ON FOR

 5   STATUS CONFERENCE.

 6            THE COURT:  GOOD AFTERNOON.

 7            CAN I HAVE APPEARANCES, PLEASE?

 8            MR. GELERNT:  GOOD AFTERNOON, YOUR HONOR.  LEE

 9   GELERNT FOR THE ACLU FOR PLAINTIFFS.

10            MR. AMDUR:  GOOD AFTERNOON.  SPENCER AMDUR FOR THE

11   PLAINTIFFS.

12            MR. VAKILI:  GOOD AFTERNOON, YOUR HONOR.  BARDIS

13   VAKILI FOR THE PLAINTIFFS.

14            MR. STEWART:  GOOD AFTERNOON, YOUR HONOR.  SCOTT

15   STEWART FOR THE DEFENDANTS.

16            MS. FABIAN:  GOOD AFTERNOON, YOUR HONOR.  SARAH

17   FABIAN FOR THE DEFENDANTS.

18            THE COURT:  THANK YOU.  AND WELCOME ALL.

19            LET'S GO THROUGH THE STATUS REPORT.  THERE IS A LOT

20   OF INFORMATION HERE, AND I HAVE SOME QUESTIONS.

21            THERE IS AN INDICATION OF 1,634 ELIGIBLE.  THAT'S

22   SIMILAR TO WHERE WE WERE LAST TIME WITH 1606.

23            MS. FABIAN:  YOUR HONOR, THAT IS 1637 TODAY.

24            THE COURT:  OKAY.

25            AND THERE IS AN INDICATION OF SUCCESSFUL
```

```
 1   REUNIFICATION OF 879.

 2           MS. FABIAN:  THAT'S 1,012 TODAY.

 3           THE COURT:  1,012.  THAT SHOWS HOW FLUID AND ACTIVE

 4   THE PROCESS IS.

 5           OF THOSE 1,012, HOW MANY ARE DETAINED TOGETHER AND

 6   HOW MANY ARE BEING PAROLED INTO THE COMMUNITY?

 7           MS. FABIAN:  I DON'T HAVE THOSE NUMBERS, YOUR HONOR.

 8           THE COURT:  DO YOU HAVE AN APPROXIMATION?

 9           MS. FABIAN:  I DON'T THINK I DO AT THIS TIME, YOUR

10   HONOR.

11           THE COURT:  THE INDICATION ALSO IS THAT ALL

12   POTENTIAL CLASS MEMBERS HAVE BEEN -- HAVE COMPLETED THEIR

13   INTERVIEW, AND THE CHILD FILE REVIEW HAS BEEN COMPLETED AS

14   WELL.  AM I CORRECT?

15           MS. FABIAN:  THAT'S CORRECT.

16           THE COURT:  SO THE PROCESS, AT THIS POINT, INVOLVES

17   APPROXIMATELY 1,417 PEOPLE, AND THEN THE REUNIFICATION IS

18   PROGRESSING AS TO ALL.

19           MS. FABIAN:  THAT'S CORRECT.

20           THE COURT:  THE INFORMATION THAT WE DON'T HAVE IS

21   HOW MANY ARE BEING DETAINED TOGETHER, HOW MANY ARE BEING

22   PAROLED.

23           MS. FABIAN:  I DON'T HAVE THAT, NO, YOUR HONOR.

24           I CAN SEE FROM MY CLIENTS WHAT WE CAN PUT ON THAT IN

25   THE NEXT STATUS REPORT, IF THAT'S SOMETHING THE COURT IS
```

JULY 24, 2018

```
1   INTERESTED IN.

2           THE COURT:  YES.  WE WILL GET TO THAT IN A MOMENT.

3   LET'S KEEP GOING DOWN THE LIST.

4           THEN THE INITIAL DETERMINATION BY THE GOVERNMENT OF

5   PARENTS WHO ARE INELIGIBLE, THERE IS 917?

6           MS. FABIAN:  THAT'S 914.

7           THE COURT:  NOW 914.

8           THERE WERE TWO PARENTS IN CRIMINAL CUSTODY, THEY ARE

9   NOW OUT?

10          MS. FABIAN:  I DON'T KNOW HOW THAT NUMBER MOVED.  I

11  AM NOT SURE IF THAT -- WHERE THAT CHANGED.

12          THE COURT:  BECAUSE THE INDICATION IS THEY ARE NOW

13  ZERO.

14          PARENTS WHO WAIVED REUNIFICATION.  IT WAS 136 IT IS

15  NOW 130?

16          MS. FABIAN:  IT IS NOW 127.  MY UNDERSTANDING IS

17  SOME MAY HAVE CHANGED THEIR MIND.

18          THE COURT:  OKAY.  SO WHERE THEY WANT TO BE

19  REUNIFIED.

20          MS. FABIAN:  CORRECT.

21          THE COURT:  THAT COULD BE FOR A VARIETY OF REASONS,

22  EITHER TO PURSUE IMMIGRATION ISSUES TOGETHER -- COULD BE A

23  VARIETY OF REASONS.

24          MS. FABIAN:  I EXPECT, YOUR HONOR, THAT A LOT OF

25  TIMES THE DECISION TO WAIVE REUNIFICATION WOULD BE BASED ON
```

JULY 24, 2018

1    DESIRE TO HAVE THE CHILD BE RELEASED TO ANOTHER RELATIVE SO --

2    AND PERHAPS PURSUE RELIEF SEPARATELY, SO THEY MAY CHANGE THAT

3    DECISION FOR A VARIETY OF REASONS.

4         **THE COURT:**  ADULTS WITH PRECLUDING CRIMINAL HISTORY,

5    THAT WAS AT 91, IT IS NOW 64.  SO WE ARE 27 CLEARED?

6         **MS. FABIAN:**  THAT IS MY UNDERSTANDING.  THAT NUMBER

7    INCLUDED WHAT WE, I THINK, CALLED THE AMBER CATEGORY, FOLKS

8    WHO HAD INITIALLY BEEN DETERMINED TO HAVE A CRIMINAL RECORD

9    BUT THEN UPON EVALUATION IT WAS DETERMINED THAT THEY WERE

10   CLEARED FOR REUNIFICATION.

11        **THE COURT:**  OKAY.

12        THE NEXT CATEGORY INDICATES ADULTS NOT IN THE UNITED

13   STATES UNDER REVIEW, 463.  WHAT DOES THAT MEAN?

14        **MS. FABIAN:**  THE RECORDS RECORDED -- REFLECT 463

15   WITH A CODE THAT SUGGESTS THAT THEY MAY HAVE DEPARTED THE

16   UNITED STATES.

17        WHAT I UNDERSTAND WE ARE DOING IS TAKING A CLOSER

18   LOOK AT THOSE TO DETERMINE IF THAT IS, IN FACT, WHAT THE CODE

19   INDICATES, OR IF THERE IS SOMETHING ELSE INDICATED BY THAT

20   CODE, WHETHER IT IS -- SO IT MAY BE A REMOVAL OR IT MAY BE A

21   VOLUNTARILY DEPARTURE THAT IS UNRELATED TO A SEPARATION, OR IT

22   MAY BE A PRIOR CODE.  SO WE ARE JUST GOING THROUGH THOSE -- AS

23   I UNDERSTAND IT THE CLIENT IS GOING THROUGH THOSE TO DETERMINE

24   EXACTLY WHAT THAT CODE MEANS IN EACH OF THOSE CASES.

25        **THE COURT:**  WOULD THAT NUMBER REFLECT PARENTS WHO

JULY 24, 2018

7

```
1    HAVE BEEN REMOVED OR VOLUNTARILY DEPARTED WITHOUT THEIR CHILD?

2            MS. FABIAN:  IT MAY, YES.  THAT IS WHAT WE ARE

3    DETERMINING.  THAT IS WHAT WE ARE REVIEWING RIGHT NOW.

4            THE COURT:  DO YOU HAVE ANY INDICATION WHAT THE

5    NUMBERS MIGHT BE OF PARENTS WHO HAVE BEEN REMOVED OR

6    VOLUNTARILY DEPARTED WITHOUT THEIR CHILDREN?  DO YOU HAVE AN

7    ESTIMATE OF WHAT THAT PERCENTAGE WOULD BE OF THESE 463?

8            MS. FABIAN:  I DON'T, YOUR HONOR.  I THINK IT WOULD

9    ULTIMATELY BE SOMETHING LESS THAN THE 463, BUT IT COULD BE

10   THAT WHOLE NUMBER.  I THINK IT IS JUST A MATTER OF THE AGENCY

11   BEING ABLE TO LOOK AT EACH INDIVIDUALLY TO SEE WHAT THE

12   NUMBERS MEAN.

13           THE COURT:  THIS, TO BE CLEAR, COULD BE THE CATEGORY

14   WHERE PARENTS AND CHILDREN WERE SEPARATED, EITHER BEFORE OR

15   DURING THE ZERO TOLERANCE POLICY, AND THERE WASN'T

16   INFRASTRUCTURE IN PLACE TO DETERMINE, AT SEPARATE TIMES, WHERE

17   THE PARENT WAS VERSUS THE CHILD, WHICH THEN RESULTED IN A

18   NUMBER OF PARENTS BEING REMOVED WITHOUT CHILD.  AM I CORRECT?

19           MS. FABIAN:  IT COULD BE, YOUR HONOR.  THAT COULD

20   FALL UNDER THAT CATEGORY.

21           THE COURT:  THIS NUMBER COULD BE VERY SIGNIFICANT.

22   THERE IS 463 HERE, AND I THINK THERE WERE 12 WITH THE

23   UNDER-FIVE.

24           MS. FABIAN:  I DON'T REMEMBER WHAT THE FINAL NUMBER

25   WAS.  THAT SOUNDS RIGHT, I THINK IT WAS 12.
```

JULY 24, 2018

 1          **THE COURT:**  ALL RIGHT.  WE WILL COME BACK TO THAT IN

 2     A MOMENT.

 3          THE NEXT CATEGORY IS FURTHER EVALUATION, 260.  WHAT

 4     DOES THIS CATEGORY MEAN?

 5          **MS. FABIAN:**  THOSE, AS I UNDERSTAND IT, ARE CHILDREN

 6     THAT FOR WHOM O.R.R. IS DOING FURTHER EVALUATION.  THAT MAY BE

 7     THAT THE PARENT WAS RELEASED AND O.R.R. HASN'T LOCATED THE

 8     PARENT.  IT MAY BE THAT THE CHILD HAD BEEN POTENTIALLY

 9     RELEASED TO ANOTHER SPONSOR.

10          SO I THINK THOSE ARE CHILDREN FOR WHOM O.R.R.

11     DOESN'T -- CAN'T CONCLUSIVELY PLACE THEM IN ONE OF THE OTHER

12     CATEGORIES AND SO THEY ARE REVIEWING TO DETERMINE IF THEY ARE,

13     IN FACT, CHILDREN OF CLASS MEMBERS.  AND THEN, IF SO, WHETHER

14     REUNIFICATION IS REQUIRED OR POSSIBLE.

15          **THE COURT:**  SO OF THESE 260, A NUMBER OF THESE MAY

16     BE CLASS MEMBERS RELEASED INTO THE INTERIOR.

17          **MS. FABIAN:**  SOME MAY BE, THAT IS MY UNDERSTANDING.

18     AND SOME MAY, IN FACT, NOT BE THE CHILDREN OF CLASS MEMBERS.

19          **THE COURT:**  SO THE 217 NUMBER OF CLASS MEMBERS

20     RELEASED INTO THE INTERIOR MAY INCREASE.

21          **MS. FABIAN:**  I THINK THAT IS RIGHT.  AS I UNDERSTAND

22     IT, 217 ARE THAT O.R.R. KNOWS ABOUT AND IS IN THE PROCESS OF

23     REUNIFICATION.

24          **THE COURT:**  AND THEN YOU HAVE INDICATED OF THIS 260

25     MANY OF THESE CHILDREN HAVE BEEN DISCHARGED BY O.R.R. IN

JULY 24, 2018

```
 1   APPROPRIATE CIRCUMSTANCES.  WHAT DOES THAT MEAN?

 2          MS. FABIAN:  IT MEANS THAT THEY MAY HAVE BEEN

 3   RELEASED TO OTHER FAMILY MEMBERS, AND THAT MAY BE BECAUSE

 4   EITHER THEY HAD JUST BEEN -- THE PARENT HAD DESIGNATED THEM TO

 5   BE RELEASED TO OTHER CLASS MEMBERS AT CERTAIN TIMES.  SO NOT

 6   ALL OF THOSE 260 REMAIN IN O.R.R. CUSTODY, SOME MAY HAVE BEEN

 7   RELEASED TO OTHER FAMILY MEMBERS.  BUT THERE WOULD STILL, IN

 8   SOME CASES, BE CONTINUED EVALUATION TO SEE IF THAT FURTHER

 9   ACTION TOWARDS REUNIFICATION WOULD BE NECESSARY.

10          THE COURT:  SO OF THESE 260, SOME OF THESE PARENTS

11   MAY FALL INTO THE CATEGORY OF PARENTS WHO HAVE BEEN RELEASED

12   INTO THE INTERIOR, AND SOME OF THEM MAY FALL INTO THE CATEGORY

13   OF HAVING BEEN REMOVED ALREADY.

14          MS. FABIAN:  NOT THAT OUR RECORDS CURRENTLY

15   INDICATE, BUT I CAN'T SAY FOR SURE THAT THAT WOULDN'T BE THE

16   CASE.  BUT THE RECORDS DON'T INDICATE THAT BASED ON WHAT WE

17   HAVE RIGHT NOW AS ANY INDICATORS FOR THE PARENTS.

18          THE COURT:  WHAT DO THE RECORDS INDICATE?  HOW CAN

19   YOU RULE OUT THAT OF THIS 260 A CERTAIN PERCENTAGE HAVE NOT

20   ALREADY BEEN REMOVED, AS OPPOSED TO SAYING IT APPEARS THIS 260

21   MAY INCLUDE THOSE RELEASED INTO THE INTERIOR, BUT WE ARE

22   PRETTY SURE IT DOESN'T INCLUDE THOSE WHO HAVE ALREADY BEEN

23   REMOVED.

24          MS. FABIAN:  AS I UNDERSTAND IT, THE CHILDREN HAVE

25   BEEN LINKED TO A PARENT BY A-NUMBER.  SO FOR THE 463 THE
```

JULY 24, 2018

```
 1   PARENT'S A-NUMBER IS LINKED TO A CODE THAT SUGGESTS THAT THEY
 2   POTENTIALLY -- THAT POTENTIALLY COULD INDICATE REMOVAL OR
 3   POTENTIALLY VOLUNTARY DEPARTURE.  SO FOR THE 260, THE PARENT'S
 4   A-NUMBER THAT IS LINKED DOES NOT CONTAIN THAT CODE.
 5             THE COURT:  OKAY.
 6             MS. FABIAN:  IT LINKS TO SOME OTHER CODES THAT ARE
 7   UNDER FURTHER EVALUATION TO DETERMINE IF THAT MEANS THEY HAVE
 8   BEEN RELEASED AND NOT LOCATED OR SOME OF THE OTHER THINGS I
 9   INDICATED.
10             THE COURT:  OKAY.  THANK YOU.
11             FINAL ORDER OF REMOVAL, THERE ARE 900.  IS THAT THE
12   CURRENT NUMBER OR IS THAT -- DO YOU HAVE A DIFFERENT NUMBER?
13             MS. FABIAN:  THAT WAS THE NUMBER AS OF YESTERDAY.  I
14   DID NOT GET AN UPDATED NUMBER TODAY.
15             THE COURT:  AND OF THAT NUMBER, DO WE KNOW HOW MANY
16   WERE REMOVED WITH THEIR CHILDREN VERSUS WITHOUT?
17             MS. FABIAN:  I BELIEVE THERE HAVE BEEN 20 REMOVALS,
18   BUT I WOULD HAVE TO CONFIRM THAT.
19             THE COURT:  20 --
20             MS. FABIAN:  20 REMOVALS OF -- I BELIEVE THAT IS 20
21   AFTER REUNIFICATION, BUT I WOULD HAVE TO CONFIRM THAT.
22             THE COURT:  20 AFTER REUNIFICATION.  SO THAT
23   WOULD -- DOES THAT MEAN 880 WERE REMOVED PRIOR TO
24   REUNIFICATION?
25             MS. FABIAN:  I AM SORRY.  THOSE 900 ARE NOT REMOVED.
```

1    THOSE -- THAT 900 WOULD SPAN -- I WOULD SAY THAT 900 IS MOSTLY

2    GOING TO BE FOUND IN THE TOP CATEGORY --

3         **THE COURT:**  YES.

4         **MS. FABIAN:**  -- OF THE POTENTIAL CLASS MEMBERS

5    ELIGIBLE FOR REUNIFICATION, BUT THAT DOES NOT INDICATE THAT

6    THEY HAVE BEEN REMOVED YET.

7         **THE COURT:**  OKAY.  SO YOU HAVE INDICATED THAT 1,012

8    CLASS MEMBERS HAVE BEEN REUNIFIED, AND 900 ARE SUBJECT TO A

9    FINAL ORDER OF REMOVAL.

10        WOULDN'T THAT THEN INDICATE THAT AT LEAST 900 OF THE

11   1,012 ARE DETAINED, WITH CHILD, IN ICE DETENTION?  SO THE

12   NUMBERS RELEASED INTO THE COMMUNITY WOULD BE VERY SMALL.

13        **MS. FABIAN:**  NOT NECESSARILY.  A FINAL -- A FINAL

14   ORDER AS USED IN THIS CATEGORY IS ACTUALLY DIFFERENT FROM AN

15   EXECUTABLE FINAL ORDER.  SO IN SOME CASES SOMEONE WITH A FINAL

16   ORDER MIGHT HAVE ADDITIONAL STEPS IN THEIR IMMIGRATION REVIEW.

17   AND SO I CAN'T -- I DON'T HAVE THE NUMBERS NECESSARILY TO SAY

18   IF THEN FOLKS AT THAT STAGE HAVE BEEN RELEASED.  BUT IT

19   DOESN'T CORRELATE THAT ALL OF THOSE 900 HAVE -- IN FACT IT IS

20   NOT TRUE THAT ALL OF THOSE 900 HAVE EXECUTABLE FINAL ORDERS.

21        I WOULD ALSO SAY THAT THAT 900 IS REALLY WITHIN THE

22   1600 NUMBER IN TERMS OF WHETHER ALL OF THOSE HAVE BEEN

23   REUNIFIED.  SOME OF THEM MAY ALSO BE WITHIN THE APPROXIMATELY

24   400 STILL AWAITING REUNIFICATION.

25        **THE COURT:**  OKAY.  WE MAY HAVE ALREADY TOUCHED ON

JULY 24, 2018

1    SOME OF THESE, BUT THERE ARE A FEW OTHER QUESTIONS ON THE

2    UPDATED NUMBERS.  AND MAYBE WE DON'T HAVE THIS INFORMATION

3    YET.

4              HOW MANY OF THE PARENTS THAT HAVE BEEN REUNITED ARE

5    SCHEDULED TO BE -- OR ARE SCHEDULED TO BE REUNITED HAVE FINAL

6    REMOVAL ORDERS?  IS THAT THE 900?

7              **MS. FABIAN:**  MOST LIKELY, YES.  SO I WOULD SAY THAT

8    THAT 900 COMES OUT OF THAT, THE TOP BULLET POINT, WHICH IS

9    INDIVIDUALS ELIGIBLE FOR REUNIFICATION.

10             **THE COURT:**  OF THOSE THAT HAVE BEEN REUNIFIED, HOW

11   MANY HAVE BEEN REMOVED ALREADY?  I THINK YOU SAID MAYBE 20.

12             **MS. FABIAN:**  THAT IS MY BEST GUESS, BUT I WOULD WANT

13   TO CONFIRM BEFORE.

14             **THE COURT:**  DO YOU KNOW, OF THAT NUMBER, HOW MANY

15   WERE REMOVED WITH THEIR CHILDREN?

16             **MS. FABIAN:**  I DON'T.

17             **THE COURT:**  OKAY.

18             **MS. FABIAN:**  I THINK I WOULD SAY, MORE ACCURATELY,

19   THE STATISTIC I HAVE IS THAT 20 CLASS MEMBERS, APPROXIMATELY

20   20, WERE REMOVED AFTER THE COURT'S ORDER, SO I CAN'T SAY AMONG

21   THOSE WHICH WERE REMOVED WITH THEIR CHILDREN OR WITHOUT.  THEY

22   WOULD HAVE ALL BEEN SUBJECT TO A WAIVER SUBJECT TO THE

23   PRELIMINARY INJUNCTION IF THEY WERE REMOVED WITHOUT THEIR

24   CHILDREN.  BUT I DON'T HAVE THE NUMBER AS TO HOW MANY OF THOSE

25   WERE REMOVED WITH OR WITHOUT THEIR CHILDREN.

JULY 24, 2018

```
 1            THE COURT:  AND THERE IS A 136 PARENTS THAT WAIVED
 2   REUNIFICATION AS OF THE PRESENT TIME.  DO YOU KNOW OF THOSE --
 3   IT IS 127 -- OF THOSE 127 WAIVED REUNIFICATION AFTER RECEIVING
 4   THE CLASS NOTICE?
 5            MS. FABIAN:  SO THIS IS -- I THINK I EXPLAINED THIS
 6   AT THE LAST HEARING AS WELL.  THERE IS REALLY -- THIS NUMBER
 7   IS INDIVIDUALS WHO WAIVED REUNIFICATION AT THEIR INTERVIEW
 8   WITH HHS, SO THAT IS NOT -- DOES NOT CORRELATE TO INDIVIDUALS
 9   NECESSARILY HAVING A FINAL ORDER OF REMOVAL.  THAT IS, AS
10   COMMANDER WHITE EXPLAINED, THAT FINAL STEP BEFORE
11   REUNIFICATION IS ENSURING THAT THE PARENT IN FACT WANTS TO BE
12   REUNIFIED.  SO THAT NUMBER IS FOLKS THAT DECLINED
13   REUNIFICATION AT THAT STEP.
14            RELATEDLY I THINK YOU WILL SEE IN TODAY'S FILING BY
15   THE GOVERNMENT IN THE DECLARATION THAT ICE HAS IDENTIFIED 85
16   INDIVIDUALS WHO HAVE DECLINED -- HAVE WAIVED REUNIFICATION
17   WITH A FINAL ORDER ON THE NOTICE FORM.  I HAVEN'T -- SO
18   WHETHER THERE IS -- THERE IS LIKELY OVERLAP BETWEEN THAT 85
19   AND SOME NUMBER OF THIS 127, BUT IT IS TWO DIFFERENT PARTS OF
20   THE PROCESS.
21            THE COURT:  OKAY.  FROM THE GOVERNMENT'S
22   PERSPECTIVE, THEN, OF THE ELIGIBLE CLASS MEMBERS,
23   REUNIFICATION WILL BE COMPLETED BY THURSDAY, OR VERY CLOSE TO
24   IT.
25            MS. FABIAN:  THAT'S MY UNDERSTANDING.
```

JULY 24, 2018

 1          **THE COURT:**  BECAUSE EVERYONE HAS BEEN CLEARED, AND

 2   1,012 HAVE ALREADY BEEN REUNIFIED AND THE BALANCE ARE

 3   SCHEDULED, TRANSPORTATION PENDING, WHICH I ASSUME WOULD OCCUR

 4   BETWEEN NOW AND THURSDAY.

 5          **MS. FABIAN:**  I THINK MY COLLEAGUE MAY SPEAK TO THIS

 6   A LITTLE BIT.  THERE ARE SOME ISSUES WITH STAYS OR OTHER

 7   INJUNCTIONS BEING ISSUED IN OTHER COURTS THAT MAY IMPEDE THAT

 8   PROCESS FOR SOME SMALL NUMBER OF INDIVIDUALS.  BUT FOR THE

 9   MOST PART --

10          **THE COURT:**  THAT'S THE NEW YORK SITUATION?

11          **MS. FABIAN:**  YES.

12          **THE COURT:**  LET'S ADDRESS THAT IN A MOMENT.

13          BUT ASIDE FROM THAT, THAT WOULD BE A VERY SMALL

14   GROUP OF CHILDREN.

15          **MS. FABIAN:**  I AM NOT AWARE -- THE ONLY OTHER ISSUE

16   I HAD HEARD WAS POTENTIAL WEATHER-RELATED TRAVEL ISSUES.  BUT

17   OTHER THAN THAT I HAVE NOT HEARD OF ANY IMPEDIMENTS TO

18   COMPLETING THE PROCESS.

19          **THE COURT:**  OKAY.  AND THEN AS TO THE CATEGORY, I

20   THINK IT IS 914, OF INELIGIBLE, THAT'S THE CATEGORY WHERE THE

21   PLAINTIFFS, WITH THE APPROPRIATE INFORMATION, CAN EITHER AGREE

22   OR IF THERE IS DISAGREEMENT BRING IT TO THE COURT'S ATTENTION

23   AT A LATER TIME.

24          **MS. FABIAN:**  I THINK THAT IS RIGHT.  WE WILL NEED TO

25   GATHER THAT INFORMATION AND GIVE IT TO PLAINTIFFS, AND WE ARE

JULY 24, 2018

```
 1   WORKING ON THAT.  AND I THINK THEN WE CAN MEET AND CONFER
 2   FURTHER AS TO THE PROCESS.
 3             THE COURT:  AND THEN ON THE LIST, THE INFORMATION,
 4   LET'S RUN THROUGH THAT QUICKLY.
 5             THERE IS SUPPOSED TO BE A LIST OF CLASS MEMBERS WHO
 6   WAIVED REUNIFICATION PRIOR TO REMOVAL, AND THERE IS AN
 7   INDICATION THAT THAT IS COMING.  WHAT'S THE PROFFER THERE?
 8             MS. FABIAN:  I THINK WE HAVE GIVEN A LIST, AND I
 9   THINK I UPDATED IT EARLIER TODAY, AND THAT IS OF THE 127 WHO
10   WAIVED DURING THE HHS INTERVIEW PROCESS THE -- I KNOW
11   PLAINTIFFS HAVE ASKED FOR THE INDIVIDUALS WHO WAIVED ON THE
12   FORM, THE COURT ORDERED FORM.  AND THAT SEEMS TO NOW HAVE BEEN
13   COMPLETED, AND I HOPE VERY SHORTLY WE WILL BE ABLE TO GIVE
14   THEM THAT LIST.
15             THE COURT:  AND THAT WOULD BE DONE -- YOU ARE IN A
16   POSITION TO DO THAT, FOR EXAMPLE BY TOMORROW SOMETIME?
17             MS. FABIAN:  I HAVE AN EMAIL OUT TO CONFIRM THAT,
18   BUT AS REFLECTED IN OUR DECLARATION FILED THIS MORNING, IT
19   APPEARS THAT WE HAVE IDENTIFIED THOSE 85 INDIVIDUALS, SO IT
20   SHOULD BE WE -- SHOULD BE ABLE TO PROVIDE THAT LIST VERY
21   SHORTLY.
22             THE COURT:  THEN HOW ABOUT THE LIST OF CLASS MEMBERS
23   WHO HAVE BEEN REMOVED.  WHERE ARE WE ON THAT?
24             MS. FABIAN:  THAT'S THE LIST THAT'S UNDER FURTHER
25   REVIEW, AS I JUST INDICATED.  I HAVE NOT RECEIVED A TIMETABLE
```

JULY 24, 2018

```
 1   FOR THAT.  I HAVE ASKED FOR IT AS SOON AS POSSIBLE.  I KNOW
 2   THAT WE COMMITTED TO DOING IT ON FRIDAY, AND THERE WAS A
 3   MISUNDERSTANDING BETWEEN MYSELF AND MY CLIENT AS FAR AS WHAT
 4   WAS BEING ASKED FOR.  SO I UNDERSTAND THAT THEY ARE PULLING
 5   TOGETHER WHAT THEY CAN AS QUICKLY AS POSSIBLE, BUT I DON'T
 6   HAVE THE TIMETABLE FOR THAT FROM THEM.
 7           THE COURT:  IF THE COURT WERE TO ISSUE AN ORDER AS
 8   TO WHEN THAT LIST SHOULD BE PRODUCED, DO YOU HAVE A POSITION
 9   AS TO WHAT CAN BE DONE?  BECAUSE WHEN WE DISCUSSED THIS LAST
10   THERE WAS INDICATION THAT THE LIST WOULD BE COMING, I THINK
11   FRIDAY.  AND THEN THERE WAS SOME DISCUSSION ABOUT MAYBE
12   PRODUCING THE LIST ON MONDAY, WHICH WOULD HAVE BEEN YESTERDAY.
13           MS. FABIAN:  I HOPE TO HAVE A LIST TONIGHT THAT
14   WOULD HELP ME BETTER UNDERSTAND WHAT THAT LIST WILL CONTAIN.
15   SO WHAT -- I THINK WHAT I CAN SAY IS I HOPE THAT BY TOMORROW
16   WE COULD PROVIDE SOME INFORMATION.  WHAT I CAN'T COMMIT TO
17   RIGHT NOW IS EXACTLY WHAT THAT WILL CONTAIN BECAUSE I WON'T
18   KNOW UNTIL I SEE THAT LATER TODAY.
19           THE COURT:  AND THEN THERE WAS A LIST OF CLASS
20   MEMBERS WHO HAVE BEEN RELEASED FROM ICE CUSTODY.  YOU ARE
21   INDICATING YOU NEED ADDITIONAL TIME ON THAT.
22           MS. FABIAN:  I THINK SOME OF THAT -- AS I NOW
23   UNDERSTAND BETTER, I THINK SOME OF THAT MAY BE CONTAINED IN
24   TERMS OF THE -- THOSE REFLECTED IN THE TOP BULLET POINT.  I
25   THINK SOME OF THOSE MAY BE REFLECTED IN WHAT HAS ALREADY BEEN
```

JULY 24, 2018

1   PRODUCED TO PLAINTIFFS.  IN TERMS OF THOSE INDIVIDUALS WHO

2   MIGHT FALL IN THE BOTTOM CATEGORY, WHICH IS THE FURTHER REVIEW

3   CATEGORY OR THOSE INDIVIDUALS THAT WE CAN'T LOCATE, I THINK

4   THAT I DON'T HAVE YET.  AND I HOPE TO KNOW MORE ABOUT THAT

5   SOON AS WELL.

6           AND I KNOW THAT IS THE CATEGORY THAT PLAINTIFFS ARE

7   INTERESTED IN, AND I SAID TO THEM THAT WE WILL CONTINUE TO

8   WORK TO GET THAT TO THEM AS SOON AS WE CAN.

9           **THE COURT:**  YOU COULD PROVIDE A LIST, THOUGH, FOR

10  EXAMPLE THE PARENTS YOU KNOW WHO HAVE BEEN RELEASED FROM ICE

11  CUSTODY, YOU CAN PROVIDE THAT SPECIFIC INFORMATION.  AND THEN

12  YOU COULD ALSO ARTICULATE HOW MANY PARENTS YOU DON'T KNOW

13  WHERE THEY ARE.

14          **MS. FABIAN:**  I THINK THAT IS RIGHT, YOUR HONOR.

15          **THE COURT:**  OKAY.  WHAT WOULD BE THE EXPLANATION FOR

16  NOT KNOWING WHERE THE PARENTS ARE?  WHAT HAPPENED?  IS THIS

17  BECAUSE DOJ DIDN'T HAVE THE INFORMATION, OR DHS DOESN'T HAVE

18  THE INFORMATION SO THERE IS AN INABILITY TO GIVE IT TO HHS AND

19  THEN TO GOVERNMENT COUNSEL HERE TODAY?  OR WHAT IS THE

20  EXPLANATION?

21          **MS. FABIAN:**  I THINK THAT IF THE PARENT WAS

22  TRANSFERRED INTO ANY SORT OF STATE CUSTODY, FOR EXAMPLE IF

23  THERE WAS A WARRANT OUT FOR STATE CRIMINAL ACTIVITY AND THE

24  PARENT WAS TRANSFERRED THERE, THAT THAT PARENT MAY HAVE BEEN

25  THEN RELEASED WITHOUT NOTICE TO THE GOVERNMENT.  SO IF THAT

JULY 24, 2018

1  PATIENT DID NOT THEN COME FORWARD TO HHS TO SEEK REUNIFICATION
2  HHS MIGHT NOT BE AWARE OF THEIR WHEREABOUTS OR HOW TO CONTACT
3  THEM.

4          RELATEDLY, IF THEY WERE RELEASED BY -- RELEASED FROM
5  CRIMINAL CUSTODY, AND EVEN FEDERAL CRIMINAL CUSTODY BUT DID
6  NOT GO TO ICE CUSTODY THE SAME SITUATION COULD HAVE OCCURRED.
7  SO I THINK IT IS MOST LIKELY INDIVIDUALS WHO WERE RELEASED
8  FROM SOME FORM OF CUSTODY AND -- MOST LIKELY PRIOR TO THE
9  ORDER BUT THEN DIDN'T REACH OUT TO O.R.R. TO MAKE CONTACT FOR
10 REUNIFICATION.

11         **THE COURT:**  MANY OF THESE PARENTS COULD BE IN ICE
12 CUSTODY, BUT BECAUSE OF THE LACK OF COMMUNICATION BETWEEN AND
13 AMONG THE AGENCIES IT IS UNCERTAIN WHERE THESE PARENTS
14 ACTUALLY ARE, WHETHER THEY ARE WITH ICE OR WHETHER THEY ARE
15 WITH B.O.P. OR WHETHER THEY HAVE BEEN RELEASED?

16         **MS. FABIAN:**  IF THEY REMAIN IN ICE CUSTODY I THINK
17 THAT WE WOULD HAVE IDENTIFIED THEM BY NOW.

18         IF THEY ARE IN B.O.P. CUSTODY, IT IS NOT IN THE ICE
19 RECORDS BUT THAT IS SOMETHING THAT AS WE NARROW THE NUMBER
20 DOWN -- THERE IS NO WAY TO SIMPLY RUN THAT NUMBER, BUT AS WE
21 NARROW THE NUMBER DOWN THAT IS A PLACE WE CAN CHECK.

22         SIMILARLY, IF WE WERE TO TRY TO REVIEW STATE CUSTODY
23 IT IS A MATTER OF REALLY HAVING TO CHECK ON AN INDIVIDUALIZED
24 BASIS.

25         **THE COURT:**  SO BY PROCESS OF ELIMINATION, THESE

```
 1    PARENTS ARE LIKELY NOT IN ICE DETENTION BECAUSE IF THEY WERE
 2    YOU WOULD KNOW.  IF THEY WERE RELEASED FROM ICE YOU WOULD KNOW
 3    THAT.  SO IT WOULD APPEAR THEY ARE EITHER IN STATE OR FEDERAL
 4    CUSTODY, EITHER B.O.P. OR THE STATE CUSTODY.
 5          MS. FABIAN:  I THINK THAT WOULD BE MY BEST GUESS,
 6    YOUR HONOR, YES.  OR RELEASED FROM ONE OF THOSE IN A MANNER
 7    WHERE WE WEREN'T NOTIFIED AND THEY HAVEN'T THEN COME FORWARD.
 8          THE COURT:  OKAY.  IF THERE WAS COMMUNICATION AMONG
 9    THE THREE AGENCIES, B.O.P. UNDER DOJ, ICE UNDER DHS, AND THEN
10    O.R.R. UNDER HHS, IT WOULD BE -- YOU WOULD KNOW WHERE THE
11    PARENT IS.
12          MS. FABIAN:  I DON'T THINK THAT IN THOSE CASES IT
13    WOULD BE A COMMUNICATIONS ISSUE.  I THINK FOR THE MOST PART IF
14    AN INDIVIDUAL IS IN -- WELL, IN B.O.P. CUSTODY THERE IS --
15    BECAUSE ICE WOULD LIKELY PLACE A DETAINER AND THAT DETAINER
16    WOULD BE HONORED BY THE FEDERAL -- BY B.O.P., THAT THAT WOULD
17    LIKELY BE -- WE WOULDN'T LOSE TRACK.
18          SO THERE IS A SYSTEM OF COMMUNICATION THERE THAT I
19    THINK WOULD LIKELY NOT LOSE TRACK OF PARENTS IN THAT
20    SITUATION, BUT I THINK THE MOST LIKELY SCENARIO WOULD BE FOR
21    INDIVIDUALS WHO GO INTO STATE CUSTODY.
22          THE COURT:  OKAY.
23          MR. GELERNT, YOU HAVE BEEN SITTING PATIENTLY.
24          MR. GELERNT:  GOOD AFTERNOON, YOUR HONOR.
25          YOU ACTUALLY ASKED JUST ABOUT EVERYTHING WE WERE
```

JULY 24, 2018

```
 1    GOING TO ASK ABOUT, SO I DON'T HAVE THAT MUCH.

 2             YOU KNOW, THE INFORMATION YOU ASKED ABOUT WE

 3    CERTAINLY WANT AND WE CERTAINLY, AS YOUR HONOR SEEMED TO BE

 4    SUGGESTING, WILL TAKE PIECEMEAL INFORMATION BETTER THAN

 5    NOTHING.

 6             I JUST WANTED TO ASK ABOUT A COUPLE OF THINGS.

 7             THE 20 WHO HAVE BEEN, I THINK REUNITED AND

 8    REMOVED --

 9             COUNSEL, MS. FABIAN.

10        MS. FABIAN:  SORRY.

11        MR. GELERNT:  THE 20 WHO WERE REMOVED, YOU MENTIONED

12    THOSE WERE REUNITED AND REMOVED AT SOME POINT.

13        MS. FABIAN:  THOSE ARE REFLECTED ON THE CHART THAT

14    WE PRODUCED TO YOU YESTERDAY.

15        MR. GELERNT:  WE HAVE NAMES FOR EACH OF THOSE 20?

16        MS. FABIAN:  YOU SHOULD, YES.

17        MR. GELERNT:  OKAY.

18             AND THE OTHER QUESTION I WANTED TO ASK IS ABOUT THE

19    37.  I THINK YOUR HONOR WAS ASKING ABOUT THE GOVERNMENT HAVING

20    BEEN UNABLE TO IDENTIFY WHERE PARENTS ARE.

21             BUT MY UNDERSTANDING -- AND CORRECT ME IF I AM

22    WRONG -- IS THAT THERE IS STILL 37 KIDS FOR WHOM THE IDENTITY

23    OF THE PARENT HAS NOT BEEN ESTABLISHED AT THIS POINT, OR IS

24    THAT WRONG?

25        MS. FABIAN:  I CAN'T CONFIRM THAT IT IS STILL
```

JULY 24, 2018

1    EXACTLY THAT NUMBER.  THERE WERE SOME NUMBER OF MINORS WHO HAD

2    NOT BEEN MATCHED TO A PARENT'S A-NUMBER.

3           AS DISCUSSED A FEW TIMES THAT IS LIKELY BECAUSE THE

4    OVER-INCLUSIVE NATURE OF O.R.R.'S ORIGINAL REVIEW AND

5    IDENTIFICATION OF POTENTIAL CHILDREN OF CLASS MEMBERS MEANS

6    THOSE PARENTS -- THOSE CHILDREN ARE IN FACT UAC'S.  I KNOW

7    THERE IS 20-SOMETHING THAT ARE CURRENTLY BELIEVED TO BE UAC'S,

8    BUT HAVEN'T CONFIRMED THAT SO WE HAVEN'T MOVED THEM OUT YET.

9    SO THERE IS SOME NUMBER THAT HAS NOT BEEN LINKED TO --

10          **THE COURT:**  SO THAT NUMBER, THE 37 --

11          IS THAT THE NUMBER, 37?

12      **MR. GELERNT:**  YES, YOUR HONOR.

13          **THE COURT:**  WHAT BUCKET DID YOU PUT THEM IN?  ARE

14   THEY IN THE 1637 OR THE 914?

15      **MS. FABIAN:**  THEY WOULD BE IN THE 914, AND LIKELY IN

16   THE FURTHER REVIEW CATEGORY.

17          **THE COURT:**  FURTHER EVALUATION, THE 260 CATEGORY.

18   260 IS THE NUMBER?

19      **MS. FABIAN:**  YES.

20      **THE COURT:**  OKAY.

21      **MR. GELERNT:**  SO WE WOULD JUST ASK FOR YOU TO

22   CONTINUALLY UPDATE US ON THAT, BECAUSE THAT IS OBVIOUSLY A

23   CONCERNING BUCKET OF CHILDREN.

24      **MS. FABIAN:**  YES.

25      **MR. GELERNT:**  OKAY.

1          THEN I JUST WANTED ONE OTHER CLARIFICATION.

2          YOU SAID THAT WE HAD GOTTEN INFORMATION ABOUT THE

3   20.  THE ONE THING I WASN'T SURE ABOUT IS, WERE ALL 20

4   REUNIFIED WITH THEIR CHILDREN AND REMOVED TOGETHER WITH THEIR

5   CHILDREN?  I DON'T THINK THAT WAS REFLECTED ON THE INFORMATION

6   WE GOT.

7          **MS. FABIAN:**  I DON'T BELIEVE IT WAS REFLECTED THERE,

8   AND I WOULD HAVE TO CONFIRM.

9          **MR. GELERNT:**  OKAY.  I THINK THAT'S -- WELL, I THINK

10  THERE WAS ONE OTHER POINT, YOUR HONOR.

11         I THINK WHEN YOU WERE TALKING WITH THE GOVERNMENT

12  ABOUT WHY SOMEONE HAS NOT BEEN FOUND, FROM OUR UNDERSTANDING

13  FROM WHEN WE WERE DEALING WITH THE UNDER-FIVES IS THAT

14  SOMETIMES IF A PARENT HAD BEEN RELEASED THEY LEFT THEIR LAST

15  KNOWN ADDRESS, BUT THE GOVERNMENT HAD NOT BEEN ABLE TO CONTACT

16  THEM.

17         IS THAT STILL A PART OF THE GROUP WHERE THE

18  GOVERNMENT HAS NOT BEEN ABLE TO CONTACT THE PARENT.  NOT THAT

19  THEY NEVER HAD AN ADDRESS OR DIDN'T KNOW WHEN THEY WERE

20  RELEASED FROM STATE OR FEDERAL CUSTODY, BUT THAT THEY SIMPLY

21  HAVE NOT BEEN ABLE TO CONTACT THEM AFTER THEY WERE RELEASED BY

22  ICE.  PRESUMABLY THAT IS SOME OF THIS GROUP.

23         **MS. FABIAN:**  I AM NOT SURE I UNDERSTAND THE

24  QUESTION.

25         WHAT I CAN SAY IS THAT FOR PARENTS WHO HAVE BEEN

JULY 24, 2018

1  RELEASED WE HAVE THOSE WHO WE ARE IN CONTACT WITH, AND THEN

2  SOME NUMBER WITH WHOM THE GOVERNMENT HAS NOT YET MADE CONTACT.

3  AND I AM WORKING ON IDENTIFYING THOSE WITH WHOM WE HAVE NOT

4  BEEN IN CONTACT AS THE PRIORITY, AND TO GET YOU THEN ANY LAST

5  KNOWN CONTACT INFORMATION FOR THOSE INDIVIDUALS, BECAUSE THOSE

6  ARE THE ONES THAT I THINK YOU WERE MOST INTERESTED IN.

7          **MR. GELERNT:**  EXACTLY.  THOSE ARE THE ONES WHERE THE

8  NGO'S MAY BE ABLE TO HELP.  IF YOU ARE NOT ABLE TO CONTACT

9  THEM MAYBE WE KNOW AN AUNT OR SOMEBODY WHO THEN CAN MAKE SURE

10  AND KNOWS THAT THEIR CELL PHONE HAS BEEN TURNED OFF, SOMETHING

11  ALONG THOSE LINES.

12          I THINK THAT IS A CATEGORY OF PEOPLE WHO ICE KNOWS

13  ABOUT THEM, KNOWS THEY WERE RELEASED FROM ICE CUSTODY, BUT

14  JUST HAS NOT BEEN ABLE TO MAKE CONTACT WITH THEM IN THE

15  INTERIOR.

16          **THE COURT:**  YES.

17          **MR. GELERNT:**  THANK YOU, YOUR HONOR.

18          **MS. FABIAN:**  I DON'T KNOW THE NUMBER OF THAT, BUT I

19  UNDERSTAND THAT IS A PRIORITY, AND I AM TRYING TO PRIORITIZE

20  THAT.

21          **THE COURT:**  MR. GELERNT, IF I COULD ASK YOU ANOTHER

22  QUESTION.

23          WE MAY HAVE COUNSEL FROM NEW YORK ON THE PHONE, BUT

24  THIS IS A ONE-WAY CONVERSATION PRESENTLY.

25          **MR. GELERNT:**  RIGHT.

JULY 24, 2018

1        **THE COURT:**  SO IF COUNSEL FROM NEW YORK ARE ON THE

2   LINE, I AM INVITING THEM TO CALL BACK AFTER THIS STATUS

3   CONFERENCE CONCLUDES AND WE WILL HAVE A SECOND STATUS

4   CONFERENCE ON THE RECORD.

5        CAN YOU -- I KNOW GOVERNMENT COUNSEL IS READY TO

6   ADDRESS SOME OF THIS ISSUE, BUT DO YOU HAVE ANY INFORMATION IN

7   THAT REGARD?

8        **MR. GELERNT:**  WE DO NOT HAVE ANY MORE INFORMATION

9   THAN THE GOVERNMENT.  I THINK WE PROBABLY HAVE LESS

10  INFORMATION THAN THE GOVERNMENT, BECAUSE THAT IS A SUIT

11  BETWEEN THE NEW YORK FOLKS AND THE GOVERNMENT.

12       AND MY UNDERSTANDING IS IT INVOLVES A VERY SMALL

13  SUBSET OF INDIVIDUALS WHO NEW YORK HAS BEEN REPRESENTING AND

14  WANTS MORE INFORMATION ABOUT, AND I ASSUME AND HOPEFULLY BE

15  ABLE TO NEGOTIATE THAT WITH THE GOVERNMENT.  BUT I DO NOT HAVE

16  REAL INFORMATION ABOUT THAT.

17       **THE COURT:**  WHAT ABOUT THE STIPULATION THAT COUNSEL

18  WERE WORKING ON VERY DILIGENTLY AND FOR MANY DAYS THE LAST

19  WEEK, HAS THAT FALLEN THROUGH OR DO YOU STILL HAVE SOME

20  OPTIMISM ABOUT THAT?

21       I RECEIVED THE GOVERNMENT'S BRIEFING THIS MORNING

22  WHICH I HAVE NOT READ BECAUSE I HAVE BEEN IN TRIAL ALL DAY

23  LONG ON ANOTHER MATTER.  SO I READ THE INTRODUCTION, BUT I

24  HAVEN'T GOTTEN INTO THE ACTUAL POINTS AND AUTHORITIES, WHICH I

25  WILL DO LATER TONIGHT.

JULY 24, 2018

```
1              MR. GELERNT:  RIGHT.  IT APPEARS THAT THINGS HAVE
2    FALLEN THROUGH.
3              WHAT I WOULD SAY IS, YOUR HONOR, TALKING TO PEOPLE
4    ON THE GROUND NOW, AND WE HAVE AN ENORMOUS NUMBER OF
5    AFFIDAVITS WE ARE READY TO PUT IN FOR REPLY IF YOU WOULD LIKE
6    THEM.  THINGS ARE REALLY A MESS ON THE GROUND, AND WE
7    ABSOLUTELY NEED AT LEAST SEVEN DAYS TO BE COUNSELING THESE
8    FAMILIES.  THE GOVERNMENT IS PUTTING ROUGHLY 900 PEOPLE IN ONE
9    DETENTION CENTER AT ONE TIME.
10             THE COURT:  SO OF THIS 900 THAT IS REFERENCED, A
11   FINAL ORDER OF REMOVAL, IT IS YOUR VIEW THAT MOST OF THOSE ARE
12   DETAINED TOGETHER?
13             MR. GELERNT:  OUR UNDERSTANDING -- I DON'T KNOW IF
14   IT IS GOING TO BE EXACTLY 900 BUT I KNOW IT SEEMS AS THOUGH
15   SOMEWHERE OVER 700 ARE GOING TO BE PUT IN ONE FACILITY, THE
16   PARENTS OF CHILDREN DETAINED TOGETHER.  AND THERE SIMPLY NO
17   WAY IN A COUPLE OF DAYS TO PROVIDE MEANINGFUL CONSULTATION.
18             I WOULD ALSO SAY THE GOVERNMENT HAS -- AND THIS MAY
19   BE SOMETHING WE WANT TO TALK ABOUT AFTER YOU READ THE BRIEF.
20   I WOULD JUST SAY THAT THE GOVERNMENT HAS PUT IN THEIR VERSION
21   OF THE NEGOTIATIONS, PUTTING ASIDE WHETHER THAT'S SORT OF
22   PROPER TO TELL YOU WHAT WAS CONFIDENTIAL, WE DON'T BELIEVE IT
23   WAS REMOTELY ACCURATE.  IT DOES NOT REFLECT WHAT THEY ACTUALLY
24   AGREED TO.  SINCE YOU HAVEN'T READ IT, I WILL PUT THAT ASIDE.
25             I WOULD SAY WE DESPERATELY NEED THOSE SEVEN DAYS.
```

JULY 24, 2018

```
 1              THE COURT:  THE INTRODUCTION DOES INDICATE A NUMBER
 2   OF THINGS.  BUT WHAT ABOUT THE FACT THAT THERE HAS BEEN A
 3   WEEK, A NUMBER OF THESE FAMILIES HAVE BEEN REUNIFIED.  THEY
 4   WOULD HAVE HAD TIME TOGETHER, I WOULD ASSUME, TO TALK ABOUT
 5   THESE IMPORTANT ISSUES, AND TO DO SO WITH THE CHILD
 6   ADVOCATE --
 7              MR. GELERNT:  RIGHT.
 8              THE COURT:  -- ADVICE.  WOULDN'T THAT BE A LARGE
 9   NUMBER?
10              MR. GELERNT:  YOUR HONOR, WE DON'T ACTUALLY KNOW --
11   AND MY COLLEAGUE CAN TELL ME, BUT WE DON'T ACTUALLY KNOW, WE
12   ARE NOT BEING TOLD WHO IS BEING REUNIFIED.  SO ONE OF THE
13   THINGS THAT WE NEED IS THE DAYS RUN FROM THE TIME WE ARE
14   ACTUALLY NOTIFIED ABOUT REUNIFICATION, BECAUSE THINGS DOWN
15   THERE ARE A MESS.
16              WHAT WE UNDERSTAND FROM THE LAST CLASS LIST -- I
17   JUST WANTED TO MAKE SURE I HAD THE NUMBER RIGHT -- IS THAT
18   THERE WERE VERY FEW PEOPLE NOW REUNITED AT KARNES, WHICH IS
19   THE FACILITY THE GOVERNMENT INTENDS TO USE, 20 OR 30.  SO IT
20   SEEMS LIKE THE VAST BULK HAVE NOT BEEN GIVEN SUFFICIENT TIME.
21   BUT WE ARE CERTAINLY READY TO WORK WITH YOUR HONOR IF SOME
22   INDIVIDUAL HAS ALREADY BEEN COUNSELED FOR A FEW DAYS WHETHER
23   THAT POTENTIALLY EATS INTO THEIR SEVEN DAYS.  BUT WE THINK THE
24   VAST BULK ARE GOING TO END UP AT THIS KARNES FACILITY IN SOUTH
25   TEXAS ALL AT ONCE, AND IT IS GOING TO BE IMPOSSIBLE.
```

JULY 24, 2018

 1          **THE COURT:**  THAT'S THE REMOVAL LOCATION.

 2          **MR. GELERNT:**  EXACTLY.

 3          **THE COURT:**  THE GOVERNMENT ALSO INDICATED IN ITS

 4    INTRODUCTION THAT THESE PARENTS NOW HAVE HAD TIME TO TALK WITH

 5    THEIR CHILDREN, IF NOT IN PERSON THEN AT LEAST BY PHONE OR

 6    VIDEO TELECONFERENCING, WHATEVER HAS BEEN IN PLACE.  AND

 7    ARGUABLY THEY WOULD HAVE DISCUSSED THESE ISSUES WITH THEIR

 8    CHILDREN, AND THEY COULD HAVE DISCUSSED THESE ISSUES WITH THE

 9    CHILD'S ADVOCATE AS WELL.

10          **MR. GELERNT:**  WELL, YOUR HONOR, I THINK THOSE ARE

11    SOME OF THE THINGS THAT THE AFFIDAVITS ADDRESS.  WE SCRAMBLED

12    LAST NIGHT WHEN THE -- TO GET THE AFFIDAVITS.  WE WOULD MAKE A

13    FEW POINTS ABOUT THAT.

14          ONE IS, WHATEVER ACCESS THEY MAY HAVE HAD TO THEIR

15    CHILD ON THE PHONE, THEY DID NOT HAVE THAT ACCESS BY PHONE TO

16    THE CHILD'S ADVOCATE.

17          THE OTHER THING I WOULD SAY IS, THIS IS ONE OF THOSE

18    THE SITUATIONS -- AND I KNOW THE GOVERNMENT HAS PUT IN AN

19    AFFIDAVIT FROM THE TOP SAYING, HERE IS WHAT I DIRECTED.  IT IS

20    SHORT OF SPECIFICS, BUT AS YOUR HONOR KNOWS THERE IS A VAST

21    DIFFERENCE BETWEEN WHAT MAY HAVE BEEN DIRECTED FROM

22    HEADQUARTERS AND WHAT WAS ACTUALLY HAPPENING ON THE GROUND.

23          THE AFFIDAVITS EXPLAIN THAT PEOPLE HAD MAYBE ONE

24    SHORT CALL, WHERE IT IS JUST THE CHILD CRYING, CAN'T SEE THE

25    PARENT.  NOTHING COULD GET DONE IN THAT SITUATION.

JULY 24, 2018

1        I THINK THE AFFIDAVITS FROM PARTNERS AND ASSOCIATES

2   AT BIG LAW FIRMS, NGO'S, ARE ALL DOWN THERE, AND THEY SAY THAT

3   THE PARENTS HAVE NO IDEA WHAT'S HAPPENING.  THAT THEY HAVE

4   SIGNED THESE FORMS, MANY OF THEM -- TO SHOW YOU HOW MUCH

5   CONFUSION THERE IS.  MANY OF THEM ACTUALLY SIGNED THE FORMS

6   GIVING AWAY THEIR CHILD, EVEN THOUGH THEY DIDN'T HAVE A FINAL

7   ORDER.  THERE WOULD BE NO SENSE IN A PARENT GIVING AWAY THEIR

8   CHILD IF THE PARENT THEMSELVES CAN STAY IN.

9        THERE ARE GROUP PRESENTATIONS, THE AFFIDAVITS FROM

10  THE LAW FIRMS SAY.  THE PARENTS WERE PUT IN GROUPS OF 50 AND

11  SAID, HERE ARE YOUR BASIC RIGHTS, YOU HAVE 3 MINUTES TO SIGN

12  THIS FORM.

13       I THINK YOU ARE GOING TO BE SHOCKED WHEN YOU SEE

14  THESE AFFIDAVITS HOW LITTLE THE PARENTS UNDERSTOOD BEFORE

15  GETTING TOGETHER, AND HOW DIFFICULT IT IS GOING TO BE NOW TO

16  PROVIDE MEANINGFUL CONSULTATION WITH THEM, WITH HUNDREDS AND

17  HUNDREDS OF PEOPLE SHOWING UP AT THIS DETENTION CENTER.

18          **THE COURT:**  HOW MUCH TIME ARE YOU REQUESTING?

19          **MR. GELERNT:**  RIGHT NOW OUR REQUEST IS SEVEN DAYS.

20  WHAT WE ARE HEARING ON THE GROUND --

21          **THE COURT:**  FOR YOUR BRIEFING.

22          **MR. GELERNT:**  OH, I AM SORRY, YOUR HONOR.  I THINK

23  IF YOU COULD GIVE US UNTIL TOMORROW MORNING AT 9:00, AND WE

24  COULD BE BACK HERE IN THE AFTERNOON IF YOUR HONOR WOULD SEE

25  THAT AS APPROPRIATE.

JULY 24, 2018

```
1              THE COURT:  ALL RIGHT.  PERHAPS I CAN HEAR FROM MR.
2    STEWART.
3              MR. STEWART:  THANK YOU, YOUR HONOR.
4              THE COURT:  HAVE YOU BEEN IN COMMUNICATION WITH THE
5    NEW YORK ATTORNEYS, OR DO YOU HAVE INFORMATION IN THAT REGARD?
6              MR. STEWART:  MY COLLEAGUES AND I -- IT IS SORT OF
7    HARD TO KEEP TRACK OF ALL OF THE COMMUNICATIONS, YOUR HONOR,
8    BUT I HAVE BEEN ON SOME OF THEM AND TRIED TO BE AS PRIVY AS I
9    CAN.
10             MY UNDERSTANDING, YOUR HONOR, IS ON THE NEW YORK
11   CASE --
12             THE COURT:  EIGHT OR NINE CHILDREN.
13             MR. STEWART:  EIGHT OR NINE CHILDREN.  THE ISSUE
14   THERE -- THE KEY ISSUE THERE AS I UNDERSTAND IT IS WHETHER
15   THEY WILL GET THE 48 HOURS' NOTICE PROVIDED BY THE NEW YORK
16   COURT'S ORDER.  WE ARE DOING WHAT WE CAN TO GET -- TO NOT MOVE
17   THEM BEFORE THAT 48 HOURS LAPSES.
18             THE COURT:  THOSE CHILDREN ARE STILL THERE.
19             MR. STEWART:  THAT IS MY UNDERSTANDING, YOUR HONOR,
20   YES.  FOR THE NINE THAT ARE AT ISSUE IN THE RECENTLY
21   TRANSFERRED HABEAS CASE.
22             THE COURT:  AS I UNDERSTAND IT, THERE WAS A REQUEST
23   IN NEW YORK THAT THERE BE AN ORDERLY PERIOD OF TIME BEFORE
24   REUNIFICATION, OR TO HAVE THE PARENTS RELOCATED TO NEW YORK.
25             SO IS IT YOUR THOUGHT THAT THOSE EIGHT OR NINE
```

JULY 24, 2018

```
1    CHILDREN WOULD BE -- WOULD REMAIN IN NEW YORK, AND THEN
2    THROUGH THAT PROCESS THAT THE PARENT, ARGUABLY, COULD BE IN
3    COMMUNICATION, AT LEAST TELEPHONICALLY WITH THE CHILD AND ANY
4    CHILD ADVOCATE, AND THEN MAKE A DECISION TO REMOVE SEPARATELY
5    OR TOGETHER OR --
6              MR. STEWART:  YOUR HONOR, I THINK THERE ARE A COUPLE
7    OF WAYS IT MIGHT BE DONE.  ONE IS THAT -- WE GAVE THE NOTICE
8    AS OF MONDAY MORNING FOR THESE EIGHT OR NINE ARE WAITING UNTIL
9    THE 48-PERIOD LAPSES BEFORE MOVING THEM, GIVEN THE DESIRE TO
10   COMPLY WITH THE REUNIFICATION DEADLINE.
11             ANOTHER OPTION, YOUR HONOR, IS THAT WE COULD GO AND
12   CONFER WITH COUNSEL FOR THE PLAINTIFFS IN THAT CASE, AND TRY
13   TO WORK SOMETHING OUT AS TO THE NINE, THAT WOULD JUST GET THAT
14   SET OF CHILDREN TAKEN CARE OF.  SO THAT WOULD BE ANOTHER
15   OPTION.
16             IT HAS BEEN A SOMEWHAT FAST-MOVING SITUATION AS YOUR
17   HONOR IS AWARE, SO EITHER OF THOSE OPTIONS WOULD BE FINE.
18             MY UNDERSTANDING IS THAT SEVERAL OF THE CHILDREN ARE
19   FROM THE SAME FAMILY AND ARE GOING TO BE RELEASED IN ANY
20   EVENT, SO THAT MIGHT SORT OF ASSUAGE CONCERNS THERE.
21             THE COURT:  AT LEAST INTO THE COMMUNITY?
22             MR. STEWART:  I BELIEVE SO, YOUR HONOR.
23             THE COURT:  OKAY.  WHY DON'T -- IF NEW YORK COUNSEL
24   ARE THE LINE WE CAN PERHAPS PUT THEM AT EASE NOW AND SIMPLY --
25   AND JUDGE RAKOFF HAS TRANSFERRED THAT CASE SO I WAS -- AS TO
```

1    JUDGE FURMAN LAST WEEK.  SO WITH RESPECT TO THE REUNIFICATION

2    IN PLACE HERE, LET'S KEEP THE CHILDREN THAT HAVE BEEN

3    IDENTIFIED IN THE NEW YORK FILING BEFORE JUDGE RAKOFF IN NEW

4    YORK.  THE PARENTS WILL NOT BE RELOCATED TO NEW YORK.  I THINK

5    THAT WAS ONE OF THE REQUESTS, AND THAT WILL NOT OCCUR.

6         BUT WHAT I WOULD LIKE THE PARTIES TO DO IS TO MEET

7    AND CONFER, AND IT MAY BE THAT THE PARENTS CAN COMMUNICATE

8    WITH THE CHILDREN TELEPHONICALLY AND COMMUNICATE WITH THE

9    CHILD ADVOCATE TELEPHONICALLY, MAKE AN INFORMED DECISION.  AND

10   IT MAY BE THAT THIS ISSUE CAN WORK OUT THAT WAY WITHOUT

11   FURTHER COURT INTERVENTION.

12        THEN, AS I MENTIONED BEFORE, IF NEW YORK COUNSEL ARE

13   ON THE LINE AND THEY WANT TO CALL IN AS SOON AS THIS

14   CONFERENCE IS OVER I CAN SPEAK TO THEM DIRECTLY.  OTHERWISE

15   THIS ISSUE, IT MAY WELL WORK OUT WITH THE UNDERSTANDING THAT

16   THE PROCESS, THE REUNIFICATION AND THE REMOVAL, AT LEAST WITH

17   RESPECT TO THESE EIGHT OR NINE CHILDREN, WILL BE ON HOLD UNTIL

18   I HEAR FROM COUNSEL.

19        MR. STEWART, DID YOU WANT TO COMMENT ON THE

20   STIPULATION THAT WAS IN PLACE BUT APPARENTLY HAS FALLEN

21   THROUGH AND WHERE WE ARE?

22        **MR. STEWART:**  SURE, YOUR HONOR.

23        I GUESS I HAD A FEW POINTS.  I DON'T WANT TO JUMP

24   THE GUN, I KNOW YOUR HONOR WANTS TO FINISH READING THE PAPERS.

25        THE POINTS I WOULD LIKE TO EMPHASIZE ARE THESE, YOUR

JULY 24, 2018

 1   HONOR.  AS YOU WILL SEE FROM THE BRIEF, THE GOVERNMENT HAS A
 2   PRETTY STRONG JURISDICTIONAL OBJECTION TO THE ISSUE HERE THE
 3   GOVERNMENT HAS TAKEN SERIOUSLY YOUR HONOR'S RECOGNITION THAT
 4   THIS CASE IS NOT A CHALLENGE TO THE GOVERNMENT'S DISCRETIONARY
 5   REMOVAL AUTHORITY AND ALL OF THAT.
 6           DESPITE THOSE CONSIDERABLE, YOU KNOW, CONCERNS AND
 7   RESERVATIONS, THE GOVERNMENT WORKED VERY, VERY HARD, IN LINE
 8   WITH YOUR HONOR'S ENCOURAGEMENT AND ORDERS, TO TRY TO REACH
 9   SOME WAY TO RESOLVE THIS ISSUE DESPITE THE PREVIOUS AGREEMENT
10   TO THE 48-HOUR PERIOD.
11           WE THOUGHT THAT IT WAS APPROPRIATE TO IDENTIFY WHERE
12   WE ENDED UP FOR THE COURT BECAUSE THE COURT DID ORDER US TO
13   MEET AND CONFER AND WE JUST WANTED TO BE CLEAR ON OUR GOOD
14   FAITH AND ALL WE TRIED TO DO AND THE EFFORTS WE MADE WITH THIS
15   KARNES FACILITY.
16           WHAT I WOULD EMPHASIZE THERE, YOUR HONOR, IS THAT WE
17   ARE TRYING TO DEDICATE THIS ENTIRE FACILITY TO, YOU KNOW,
18   RESOLVE THESE CLAIMS AND GIVE PEOPLE ACCESS LET THEM -- YOU
19   KNOW, WE PUT THAT OUT THERE AS A WAY FOR FOLKS TO GET THE
20   INFORMATION THEY NEEDED TO MAKE THE DECISIONS THAT PLAINTIFFS
21   COUNSEL PRESSED THEY NEEDED TO MAKE.
22           I JUST WANT TO EMPHASIZE THAT SIGNIFICANT
23   JURISDICTIONAL OBJECTIONS THAT AT ISSUE IN A LOT OF OTHER
24   CASES, AND WE FIGURED YOUR HONOR WOULD NOT WANT TO
25   UNNECESSARILY REACH OUT TO RESOLVE THAT ISSUE IF YOU DIDN'T

JULY 24, 2018

```
 1    NEED TO.  WE TRIED OUR BEST TO RESOLVE IT.  DESPITE THAT WE
 2    JUST WEREN'T ABLE TO, UNFORTUNATELY.
 3              SO I WOULD EMPHASIZE THE GOVERNMENT'S GOOD FAITH,
 4    OUR EFFORTS TO PUT AN OFFER THAT ACCOMMODATED ALL CONCERNS.  I
 5    WOULD EMPHASIZE THAT POINT AS YOUR HONOR IS KIND OF GOING
 6    THROUGH THE PAPERS.
 7              THE SECOND POINT I WOULD EMPHASIZE, YOUR HONOR, IS I
 8    AM DISAPPOINTED TO HEAR THAT MR. GELERNT IS PLANNING TO
 9    SUDDENLY FILE A RAFT OF AFFIDAVITS OR DECLARATIONS.  YOU KNOW,
10    THE GOVERNMENT WAS CAUGHT OFF-GUARD AND QUITE BY SURPRISE WHEN
11    THIS MOTION WAS FILED ABOUT A WEEK AND A HALF AGO.  WE GOT
12    ALMOST NO NOTICE OF IT.
13              THE OPENING PARAGRAPH ADMITTED THAT THE MOTION WAS
14    BASED ON RUMORS.  THAT IS THE DIRECT WORD FROM THE MOTION.
15              IT WAS BASED ON JUST SUPPOSITION, SO WE HAD TO RUSH
16    AROUND, FIND OUT WHAT WAS GOING ON.  AND NOW I GET A SIGNAL
17    THAT WE ABOUT TO BE, DESPITE OUR SIGNIFICANT JURISDICTIONAL
18    OBJECTIONS, OUR DAYS AND NIGHTS OF TRYING TO NEGOTIATE
19    SOMETHING HERE EFFECTIVELY DESPITE OUR CONCERNS, THAT WE ARE
20    ABOUT TO THE HIT, BLINDSIDED BY A RAFT OF AFFIDAVITS.  I THINK
21    THAT IS QUITE PROBLEMATIC.  I DON'T THINK IT IS IN THE SPIRIT
22    OF YOUR HONOR'S ORDERS.
23              AND I THINK IT IS PARTICULARLY IMPROPER THAT IT
24    SOUNDS LIKE MR. GELERNT IS TRYING TO WIDEN THE -- POTENTIALLY
25    WIDEN THE RELIEF THAT HIS MOTION WAS SEEKING WHICH I ALSO
```

JULY 24, 2018

```
 1   WOULD SUBMIT IS IMPROPER.

 2           AGAIN I DON'T WANT TO GET OUT AHEAD OF THE REPLY,

 3   BUT I WOULD OBJECT TO THE SUBMISSION OF FACTUAL AVERMENTS IN

 4   THE REPLY BRIEF, PARTICULARLY IF THE GOVERNMENT DOESN'T HAVE

 5   AN ABILITY TO RESPOND TO THEM, ESPECIALLY BECAUSE IF THESE ARE

 6   KIND OF ANECDOTAL, I MEAN, WE ARE KIND OF AT A DISADVANTAGE

 7   BECAUSE WE HAVE TO RUSH AROUND AND FIND OUT WHAT PEOPLE ARE

 8   TALKING ABOUT.

 9           I WOULD ALSO EMPHASIZE, YOUR HONOR, THAT AS YOU

10   YOURSELF, YOUR HONOR, POINTED OUT, THERE HAS BEEN QUITE A

11   NUMBER OF DAYS TO TRY TO RESOLVE THIS, AND JUST GIVE PEOPLE

12   THE RIGHT NOTICE, GIVE THEM CONSULTATION, ALL OF THAT SORT OF

13   THING.  IT SOUNDS LIKE THOSE EFFORTS -- THINGS HAVE NOT

14   PROGRESSED ADEQUATELY THERE.

15           SO IN SHORT, YOUR HONOR, WE THE GOVERNMENT WOULD

16   STICK VERY FIRMLY ON OUR PAPERS.  WE ARE PROUD OF OUR EFFORTS

17   TO WORK IN GOOD FAITH TO TRY TO REACH A STIPULATION SO THAT

18   THE COURT DID NOT HAVE TO STEP IN AND RESOLVE THIS, DID NOT

19   HAVE TO STEP IN TO DO MORE INJUNCTIVE RELIEF.  AND WE WERE

20   PARTICULARLY ATTUNED TO THE SERIOUS LEGAL QUESTIONS AND

21   SERIOUS JURISDICTIONAL ISSUES PRESENTED BY THIS.  AND WE

22   WANTED TO TRY TO RESOLVE THAT BUT, YOU KNOW, IT IS UNFORTUNATE

23   THAT WE WERE NOT ABLE TO.  WE DID WHAT WE COULD.

24           SO I WOULD EMPHASIZE THOSE POINTS, YOUR HONOR, AND

25   OTHERWISE I WOULD STICK TO THE BRIEF.
```

JULY 24, 2018

1          **THE COURT:**  LET ME RUN THROUGH A NUMBER OF IDEAS,

2    THOUGHTS, AND THEN GET COUNSEL'S INPUT AS TO HOW WE MOVE

3    FORWARD.

4          FIRST, THE OBSERVATION I WOULD MAKE ABOUT THE

5    REUNIFICATION OF ELIGIBLE CLASS MEMBERS, THAT'S THE 1,637, IT

6    APPEARS 1,012 HAVE BEEN REUNIFIED.  THE BALANCE HAVE BEEN

7    CLEARED AND TRANSPORTATION IS PENDING.

8          THIS IS A REMARKABLE ACHIEVEMENT, AND COMMANDER

9    WHITE IS TO BE COMMENDED.  HE HAS DONE YEOMAN'S WORK HERE IN

10   ACCOMPLISHING THAT.

11         SO FOR CLASS MEMBERS WHO ARE ELIGIBLE, IT APPEARS

12   THAT WHEN WE MEET ON THIS ISSUE AGAIN ON FRIDAY THAT

13   REUNIFICATION WILL HAVE BEEN COMPLETED ON TIME; WHICH HAS TO

14   BE HIGHLIGHTED AND THE GOVERNMENT HAS TO BE COMMENDED FOR ITS

15   EFFORTS IN THAT REGARD.

16         THERE IS A SIGNIFICANT GROUP OF CLASS MEMBERS, ABOUT

17   914, WHO MAY BE INELIGIBLE.  THAT IS A DIFFERENT CATEGORY.  I

18   THINK MANY OF THOSE THE PLAINTIFFS ARE NOT GOING TO QUARREL

19   WITH THE GOVERNMENT MAKING A DETERMINATION NOT TO REUNIFY,

20   WHETHER IT IS CRIMINAL HISTORY OR OTHER PRECLUDING FACTORS.

21   CERTAINLY THERE ARE GOING TO BE SOME OF THOSE CLASS MEMBERS

22   WHERE THE PLAINTIFFS, WITH ADDITIONAL INFORMATION, WILL

23   CHALLENGE THAT, AND THEN THE COURT CAN ADDRESS THOSE ISSUES AT

24   A LATER TIME.

25         THERE NEEDS TO BE MORE INFORMATION PROVIDED TO

JULY 24, 2018

1   PLAINTIFFS.  AND AS I HAVE INDICATED, THIS SHOULD REALLY BE A

2   TRANSPARENT PROCESS.

3            SOME OF THIS INFORMATION IS UNPLEASANT.  IT IS THE

4   REALITY OF THE CASE.  IT IS THE REALITY OF A POLICY THAT WAS

5   IN PLACE THAT RESULTED IN LARGE NUMBERS OF FAMILIES BEING

6   SEPARATED WITHOUT FORETHOUGHT AS TO REUNIFICATION AND KEEPING

7   TRACK OF PEOPLE.  AND THAT'S THE FALLOUT WE ARE SEEING.

8            THERE MAY BE 463, THERE MAY BE MORE.  THAT'S NOT

9   CERTAIN, BUT IT APPEARS THERE IS A LARGE NUMBER OF PARENTS WHO

10  ARE UNACCOUNTED FOR OR WHO MAY HAVE BEEN REMOVED WITHOUT THEIR

11  CHILD.  THAT'S A DEEPLY TROUBLING REALITY OF THE CASE, AND THE

12  PLAINTIFFS ARE ENTITLED TO THAT INFORMATION.

13           SO THERE HAS TO BE AN ACCOUNTING.  AND THE LIST

14  NEEDS TO IDENTIFY THE PARENTS, IF YOU HAVE THE INFORMATION,

15  AND WHERE THEY ARE, WHETHER THEY HAVE BEEN REMOVED.  AND IT

16  NEEDS TO ALSO INCLUDE THE STATEMENT THAT THE GOVERNMENT

17  DOESN'T KNOW WHERE THE PARENT IS OR LACKS THAT INFORMATION.

18  PLAINTIFFS ARE ENTITLED TO THAT INFORMATION SO THAT WE CAN

19  MORE INTELLIGENTLY DISCUSS, WHERE DO WE GO FROM HERE.  HOW DO

20  WE -- FOR THOSE PARENTS WHO WERE REMOVED WITHOUT CHILD.  THE

21  SOONER THE PLAINTIFFS HAVE ALL OF THAT INFORMATION THEY

22  HOPEFULLY LOCATE THEM AND THEN A REUNIFICATION CAN BE IN

23  PROCESS DOWN THE ROAD.  WE CAN SET A SEPARATE TIMEFRAME THERE.

24  BUT WE ARE NOT ABLE TO DO ANYTHING WITHOUT THE INFORMATION.

25           SO I WOULD PROPOSE THAT THE LIST FOR CLASS MEMBERS

JULY 24, 2018

1   WHO WAIVE REUNIFICATION PRIOR TO REMOVAL, THAT'S THE 127, BE
2   PROVIDED BY TOMORROW AT 9:00 A.M.
3           IF I UNDERSTOOD YOU CORRECTLY THAT WOULD BE DO-ABLE,
4   OR AT LEAST YOU CAN DO IT AS TO SOME, BUT THEN INDICATE THERE
5   MAY BE OTHERS WHERE YOU NEED MORE TIME.
6           **MS. FABIAN:**  SO TO CLARIFY THE 127 LIST WE GAVE
7   TODAY, THERE IS THE SEPARATE LIST OF INDIVIDUALS WHO HAVE
8   WAIVED ON THE FORM.
9           **THE COURT:**  YES.
10          **MS. FABIAN:**  WE HAVE -- AS I -- TO CLARIFY WHAT I
11  SAID BEFORE, WE ARE IDENTIFYING ALL OF THOSE FORMS.  OF THE
12  ONES WE HAVE IDENTIFIED, 85 WAIVED.  THERE ARE STILL -- WE ARE
13  WORKING THROUGH TO MAKE SURE WE IDENTIFIED ALL OF THOSE FORMS.
14          **THE COURT:**  AND I THINK YOU SAID YOU ARE GETTING AN
15  EMAIL TONIGHT.
16          **MS. FABIAN:**  THAT IS A SEPARATE EMAIL.  TONIGHT I
17  WILL HAVE MORE INFORMATION ON THE REMOVAL -- ON THE
18  INDIVIDUALS REMOVED, THAT'S WHAT I WAS REFERENCING, TONIGHT.
19          AS FAR AS THOSE -- SO WE ARE IN THE PROCESS OF
20  IDENTIFYING ALL OF THE FORMS THAT HAVE BEEN SIGNED, AND THEN
21  WHICH OF THOSE HAVE WAIVED REUNIFICATION.  WE HAVE GONE
22  THROUGH 400-AND-SOME FORMS AND HAVE IDENTIFIED 85 OF THOSE WHO
23  WAIVED REUNIFICATION.  BUT THERE MAY BE MORE, BUT THAT'S WHERE
24  WE ARE RIGHT NOW IN THAT PROCESS.
25          **THE COURT:**  LET'S DO IT THIS WAY.

JULY 24, 2018

```
 1              THERE IS A LIST THAT IS NEEDED FOR CLASS MEMBERS WHO

 2     HAVE WAIVED REUNIFICATION PRIOR TO REMOVAL.  THERE IS A LIST

 3     THAT'S NEEDED OF CLASS MEMBERS WHO HAVE BEEN REMOVED.  AND

 4     THERE IS A LIST THAT IS NEEDED OF CLASS MEMBERS WHO HAVE BEEN

 5     RELEASED FROM ICE CUSTODY.

 6              IT SEEMS TO ME THOSE LISTS SHOULD BE PROVIDED TO THE

 7     PLAINTIFFS BY TOMORROW, PERHAPS NOON WOULD BE A MORE

 8     APPROPRIATE DEADLINE.  AND IT MAY BE THAT THE LISTS ARE NOT

 9     COMPLETE.  BUT YOU COULD GIVE THE INFORMATION YOU HAVE, AND

10     THEN AS TO THE PARENTS, CLASS MEMBERS THAT YOU LACK

11     INFORMATION YOU CAN IDENTIFY HOW MANY, AND ARTICULATE THE

12     REASONS, WHAT CATEGORIES THEY MIGHT BE FALLING INTO.

13              AND THEN WHEN WE GET THE STATUS REPORT ON THURSDAY

14     WE WILL HAVE MORE INFORMATION THAT WE CAN ADDRESS

15     INTELLIGENTLY ON FRIDAY.

16              SO LET'S DO THAT.  THOSE LISTS BY TOMORROW, NOON.

17              THE PLAINTIFFS' REPLY ON THIS JURISDICTIONAL ISSUE

18     AND TRO REQUEST BY TOMORROW AT -- I WOULD PROPOSE, IF THERE IS

19     NOT OBJECTION, BY TOMORROW 12:00 O'CLOCK NOON.

20              AND THEN THAT WE ADDRESS THE MATTER FRIDAY AT THE

21     STATUS CONFERENCE AT 1:30.

22              DOES THE GOVERNMENT OBJECT?

23              MR. STEWART:  WE CAN GO ON JUST MAINTAINING OUR

24     JURISDICTIONAL OBJECTION.

25              THE COURT:  YES.
```

JULY 24, 2018

 1          **MR. STEWART:**  WOULD BE FINE FOR YOUR HONOR.
 2   UNDERSTOOD.  FINE TO ADDRESS ON FRIDAY.
 3          **MR. GELERNT:**  THAT'S FINE, YOUR HONOR.
 4          **THE COURT:**  SO FILING BY NOON TOMORROW, THEN WE WILL
 5   ADDRESS THIS ISSUE FRIDAY.
 6          **MR. GELERNT:**  OKAY.  THANK YOU, YOUR HONOR.
 7          **THE COURT:**  OKAY.
 8          HAVE WE ADDRESSED ALL MATTERS?  ANY OTHER
 9   HOUSEKEEPING MATTERS.
10          **MR. STEWART:**  CAN I FLAG AT LEAST ONE MORE, YOUR
11   HONOR?
12          **THE COURT:**  YES.
13          **MR. STEWART:**  AS YOUR HONOR IS AWARE, AND AS WE
14   DISCUSSED, A NUMBER OF OTHER CASES HAVE ARISEN, IN OBVIOUSLY
15   IN NEW YORK, AND SOME OF THOSE HAVE BEEN TRANSFERRED HERE.
16          **THE COURT:**  I AM ONLY AWARE OF TWO, THEY ARE BOTH IN
17   NEW YORK.
18          **MR. STEWART:**  BOTH IN NEW YORK.  THERE ARE SOME
19   INDIVIDUAL CASES, BUT THOSE ARE DIFFERENT -- BUT THOSE HAVE
20   BEEN RESOLVED, I THINK, PRETTY SPEEDILY, GENERALLY.
21          THE ONE I WANTED TO FLAG, THOUGH, YOUR HONOR, IS
22   THAT THERE IS A CASE PENDING IN THE WESTERN DISTRICT OF
23   WASHINGTON BEFORE JUDGE PECHMAN.
24          **THE COURT:**  YES.
25          **MR. STEWART:**  THIS INVOLVES 17 STATES AND THE

JULY 24, 2018

1    DISTRICT OF COLOMBIA WHO FILED A SUIT THAT THEY ALLEGED ON
2    BEHALF OF THEIR RESIDENTS IN CONNECTION WITH THE FAMILY
3    SEPARATION POLICY.
4            I RAISE IT SORT OF FOR -- WITHOUT GETTING AHEAD OF
5    THINGS TOO MUCH, YOUR HONOR.  THE GOVERNMENT -- THE PLAINTIFFS
6    IN THAT CASE SOUGHT EXPEDITED DISCOVERY ABOUT THE POLICY AND
7    THAT SORT OF THING.  THE GOVERNMENT FILED A FAST MOTION THAT
8    SOUGHT TRANSFER TO THIS COURT, AND KIND OF OTHER THINGS ON
9    JURISDICTIONAL ISSUES.
10           JUDGE PECHMAN IN THAT CASE HAS ORDERED EXPEDITED
11   DISCOVERY WITHOUT RULING ON THE TRANSFER PIECE YET, BUT -- SO
12   THE TRANSFER PIECE IS STILL UNDER CONSIDERATION.  BUT THERE IS
13   A HEARING BEFORE JUDGE PECHMAN THIS FRIDAY ON THE EXPEDITED
14   DISCOVERY SCOPE AND SCHEDULE AND PRESUMABLY THOSE SORTS OF
15   THINGS.
16           **THE COURT:**  YES.
17           **MR. STEWART:**  I AM GUESSING.
18           I WANTED TO FLAG IT FOR YOUR HONOR BECAUSE THE
19   GOVERNMENT'S VIEW IS THAT THAT CASE -- THE CLAIMS
20   OVERWHELMINGLY OVERLAP WITH THIS ONE OR WITH OTHER LITIGATION.
21   IT IS PROPERLY TRANSFERRED TO THIS COURT FOR JUST THE REASONS
22   ARTICULATED BY JUDGE FURMAN IN HIS TRANSFER ORDER, AMONG
23   OTHERS.
24           IT DOESN'T LOOK -- IT IS NOT CLEAR THAT THAT
25   TRANSFER WILL HAPPEN, AND I WANTED TO JUST FLAG IT BECAUSE OF

JULY 24, 2018

```
 1   CONCERNS THAT IF WE DO END UP WITH A SITUATION OF EXPEDITED
 2   DIFFICULT DISCOVERY THERE IT WILL, UNFORTUNATELY, POTENTIALLY
 3   OVERLAP WITH EFFORT HERE.
 4           AND I DON'T RAISE IT TO KIND OF IDENTIFY A PROBLEM
 5   MORE JUST WE ARE GOING TO LOOK FOR SOLUTIONS AND TRY TO DEAL
 6   WITH IT.  BUT I JUST WANTED TO FLAG IT FOR YOUR HONOR SO YOU
 7   KNOW OF IT AND YOU ARE NOT CAUGHT OFF-GUARD.  AND WE ARE
 8   WORKING AS BEST WE CAN.  WE TRIED TO GET IT TRANSFERRED HERE,
 9   WE ARE NOT SURE WE ARE GOING TO SUCCEED.  BUT WE ARE PREPARED
10   TO, YOU KNOW, WE ARE TRYING TO WORK WITH THAT ISSUE.
11           BUT I WANTED TO FLAG IT JUST BECAUSE THE MORE
12   RESOURCES WE HAVE TO DEVOTE TO EXPEDITED DISCOVERY
13   UNFORTUNATELY MANY OF THOSE FOLKS WILL I THINK BE PEOPLE WHO
14   ARE WORKING ON REUNIFICATION, SO WE ARE TRYING TO DEAL WITH
15   IT.  BUT I DID WANT TO RAISE THAT CASE FOR YOUR HONOR BEFORE
16   JUDGE PECHMAN.
17           THE COURT:  YES.  THANK YOU FOR MENTIONING THAT.
18           BUT OF THE ELIGIBLE CLASS MEMBERS IT APPEARS THAT'S
19   ALL UNDERWAY AND REUNIFICATION SHOULD OCCUR BY THURSDAY.
20           MR. STEWART:  I DON'T THINK THE CASE WILL AFFECT THE
21   STUFF YOU HAVE BEEN FOCUSING ON, YOUR HONOR.  I FLAG IT AS A
22   CONSIDERATION AS WE ARE, YOU KNOW, CONTINUING TO BEAR DOWN TO
23   COMPLETE THE REST OF THE REUNIFICATION.
24           THE COURT:  YES.  ALL I CAN SAY THERE IS ON THE NEW
25   YORK CASES, BOTH JUDGES FURMAN AND RAKOFF, WITH THE PARTIES
```

JULY 24, 2018

1   CONSENT, CALLED ME.  AND SO THEY TOOK THAT INITIATIVE, AND

2   THEN THEREAFTER THEY MADE THEIR OWN CONSIDERED JUDGMENT TO

3   TRANSFER THE CASES HERE.

4           I HAVE NOT HEARD FROM JUDGE PECHMAN, AND OF COURSE,

5   SHE IS GOING TO DO WHAT SHE CONSIDERS TO BE THE RIGHT DECISION

6   IN HIS CASE, SO I WOULD NOT HAVE ANY COMMENT OR OBSERVATION

7   OTHER THAN TO THANK COUNSEL FOR LETTING ME KNOW.

8           AND WE WILL STAND BY, AND AS I INDICATED TO JUDGES

9   FURMAN AND RADKOFF, WE ARE HERE AND READY TO TEND TO THE NEW

10  YORK CASE AS THE LAWYERS DEEM APPROPRIATE.

11          LET'S CLOSE THIS HEARING.  AND THEN I AM GOING TO

12  ASK COUNSEL JUST TO STAND BY FOR A MOMENT.  I DON'T KNOW IF

13  NEW YORK COUNSEL WILL CALL IN OR NOT, BUT I WANTED TO GIVE

14  THEM THE COURTESY TO DO THAT IF THAT'S WHAT THEY WANT TO DO.

15  THEY MAY ELECT NOT TO.  THEY MAY NOT BE ON THE LINE, I DON'T

16  KNOW.  I DON'T HAVE ANY OTHER INFORMATION, OTHER THAN I SPOKE

17  WITH JUDGE RADKOFF LATE THIS AFTERNOON, I THINK IT WAS

18  ABOUT -- WELL, IT WAS DURING THE RECESS WHEN I WAS IN TRIAL.

19  AND SO HE GAVE ME THE UPDATE, BUT I HAVEN'T HEARD ANYTHING

20  ELSE THAT HE HAS TRANSFERRED THE CASE.

21          **MR. STEWART:**  CAN I MAKE JUST ONE OR LIKE A

22  TWO-SENTENCE CLOSING OBSERVATION ON ONE OTHER PIECE OF THE

23  STAY MOTION?

24          **THE COURT:**  YES.

25          **MR. STEWART:**  OBVIOUSLY THERE IS GOING TO BE FURTHER

JULY 24, 2018

1  BRIEFING AND ARGUMENT AND I CAN ADDRESS -- HOPEFULLY ADDRESS

2  THIS FURTHER ON FRIDAY, YOUR HONOR.  BUT THE GOVERNMENT ALSO

3  WOULD TAKE ISSUE WITH THE SUGGESTION THAT THINGS ARE A MESS ON

4  THE GROUND.  AS COMMANDER WHITE HAS EXPLAINED THERE HAS

5  BEEN -- AND AS YOUR HONOR HAS RECOGNIZED, THERE HAS BEEN

6  TREMENDOUS EFFORT TO REUNIFY CONSISTENT WITH THIS COURT'S DUE

7  PROCESS REUNIFICATION FAMILY INTEGRITY RULING.  WE HAVE MANY

8  REASONS TO BE VERY PROUD OF THIS EFFORT SO WE STRONGLY CONTEST

9  THAT CHARACTERIZATION AND LOOK FORWARD TO THE OPPORTUNITY TO

10  PRESENT FURTHER VIEWS ON THAT.

11          **THE COURT:**  I WILL LOOK FORWARD TO THE ADDITIONAL

12  BRIEFING.  AND I THINK THE STATUS REPORT ON THURSDAY WILL BE

13  GOOD BECAUSE WE WILL HAVE A LOT OF OTHER ADDITIONAL

14  INFORMATION.  AND THEN FRIDAY, OF COURSE, WE CAN TAKE

15  INVENTORY ON WHAT ACTUALLY HAPPENED AT THE REUNIFICATION OF

16  ELIGIBLE CLASS MEMBERS, AND THEN ADDRESS THE JURISDICTIONAL

17  ISSUE.

18          **MS. FABIAN:**  YOUR HONOR, I JUST WANTED TO LET YOU

19  KNOW AS WELL ON FRIDAY I WILL BE APPEARING IN COURT IN LOS

20  ANGELES SO I AM GOING TO TRY TO PARTICIPATE BY PHONE HERE IN

21  THE AFTERNOON.

22          **THE COURT:**  MR. STEWART, YOU WILL BE HERE?

23          **MR. STEWART:**  I WILL BE HERE, YOUR HONOR.

24          **THE COURT:**  OKAY.  VERY GOOD.  THANK YOU VERY MUCH.

25          **MR. STEWART:**  THANK YOU, YOUR HONOR.

JULY 24, 2018

```
 1              (PAUSE IN PROCEEDINGS)
 2         THE COURT:  OKAY.  WE DON'T HAVE A CASE NUMBER OR A
 3    CASE YET.  I HAVE JUST BEEN INFORMED BY JUDGE RAKOFF THAT THE
 4    NEW YORK CASE WAS TRANSFERRED.
 5         WE HAVE GOVERNMENT COUNSEL PRESENT AND PLAINTIFFS'
 6    COUNSEL PRESENT.
 7              AND I NOW UNDERSTAND WE HAVE NEW YORK COUNSEL ON THE
 8    LINE, FROM LEGAL AID, REPRESENTING THE CHILDREN IN THAT CASE.
 9              I HOPE YOU CAN HEAR ME.
10              CAN YOU STATE YOUR APPEARANCES?
11         MR. GELERNT:  CERTAINLY, YOUR HONOR.  THIS IS JUDITH
12    GOLDINER FROM THE LEGAL AID SOCIETY IN NEW YORK.  AND I AM
13    JOINED HERE -- WITH ME IS SARAH GILLMAN, GREGORY COPELAND, AND
14    BETH KRAUSE ALSO FROM NEW YORK CITY.
15              I KNOW WE HAVE OUR PRO BONO --
16         MR. FRAHN:  YOUR HONOR, THIS IS BUZZ FRAHN OF
17    SIMPSON THATCHER, PALO ALTO, CALIFORNIA, ON THE LINE AS WELL.
18         THE COURT:  VERY GOOD.  THANK YOU.
19              WERE COUNSEL ON THE LINE FOR THE LAST STATUS
20    CONFERENCE?
21         MS. GOLDINER:  YES, WE ARE WERE, YOUR HONOR.
22         THE COURT:  YOU HEARD THE DISCUSSION, THEN, THAT I
23    HAD WITH COUNSEL.
24              SO, MS. GOLDINER WHAT -- I AM ALL EARS.  I WOULD
25    LIKE TO HEAR FROM YOU AND GET YOUR PERSPECTIVE.
```

JULY 24, 2018

1          **MS. GOLDINER:**  THANK YOU, YOUR HONOR.

2          SO I GUESS I WANT TO START BY SAYING OUR CONCERN

3     HERE IS THAT OUR CLIENTS DON'T HAVE INFORMATION THEY NEED TO

4     MAKE MEANINGFUL PLANS, AND THEY HAVEN'T HAD THE OPPORTUNITY TO

5     TALK TO THEIR PARENTS ABOUT THOSE PLANS OR THERE PARENTS TO

6     THEIR COUNSEL, TO THE CHILDREN'S COUNSEL.

7          SO, YOU KNOW, WHAT WE ARE SEEING IS KIDS WHO VERY

8     MUCH WOULD LIKE TO BE WITH THEIR PARENTS BUT THEY DON'T WANT

9     TO BE IN LONG FAMILY DETENTION.  WHAT THEY DON'T KNOW, AND

10    WHAT THE GOVERNMENT HASN'T GIVEN US NOTICE OF, IS WHETHER THE

11    PLAN FOR THE FAMILIES IS POTENTIALLY DEPORTATION OR FAMILY

12    DETENTION WHILE OTHER RELEASE IS BEING WORKED OUT.

13         SO THAT'S BEEN THE PROBLEM.  AND THAT'S SPECIFICALLY

14    THE PROBLEM FOR THE YOUNG PEOPLE THAT WE FILED FOR TODAY.  SO

15    WHAT WE WERE HOPING FOR WAS -- AS YOU KNOW FROM OUR PREVIOUS

16    FILING WAS THAT THE NOTIFICATIONS WE WOULD GET WOULD GIVE US

17    BOTH THE INFORMATION ON WHAT THE ACTUALLY PLAN WAS --

18         **THE COURT:**  I AM SORRY, SOMEBODY IS TYPING AND SO IT

19    IS ACTUALLY INTERRUPTING MS. GOLDINER'S PRESENTATION.

20         CAN YOU GIVE ME THAT LAST SENTENCE AGAIN?

21         **MS. GOLDINER:**  I AM SORRY.

22         THE REASON WE WANTED THE NOTIFICATION WAS REALLY

23    TWOFOLD.  ONE WAS TO GET INFORMATION ON EXACTLY WHAT THE PLAN

24    WAS FOR THE KIDS SO THAT WE COULD ADVISE THEM.  AND SECOND SO

25    THAT WE WOULD ALSO HAVE A WAY OF CONTACTING THEIR PARENTS AND

1    GETTING THEIR PARENTS' INPUT INTO WHAT WAS GOING TO HAPPEN.

2              SO OF THE FIVE PARENTS THAT ARE INVOLVED IN THE KIDS

3    THAT WE FILED FOR, THREE OF THEM WE HAVE NOT BEEN ABLE TO TALK

4    TO.  AND THEIR CHILDREN HAVE NOT HAD ANY MEANINGFUL

5    OPPORTUNITY TO TALK TO THEM ABOUT WHAT THE PLANS ARE.

6              AND EVEN WERE THEY ABLE TO TALK TO THEIR PARENTS,

7    WITHOUT KNOWING WHETHER THEY ARE GOING TO BE DEPORTED OR

8    WHETHER THEY ARE GOING TO BE IN FAMILY DETENTION IS IMPORTANT

9    TO OUR KIDS TO KNOW WHETHER -- THAT IS SOMETHING THAT THEY

10   WANT OR WHETHER THEY WANT TO STAY AND PURSUE THE REMEDIES THEY

11   MIGHT HAVE.

12             **THE COURT:**  OKAY.

13             LET ME ASK MR. STEWART.  DO WE KNOW WHO THE FIVE

14   PARENTS ARE?

15             AND, MS. GOLDINER, DO YOU KNOW WHO THE FIVE PARENTS

16   ARE?  DO YOU HAVE THAT INFORMATION?

17             **MS. GOLDINER:**  WE KNOW WHO THEY ARE, WE HAVE NOT

18   BEEN ABLE TO CONTACT THEM.

19             **THE COURT:**  SO I AM JUST SPEAKING PRACTICALLY.  IF

20   YOU KNOW WHO THEY ARE, IT SEEMS THAT YOU COULD -- IT MAY BE

21   THAT GOVERNMENT COUNSEL IN NEW YORK KNOWS WHO THEY ARE AS

22   WELL, BUT I HAVE, OBVIOUSLY, GOVERNMENT COUNSEL HERE IN SAN

23   DIEGO, MS. FABIAN AND MR. STEWART.

24             IT MAY BE THAT IF THE INFORMATION IS SHARED WITH

25   THEM AS TO WHO THE PARENTS ARE, THEN THIS CAN WORK OUT

JULY 24, 2018

```
 1    INFORMALLY AND RELATIVELY EASILY WHERE THOSE PARENTS ARE NOT
 2    REMOVED, THE CHILDREN CAN REMAIN IN NEW YORK.  THERE COULD BE
 3    AN OPPORTUNITY WHERE PARENT AND CHILD COMMUNICATE AT LEAST
 4    TELEPHONICALLY, PARENT AND CHILD ADVOCATE COMMUNICATE,
 5    INFORMED DECISIONS ARE MADE.  AM I CORRECT?
 6              I AM ASKING MS. FABIAN NOW.
 7              MS. FABIAN:  LET ME STAND UP STRAIGHT WHILE I DO
 8    THIS.
 9              AND, YOU KNOW, IF I HAVE MISSED CONVERSATIONS I
10    APOLOGIZE.  I DON'T WANT TO MISREPRESENT ANYTHING.  MY
11    UNDERSTANDING IS -- I AM NOT AWARE IF WE HAVE BEEN TOLD THAT
12    THERE ARE DIFFICULTIES IN THE COMMUNICATION.  I THINK
13    FACILITATING COMMUNICATION IS SOMETHING WE CAN DO.
14              WE, AS I UNDERSTAND IT, GAVE NOTIFICATION OVER THE
15    WEEKEND.  WE HAVE NONETHELESS HELD TO ENSURE THAT THERE WERE
16    48 HOURS THAT WERE NOT ON THE WEEKEND ARRANGED FOR THE
17    REUNIFICATIONS TO HAPPEN TOMORROW.  AND, YOU KNOW, BASED ON
18    THE COURT'S EARLIER STATEMENT CAN HOLD THAT OFF FURTHER.  BUT
19    WE HAVE MADE ATTEMPTS TO PROVIDE ENOUGH TIME TO ALLOW THOSE
20    COMMUNICATIONS.  SO IF THOSE HAVEN'T HAPPENED I AM NOT AWARE
21    WHY THAT IS, BUT WE CAN CERTAINLY LOOK INTO ARRANGING THOSE.
22              MY UNDERSTANDING IS THAT WE HAVE ALSO GIVEN
23    INFORMATION AS TO THE CURRENT INTENTION WITH REGARD TO THE
24    FAMILY, WHICH IS I THINK FOR AT LEAST ONE FAMILY WHICH IS --
25    HAS MULTIPLE CHILDREN THAT THE CURRENT INTENTION IS THAT THEY
```

JULY 24, 2018

```
 1   WOULD BE RELEASED UPON REUNIFICATION.  I AM NOT -- SO I AM NOT
 2   SURE IF THE REMAINDER WOULD BE HELD TOGETHER IN FAMILY
 3   DETENTION.  I BELIEVE THAT IS THE CURRENT PLAN AS WE
 4   INDICATED, HOWEVER THAT IS THE CURRENT PLAN.  THINGS CAN
 5   CHANGE AS NEW INFORMATION BECOMES AVAILABLE.
 6            SO AS I UNDERSTAND IT, THAT WAS PART OF THE CONCERN
 7   IS THAT WE CAN'T 100 PERCENT COMMIT AS TO THE SITUATION THAT
 8   WILL BE DOWN THE LINE BUT THAT WE HAVE PROVIDED INFORMATION AS
 9   TO OUR CURRENT UNDERSTANDING FROM ICE OF WHAT THE FAMILY
10   SITUATION WOULD BE.
11            THE COURT:  IT SEEMS THAT THIS IS A MATTER WITH A
12   VERY PRACTICAL SOLUTION.  AND SO PARTICULARLY SINCE, GIVEN THE
13   COURT'S ORDERS TODAY, THAT THE PARENTS WILL NOT BE REMOVED,
14   THE CHILDREN WILL NOT BE MOVED FROM NEW YORK PENDING WORKING
15   THIS OUT, THAT THE PARTIES CAN MEET AND CONFER.  AND IT SEEMS
16   LIKE THIS ISSUE, WITH COMMUNICATION, THERE CAN BE A MEANINGFUL
17   OPPORTUNITY FOR PARENT AND CHILD, PARENT AND CHILD ADVOCATE,
18   TO ADDRESS THE ISSUES, PERHAPS TELEPHONICALLY, BUT TO AT LEAST
19   ADDRESS THE ISSUES.  AND SO IT WOULD SEEM THAT THIS WHOLE AREA
20   COULD BE ADDRESSED THROUGH A JOINT MOTION AND ORDER.
21            DON'T YOU AGREE, MS. GOLDINER?
22            MS. GOLDINER:  YES, YOUR HONOR.
23            I DO WANT TO ADD, THOUGH, THAT WE STILL -- TO BE
24   ABLE TO APPROPRIATELY COUNSEL OUR CLIENTS, THE CHILDREN, AND
25   TALK TO THEIR PARENTS ABOUT WHAT THE OPTIONS ARE, WE NEED TO
```

JULY 24, 2018

1  KNOW THE ANSWER TO WHETHER IT IS REUNIFICATION AND DEPORTATION

2  OR REUNIFICATION AND BEING HELD IN FAMILY DETENTION.

3         AND THAT'S REALLY IMPORTANT TO OUR CLIENTS.  AND I

4  THINK THE GOVERNMENT KNOWS THE ANSWER TO THAT.  NOT A LOT OF

5  CHILDREN, AND I WOULD HOPE THEY COULD PROVIDE THAT TO US.  I

6  HAVE NO PROBLEM WITH CONFERRING WITH THEM, BUT I WOULD LIKE

7  TO -- WE NEED TO KNOW THE ANSWER TO THAT.

8         **THE COURT:**  I THINK THE GOVERNMENT, AS SOON AS YOU

9  KNOW WHO THE PARENTS ARE, YOU CAN INFORM PLAINTIFFS' COUNSEL,

10  WHETHER IT IS REUNIFY AND DEPORT, OR REUNIFY AND DETAIN

11  TOGETHER, OR PAROLE IN COUNTRY.

12         **MS. FABIAN:**  I THINK -- I THINK MY UNDERSTANDING IS

13  THAT WE HAVE MADE THAT AND THAT'S -- WE HAVE INDICATED THAT --

14  THE CURRENT PLAN.

15         I THINK THERE IS -- OUR POSITION WOULD BE THAT WE

16  CAN'T -- INCONSISTENT WITH THIS COURT'S ORDERS IS WE CAN'T

17  GUARANTEE A CERTAIN RESULT OR A CERTAIN OUTCOME FOR THAT

18  INFORMATION THAT CAME UP THAT CHANGED THE -- WHAT -- FOR

19  EXAMPLE SOMEONE OBTAINING AN EXECUTABLE FINAL ORDER MIGHT

20  CHANGE THE PLANS WITH REGARD TO DETENTION OR REMOVAL, ET

21  CETERA.

22         SO I THINK AS THINGS CHANGE, THE AGENCY RETAINS ITS

23  AUTHORITY TO MAKE DECISIONS BASED ON THE SITUATION WITH THE

24  FAMILY.  AND THAT'S WHY WE SAY WE HAVE GIVEN THE CURRENT

25  INFORMATION BUT CANNOT COMMIT THAT THAT INFORMATION WON'T

JULY 24, 2018

```
 1    CHANGE AS THE PROCESS MOVES FORWARD.

 2            THE COURT:  RIGHT.  I WOULD ASSUME, FOR EXAMPLE,

 3    THAT THE ONE PLAN MIGHT BE TO REUNIFY AND DETAIN TOGETHER, OR

 4    REUNIFY AND PAROLE INTO THE COMMUNITY, BUT THAT COULD CHANGE

 5    AS THE PARENT AND/OR CHILD MIGHT LATER BECOME SUBJECT TO A

 6    REMOVAL ORDER DOWN THE ROAD.

 7            MS. FABIAN:  CORRECT.  I THINK -- I MEAN, I THINK TO

 8    SOME EXTENT WE WOULD SAY THAT PROVIDING THAT INFORMATION IS A

 9    COURTESY THAT WE HAVE BEEN WILLING TO DO TO FACILITATE THE

10    DECISION-MAKING BY THIS GROUP.  IT IS NOT NECESSARILY

11    INFORMATION THAT EVERYONE IS ENTITLED TO -- THAT WE WOULD

12    AGREE EVERYONE IS ENTITLED TO, BUT WE HAVE MADE AN EFFORT TO

13    PROVIDE THE INFORMATION THAT IS CURRENTLY AVAILABLE.  I WOULD

14    AGREE, WE CAN'T COMMIT THAT THINGS WON'T CHANGE.

15            THE COURT:  WHAT IF THE PARTIES HERE -- THAT WOULD

16    BE GOVERNMENT COUNSEL AND MS. GOLDINER AND OTHER PLAINTIFFS'

17    COUNSEL -- MEET AND CONFER.  AND I WOULD HOPE THAT THIS COULD

18    BE A MATTER WHERE YOU COULD REPORT TOMORROW, BY JOINT MOTION

19    AND ORDER.  OR IF THERE IS A NEED FOR THE COURT TO BECOME

20    INVOLVED OTHERWISE, THEN WE CAN ARRANGE FOR AN IMMEDIATE

21    TELEPHONIC CONFERENCE AND ARGUMENT SUBJECT TO BRIEFING.

22            MS. GOLDINER:  WE ARE HAPPY TO MEET AND CONFER.

23            MR. STEWART:  CAN I ALSO ADD THE POSSIBILITY, YOUR

24    HONOR, THAT MAYBE NOT EVEN AN ORDER BUT IF WE COULD COME TO A

25    MUTUAL UNDERSTANDING AND ALERT THE COURT TO IT?
```

JULY 24, 2018

```
 1              THE COURT:  YOU CAN JUST ALERT THE COURT, EXACTLY.
 2              MR. STEWART:  VERY GOOD.
 3         THE OTHER THING I MENTIONED -- YOUR HONOR, YOU
 4    MENTIONED, I THINK YOU USED THE WORD STAY OR NOT REMOVING.  I
 5    THINK WHAT YOU WERE SAYING WAS JUST PUT A PAUSE AS TO THESE
 6    FEW PARENTS.  DON'T RELOCATE THEM TO NEW YORK UNTIL WE FIGURE
 7    OUT THIS SMALL COHORT OF EIGHT OR NINE.
 8              THE COURT:  YES.  THAT'S EXACTLY RIGHT.
 9              MR. STEWART:  THANK YOU, YOUR HONOR.  I THINK WE
10    WILL WORK WITH THAT.
11              THE COURT:  MR. STEWART, YOU HAVE ALL OF THE CONTACT
12    INFORMATION FOR MS. GOLDINER AND PLAINTIFFS' COUNSEL?
13              MR. STEWART:  I BELIEVE SO.  I CERTAINLY HAVE A GOOD
14    COHORT OF HER COLLEAGUES, YOUR HONOR, SO WE WILL BE IN TOUCH.
15              THE COURT:  OKAY.
16         MR. GELERNT HAS BEEN SITTING VERY QUIETLY.  THIS IS
17    NOT YOUR CASE, BUT IS THERE ANY COMMENT OR OBSERVATION,
18    CONCERNS?
19              MR. GELERNT:  NO, YOUR HONOR.  I THINK WE WILL LET
20    THEM WORK IT OUT TOGETHER.
21              THE COURT:  OKAY.  I THINK WE WILL SIGN OFF.
22         AND I WILL ASK COUNSEL TO MEET AND CONFER RIGHT
23    AWAY, AND I WILL WAIT TO HEAR FROM COUNSEL.  OKAY.  THANK YOU.
24
25                             *   *   *
```

JULY 24, 2018

1

2          I CERTIFY THAT THE FOREGOING IS A CORRECT

3      TRANSCRIPT FROM THE RECORD OF PROCEEDINGS
       IN THE ABOVE-ENTITLED MATTER.
4
       S/LEEANN PENCE                    3/3/2018
5      LEEANN PENCE, OFFICIAL COURT REPORTER    DATE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JULY 24, 2018