The Honorable Marsha J. Pechman

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

9
10
11
12   STATE OF WASHINGTON, *et al.*,

13                              Plaintiffs,
          v.
14
     UNITED STATES OF AMERICA, *et al.*,
15
                              Defendants.
16

No. 2:18-cv-0939 (MJP)

**DEFENDANTS' REPLY BRIEF
REGARDING THEIR MOTION TO
DISMISS, OR, ALTERNATIVELY,
TRANSFER VENUE, OR,
ALTERNATIVELY, HOLD
THE CASE IN ABEYANCE**

Noted for Consideration:
August 3, 2018

17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' REPLY BRIEF REGARDING THEIR MOTION
TO DISMISS, OR, ALTERNATIVELY, TRANSFER VENUE, OR
OR, ALTERNATIVELY, HOLD THE CASE IN ABEYANCE
*State of Washington, et al. v. United States, et al.*,
Case No. 2:18-cv-00939 (MJP)

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-0106
FACSIMILE: (202) 305-7000

## INTRODUCTION

Like three other district court judges in similar cases, this Court should transfer this case to the Southern District of California without delay so that Judge Sabraw may address this and all related matters in an orderly and consistent way. As Judge Rakoff recently explained in transferring another case brought on behalf of children (rather than the parents in *Ms. L. v. ICE*, No. 18-cv-428 (S.D. Cal.)): "The reason I transferred the other matter to Judge Sabraw is because this whole reunification process has many, many moving parts, and it doesn't make sense to have different judges in different districts trying to deal piecemeal with the issue. There should be one judge looking at it overall." *R.G.H. v. Sessions*, No. 18-cv-6791, Transcript of Proceedings, at 3 (S.D.N.Y. July 27, 2018) (Exhibit 1). Two other judges agree, and just today Judge Friedman in the District of Columbia transferred a putative nationwide class action on behalf of children impacted by *Ms. L.*: "The Court *easily* concludes that under these circumstances, a single judge—Judge Sabraw—should be entrusted to untie this sailor's knot." *M.M.M. v. Sessions*, No. 18-cv-1759, Dkt. 25, slip op. at 8 (D.D.C. Aug. 3, 2018) (emphasis added) (Exhibit 2). This same reasoning weighs strongly in favor of transferring this case to the Southern District of California to be considered alongside *Ms. L.* The *Ms. L.* case is a certified class action involving claims, issues, relief, and real parties in interest. The claims and, equally importantly, the relief that has been granted, substantially overlaps with what is sought here. Over a month ago, Judge Sabraw issued a preliminary injunction in *Ms. L.* granting relief that substantially overlaps with the relief sought in the present case and he continues to administer the many aspects of implementing that injunction. If permitted to proceed, this case is likely to interfere with those efforts.

Indeed, other than obtain discovery, it is unclear what the States could ask this Court to do with respect to these overlapping claims, given that injunction. And even with respect to discovery, most of the information the States are seeking is encompassed in the documents and information already being provided in the *Ms. L.* matter—including, importantly, the latest location information with regard to children in custody of the Department of Health and Human Services' Office of Refugee Resettlement ("ORR") and families who have been released from

DEFENDANTS' REPLY BRIEF REGARDING THEIR MOTION
TO DISMISS, OR, ALTERNATIVELY, TRANSFER VENUE, OR
OR, ALTERNATIVELY, HOLD THE CASE IN ABEYANCE
*State of Washington, et al. v. United States, et al.*,
Case No. 2:18-cv-00939 (MJP)

1

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-0106
FACSIMILE: (202) 305-7000

custody. That information is being provided under Judge Sabraw's order, and now being provided to the States under this Court's order. (Dkt. 41.) Thus, the States are getting the information they need to provide services to those individuals who reside within them. To the extent the States may seek additional discovery, it would be far less likely to cause conflicting obligations and delay reunification efforts for Judge Sabraw to consider such requests in conjunction with the other ongoing and pressing information needs that are required to implement the injunction in *Ms. L.*

Plaintiffs' protest that their "claims[] and relief sought are fundamentally different" from the issues pending in the nationwide class action of *Ms. L.*, or the other cases transferred to the Southern District of California. *See* Plaintiffs' Opposition to Defendants' Motion to Transfer (Dkt. 46) at 1:19 (hereinafter, "Opposition" or "Pls.' Opp'n"). A comparison of their claims with those in the actions now pending before Judge Sabraw make clear that is not the case. The *Ms. L.* court certified a nationwide class of parents who were separated from their children when they crossed the border and two putative class actions on behalf of children impacted by separations have now been transferred to Judge Sabraw (*M.M.M.* and *N.T.C. v. ICE*, No. 18-cv-6428, 2018 WL 3472544 (S.D.N.Y. July 19, 2018)). Meanwhile, the complaint here (Dkt. 1) ("Compl.") was filed by 17 States and the District of Columbia (hereinafter, "the States") on behalf of those same parents and children, alleging essentially the same set of constitutional and statutory claims and raising issues already considered or under consideration by the *Ms. L.* court. *See* Pls.' Opp'n (Dkt. 46) at 4:20–22 ("The States' claims emphasize the interests of … [their] residents [and] … address[] the conditions of detention for separated children and families.").

The States allege that Defendants have (1) committed procedural-due-process violations by separating parents from their children without showing that the parent is unfit or is otherwise endangering the child (Claim I); (2) committed substantive-due-process violations by depriving individuals of their liberty interests without due process of law (Claim II); (3) violated the Fifth Amendment's Due Process Clause's equal-protection component by targeting individuals for discriminatory treatment based on their nationality or ethnicity (Claim III); (4) violated the

DEFENDANTS' REPLY BRIEF REGARDING THEIR MOTION
TO DISMISS, OR, ALTERNATIVELY, TRANSFER VENUE, OR
OR, ALTERNATIVELY, HOLD THE CASE IN ABEYANCE
*State of Washington, et al. v. United States, et al.*,
Case No. 2:18-cv-00939 (MJP)

2

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-0106
FACSIMILE: (202) 305-7000

Administrative Procedure Act ("APA") by applying an arbitrary family-separation policy in a manner that conflicts with existing law (Claim IV); and (5) violated the asylum statute, 8 U.S.C. § 1158, by preventing would-be asylum seekers from presenting themselves at ports of entry (Claim V). *See* Compl. at ¶¶ 342–71. Except for Claim V, all of these claims arise out of the same government action, and are subject to a remedy that resolves the claim and that has already been awarded by a different court on a nationwide basis

The States assert these claims not on the basis that there is a direct injury to the States from the challenged "zero tolerance" policy. Instead, they assert that the federal government's actions will result in higher costs to each state of educating or treating illegal immigrants within their jurisdictions. *See, e.g.*, Compl. at ¶ 231. And they bring the claims as *parens patriae* on behalf of illegal immigrants who reside within their jurisdictions (including for children within ORR's custody). *See id.* at ¶ 18. These are not valid bases to assert standing, as Defendants will explain in moving to dismiss for lack of jurisdiction. But in any event, the fact that Plaintiffs assert different grounds for Article III standing does not change the fact that the issues involved, as well as the States' actual *claims*, parallel those in *Ms. L.*, *see Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1241 (9th Cir. 2015) (asking "whether [the] two suits involve substantially similar issues"). And although the States insist that they are making distinct arguments before this Court as to *standing*, *see, e.g.*, Pls.' Opp'n (Dkt. 46) at 4:11–17, they do not deny that their claims are either identical (Counts I, II, and IV) or substantially similar (Counts III and V) to the actual merits issues before Judge Sabraw. That is all that is required in this circuit. *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1295 (N.D. Cal. 2013) ("Courts have held that the issues in the two actions must be *substantially similar,* rather than identical.").

To get around this problem, the States also claim that *Ms. L.* is still "in the early stages of litigation," Pls.' Opp'n (Dkt. 46) at 10:17, but this characterization ignores how far that litigation has already progressed since it was filed nearly six months ago, and ignores the most obvious aspect of that progress: the ordering of preliminary injunctive relief on behalf of a nationwide class. Moreover, the States' are completely silent about what harm may befall them

DEFENDANTS' REPLY BRIEF REGARDING THEIR MOTION TO DISMISS, OR, ALTERNATIVELY, TRANSFER VENUE, OR OR, ALTERNATIVELY, HOLD THE CASE IN ABEYANCE
*State of Washington, et al. v. United States, et al.*,
Case No. 2:18-cv-00939 (MJP)

3

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-0106
FACSIMILE: (202) 305-7000

if their *parens patriae* case is coordinated and heard alongside the central case in the country involving most of the very same issues alleged here and classes of persons whose interests the States claim they wish to protect, along with the *four* other cases already transferred there that were filed on behalf of the children of those *Ms. L.* class members.

In these circumstances—where another court has issued class-wide injunctive relief, where the *merits* issues presented in this Court almost entirely overlap with the issues before that other court, where the real parties in interest are already class members subject to the other court's class-wide relief, where continued litigation here could undermine the class-wide injunctive relief and result in inconsistent obligations, where *four* other cases brought on behalf of children raising similar issues have been transferred to Judge Sabraw, and where the States seek to interpose themselves between the actual parties in interest—the parents and children— and their class counsel from afar—transfer is plainly warranted. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [28 U.S.C.] § 1404(a) was designed to prevent," *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990), and so the Court should transfer this case without further delay.

## ARGUMENT

### I. Comity Concerns Exist Where Plaintiffs Are Bringing Suit On Behalf Of The Same Persons Involved In *Ms L.* For Substantially Similar Claims.

The comity considerations identified by Defendants warrant transfer of this case because of the clear and significant overlap between Plaintiffs' merits claims and those being litigated before Judge Sabraw in the four cases now pending before him, including *Ms. L.*

"[T]wo essentially similar federal actions in separate fora should not continue in parallel fashion; only one should go forward." *Affinity Memory & Micro, Inc. v. K & Q Enterprises, Inc.*, 20 F. Supp. 2d 948, 955 (E.D. Va. 1998). Doing otherwise "plac[es] an unnecessary burden on the federal judiciary" and risks "the embarrassment of conflicting judgments." *Church of Scientology of Cal. v. U.S. Dep't of Army,* 611 F.2d 738, 750 (9th Cir. 1979). To avoid these problems, "a discretionary doctrine"—"the doctrine of federal comity"—has arisen. *See id.* at 749–50. The States' chief argument against comity is that neither dismissal nor

DEFENDANTS' REPLY BRIEF REGARDING THEIR MOTION TO DISMISS, OR, ALTERNATIVELY, TRANSFER VENUE, OR OR, ALTERNATIVELY, HOLD THE CASE IN ABEYANCE
*State of Washington, et al. v. United States, et al.,*
Case No. 2:18-cv-00939 (MJP)

4

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-0106
FACSIMILE: (202) 305-7000

transfer is appropriate because their "claims will [not] be resolved by *Ms. L*'s reunification process" and "the States are in no fashion members of the *Ms. L* class." Pls.' Opp'n (Dkt. 46) at 5:23–24. But that is not the point when the States are seeking to vindicate those class-members' interests by bringing a majority of identical claims here or where the States' asserted injury is entirely derivative of the harm imposed on the class members.

The only real difference between this case and those now before Judge Sabraw, as Plaintiffs concede, is their repeated reminder that they are neither parents nor children. But just because Plaintiffs purport to represent the interests of parents or children, either as their own sovereign interests or in *parens patriae*, does not mean the merits claims they seek to litigate are any different than those before Judge Sabraw. *See Hydranautics v. FilmTec Corp.*, 70 F.3d 533, 536 (9th Cir. 1995) (a claim arises under the same transaction or occurrence when "the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit"). Rather, it simply shows that they raised different purported injuries in support of Article III standing. That argument not only ignores what matters for purposes of transfer—overlapping *merits* issues—but shows that in reality the alleged differences between this case and those before Judge Sabraw do not exist. This conflation of standing and merits arguments is fundamentally flawed, runs throughout Plaintiffs' Opposition, and provides no basis to deny transfer when the merits issues here and before Judge Sabraw are so intertwined.

    *A. The Comity Doctrine Focuses On The Similarity Between Pending Cases.*

The issue before this Court is not whether States are distinct from the individual Ms. L. class members, *see* Pls.' Opp'n (Dkt. 46) at 6–9, or the class as a whole, but whether this case raises merits issues concerning immigrant family separations or asylum claims that are "substantially similar," *Music Grp. Servs. US, Inc. v. InMusic Brands, Inc.*, No. 13-cv-182, 2013 WL 1499564, at *2 (W.D. Wash. Apr. 11, 2013) (Pechman, J.), to the cases in the Southern District of California "involving the same subject matter," *Church of Scientology*, 611 F.2d at 750. This "involves determinations concerning wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation[.]"

DEFENDANTS' REPLY BRIEF REGARDING THEIR MOTION TO DISMISS, OR, ALTERNATIVELY, TRANSFER VENUE, OR OR, ALTERNATIVELY, HOLD THE CASE IN ABEYANCE
*State of Washington, et al. v. United States, et al.*,
Case No. 2:18-cv-00939 (MJP)

5

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-0106
FACSIMILE: (202) 305-7000

*Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982) (internal quotation marks and alterations omitted). These were the same concerns that motivated Judge Furman to transfer the putative class action of separated children in *N.T.C.*, and there is no good reason that the States' case should not likewise be transferred to Judge Sabraw. *See* 2018 WL 3472544, at *2 (transferring the case to the Southern District of California because "the … cases concern the same families"; "the relief Plaintiffs seek in this case is, at bottom, directly related to the reunification process being supervised by Judge Sabraw"; "Judge Sabraw is in a better position ... to decide those questions and to modify his own orders if appropriate"; and "in the absence of a single judge presiding over both cases, there is a real risk of inconsistent decisions and conflicting orders — a particularly intolerable risk given the gravity and urgency of the issues in these cases"); *accord E.S.R.B. v. Sessions*, No. 18-cv-6654, Dkt. 4 (S.D.N.Y. July 24, 2018). Indeed, *M.M.M.*, *R.G.H.*, *E.S.R.B.*, and *N.T.C.* actually did involve a separate set of interests—the impact of Judge Sabraw's order on children—whereas here, the injury claimed is entirely derivative of those direct interests that are now being considered by Judge Sabraw.

The States here purport to speak on behalf of many of the same persons, "emphasiz[ing] the interests … [and] addressing the conditions of detention for separated children and families[.]" Pls.' Opp'n (Dkt. 46) at 4:20–21. But their Opposition misses the central point that comity addresses whether two cases substantially overlap to the point where there will be a substantial waste of resources and where there is a risk of inconsistent orders. *See, e.g.*, *Church of Scientology*, 611 F.2d at 750; *Olin Corp. v. Cont'l Cas. Co.*, No. 10-cv-623, 2011 WL 1337407, at *2 (D. Nev. April 6, 2011) (comity doctrines exist to "avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result"); *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006) (noting how comity considerations "should not be lightly disregarded" (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991))). Allowing the States' suit to proceed in a manner that differs from the certified class in *Ms. L.* is not only incongruous, but risks undermining Judge Sabraw's administration of the same issues in *Ms. L.* The federal government's efforts to reunite parents

DEFENDANTS' REPLY BRIEF REGARDING THEIR MOTION
TO DISMISS, OR, ALTERNATIVELY, TRANSFER VENUE, OR
OR, ALTERNATIVELY, HOLD THE CASE IN ABEYANCE
*State of Washington, et al. v. United States, et al.*,
Case No. 2:18-cv-00939 (MJP)

6

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-0106
FACSIMILE: (202) 305-7000

with their children are still ongoing, and whatever relief the States may seek would make those efforts subject to conditions that would impede and delay such reunifications. Defendants respectfully do not believe that this action should proceed in this Court under such circumstances. *Cf. Feller v. Brock*, 802 F.2d 722, 727–28 (4th Cir. 1986) ("Prudence requires that whenever possible, coordinate courts should avoid issuing conflicting orders.").

> B. *The First-to-File Rule and* Colorado River *Abstention*

This Court should also dismiss or transfer this case under the first-to-file rule. The majority of the States' claims are undeniably identical to the claims raised in *Ms. L.*, with the others "aris[ing] out of the same" operational facts. *Interpret, LLC v. Crupnick*, No. 18-cv-3140, 2018 WL 3155118, at *2 (C.D. Cal. June 25, 2018). Once again, however, the States seem to argue that the first-to-file rule requires the *exact* same parties and issues, *see* Pls.' Opp'n (Dkt. 46) at 9–11, but fail to discuss this Court's (among others') previous rulings that similarity "is satisfied if the parties [and issues] are *substantially similar*, … not[ ]identical." *Music Grp. Servs.*, 2013 WL 1499564, at *2 (emphasis added). As the Ninth Circuit has put it, "[w]hen considering issues raised by the comity doctrine, … courts are not bound by technicalities." *Church of Scientology*, 611 F.2d at 749 (citing *Florida v. United States*, 285 F.2d 596 (8th Cir. 1960) ("There is no rigid or inflexible rule for determining priority of cases pending in federal courts involving *the same subject matter*." (emphasis added))). Thus, the States' focus on how two of "the[ir] claims are not identical," Pls.' Opp'n (Dkt. 46) at 6 n.1, or how "[f]indings and judgments in *Ms. L* will not bind the States," *id.* at 10:14–15, is largely irrelevant, particularly where the States' claims are derivative of those where the *Ms. L.* judgment will be binding—on the nationwide class of parents and the groups of children before that court.

Instead, the States note *their own* disagreement with the decisions currently being made by *Ms. L.*'s class counsel (for example, the issues of a *Ms. L.* class member waiving their child's right under the settlement agreement in *Flores v. Sessions*, 85-cv-4544 (C.D. Cal.), or waivers of reunification), Pls.' Opp'n (Dkt. 46) at 7:1–5, 19–21, and the orders of Judge Sabraw adopting those decisions. But these disagreements only highlight the fact that the States are seeking inconsistent orders from what the *Ms. L.* class members might agree to, and thus it

DEFENDANTS' REPLY BRIEF REGARDING THEIR MOTION
TO DISMISS, OR, ALTERNATIVELY, TRANSFER VENUE, OR
OR, ALTERNATIVELY, HOLD THE CASE IN ABEYANCE
*State of Washington, et al. v. United States, et al.*,
Case No. 2:18-cv-00939 (MJP)

7

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-0106
FACSIMILE: (202) 305-7000

would be best for a single judge to oversee that process. *See E.S.R.B. v. Sessions*, No. 18-cv-6654, Transcript of Proceedings, at 33 (S.D.N.Y. July 24, 2018) (Dkt. 35-2) ("I think the common sense of it is that these matters should, to the maximum extent possible, be consolidated before as few judges as possible."). That Plaintiffs assert Judge Sabraw should not have adopted the *Ms. L.* parties' agreement on *Flores* is not a reason for this Court to issue an order contrary to that; it is rather an obvious reason why this Court should transfer the case so that Judge Sabraw may hear the States' view on the decisions he has already made and the orders he will issue in the future. It is a classic case where intervention would be appropriate, not a separate collateral attack on a sister court's determinations.

In fact, this type of scenario was the motivating purpose behind the related abstention doctrine of *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). *See* Pls.' Opp'n (Dkt. 46) at 11–12. The States argue that such abstention is limited to where there are parallel federal and state litigations involving the same subject matter, *id.* at 11:13–16, but that is simply not the case. *See, e.g.*, Wright & Miller, 7 *Fed. Prac. & Proc. Civ.* § 4247, Avoiding Duplicative Litigation (3d ed.) ("[I]t is well settled that if the same issues are presented in an action pending in another federal court, one of these courts may stay the action before it[.]"); *cf. also Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1202–03 (2d Cir. 1970) (Friendly, J.) (holding that when the same action is pending in two federal courts, the second federal court should stay its hand). Such a stay would be appropriate here given the more fast-moving and, frankly, important issues being ruled upon every day by Judge Sabraw. *See M.M.M.*, slip op. at 12 ("[T]he fact remains that Judge Sabraw is considering substantially similar issues and has closely supervised the reunification process, holding dozens of conferences with counsel to date and issuing multiple opinions and orders concerning the family reunification process.") Any decision by this Court on the "substantially similar issues" in *Ms. L.* risks the creation of inconsistent judgments, causing confusion and potentially inconsistent treatment among class members, defeating the "paramount importance" of comity. *Church of Scientology*, 611 F.2d at 750.

DEFENDANTS' REPLY BRIEF REGARDING THEIR MOTION
TO DISMISS, OR, ALTERNATIVELY, TRANSFER VENUE, OR
OR, ALTERNATIVELY, HOLD THE CASE IN ABEYANCE
*State of Washington, et al. v. United States, et al.*,
Case No. 2:18-cv-00939 (MJP)

8

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-0106
FACSIMILE: (202) 305-7000

## II.        Transfer Under Section 1404(a) Is Warranted.

Transfer pursuant to 28 U.S.C. § 1404(a) is equally warranted. The Supreme Court has instructed that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [28 U.S.C.] § 1404(a) was designed to prevent." *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26 (1960). Given the commonality of the legal issues described above, this legal dispute should be transferred to the district (and part of the country along the Southwestern border) where it began. Indeed, the factors under the Ninth Circuit's decision in *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000) weigh heavily toward transfer when there is a duplicative litigation already filed and proceeding elsewhere. *See, e.g.*, *Prescott v. CVS Health Corp.*, No. 17-cv-803, 2017 WL 5756873, at *2 (W.D. Wash. Nov. 28, 2017).

In this case, the fact that certain individuals may have eventually been transferred to different states might be sufficient for venue in the abstract, but it does not address the first and second factors under *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000): (1) the location where the relevant transactions or occurrences took place and (2) the state(s) *most* familiar with the governing law. As the Complaint demonstrates, the States have asserted one claim that is distinct from the *Ms. L.* claims—that asylum applicants are not permitted to apply for asylum at the Southwestern border. *See* Compl. at ¶ 41. There is no particular reason for that claim to remain in this Court and should not form the basis for retaining the overlapping and conflicting claims where relief has already been granted in the Southern District of California. *Cal. SEC v. Multimedia Cablevision, Inc.*, 897 F. Supp. 316, 317–18 (E.D. Tex. 1995) ("[I]t is enough that the 'overall content of each suit is not very capable of independent development, and will be likely to overlap to a substantial degree.' The cases need not be identical to be duplicative." (quoting *Superior Sav. Ass'n v. Bank of Dallas*, 705 F. Supp. 326, 329 (N.D. Tex. 1989))).[1] Indeed, the "zero tolerance policy" of prosecutions that the States reference and the

---

[1]    If the Court concludes that this additional claim should not be transferred, it could be severed and retained by this Court. *See, e.g.*, *M.M.M.*, slip op. at 10 ("Severance and transfer … advance the goals of judicial economy and the orderly and efficient resolution of disputes.").

DEFENDANTS' REPLY BRIEF REGARDING THEIR MOTION
TO DISMISS, OR, ALTERNATIVELY, TRANSFER VENUE, OR
OR, ALTERNATIVELY, HOLD THE CASE IN ABEYANCE
*State of Washington, et al. v. United States, et al.*,
Case No. 2:18-cv-00939 (MJP)

9

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-0106
FACSIMILE: (202) 305-7000

1   separations of family units that occurred as a consequence occurred along the Southwestern

2   border. *See id.* at ¶ 55–56, 58. The States' offer no genuine argument against the reality that the

3   vast majority of what they challenge occurred in southern-border districts like the Southern

4   District of California. Not the Western District of Washington.

5   Because this case has no real connection to this district, the States' argument must rely

6   almost exclusively on the third *Jones* factor (the plaintiff's choice of forum) and focuses so

7   strongly on the *presumption* that a plaintiff's choice of forum should be favored, *id.* (citing *New

8   York v. Pruitt*, No. 18-cv-1030, 2018 WL 2411595, at *6 (S.D.N.Y. May 29, 2018)). But that is

9   a presumption that can be overcome. *See Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256,

10  1260–61 (W.D. Wash. 2005) ("Where the action has little connection with the chosen forum,

11  less deference is accorded plaintiff's choice, even if plaintiff is a resident of the forum"). This

12  factor should have much less force in a case like this one, where a fellow district court has

13  issued relief of nationwide scope and is administering relief. Indeed, the three other courts that

14  transferred their cases in spite of this factor concluded exactly that—including three cases in

15  New York that involved children in New York, a circumstance where the choice-of-forum

16  factor would otherwise have the greatest weight. *See M.M.M.*, slip op. at 12. It was not

17  overcome in *Pruitt* because "[t]he events leading to th[at] suit[] did not occur in" the transferee

18  district. 2018 WL 2411595, at *3. This is a crucial distinction under this district court's (along

19  with others') jurisprudence, which substantially discounts a plaintiff's choice of forum where,

20  as here, almost all of the plaintiffs and actions have "little connection with the chosen forum"

21  meaning that "less deference is accorded [to their] choice, even if [a single] plaintiff is a

22  resident of the forum." *Vernon v. Qwest Comms. Int'l, Inc.*, 643 F. Supp. 2d 1256, 1260 (W.D.

23  Wash. 2009); *see also Italian Colors Rest. v. Am. Express Co.*, No. 03-cv-3719, 2003 WL

24  22682482, at *3 (N.D. Cal. Nov. 10, 2003); *Stay-Dri Continence Mgmt. Sys., LLC v. Haire*, No.

25  08-cv-1386, 2008 WL 4304604, at *2 (E.D. Cal. Sept. 10, 2008). This same lack of a

26  connection to the Western District of Washington undermines the States' argument of

27  substantial contacts under the fourth and fifth *Jones* factors, which concern the contacts of the

28  respective parties and the relationship of their cause of action to the chosen forum.

DEFENDANTS' REPLY BRIEF REGARDING THEIR MOTION
TO DISMISS, OR, ALTERNATIVELY, TRANSFER VENUE, OR
OR, ALTERNATIVELY, HOLD THE CASE IN ABEYANCE
*State of Washington, et al. v. United States, et al.*,
Case No. 2:18-cv-00939 (MJP)

10

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-0106
FACSIMILE: (202) 305-7000

Finally, the remaining *Jones* factors support transfer because they concern more practical circumstances such as "(6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." 211 F.3d at 498–99. The States' attempt to shift the focus on these factors by pointing out that the same concerns are before Judge Sabraw in *Ms. L.*, *see* Pls.' Opp'n (Dkt. 46) at 14:13–14, but their argument on this score requires the Court to turn a blind eye to the tremendous efforts that are have been underway in *Ms. L.* for months. *See, e.g.*, *SZ DJI Tech. Co. Ltd. v. Autel Robotics USA LLC*, No. 17-cv-776, 2018 WL 1014614, at *1 (W.D. Wash. Feb. 22, 2018) (transferring case out of convenience because "[t]he court in Delaware is already navigating patent infringement claims regarding the identical [device]s in this matter, and judicial economy favors consolidate[ion]"); *Am. Canine Found. v. Sun*, No. 06-cv-654, 2006 WL 2092614, at *4 (E.D. Cal. July 27, 2006) (transferring case to the Northern District of California because "there [wa]s nothing to suggest that it would be difficult for plaintiff … to present its evidence in the Northern District" and there was already a similar case "currently . . . pending case in the Northern District").

### III. This Case Should Be Held In Abeyance Pending *Ms. L.* Or Until Certain Threshold Issues Have Been Resolved.

Finally, the States' refusal to engage with any of the traditional stay factors described in Defendants' Motion under *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) demonstrates the weakness of their position. The Plaintiffs claim that "there is more than a 'fair possibility' of harm to the States from a stay," Pls.' Opp'n (Dkt. 46) at 16:23 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)), but cite only to the harms allegedly caused to parents or children— not to themselves, *see* Pls.' Opp'n (Dkt. 46) at 17:2–3. "[G]iven the gravity and urgency of the issues in these cases," *N.T.C.*, 2018 WL 3472544, at *2, there are serious prudential reasons why those individual persons would be best served by allowing *Ms. L.* to proceed expeditiously rather than having this case "complicat[e the] issues, proof, and questions of law" that the *Ms. L.* court is currently considering, *CMAX*, 300 F.2d at 268. *See also Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961) ("Sound judicial discretion dictates that the second court

DEFENDANTS' REPLY BRIEF REGARDING THEIR MOTION
TO DISMISS, OR, ALTERNATIVELY, TRANSFER VENUE, OR
OR, ALTERNATIVELY, HOLD THE CASE IN ABEYANCE
*State of Washington, et al. v. United States, et al.*,
Case No. 2:18-cv-00939 (MJP)

11

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-0106
FACSIMILE: (202) 305-7000

decline its consideration of the action before it until the prior action before the first court is terminated."); *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965) (same).

In the alternative, this Court should follow the common practice of staying the remainder of this litigation until specific threshold determinations—such as the States' standing to sue—have been considered. *See, e.g.*, *Horowitz v. Sulla*, No. 13-cv-0500, 2014 WL 1048798, at *10 (D. Haw. Mar. 14, 2014) (granting motion to dismiss for lack of jurisdiction and noting how, before deciding upon a motion for summary judgment, the court had "ordered that all other motions be held in abeyance until the issue of federal jurisdiction was resolved"); *Norwood v. Cate*, 2014 WL 37241, at *8 n.2 (E.D. Cal. Jan. 6, 2014) ("Standing must be determined in order to establish jurisdiction of the Court to hear the case and reach the merits."). Far from being a "red herring," Pls.' Opp'n (Dkt. 46) at 17:17, the Supreme Court has recently noted the importance of having jurisdictional issues raised in potentially dispositive motions be resolved before anything else. *See, e.g.*, *In re United States*, 138 S. Ct. 443, 445 (2018) (ordering district court to adjudicate the federal government's jurisdictional motion to dismiss before ordering discovery because the federal government's "arguments, if accepted, likely would eliminate the need for the District Court to examine a complete administrative record"). Under the extraordinary circumstances involved in this case, if the case is not transferred, the Court should simply defer this case at this time, and require the filing of periodic status reports regarding the progress in the *Ms. L.* litigation.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion and dismiss. If the Court concludes that dismissal is not warranted, then the Court should transfer this case to the United States District Court for the Southern District of California. Finally, even if the Court concludes that neither dismissal nor transfer is warranted, the Court should hold this case in abeyance pending the disposition by the Southern District of California in *Ms. L.*

//

//

//

DEFENDANTS' REPLY BRIEF REGARDING THEIR MOTION
TO DISMISS, OR, ALTERNATIVELY, TRANSFER VENUE, OR
OR, ALTERNATIVELY, HOLD THE CASE IN ABEYANCE
*State of Washington, et al. v. United States, et al.*,
Case No. 2:18-cv-00939 (MJP)

12

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-0106
FACSIMILE: (202) 305-7000

1                                   Respectfully submitted,

2     DATED: August 3, 2018          CHAD A. READLER
Acting Assistant Attorney General

AUGUST E. FLENTJE
Special Counsel to the Assistant
Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

NICOLE N. MURLEY
Trial Attorney

*/s/ Joshua S. Press*
JOSHUA S. PRESS
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 305-0106
joshua.press@usdoj.gov

*Attorneys for the United States of America
and the Federal Defendants*

DEFENDANTS' REPLY BRIEF REGARDING THEIR MOTION
TO DISMISS, OR, ALTERNATIVELY, TRANSFER VENUE, OR
OR, ALTERNATIVELY, HOLD THE CASE IN ABEYANCE
*State of Washington, et al. v. United States, et al.,*
Case No. 2:18-cv-00939 (MJP)

13

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-0106
FACSIMILE: (202) 305-7000

1

2

3

4

5

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2018, I electronically transmitted the foregoing document to the Clerk's Office using the U.S. District Court for the Western District of Washington's Electronic Document Filing System (ECF), which will serve a copy of this document upon all counsel of record.

By: _/s/ Joshua S. Press_
JOSHUA S. PRESS
Trial Attorney
United States Department of Justice
Civil Division

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY BRIEF REGARDING THEIR MOTION
TO DISMISS, OR, ALTERNATIVELY, TRANSFER VENUE, OR
OR, ALTERNATIVELY, HOLD THE CASE IN ABEYANCE
_State of Washington, et al. v. United States, et al.,_
Case No. 2:18-cv-00939 (MJP)

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OIL-DCS
P.O. BOX 868 BEN FRANKLIN STATION
WASHINGTON, DC 20044
TELEPHONE: (202) 305-0106
FACSIMILE: (202) 305-7000

# DEFENDANTS' EXHIBIT 1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   R.G.H., et al.,

 4           Plaintiffs-Petitioners,

 5                 v.

 6   JEFFERSON BEAUREGARD SESSIONS,
                                          Order to Show Cause
 7           Defendant-Respondent.

 8   ------------------------------x
                                          New York, N.Y.
 9                                         July 27, 2018
                                          4:10 p.m.
10
     Before:
11
                 HON. JED S. RAKOFF
12
                                          District Judge
13

14

15           APPEARANCES

16
     GREENBURG TRAURIG
17        Attorneys for Plaintiffs-Petitioners
     BY:  CAROLINE HELLER
18        KEDAR S. BHATIA

19
     SAFE PASSAGE PROJECT
20        Attorneys for Plaintiffs-Petitioners
     BY:  REX CHEN
21        GUILLERMO STAMPUR

22
     GEOFFREY S. BERMAN
23        United States Attorney for the
          Southern District of New York
24        Attorneys for Defendant
     BRANDON M. WATERMAN
25        Assistant United States Attorney
```

1          (Case called)

2          THE COURT:  Good afternoon everyone.  Thank you for

3     your papers.  This appears to me to be identical in all

4     relevant respects to a matter that came before me earlier this

5     week, 18 CV 6654, in which the Legal Aid Society, representing

6     nine children, raised essentially the same issues raised in the

7     papers here and sought essentially the same relief.

8          On that occasion, after hearing from the government

9     and after consultation with Judge Sabraw, who is overseeing the

10    vast majority of these issues involving reunification in the

11    federal court in California, I transferred that case to Judge

12    Sabraw.  On that occasion Judge Sabraw had a hearing in the

13    matter coming up in a few hours and was kind enough to allow

14    the Legal Aid lawyers to appear telephonically.

15         I have just been on the phone with Judge Sabraw, who

16    indicated that if I were to transfer this new matter to him,

17    coincidentally he is having a hearing on all aspects of the

18    reunification process in approximately five minutes, and he

19    would be very pleased to have counsel for the petitioners here

20    participate in that conference if I transfer the case.

21         In the expectation that I will probably do that in

22    about two minutes, his number is 619-557-6262.  I told him that

23    if I did transfer it and if you did want to appear there, there

24    would be lawyers from Greenberg Traurig and from Safe Passage

25    Project who would be calling.  He is ready to receive your call

 1   if that is the way things turn out.

 2        The reason I transferred the other matter to Judge

 3   Sabraw is because this whole reunification process has many,

 4   many moving parts, and it doesn't make sense to have different

 5   judges in different districts trying to deal piecemeal with the

 6   issue.  There should be one judge looking at it overall.  Judge

 7   Furman, for example, just a week earlier had transferred

 8   another matter involving reunification to Judge Sabraw, and he

 9   is exercising on a daily basis oversight of all aspects of the

10   reunification process.

11        Let me hear from petitioners' counsel as to why, if

12   you do oppose, I should not just transfer this forthwith to

13   Judge Sabraw, you can talk to him and make your arguments to

14   him as soon as you can call him?

15        MS. HELLER:  Thank you, your Honor.  Caroline Heller

16   for the plaintiff-petitioners.  The arguments that your Honor

17   presents do make sense.  We would not necessarily object to

18   having the petition transferred and having an opportunity to

19   argue our case before Judge Sabraw.  However, there is one

20   outstanding factor.

21        The Assistant U.S. Attorneys disagrees with us.  The

22   Assistant United States Attorney who is here today even asked

23   why are you not filing this in the Southern District of

24   California.  Our response was because this is an emergency, the

25   children are in New York.  But if the Assistant United States

1   Attorney would agree that these children won't be transferred

2   pending our application before Judge Sabraw, we could all come

3   to an agreement that that would be fine.

4          Our concern here, your Honor, is that while this case

5   is being transferred to the Southern District of California,

6   the current request for a temporary restraining order is not

7   before Judge Sabraw.

8          THE COURT:  It will be.  The way it will work is this.

9   The last time I had three hours to get it to him.  This time I

10  have five minutes.  But thanks to modern communication, that is

11  not very difficult.  If I issue the order that I anticipate I

12  will issue, I will immediately email to his chambers all your

13  papers.  I will email my written order, which will only be a

14  couple of sentences, transferring the case to him forthwith.

15  Therefore, it will be his case.

16         As I say, he is perfectly happy to hear you this

17  afternoon.  You are quite able to say to him the children

18  should not be transferred, period, or they certainly shouldn't

19  be transferred until you have ruled on our petition, and so

20  forth.  So I don't think you will be prejudiced.

21         I'm not quite sure why the Assistant U.S. Attorney put

22  the question to you why you didn't file in California.  If the

23  children are here, you have every legal right to file here,

24  which you have done.  But it makes perfect sense to bring this

25  before Judge Sabraw, who has the overall coordinating function

1    in this very difficult matter.

2          I assume the government can assure me that no transfer

3    is going to occur between now and when Judge Sabraw hears you

4    in a few minutes.  Let me hear from the government.

5          MR. WATERMAN:  Your Honor, for the reasons you

6    articulated on Tuesday as well as this afternoon, we do believe

7    this matter should be transferred forthwith to the Southern

8    District of California.

9          I don't believe that there is any imminent threat of

10   these individuals being moved.  As I understand it, I believe

11   the attorneys had asked for or filed a cease and desist letter

12   and moving them was put on hold temporarily.  As I understand

13   it, there is no current movement in light of counsel's actions

14   in the past day or two or communications with the government.

15         THE COURT:  So I will transfer it.  I am going to keep

16   this short because I think it is important that the

17   petitioners' counsel get right on the phone with Judge Sabraw.

18   Give me no more than five minutes.  I will make sure that Judge

19   Sabraw knows that the case has been transferred.  I will email

20   him your papers.

21         I will prepare my written order and have it docketed.

22   If you want to come down to my chambers, you can get a copy of

23   that as well.  Then you should call Judge Sabraw so you can

24   participate in his ongoing hearing, which has probably started

25   about five minutes ago, that embraces all aspects of this.

1          I will say to you, as I said to the lawyers on

2     Tuesday, if for any reason when you call they say who are you

3     or anything like that, let me know, and I'll call and make sure

4     that you get through, although there was no problem last

5     Tuesday and Judge Sabraw was ready to hear the lawyers from New

6     York.

7               MS. HELLER:  Your Honor, may I clarify the telephone

8     number with you?

9               THE COURT:  Yes.

10              MS. HELLER:  619-557-6262?

11              THE COURT:  Correct.

12              MS. HELLER:  Thank you, your Honor.

13              THE COURT:  Give me five minutes, and then you can

14    call.

15              MS. HELLER:  Should we go down to your chambers in

16    five minutes to get copies of the papers?

17              THE COURT:  Sure.

18              THE CLERK:  That's 1340, one floor down.

19              (Adjourned)

20

21

22

23

24

25

# DEFENDANTS' EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————— )
                                                              )
M.M.M., on behalf of his minor child,      )
  J.M.A., et al.,                                          )
                                                              )
              Plaintiffs,                                 )
                                                              )
       v.                                                   )          Civil Action No. 18-1759 (PLF)
                                                              )
JEFFERSON BEAUREGARD SESSIONS, )
  III, Attorney General of the United States,  )
  et al.,                                                   )
                                                              )
              Defendants.                               )
———————————————————— )

OPINION

This case arises out of the government's controversial "zero-tolerance"

immigration policy, under which immigrant parents unlawfully entering the United States with

their young children were subject to criminal prosecution and forcibly separated from their

children for several weeks.  On June 26, 2018, Judge Dana M. Sabraw of the United States

District Court for the Southern District of California certified a nationwide class of separated

parents and issued a class-wide preliminary injunction requiring the government to reunify

separated families by July 26, 2018.  See Ms. L. v. U.S. Immigration & Customs Enf't,

No. 18-0428, 2018 WL 3129486 (S.D. Cal. June 26, 2018).  With approximately 1,800 families

reunified to date, attention has turned to what lies ahead for these parents and their children.

Plaintiffs in this action are a putative class of non-citizen children who were

separated from their parents shortly after crossing the United States-Mexico border.  They allege

that defendants – various federal agencies and officials responsible for enforcing immigration

laws and regulations – recently adopted a policy of removing families from the United States immediately after reunification and, as a result, have denied plaintiffs access to certain asylum procedures guaranteed by statute and under the Constitution.

On July 27, 2018, plaintiffs filed a motion for a temporary restraining order and preliminary injunction [Dkt. No. 6].  Following expedited briefing, the Court held a hearing on the motion on July 31, 2018.  At the hearing, defendants orally moved to transfer venue to the Southern District of California pursuant to 28 U.S.C. § 1404(a).  The following day, defendants submitted a written supplement in support of their oral motion to transfer venue [Dkt. No. 19], and plaintiffs addressed the transfer issue in two supplemental filings [Dkt. Nos. 18 and 23].  Upon careful consideration of the parties' written submissions, the relevant legal authorities, the arguments of counsel in open court on July 31, 2018, and the entire record in this case, the Court will grant defendants' motion to transfer venue, subject to certain modifications.[1]

## I.  BACKGROUND

Plaintiffs filed this action on July 27, 2018.  Plaintiffs are six immigrant children ages six through thirteen who were forcibly separated from their parents shortly after entering the United States.  See Compl. ¶¶ 68-105.  Having recently been reunified with their parents after

---

[1]     In connection with the pending motion, the Court has reviewed the following filings, including the exhibits attached thereto:  Complaint ("Compl.") [Dkt. No. 4]; Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Mot.") [Dkt. No. 6]; Plaintiffs' Motion for Expedited Hearing ("Hearing Mot.") [Dkt. No. 7]; Defendants' Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Opp'n") [Dkt. No. 15]; Plaintiffs' Reply in Support of Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Reply") [Dkt. No. 18]; Defendants' Supplemental Brief in Support of Motion to Transfer Venue ("Venue Mot.") [Dkt. No. 19]; July 31, 2018 TRO Motion Hearing Transcript ("July 31, 2018 Hr'g Tr.") [Dkt. No. 21]; and Plaintiffs' Response to Defendants' Supplemental Brief in Support of Motion to Transfer Venue ("Venue Opp'n") [Dkt. No. 23].

spending several weeks apart, they now face the prospect of another lengthy separation: their parents are subject to expedited removal orders and may soon be removed from the country. See id. Plaintiffs bring this action by and through their parents and next friends under Rule 17(c) of the Federal Rules of Civil Procedure. They also bring class action claims under Rule 23 of the Federal Rules of Civil Procedure on behalf of "all non-citizens under the age of 18 who were separated from their parents or guardians upon (or after) entry into the United States and who are, have been, or will be detained by the U.S. government at any time since January 1, 2018." See id. ¶¶ 10-16, 106.

Plaintiffs' core allegation is that defendants have deprived them of their right to pursue their own, independent asylum claims after reunification with their parents. See Compl. ¶ 42. Plaintiffs allege that this right is separate from the right of a parent to seek asylum on his or her own behalf, see id. ¶ 46, and may not be waived by the parent on behalf of the child, particularly when the waiver is not knowing, intelligent, and voluntary, see id. ¶ 50. According to plaintiffs, defendants have coerced parents into abandoning their children's asylum claims in order to remain together as a family unit. See id. ¶ 46. Plaintiffs further allege that defendants have obtained invalid waivers from parents that purport to waive the rights of their children to pursue asylum and to be accompanied by their parent while their asylum application is pending. See id. They maintain that parents do not have the legal authority to waive their children's rights in this manner. See id. ¶ 50. Based on those and other allegations, the complaint asserts four causes of action: (1) violations of the Due Process Clause of the Fifth Amendment (Count I); (2) petition for a writ of mandamus under 28 U.S.C. § 1361 (Count II); (3) violations of the Administrative Procedure Act, 5 U.S.C. § 706(2)(a) (Count III); and (4) judicial review of defendants' expedited removal policy under 8 U.S.C. § 1252(e)(3) (Count IV).

On July 27, 2018, plaintiffs filed a motion for a temporary restraining order and preliminary injunction.  See TRO Mot. at 1.  Plaintiffs seek to temporarily restrain defendants from depriving them of their right to pursue asylum upon reunification with their parents pending a full hearing on their preliminary injunction motion.  See id.  They further move for a preliminary injunction requiring defendants to permit plaintiffs to pursue asylum following reunification with their parents or guardians and in consultation with them.  See id.

Defendants filed an opposition to plaintiffs' motion on July 30, 2018, arguing primarily that the Court should transfer this case to the Southern District of California for consideration together with the Ms. L. class action pending before Judge Sabraw and two other actions brought on behalf of separated children that were recently transferred to him.  See N.T.C. v. ICE, No. 18-6428, 2018 WL 3472544 (S.D.N.Y. July 19, 2018); Order, E.S.R.B. v. Sessions, No. 18-6654 (S.D.N.Y. July 24, 2018), ECF No. 4.  The Court held a hearing on plaintiffs' motion for a temporary restraining order on July 31, 2018, during which defendants orally moved to transfer venue.  See July 31 Hr'g Tr. at 32.  Defendants also submitted a supplement to their oral motion to transfer venue.  See Venue Mot. at 1-2.  Plaintiffs filed a reply in support of their motion for a temporary restraining order, see TRO Reply, as well as a response to defendants' motion to transfer venue, see Venue Opp'n.

Meanwhile, on June 26, 2018 in the Southern District of California, Judge Sabraw issued a class-wide preliminary injunction requiring the government to reunify separated families by July 26, 2018.  See Ms. L. v. U.S. Immigration & Customs Enf't, 2018 WL 3129486, at *11-12.  On July 16, 2018, the Ms. L. plaintiffs asked Judge Sabraw to impose a seven-day waiting period before members of reunified families can be removed from the country – relief sought to ensure that parents can consult with their children and counsel about legal options prior

to removal.  That day, Judge Sabraw temporarily stayed removals of reunified families pending

his decision on plaintiffs' request for a seven-day waiting period.  <u>See</u> Order, <u>Ms. L. v. U.S.</u>

<u>Immigration & Customs Enf't</u>, No. 18-0428 (S.D. Cal. July 16, 2018), ECF No. 116.[2]

## II.  LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other

district "[f]or the convenience of the parties and witnesses, in the interest of justice," so long as

the transferee district is one where the case "might have been brought."  <u>See</u> 28 U.S.C.

§ 1404(a).  Section 1404(a) affords the Court broad discretion in determining whether transfer

from one jurisdiction to another is appropriate.  <u>See</u> <u>Ravulapalli v. Napolitano</u>, 773 F. Supp. 2d

41, 55 (D.D.C. 2011) (citing <u>SEC v. Savoy Indus. Inc.</u>, 587 F.2d 1149, 1154 (D.C. Cir. 1978)).

The decision to transfer is made based on an "individualized, case-by-case consideration of

convenience and fairness."  <u>See</u> <u>Ravulapalli v. Napolitano</u>, 773 F. Supp. 2d at 55 (quoting <u>Van</u>

<u>Dusen v. Barrack</u>, 376 U.S. 612, 622 (1964)); <u>see also</u> <u>Aracely v. Nielsen</u>, No. 17-1976, 2018

WL 3243977, at *6 (D.D.C. July 3, 2018).  And the moving party "bears a heavy burden" of

establishing that plaintiffs' choice of forum is inappropriate and the case should be transferred to

another venue.  <u>See</u> <u>Southern Utah Wilderness Alliance v. Norton</u>, 315 F. Supp. 2d 82, 86

(D.D.C. 2004) (quoting <u>Pain v. United Tech. Corp.</u>, 637 F.2d 775, 784 (D.C. Cir. 1980)).

---

[2]        The <u>Ms. L.</u> class is defined to include: "All adult parents who enter the United
States at or between designated ports of entry who (1) have been, are, or will be detained in
immigration custody by the [Department of Homeland Security ("DHS")], and (2) have a minor
child who is or will be separated from them by DHS and detained in ORR custody, ORR foster
care, or DHS custody, absent a determination that the parent is unfit or presents a danger to the
child."  <u>Ms. L. v. U.S. Immigration & Customs Enf't</u>, 2018 WL 3129486, at *3 n.5.  The class
does not include "parents with criminal history or communicable disease, or those apprehended
in the interior of the country or subject to the [June 20, 2018 Executive Order]."  <u>See</u> <u>id</u>.

Defendants must make two showings to justify transfer under Section 1404(a). First, defendants must establish that plaintiffs could have brought the action in the proposed transferee district.  See Aracely v. Nielsen, 2018 WL 3243977, at *7 (citing Van Dusen v. Barrack, 376 U.S. at 616-17); see also 28 U.S.C. § 1404(a).  Second, defendants must demonstrate that "considerations of convenience and the interest of justice weigh in favor of transfer to that district."  See Aracely v. Nielsen, 2018 WL 3243977, at *7 (citing Trout Unlimited v. U.S. Dep't of Ag., 944 F. Supp. 13, 16 (D.D.C. 1996)).  In evaluating whether defendants have made this second showing, the Court weighs several private and public interest factors.  See id.; Ravulapalli v. Napolitano, 773 F. Supp. 2d at 55-56.

Cases transferred pursuant to Section 1404(a) must be transferred in their entirety. See 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FED. PRAC. & PROC. CIV. § 3846 (4d ed. 2018).  Where all claims in a single case cannot be transferred to a single transferee district, the Court has authority to sever claims, so that one case may be transferred in its entirety pursuant to Section 1404(a), while the remaining claim proceeds as a separate case. See Pinson v. U.S. Dep't of Justice, 74 F. Supp. 3d 283, 288 (D.D.C. 2014); Spaeth v. Mich. State Univ. Coll. of Law, 845 F. Supp. 2d 48, 57 n.13 (D.D.C. 2012) (severing claims prior to transferring venue under Section 1404(a)).

Under Rule 21 of the Federal Rules of Civil Procedure, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  FED. R. CIV. P. 21.  Severed claims become independent actions that proceed separately and result in separate judgments.  See Pinson v. U.S. Dep't of Justice, 74 F. Supp. 3d at 288 n.7; see also 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FED. PRAC. & PROC. CIV. § 1689 (3d ed. 2018).  District courts have broad discretion in

determining whether severance of particular claims is warranted.  See Spaeth v. Mich. State Univ. Coll. of Law, 845 F. Supp. 2d at 55 n.11 (citation and internal quotation marks omitted); M.K. v. Tenet, 216 F.R.D. 133, 137 (D.D.C. 2002); see also WRIGHT, MILLER & KANE, supra, § 1689.  In making this determination, courts consider multiple factors, including:  (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) concerns related to judicial economy, multiplicity of litigation, and orderly and efficient resolution of disputes; (4) the availability of witnesses and other evidentiary proof; and (5) the potential for confusion, undue delay, or prejudice to any party.  See, e.g., Dickerson v. Novartis Corp., 315 F.R.D. 18, 24-25 (S.D.N.Y. 2016); Wultz v. Islamic Republic of Iran, 762 F. Supp. 2d 18, 32-33 (D.D.C. 2011); Khanna v. State Bar of Cal., No. 07-2587, 2007 WL 2288116, at *2-3 (N.D. Cal. Aug. 7, 2007); M.K. v. Tenet, 216 F.R.D. at 137-38; see also Wyndham Assocs. v. Bintliff, 398 F.2d 614, 618 (2d Cir. 1968), cert. denied, 393 U.S. 977 (1968).[3]

## III.  DISCUSSION

Defendants' alleged policy of depriving children of their right to pursue independent asylum claims, in combination with other threatened actions, could well result in the removal of these plaintiffs and other separated children from the country without due process and possibly in violation of 8 U.S.C. § 1252(e)(3).  The question is whether this Court or Judge

---

[3]     Rule 21 is commonly invoked to sever parties improperly joined under Rule 20, which governs permissive joinder of parties.  See WRIGHT, MILLER & KANE, supra, § 1689 ("[A]lthough the primary significance of Rule 21 is in the context of joinder of parties, it does have an effect on the joinder of claims.").  Where, as here, severance of a claim rather than a party is at issue, Rule 21 must be read in conjunction with:  (1) Rule 18, which provides the parties with "great freedom in the joinder of claims"; (2) Rule 42(b), which authorizes the separate trial of a claim "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy"; and (3) Rule 42(a), which permits actions involving a common question of law or fact to be consolidated for trial.  See id.

Sabraw is in a better position to resolve these claims.  Defendants have made a persuasive argument that this Court should transfer the instant case to Judge Sabraw in the Southern District of California, as Judges Furman and Rakoff of the United States District Court for the Southern District of New York have done with similar cases brought by separated children.  See N.T.C. v. ICE, No. 18-6428, 2018 WL 3472544 (S.D.N.Y. July 19, 2018); Order, E.S.R.B. v. Sessions, No. 18-6654 (S.D.N.Y. July 24, 2018), ECF No. 4.  Indeed, the instant case and the cases of separated parents and children pending before Judge Sabraw involve members of the same families, as well as substantially similar claims that relate directly to the family reunification process and its aftermath, which Judge Sabraw has been closely managing over the last several weeks.  Plaintiffs counter, however, that transfer of this case to the Southern District of California is both inappropriate and impossible because this District has exclusive jurisdiction over one of plaintiffs' four claims, Count IV concerning judicial review of expedited removal orders under Section 1252(e)(3).

The Court easily concludes that under these circumstances, a single judge – Judge Sabraw – should be entrusted to untie this sailor's knot.  Plaintiffs are correct, however, that the Southern District of California is barred by statute from considering Count IV.  The Court therefore will sever Counts I, II, and III and transfer this case with those three claims to the Southern District of California, to be considered together with the similar actions now pending before Judge Sabraw.  Because jurisdiction over Count IV lies exclusively in this District, however, Count IV must remain before this Court and will proceed as a separate action brought under Section 1252(e)(3).

## A.  Severance of Count IV

The parties agree that Count IV of the complaint fails the threshold inquiry under Section 1404(a):  Count IV could not have been brought in the Southern District of California. Unlike plaintiffs' other statutory and constitutional claims, a claim brought under Section 1252(e)(3) may be brought only in the United States District Court for the District of Columbia. See 8 U.S.C. § 1252(e)(3)(A).  Moreover – and importantly to the Court's determination that the other claims can best be handled by Judge Sabraw – Count IV cannot proceed as a putative class action.  See 8 U.S.C. § 1252(e)(1) ("Without regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may . . . certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial review is authorized under a subsequent paragraph of this subsection."); American Immigration Lawyers Ass'n v. Reno, 199 F.3d 1352, 1358-59 (D.C. Cir. 2000).  While Counts I, II, and III may be brought in the Southern District of California and proceed as a putative class action, Count IV involves a claim brought by six individuals over which only this Court has jurisdiction.

Although plaintiffs' four claims clearly arise out of the same transaction or occurrence, they present different considerations which, absent severance, would create significant barriers to the efficient resolution of the myriad claims arising out of the zero-tolerance immigration policy and its aftermath.  On the one hand, declining transfer and adjudicating all four claims in this Court would result in duplicative litigation, given that Judge Sabraw is addressing substantially similar issues in the Ms. L. class action and the cases recently transferred from New York.  See N.T.C. v. ICE, No. 18-6428, 2018 WL 3472544 (S.D.N.Y. July 19, 2018); Order, E.S.R.B. v. Sessions, No. 18-6654 (S.D.N.Y. July 24, 2018), ECF No. 4.  On the other hand, transferring all four claims to Judge Sabraw would prejudice plaintiffs by

transferring Count IV to a court that so clearly lacks jurisdiction to hear it. Proceeding down one path would needlessly expend judicial resources, while proceeding down the other would improperly deprive plaintiffs of the opportunity to litigate Court IV.

These foreseeable complications stand in contrast to a sensible alternative: severing Count IV from Counts I, II, and III and transferring the case to Judge Sabraw, while retaining jurisdiction over Count IV as a separate action. As discussed more fully below, severing Count IV and transferring Counts I, II, and III to Judge Sabraw will permit him to resolve plaintiffs' claims in this action together with the related claims in the Ms. L. class action and the two other actions brought on behalf of separated children. See N.T.C. v. ICE, No. 18-6428, 2018 WL 3472544 (S.D.N.Y. July 19, 2018); Order, E.S.R.B. v. Sessions, No. 18-6654 (S.D.N.Y. July 24, 2018), ECF No. 4. The claims of the parent class and the claims of the children of those same parents will be before a single judge. As Judge Rakoff observed in deciding to transfer the case before him to Judge Sabraw, the entire process of reunifying immigrant families "has many, many moving parts." See Venue Mot. Ex. 6 at 3. Severance and transfer will advance the goals of judicial economy and the orderly and efficient resolution of disputes. Moreover, keeping Count IV in this Court will mitigate prejudice to the six individual plaintiffs: rather than having their claim transferred to the Southern District of California where it could be dismissed for lack of jurisdiction, Count IV will remain alive in this Court.[4]

Weighing these factors, the Court finds that severing Count IV from Counts I, II, and III and transferring the case will materially advance the fair administration of justice.

---

[4] The Court declines to construe defendants' motion to transfer venue as a motion to dismiss Count IV. At this stage, the question is not whether plaintiffs are subject to a removal order or whether they have sufficiently alleged a written policy for purposes of 8 U.S.C. § 1252(e)(3) (Count IV). Rather, the question is whether Count IV could be brought in the transferee court for purposes of 28 U.S.C. § 1404(a).

Because jurisdiction over Count IV lies exclusively in this District, however, Count IV will remain before this Court and will proceed as a separate action brought under Section 1252(e)(3).

### B.  Transfer of Counts I, II, and III

The remaining question is whether Counts I, II, and III may properly be transferred to the Southern District of California under 28 U.S.C. § 1404(a).  The parties do not challenge that these claims meet the threshold requirement under Section 1404(a), i.e., that they could have been brought in the Southern District of California.  The Court thus focuses its inquiry on whether the relevant private and public interest factors weigh in favor of transfer to that venue.

The Court easily concludes that Counts I, II, and III should be transferred to the Southern District of California to be considered together with the claims pending in the Ms. L. class action and the actions recently transferred from New York.  First, the instant case and one of the cases pending before Judge Sabraw, N.T.C. v. ICE, No. 18-6428, 2018 WL 3472544 (S.D.N.Y. July 19, 2018), both involve class action claims brought by separated children rather than by their parents.  More broadly, plaintiffs in this case and in all of the cases pending before Judge Sabraw involve members of the same families.  Plaintiffs in this case are the children of the class members in Ms. L.  All of the cases address both family reunification and the rights of individual family members to pursue various immigration claims.  In this regard, these cases represent two sides of the same coin:  whether and to what extent parents may waive their children's rights to pursue asylum and whether and to what extent children may independently assert their individual asylum rights.

Second, the relief plaintiffs seek in this case is directly related to the reunification process that Judge Sabraw has been admirably overseeing for several weeks.  Here, a putative

class of separated children contends that they have rights distinct from the rights of their parents and that the reunification process does not adequately account for their distinct rights. They argue that defendants have deprived them of their ability to pursue individual asylum claims and that defendants have sought to extinguish their independent rights through purported waivers signed by their parents. Judge Sabraw is in a better position than this Court to decide those questions and to modify his own orders if appropriate. To the extent plaintiffs' claims turn on the interpretation of the waiver form approved in the <u>Ms. L.</u> class action, for instance, Judge Sabraw is better suited to the task than this Court.[5] Contrary to plaintiffs' assertion, this issue is now squarely before Judge Sabraw, as the parties in the actions pending before him have brought the instant case to his attention. Transfer to the Southern District of California therefore will promote the orderly and consistent administration of the issues and claims presented in these cases.

The Court acknowledges the deference owed to plaintiffs' choice of forum. The Court is also aware that transferring this case may inconvenience plaintiffs and their counsel, some of whom are located in Washington, D.C. But the fact remains that Judge Sabraw is considering substantially similar issues and has closely supervised the reunification process, holding dozens of conferences with counsel to date and issuing multiple opinions and orders concerning the family reunification process. Upon careful consideration of the parties' arguments, and having consulted with Judge Sabraw with the parties' consent, the Court finds that transfer is appropriate. The Court therefore severs Count IV from Counts I, II, and III and

---

[5]       In a separate case pending before the Court involving the zero-tolerance immigration policy, the Court characterized a purported waiver form given to a separated parent in June 2018 as "not worth the paper it is written on." <u>M.G.U. v. Nielsen</u>, No. 18-1458, 2018 WL 3432720, at *3 (D.D.C. July 16, 2018). The Court notes that the waiver form at issue in that case was not the waiver form approved by Judge Sabraw in the <u>Ms. L.</u> class action.

transfers this case with those claims to the Southern District of California pursuant to 28 U.S.C.

§ 1404(a).  Judge Sabraw will have to consider whether to certify a class and, more immediately,

resolve the pending motion for a temporary restraining order and preliminary injunction.  As

defendants have agreed not to remove plaintiffs or their parents until August 6, 2018 if plaintiffs'

claims are transferred, no temporary restraining order is necessary from this Court at this time.

## IV.  CONCLUSION

For the reasons set forth in this Opinion, the Court will grant defendants' motion

to transfer venue.  The Court will sever Count IV from Counts I, II, and III and transfer this case

with those three claims to the United States District Court for the Southern District of California

to be considered by Judge Sabraw in conjunction with the related proceedings pending before

him.  The Court will retain jurisdiction over Count IV as a separate action.  An Order consistent

with this Opinion shall issue this same day.

SO ORDERED.


/s/
_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  August 3, 2018